1   **BARRETT S. LITT**, CSB 45527
KAYE, MCLANE, BEDNARSKI & LITT
2   975 East Green Street
Pasadena, CA 91106
3   (626) 844-7660 / (626) 844-7670 facsimile
blitt@kmbllaw.com
4
**DONALD W. COOK**, CSB 116666
5   ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
6   Los Angeles, CA  90010
(213) 252-9444 / (213) 252-0091 facsimile
7   manncook@earthlink.net

**PAUL L. HOFFMAN**, SBN 071244
**CATHERINE SWEETSER**, SBN 271142
SCHONBRUN DESIMONE SEPLOW HARRIS &
HOFFMANN LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
(310) 396-0731 / (310) 399-7040 facsimile
hoffpaul@aol.com
csweetser@sshhlaw.com

8   Attorneys for Plaintiff

9

10                **UNITED STATES DISTRICT COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| LAMYA BREWSTER, individually and as class representative, | Case No. EDCV 14-2257 JGB (SPx) |
| Plaintiff, | **LOCAL RULE 37-2 STIPULATION RE PLAINTIFF'S MOTION TO COMPEL NON-PARTY WITNESS OPG-LA TO PRODUCE RECORDS; DECLARATIONS OF DONALD W. COOK, DWIGHT W. COOK AND STEVEN M. GARBER** |
| vs. | |
| CITY OF LOS ANGELES, a municipal corporation; LOS ANGELES POLICE DEPARTMENT, a public entity, CHIEF CHARLIE BECK, individually and in his official capacity, and Does 1 through 10, | |
| Defendants. | |
| | [DISCOVERY MATTER] |
| | Date: Tuesday, 5/1/18 Time: 10:00 a.m. Ctrm: 3 (Riverside - 3rd Floor) |

23   TO THE HON. SHERI PYM, UNITED STATES MAGISTRATE JUDGE:

24         Pursuant to Local Rule 37-2.2, Plaintiff Lamya Brewster and non-party Official

25   Police Garage Association of Los Angeles ("OPG-LA"), hereby submit the following

26   stipulation. This stipulation concerns computerized data which was the subject of a

27   subpoena duces tecum issued January 8, 2018 (**Exhibit A**) and served on OPG-LA on

28   January 17, 2018.

00125051.WPD

DATED: April 6, 2018

**BARRETT S. LITT**
**PAUL L. HOFFMAN**
**DONALD W. COOK**
Attorneys for Plaintiff

By_____
            Donald W. Cook

DATED: April 6, 2018

**STEVEN M. GARBER & ASSOCIATES**
Attorney for Non-Party OPG-LA

By_____
            Steven M. Garber

00125051.WPD

TABLE OF CONTENTS

Page

PLAINTIFFS' INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

OPG-LA'S INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . 7

DISCOVERY IN DISPUTE AND ISSUES TO BE DECIDED . . . . . . . . . . . . . . . 11
 1/8/18 SUBPOENA SERVED ON OPG-LA . . . . . . . . . . . . . . . . . . . . . 11

ISSUE NO. 1: Is production of the VIIC data Plaintiff seek proportional to the needs of
 Plaintiff's claims? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
 Plaintiff's Position: Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  *Log Numbers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  *Vehicle Data* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  *Vehicle Owners' Names & Addresses* . . . . . . . . . . . . . . . . . . . . . . . . 13

 OPG's Position: No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
 I. Mr. Cook is Improperly Forum Shopping to Acquire VIIC Data . . . . 14
 II. The Discovery Sought is Premature at the Pre-Certification Stage . . . 18
 III. Discovery Restrictions Are Broader and the Protections Greater When
   Discovery Burdens a Non-Party . . . . . . . . . . . . . . . . . . . . . . . . . . 21
 IV. Plaintiff must Avoid Imposing an Undue Burden on a Non–Party . . . 22
 V. Log Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
 VI. Vehicle Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
 VII. Vehicle Owners' Names & Addresses . . . . . . . . . . . . . . . . . . . . . 26

ISSUE 2: Does state law and/or federal law bar production of the requested VIIC data
 as privileged? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
 Plaintiffs' Position: No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

 OPG-LA's Position: Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
 I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
 II. Mr. Cook Makes Blatant Misrepresentations Concerning Events in a
   Separate Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
 III. Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725 . . . . . . . . . . 33
 IV. The Court Is Permitted to Consider State Laws in Determining  Whether
   to Order Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
 V. The Constitutional Right to Privacy Prohibits Access to the VIIC Database
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ISSUE NO. 3: Is production of VIIC data unduly burdensome? . . . . . . . . . . . . . . 38
 Plaintiff's Position:  No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

 OPG's Position: Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
 I. Mr. Cook's Assertions Concerning the VIIC Database Are Based on
   Speculation, Misrepresentations, and Hearsay . . . . . . . . . . . . . . . . . 39
 II. The Discovery Sought Places a Great Burden on a Non-Party, OPG-LA
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
 III. Disclosure Implicates Substantial Privacy Concerns of Non-Parties Who

00125051.WPD

Have Not Had an Opportunity to Oppose Disclosure . . . . . . . . . . . . . 50

IV.  The Expense in Giving Prior Notice to Each Vehicle Owner and Driver as Required by the DMV Imposes a Great Financial Burden on Non-Party Witness OPG-LA's Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

ISSUE NO. 4: Assuming the Court orders production, must the VIIC data be produced in its original electronic format as computer text data? . . . . . . . . . . . . . . . . . 51

Plaintiffs' Position: Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

OPG-LA's Position: No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

I.  OPG-LA does not maintain the DMV Information sought in the parameters demanded by Mr. Cook . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

II.  The Best Source of the Information Sought are the CHP 180 Forms . 53

DECLARATION OF DONALD W. COOK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

DECLARATION OF DWIGHT W. COOK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

DECLARATION OF STEVEN M. GARBER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

00125051.WPD

## PLAINTIFFS' INTRODUCTORY STATEMENT

Plaintiff Lamya Brewster brings this action under 42 U.S.C. §1983 and state law on behalf of herself and the class of persons similarly situated. Defendants are the City of Los Angeles ("City"), its Police Department and Chief of Police Charlie Beck.

Relying on state law (Cal. Veh. Code § 14602.6 (hereinafter "§14602.6")) and LAPD policy, defendants seized then impounded for 30 days Ms. Brewster's vehicle. The 30 day vehicle impound was not pursuant to any warrant. Nor was the impound justified by an exception to the Fourth Amendment's warrant requirement. For further discussion of Ms. Brewster's vehicle seizure, see the published decision in this case, *Brewster v. Charlie Beck*, 859 F.3d 1194 (9th Cir. 2017) (reversing trial court's order dismissing Ms. Brewster's claims); *see also* Plaintiff's First Amended Class Action Complaint ("FAC"), Doc 75, filed 10/26/17, ¶¶ 12-20.

The FAC has six causes of action. Relevant to the present motion are the second through sixth causes of action. All seek damages for a class of vehicle owners whose vehicles were impounded by the LAPD for 30 days, pursuant to §14602.6.

Based upon information gathered from other cases and defense counsel's representation, Plaintiff believes this case will have a class size of about 50,000 vehicle owners, possibly more. Because class certification and the ultimate resolution of this case will require the ability to ascertain, identify and contact class members, and provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," F.R.Cv.P. 23(c)(2)(B), Plaintiff seeks information identifying vehicle owners who have had their vehicles impounded under §14602.6, and the costs (to vehicle owners) associated with those impounds. That data is found in the "*V*ehicle *I*mpound *I*nformation *C*enter" data, or VIIC data. Pursuant to contracts executed between the City and individual towing and vehicle storage companies, the tow companies, known as "Official Police Garages" or

OPGs, input VIIC data into a computer database. VIIC data includes identities of vehicle owners, dates vehicles were seized and released, statutory authority under which vehicles were seized, amounts paid for the releases of those vehicles, and other information. See Declaration of Donald W. Cook ¶¶4-6 for a more thorough explanation of the VIIC data and its relation to the City and this case. *See also* **Exhibit C**, a print-out to paper of VIIC data (but not including vehicle owners' names or addresses).

The VIIC database is maintained by the Official Police Garage Association of Los Angeles (OPG-LA). (OPG-LA is a non-profit private corporation owned by the 18 OPGs and manages record keeping for the OPGs.) To obtain the VIIC data, Plaintiff served on OPG-LA a deposition subpoena seeking production of a subset of VIIC data identifying class members and their out-of-pocket expenses associated with their respective 30 day impounds. See **Exhibit A** (deposition subpoena). OPG-LA responded by refusing produce any data, instead asserting various objections. See **Exhibit B** (OPG-LA's objections).

Plaintiff seeks the Court's order to enforce Plaintiff's subpoena.[1] The information

_____

[1] Plaintiff adds she has served a production request on defendant City to produce the VIIC data. (Though VIIC data is stored on an OPG-LA owned database, the City has unlimited access to VIIC data. E.g., 2/10/14 Rose depo., 59:1-60:6). There are several reasons why Plaintiff proceeds with enforcement of the subpoena in lieu of seeking the VIIC data pursuant to a F.R.Cv.P. 34 request. Because of scheduling and unavailability, the City's assigned attorney cannot provide the City's F.R.Cv.P. 34 response for several more weeks. More significantly, Plaintiff's counsel expects the City will take the position it cannot produce VIIC data. In other litigation the City has claimed (contrary to the plain language of the contracts between the OPGs and the City and the testimonial admissions by various designated agents for the City and OPG-LA) the City contends it cannot force OPG-LA to provide VIIC data. Though Plaintiff's counsel believes the City's contention is a sham and was created in collusion with OPG-LA for the sole purpose of preventing members of the public from obtaining VIIC data pursuant to a California Public Records request (Cal. Gov't Code § 6250 *et seq.*), Declaration of Donald W. Cook ¶10 @ fn.5, even if produced by the City the originating source for the VIIC data will still be the same -- the VIIC database maintained by OPG-LA.

will enable Plaintiff to ascertain the class, the out-of-pocket damages and identities of class members (both of which are relevant not only to class certification, but which are required for the parties to discuss settlement of the case), and to provide class notice. Moreover, because there is about 50,000 class members, this information must be provided in its original form as *electronic data* as kept in OPG-LA's VIIC database. Lastly, because the requested identity data (names and addresses) may be restricted in disclosure per state and federal law, Plaintiff submits the production of the identity data be subject to a protective order.

Both in this case and other similar litigation, OPG-LA has made clear it will not produce any VIIC data short of a court order compelling production, even if pursuant to a stipulated protective order. Apparently, it is OPG-LA's position Plaintiff should rely instead on the City's handwritten and sometimes illegible CHP 180 forms (paper forms that document a vehicle seizure), even though VIIC data is (a) legible, (b) electronically created and stored as text data, (c) can be easily and quickly produced, (d) reflects, as of the date of vehicle seizure, accurate vehicle owner identity information, and (e) reflect the amounts paid by vehicle owners to retrieve their vehicles whereas CHP 180 forms do not. This motion thus follows.

## OPG-LA'S INTRODUCTORY STATEMENT

Plaintiff's counsel, Donald W. Cook, has repeatedly demanded disclosure of private, confidential and sensitive California Department of Motor Vehicle ["DMV"] information, including the names and addresses of vehicle owners and drivers, obtained from CHP 180 Forms filled out by officers of the Los Angeles Department of Transportation ["LADOT"] or the Los Angeles Police Department ["LAPD"] at the time of a tow and stored in non-party Official Police Garage Association of Los Angeles' ["OPG-LA"] VIIC database, pertaining to vehicles towed and impounded on behalf of the City of Los Angeles ["City"]. The instant Motion is yet another attempt to persuade

a court to order the disclosure of the VIIC data.

Even assuming that this information is somehow relevant[2] to the case, the requested discovery is not proportional and is oppressive to OPG-LA[1]. The Motion to Compel should be denied:

• As more fully discussed below (See Issue No. 1), Mr. Cook, for several years, has been improperly forum shopping in an attempt to obtain a favorable ruling approving his attempt to pilfer DMV information. At least five California state courts in three separate matters, and one Federal court, in a pending matter, has denied Mr. Cook's attempts to procure the DMV information contained in the VIIC database. OPG-LA has expended an enormous amount of time and has incurred extensive attorneys' fees opposing Mr. Cook, in compliance with its members' statutorily obligation to protect the private, confidential and sensitive information belonging to vehicle owners and drivers of the vehicles the members tow and impound on behalf of the City.

• Disclosure of the DMV information would impose a substantial burden on the members of OPG-LA.  This is not simply the "burden" of running a computer program; rather, the potential ramifications of violating Federal and State statutes, and DMV regulations are significant. That is the type of discovery burden that should never be imposed on a non-party (See Issue No. 3).  Providing Mr. Cook access to the VIIC database would require OPG-LA's members to violate Federal and State statutes prohibiting disclosure of vehicle owners' and drivers' information.

---

[2]As more discussed below (See Issue No. 1), DMV information, consisting of names and addresses, types of vehicles, seizure and release dates, and fees collected, as well as OPG log numbers, is not necessary or helpful for determining certification of the class. Such discovery is premature at this stage of the litigation. See, *Robinson v. Wal-Mart Stores, Inc.*, 253 F.R.D. 396, 400 (S.D.Miss. 2008).

00125051.WPD

• Violation of the *Driver Privacy Protection Act* ("DPPA"), 18 *U.S.C.* §§2721-2725, prohibiting the disclosure of motor vehicle records, exposes OPG-LA and its members to potential criminal prosecution and civil penalties (as well as attendant attorney's fees and costs), including fines of up to $2,500.00 per violation.

• *California Vehicle Code* §1808.21 prohibits the dissemination of personal information retrieved from DMV records. *County of Los Angeles v. Superior Court (Anderson-Barker)*, 242 Cal.App.4th 475, 478, 483 (2015).

• *California Penal Code* §13201 prohibits dissemination of individual criminal offender record information obtained from CHP 180 Forms.

• Ordering disclosure of the VIIC database would require OPG-LA's members to break DMV regulations prohibiting disclosure of vehicle owners' and drivers' personal information and would require the members to give prior notice to each owner and driver. The enormous burden, both in cost (stationary, postage, etc.) and in person-hours would be significant.

• Responding to the Subpoena would require OPG-LA to query the VIIC database using Mr. Cook's specific parameters and obligate OPG-LA to create a report that does not exist. *Federal Rule of Civil Procedure* Rule 34, does not generally require the responding party to create new documents (See Issue No. 4).

• Disclosure of the VIIC database is a prelude to a massive cross-check of DMV information pertaining to thousands of individuals (according to Mr. Cook, at least 50,000 individuals). Mr. Cook should not be permitted to use OPG-LA's proprietary database and employees to access DMV information to aid him in identifying new clients. Indeed, the DPPA prohibits such conduct. See, *Maracich v. Spears*, 133 S.Ct. 2191 (2013).

• Disclosure implicates substantial privacy concerns of non-parties, whose private information is protected from disclosure by the right of privacy under the *United*

*States Constitution* and the *California Constitution*.

• Disclosure infringes on OPG-LA's confidential and proprietary information.

• The requested information should be obtained, if at all, from some other source that is more convenient and less burdensome to the non-party.

• The Plaintiff has not demonstrated that the information sought by the Subpoena cannot be obtained from a party to the litigation. *Davis v. Ramen,* 2010 U.S. Dist. LEXIS 115432, at *3 (E.D. Cal. May 11, 2010) (denying a request for a subpoena duces tecum because the plaintiff had not demonstrated that the records were only obtainable through the non-party).

00125051.WPD

# DISCOVERY IN DISPUTE AND ISSUES TO BE DECIDED

## *1/8/18 SUBPOENA SERVED ON OPG-LA*

The subpoena requested:

VIIC data in the possession of the Official Police Garage Association of Los Angeles for any vehicle seized and stored by an Official Police Garage of the City of Los Angeles where the seizure and storage was made at the direction of an employee of the City of Los Angeles, for vehicles seized and impounded on any date from November 2, 2012, to the present, where the seizure authority included Cal. Veh. Code §14602.6.[2]

The VIIC data sought is the following:

(1) log number; (2) date the vehicle was seized; (3) date the vehicle was released; (4) whether the vehicle was sold at a lien sale; (5) if the vehicle was sold at lien sale, the amount recovered; (6) total fees collected for the vehicle seizure and subsequent impound; (7) year, make, model and license plate number of the seized vehicle (including the state); (8) name(s), address(es) and driver's license number(s) of the vehicle's registered owner(s), (9) name, address(es) and driver's license number of the person to whom the vehicle was released.

The data is sought in its original form as electronic data and should be produced in an ODBC compliant data file (such as Microsoft Access,

---

[2] The Vehicle Code section referenced in the subpoena incorrectly stated 1460**6.2** instead of 14602.6, i.e., the "2" and "6" were transposed. OPG-LA was not misled by this obvious typographical error.

00125051.WPD

Microsoft Excel, or similar file).

See **Exhibit A**, at page 72 hereto.

**ISSUE NO. 1: Is production of the VIIC data Plaintiff seek proportional to the needs of Plaintiff's claims?**

*Plaintiff's Position:* Yes.

### *Log Numbers*

A VIIC log number is a unique numerical identifier the VIIC system creates and which tracks all data (and paper records that have been scanned) which are associated with a particular vehicle seizure. (The scanned paper records are stored in a separate image database called "Laserfiche.") 2/10/14 Rose depo., 64:20-65:10, 65:20-23, 69:3-70:12 (**Exhibit D**). A log number is akin to a Central District case number such as 5:14-2257 (the *Brewster* case number) which, when used in PACER, accesses all items on the docket. Should there be any question about the accuracy of VIIC data for a particular vehicle seizure, using the log number the City of Los Angeles can access the original source documentation for that seizure as stored in Laserfiche. 2/10/14 Rose depo., 63:25-64:13 (**Exhibit D**) (City of Los Angeles has direct access to VIIC and Laserfiche records and by using VIIC log number, the City can retrieve Laserfiche records.) Consequently, should Plaintiff later require additional information about a particular incident, having the ability to identify records for that incident via log number greatly minimizes burden. Declaration of Dwight W. Cook ¶¶6-7. A log number is also the *only* means for accessing vehicle seizure records stored in Laserfiche. *Id.*; *see also* 2/10/14 Rose depo., 65:11-23, 67:2-5 (**Exhibit D**).

### *Vehicle Data*

"Vehicle data" refers to the following VIIC data elements:

- Date the vehicle was seized;

00125051.WPD

● Date the vehicle was released;

● Whether the vehicle was sold at a lien sale;

● If the vehicle was sold at lien sale, the amount recovered;

● Total fees collected for the vehicle seizure and subsequent impound; and

● Year, make, model and license plate number of the seized vehicle (including the state).

All the above data is collected in VIIC. Declaration of Donald W. Cook ¶5 and **Exhibit J** thereto. From these data elements, Plaintiff can calculate the out-of-pocket expense for each and every class member (date vehicle was seized; date vehicle was released; if vehicle sold at lien sale, the amount recovered; total fees collected for the seizure and impound).

The data elements of vehicle year, make, model and license number are needed to establish, for the impound period, the vehicle's reasonable rental value. *Ferrari v. Cnty. of Suffolk*, 2015 U.S. Dist. LEXIS 82920, *6-*10 (E.D.N.Y. Feb. 25, 2015) (Upholding right of class members to recover seized vehicle's reasonable rental value);  *Hoyte v. District of Columbia*, 1:13-cv-00569-CRC (U.S.D.C. District of Columbia) Order filed 7/27/17 (doc. 148) pp. 16-17 (same).

Finally, the *only* data source for the class members' out-of-pocket losses caused by a 30 day impound is VIIC data. Thus, the VIIC data is *essential* for determining class damages.

### *Vehicle Owners' Names & Addresses*

In relevant part F.R.Cv.P. 23(c)(2)(B) states:

For any class certified under Rule 23(b)(3), the court must direct to class members the *best* notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. (Emphasis added.)

-13-

Here, the "best notice" "practicable under the circumstances," is notice mailed to the individual vehicle owners at their last known addresses. This is *not* a case where the owners are unknown -- everyone concedes vehicle owners' identities are recorded in VIIC and can be easily retrieved from VIIC via the code section under which class members' vehicles were impounded (Cal. Veh. Code § 14602.6). Alternative methods of notice -- publications in newspapers, radio/television announcements -- are plainly inferior and many times less likely to inform the 50,000 class members of the proposed settlement, its terms, class member's right of objections, opt-out provisions, etc.

The vehicle owners' names and addresses as recorded in VIIC is highly accurate. The information comes either directly from CHP 180 forms or, if the forms are illegible (as they sometimes are), the information comes from the California Department of Motor Vehicles (sometimes via the LAPD; sometimes via the OPG directly contacting an DMV-connected data system). See **Exhibit H** at page 126 hereto (Rose decl. @ ¶13).

Nor is OPG-LA's "alternative" of getting vehicle owners' identities from CHP 180 forms reasonable. First, there is the extreme burden and delay that arises from having to read and input into a database about *50,000* CHP 180 forms, forms that are often illegible. Second, there are the inevitable data input errors that will occur when someone visually scans the form for inputting identity data into a database. And unlike both the LAPD and OPG-LA, Plaintiff does not have direct access to DMV records to insure accurate names and addresses. Finally, a vastly superior, accurate and far more easily produced and useable source of vehicle owner identity data already exists -- *in VIIC*. See Declaration of Donald W. Cook ¶¶12-14.

*OPG's Position*: No.

## I.   Mr. Cook is Improperly Forum Shopping to Acquire VIIC Data

For several years now, Mr. Cook has been unsuccessfully attempting, in both the Federal and California Judicial systems, to procure the private, confidential and sensitive

-14-

00125051.WPD

DMV information from the VIIC database.  The instant matter was filed, in part, as Mr. Cook's next attempt to obtain access to the VIIC database.  Specifically, Mr. Cook is attempting to obtain DMV information pertaining to vehicles seized under *California Vehicle Code* §14602.6, just as he unsuccessfully did in *Castillo v. City of Maywood, et al., L.A.S.C.,* Case No.: BC 469942.

(1) <u>*Flynn v. City of Los Angeles*, L.A.S.C., Case No. BS 147850.</u>

(a) Mr. Cook (on behalf of Ms. Flynn) filed a petition under California Public Records Act ("CPRA"), after the City denied his request for production of all data regarding all vehicle seizures recorded in the VIIC database, as well as all related documents scanned into OPG-LA's image database, called the Laserfiche System.  Mr. Cook attempted to obtain, among other items, the production of: "1. *All* data recorded in Vehicle Information Impound Center ('VIIC') database. 2. *All* documents as scanned into Laserfiche regarding vehicle seizures. This included, but was not limited to documents that are indexed in Laserfiche by log number." (Emphasis in original) (Motion for Disclosure of Public Records, dated March 27, 2014, p. 3, lines 4 - 6, Ex. "K").  The Honorable James C. Chalfant denied access to the VIIC database and Laserfiche System (Minute Order and Tentative Decision, dated October 14, 2014, Ex. "L").

(b) Mr. Cook then filed a petition for writ of mandate in the Court of Appeal (B260363), which was denied (Order, Second Appellate District, dated February 20, 2015, Ex. "M").

(c) Finally, Mr. Cook filed a petition for review in the California Supreme Court (S224784), which was also denied (Supreme Court Docket for Case No. S224784, Ex. "N").

(2) <u>*Anderson-Barker v. City of Los Angeles*, Case No. BS156058.</u> Mr. Cook (on behalf of Ms. Anderson-Barker) filed another Petition under CPRA again seeking data recorded in the VIIC database. This time, the request was concerning any vehicle seized

for which a CHP 180 form was prepared and requested: "*All* data recorded in Vehicle Information Impound Center ('VIIC') database, for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared; *All* CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared. This includes, but is not limited to, documents that are indexed in Laserfiche, included documents indexed by log number." (Emphasis in original) (Verified Petition for Writ of Mandate Compelling Disclosure of Public Records, Materials and Information, filed June 18, 2015, p. 2, lines 16 - 21, Ex. "O").  The proceeding was originally assigned to Judge Chalfant (the same Judge that presided over the *Flynn* matter), however, Mr. Cook filed a motion under *California Code of Civil Procedure* § 170.6 to have the case reassigned to a different judge (Declaration of Petitioner Pursuant *to Code of Civil Procedure* §170.6, dated June 22, 2015, Ex. "P"). Interestingly, Mr. Cook's clients, Ms. Flynn (*Flynn v. City of Los Angeles*) and Ms. Anderson-Barker[3] (*Anderson-Barker v. City of Los Angeles*), are both attorneys who share an office with Mr. Cook. (Order Denying Petition for Writ of Mandate, dated August 23, 2017, p. 10, lines 22 - 24, Ex. "Q").  Ultimately, the Honorable Amy D. Hogue denied disclosure of the VIIC database and Laserfiche System. (Order Denying Petition for Writ of Mandate, dated August 23, 2017, Ex. "Q").

(3) *Castillo v. City of Maywood, et al., L.A.S.C.,* Case No. BC 469942. As in the instant matter, Mr. Cook sought production from OPG-LA and its members all VIIC data for every *California Vehicle Code*  §14602.6 vehicle seizure beginning on January 1, 2008.  Mr. Cook served subpoenas on OPG-LA, its Executive Director, Eric Rose and 16 members of the OPG-LA.  Each subpoena requested: "Any and all computer data on

---

[3]Ms. Anderson-Barker is also listed as one of the attorneys of record representing Plaintiff Lamya Brewster in the instant matter. (Civil Docket for CASE #: 5:14-cv-02257-JGB-SP, dated April 4, 2018, Ex. "R").

00125051.WPD

any vehicle stored by any City or Los Angeles Official Police Garage at the direction of the Los Angeles Police Department where (a) the seizure of the vehicle occurred at any time from January 1, 2008 to the present.  This includes, but is not limited to, any and all seizures of vehicles under Cal. Veh. Code § 14602.6, or Cal. Veh. Code § 22651." (Deposition Subpoena for Personal Appearance and Production of Documents and Things, issued by Mr. Cook on September 10, 2013, on Eric Rose, Ex. "S").  A number of Informal Discovery Conferences were conducted by the Honorable Elihu M. Berle to resolve OPG-LA's and its members refusal to provide Mr. Cook with the DMV information.  Ultimately, Judge Berle completely refused to order disclosure of the DMV information contained in the VIIC database. (Dec., of SMG, para. 11).

(4)   *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex).  The Honorable Charles F. Eick denied Mr. Cook's Motion to Compel Compliance with a Subpoena Duces Tecum requesting the exact type of DMV information as sought in the instant matter except that it pertained to vehicles towed under *California Vehicle Code* §21100.4. (Court Minutes, dated February 8, 2018, Ex. "T" ). Mr. Cook has since filed a Motion For Review of the 2/8/18 Discovery Order which is under submission as of the date of this Joint Stipulation. (Dec., of SMG, para. 12).

(5) The Instant Matter.  Mr. Cook once again filed a suit (concerning a tow and impoundment by OPG-LA member, Hollywood Tow Service, Inc., at the direction of the Los Angeles Police Department occurring in the City of Los Angeles).  Mr. Cook is once again seeking all DMV information stored in the VIIC database pertaining to every *California Vehicle Code*  §14602.6 vehicle seizure.

The above procedural history makes clear that the present proceeding is nothing short of an egregious example at forum shopping and gamesmanship.  Mr. Cook should not be permitted to circumvent the multiple Court Orders that have ruled against

disclosure of the VIIC database on the same issues now before this Court: access to private, confidential and sensitive information obtained from the DMV and stored in the VIIC database and Laserfiche System.

Such judge-shopping is a practice that has been universally condemned. A court faced with such judge-shopping has the authority to act to preserve the integrity of the system from such abuse. See *Vaqueria Tres Monjitas, Inc. v. Rivera-Cubano*, 341 F. Supp. 2d 69, 71-73 (D.P.R. 2004). For this reason alone, it is respectfully requested that the Court deny this Motion to Compel and admonish Mr. Cook not to attempt this again. Bringing multiple suits at both the Federal and State level does nothing more than invite inconsistent rulings, is unethical and taints the entire judicial system.

## II.  **The Discovery Sought is Premature at the Pre-Certification Stage**

A court may, "for good cause," limit the scope of discovery or control its sequence to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Federal Rules of Civil Procedure* Rule 26(c)(1).  Because class action lawsuits present opportunities for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "[I]t bears repeating that '[c]lass action are unique creatures with enormous potential for good and evil.'" *Besinga v. United States*, 923 F.2d 133, 135 (9th Cir. 1991). The scope of pre-class certification discovery lies within the sound discretion of the trial court. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir.1975).  It is respectfully requested that the Court limit the scope of pre-certification discovery to class-certification issues.

The Plaintiff bears the burden of making a prima facie showing that discovery is necessary to aid the determination of whether a class action is maintainable under the requirements of *Federal Rules of Civil Procedure*, Rule 23. *Mantolete v. Bolger*, 767

F.2d 1416, 1424 (1985). Notwithstanding that Mr. Cook is not entitled to access to OPG-LA's VIIC database (as several courts have already determined), his attempt to obtain the DMV information in this action, including the names and addresses of vehicle owners and drivers pertaining to vehicles seized and impounded by OPG-LA's members on behalf of the City, is premature in the first instance.

The subject Subpoena seeks all DMV information pertaining to tows under *California Vehicle Code* §14602.6, including:

> "(1) log number; (2) date the vehicle was seized; (3) date the vehicle was released; (4) whether the vehicle was sold at a lien sale; (5) if the vehicle was sold at lien sale, the amount recovered; (6) total fees collected for the vehicle seizure and subsequent impound; (7) year, make, model and license plate number of the seized vehicle (including the state); (8) name(s), address(es) and driver's license number(s) of the vehicle's registered owner(s), (9) name, address(es) and driver's license number of the person to whom the vehicle was released."

This private and confidential information consisting of names, addresses, vehicle data and possible damages, as well as log numbers is not necessary or helpful for determining whether: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Federal Rules of Civil Procedure* Rule 23(a). Establishing the four requirements of Rule 23(a), and then demonstrating that the class falls within one of categories of Rule 23(b) are the only necessary issues to be addressed at this early stage of the litigation. *Mudd v. Busse*, 68 F.R.D. 522, 527 (N.D. Ind. 1975).

Since the instant matter is at the pre-class certification stage, the discovery sought

00125051.WPD

by Mr. Cook is premature.  See, *Wilson v. Conair Corp.*, 2015 U.S.Dist.LEXIS 163098, at *9-10 (E.D.Cal. Dec. 4, 2015, No. 1:14-cv-00894-WBS-SAB).  Prior to certification, the parties do not know if it would continue if not certified, discovery into aspects that are unrelated to certification will cause delay of the certification decision and can create extraordinary and unnecessary expense and burden on persons and entities from which discovery is sought. See e.g., *Harris v. comScore, Inc.*, 2012 U.S.Dist.LEXIS 27665, at *9 (N.D.Ill. Mar. 2, 2012, No. 11 CV 5807).

• "Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." (Citation omitted) *Gusman v. Comcast Corp.,* 298 F.R.D. 592, 595 (S.D.Cal. 2014).

• "Because a ruling on class certification will affect the appropriate scope of discovery, plaintiff's motion is premature as to matters other than the propriety of certification." *Pena v. Taylor Farms Pac., Inc*., 2013 U.S.Dist.LEXIS 162574, at *8-9 (E.D.Cal. Nov. 13, 2013, No. 2:13-CV-1282 KJM AC).

• The trial court denied plaintiff's motion to compel disclosure of information concerning putative class members, such as names, last known residential addresses and e-mail addresses of defendant's customers. *Douglas v. Talk Am., Inc.*, 266 F.R.D. 464, 467 (9th Cir. Cal., 2010).  The trial court ruled that it is inappropriate to use the discovery process to go "fishing" through defendant's list of customers to find additional class representatives. *Id.* Allowing such discovery "'would create the potential for discovery decisions or abuse prejudicial to the privacy interests of the class.'" (Citation omitted). *Id. Federal Rule of Civil Procedure* 26(b)(1) "'authorizes discovery only of matters that are 'relevant to any party's claim or defense.' Discovery sought solely for the purpose of inviting others to join this litigation would not achieve this purpose and

00125051.WPD

would not be not relevant to the particular claims and defenses currently asserted in this case.'" (Citation omitted). *Id.*

## III.    Discovery Restrictions Are Broader and the Protections Greater When Discovery Burdens a Non-Party

In determining whether a subpoena should be enforced, the trial court is guided by not only by *Federal Rules of Civil Procedure* 45(c)(3)(A)(iv) which protects subpoenaed parties from "undue burden," but also by *Rule* 26, which requires a court to limit discovery that it determines "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or when "the burden or expense of the proposed discovery outweighs its likely benefits." *Federal Rules of Civil Procedure* 26(b)(2)(C)(I), (iii).  These discovery restrictions are broader when discovery burdens a non-party. *Dart Indus. Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980). "While discovery is a valuable right and should not be unnecessarily restricted, (citation omitted) the 'necessary' restriction may be broader when a non-party is the target of discovery.   As one district court has noted, '(t)here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.' (citation omitted)." *Id.*

The necessity for production is reduced where an available alternative for obtaining the desired information has not been explored. *General Services Administration v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969).  Significantly, the courts will not permit a party to seek information from a non-party when the same information can be obtained from an opposing party. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *Instituform Technologies, Inc. v. Cat. Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996).

- *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 389

(N.D.Cal., 1976) (whether the deponent is a party and whether the information sought is available from other sources are two considerations that factor into a court's balance inquiry);

• *Soto v. Castlerock*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests");

• *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 412 (C.D. Cal. 2014) (quashing subpoena served on a non-party where the party already had the information and/or the opportunity to obtain it from another party);

The Plaintiff and Mr. Cook have a less intrusive way to obtain the DMV information sought. As more fully discussed below, the City is the best source of this information. City employees, having direct access to DMV databases, are the individuals who prepared the CHP 180 Forms.  There is simply no justification to burden a secondary source, in this case non-party OPG-LA, when the primary source, the City, is a party.

## IV.    Plaintiff must Avoid Imposing an Undue Burden on a Non–Party

"Rule 45 imposes a mandatory responsibility on this court to protect nonparties from unduly burdensome discovery." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 U.S. Dist. LEXIS 110824 at p. *11. (N.D. Cal. 2012).  A non-party subject to a subpoena duces tecum "deserve[s] extra protection from the courts." *High Tech Medical Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. Columbia Broadcasting System*, 666 F.2d 364, 371-72 (9th Cir. 1982).   The broad scope of relevant, discoverable information is limited by the responsibility of the parties to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" *Digital Reg of Tex., LLC v. Adobe Sys.*, 2013 US Dist LEXIS 142839, at *8 (N.D. Cal. 2013).  A court has "ample discretion"

to quash or modify a subpoena that causes an undue burden upon the non-party. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

Rule 26(b)(2)(iii) expressly limits discovery where the burden or expense of the proposed discovery outweighs its likely benefit. See, *Green v. Baca*, 219 F.R.D. 485 (C.D. Cal. 2003) ("courts must weigh the burden or expense of proposed discovery against its likely benefit"). A court must "ensure that the quest for discovery does not subsume other important interests." *Richards of Rockford, Inc., supra*, at p. 390. "In determining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery.... This balance requires a court to consider the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues." *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp.2d 1050, 1053-54 (S.D. Cal. 1999).

The only reason given by the Plaintiff for refusing to seek the DMV information directly from the City, is that this would be inconvenient to Mr. Cook's firm. Mr. Cook asserts, without citation to admissible evidence, and based on speculation and blatant misrepresentations about the VIIC database, that it would pose an "extreme burden and delay" in having to input the information into his own database and that his office is incompetent to input the information because there will be "inevitable data input errors." (Plaintiff's portion of the Joint Stipulation, Issue #1). However, Mr. Cook's inconvenience does not outweigh the burden that would be imposed on OPG-LA and its members if it is required to disseminate private, confidential and sensitive DMV information.

Forced disclosure would also require OPG-LA and its members to violate the several Federal and State laws and DMV regulations prohibiting such disclosure:

- DPPA prohibiting the dissemination of information obtained from DMV

00125051.WPD

records. Not only does this expose OPG-LA to possible criminal prosecution (and related attorneys' fees and criminal fines), it exposes OPG-LA members to civil fines of up to $2,500.00 per violation, with the potential of thousands of individual names at issue (according to Mr. Cook, there is potentially 50,000 possible violations).  There is no "litigation exception" to the DPPA as Mr. Cook argues.  In *Maracich v. Spears*, 133 S.Ct. 2191 (2013), the Supreme Court held that the phrase "in connection with litigation" did not include soliciting potential clients for future litigation. *Id.* at 2202. Although soliciting clients for potential future litigation does bear some connection with litigation, the Court looked to the statute's enumerated examples of serving process, investigating anticipated litigation, executing judgments, or carrying out court orders, to conclude that "in connection with litigation" meant only steps inherent to the litigation process. *Id.*

• *California Vehicle Code* §1808.21 prohibiting disclosure of a vehicle owner's or a driver's personal information retrieved from the DMV records.  *Anderson-Barker, supra*, at pp. 478, 483;

• *California Penal Code* §13201 prohibiting the OPG-LA from disseminating individual criminal offender record information (CHP 180 Forms are documents containing such criminal offender record information); and,

• Disclosure of the VIIC database would violate OPG-LA's oath (Explained below) to the DMV to not violate Federal and State laws prohibiting disclosure of drivers' information.

The real threat of serious financial penalty that breaching Federal and State laws imposes on non-party OPG-LA and its members, constitutes an annoyance, embarrassment, oppression, undue burden and undue expense. *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D DC 1999)  It is not proportional to require OPG-LA and its members to be exposed to the burden and costs of disclosure [(1) the threat of serious criminal and civil liability as well as financial penalty to its

members by requiring them to violate Federal and State statutes and DMV regulations prohibiting disclosure of vehicle owners' and drivers' information; (2) forces its members to disclose personal, financial, confidential, and privileged information with respect to third parties–vehicle owners and drivers–who are not named in this action; and (3) the expense – stationary, postage, person hours, etc. – in giving prior notice to each vehicle owner and driver as required by the DMV]. *Fed. R. Civ. P. 26(b)*.

## V.     Log Numbers

Mr. Cook's focus on "log numbers," is misleading.  First, the scope of his Subpoena is profoundly greater. His Motion seeks to compel compliance with the Subpoena that demands production of *all* DMV information recorded in OPG-LA's VIIC database "for any vehicle seized and stored by an Official Police Garage of the City of Los Angeles where the seizure and storage was made at the direction of an employee of the City of Los Angeles, for vehicles seized and impounded on any date from November 2, 2012, to the present, where the seizure authority included Cal. Veh. Code §14602.6 [sic]."

Access to log numbers will have no benefit unless Mr. Cook can also obtain access to the Laserfiche System. The log Numbers are internally created numbers that are only used by OPG-LA's members and only in relation to OPG-LA's Laserfiche System.  For example, the CHP 180 forms from which OPG-LA's members obtain DMV information do not contain log numbers.  The members of OPG-LA use the Laserfiche System to scan and store electronic records (such as the CHP 180 Forms, driver's licenses, vehicle registration, and credit cards ) pertaining to the tows that they perform for the City.  The log numbers are used to help facilitate the individual tow companies' ability to correspond their data contained in the VIIC database with the documents stored in the Laserfiche System.

Mr. Cook's purported purpose in obtaining log numbers as a cross-reference with

"later acquired information" simply will not work.  There is no way that anyone can use the log numbers to cross-reference any information that is not acquired from the Laserfiche System.  Mr. Cook may claim that he is not interested in nor is attempting to gain access to the private and confidential documents stored in the Laserfiche System. But there is no other possible use for the log numbers. Obtaining the log numbers will not lead to the discovery of admissible evidence in this matter.  Rather, it will permit Mr. Cook to put his foot in the door where he can serve future subpoenas using the log numbers to seek production of those documents. This is yet another unwarranted attempt by Mr. Cook to gain access to privileged and private information, with no legitimate reason to do so.

## VI.   Vehicle Data

All points and authorities asserted in Sections I - V above supporting non-disclosure apply equally to prohibit disclosure of Vehicle Data.

## VII.   Vehicle Owners' Names & Addresses

All points and authorities asserted in Sections I - V above supporting non-disclosure apply equally to prohibit disclosure of Vehicle Owners' Names & Addresses.

**ISSUE 2: Does state law and/or federal law bar production of the requested VIIC data as privileged?**

*Plaintiffs' Position:* No.

There is no privilege that covers log numbers or the aforementioned vehicle data (date in/date out; make, model, year; fees collected; license number). In *Gonzalez-Tzita et al. v. City of Los Angeles, et al.*, 2:16-cv-194 FMO (Ex), like this case a proposed damages class action involving LAPD's impounds of vehicles seized as "bandit taxis," regarding VIIC log numbers Magistrate Judge Eick found, and OPG-LA's attorney agreed, log numbers were *not* privileged:

THE COURT: Well, much of the motion argues that these log numbers that were generated by the association you represent are privileged. They're not privileged. They have nothing to do with the DMV. They have nothing to do the DPPA, which you argue. They have nothing to do with the DMV regulation, which you argue. So as far as this motion is concerned, much of what's in the papers is irrelevant.

MR. GARBER [counsel for OPG-LA]: I hear what you're saying, Your Honor, and I think that I agree with some of it, that DPPA would not be implicated with the exposure of log numbers, and that those log numbers do not come from the Department of Motor Vehicles. . . .

8/4/17 RT 24:14-24 (**Exhibit F** at page 120 hereto).

Nor is the vehicle data privileged. Indeed, in the aforementioned *Gonzalez-Tzita et al. v. City of Los Angeles, et al.*, OPG-LA *agreed* to provide (in response to the subpoena) the VIIC data showing dates of vehicle seizures and releases, fees collected, etc. See **Exhibit G** at page 122 hereto (6/8/17 letter from Steven M. Garber, counsel for OPG-LA). In response to a 9/10/13 state court subpoena Plaintiff's counsel issued on behalf of his clients in *Castillo et al v. City of Maywood et al.*, L.A.S.C. No. BC469942, OPG-LA produced a print-out of VIIC data showing, among other data elements, log number, vehicle's make, model, license number, and VIN. See **Exhibit C**. Significantly, OPG-LA did not claim that this information was privileged or otherwise immune from disclosure.

The only arguably privileged information Plaintiff seeks are vehicle owners' names and addresses. Assuming the information is considered privileged, Plaintiff is still entitled to the information (albeit subject to a protective order).

*First*: Insofar as OPG-LA relies on state law privileges to bar disclosure of vehicle owners' identity information (names, addresses, driver's license numbers), California

00125051.WPD

state law privileges (including Cal. Veh. Code § 1808.21 *et seq.*) may *not* be invoked to bar discovery of information otherwise relevant to a plaintiff's federal claim. U.S. Const., Supremacy Clause; *Kerr v. United States Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976); *Breed v. United States District Court*, 542 F.2d 1114, 1115 (9th Cir. 1976); *Miller v. Pancucci*, 141 F.R.D. 292, 297-98 (C.D. Cal. 1992) *cf. Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942) (Rejecting ability of states to restrict the application of federally-guaranteed rights).

*Second*: Apart from the supremacy of federal law over the state-created confidentiality provision of Cal. Veh. Code § 1808.21(a), subsection (d) of § 1808.22 permits the requested disclosure for this lawsuit.[4]

---

[4] Subdivision (d) of § 1808.22 states:

(d) Section 1808.21 does not apply to an attorney if the attorney states, under penalty of perjury, that the motor vehicle or vessel registered owner or driver residential address information is necessary in order to represent his or her client in a criminal or civil action that directly involves the use of the motor vehicle or vessel that is pending, is to be filed, or is being investigated. Information requested pursuant to this subdivision is subject to all of the following:

(1) The attorney shall state that the criminal or civil action that is pending, is to be filed, or is being investigated relates directly to the use of that motor vehicle or vessel.

(2) The case number, if any, or the names of expected parties to the extent they are known to the attorney requesting the information, shall be listed on the request.

(3) A residence address obtained from the department shall not be used for any purpose other than in furtherance of the case cited or action to be filed or that is being investigated.

(4) If an action is not filed within a reasonable time, the residence address information shall be destroyed.

00125051.WPD

*Third*: Production is not barred by the federal Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA"). While the vehicle owners' names and addresses may constitute DPPA-defined "personal information,"[5] DPPA does *not* preclude disclosure here since the data is necessary for the prosecution of this lawsuit. In relevant part § 2721 states:

> **(b) Permissible Uses.**-- Personal information referred to in subsection (a) [§ 2725(3) information] . . . may be disclosed as follows:
>
> > (1) For use by any government agency, including *any court* or law enforcement agency, in carrying out its functions . . .
>
> . . .
>
> > (4) For use in connection with any *civil*, criminal, administrative, or arbitral proceeding in any *Federal*, State, or local *court* or agency or before any self-regulatory body . . . and the execution or enforcement of judgments and *orders*, or *pursuant to an order of a Federal*, State, or local *court*.
>
> . . .
>
> > (5) An attorney shall not request residential address information pursuant to this subdivision in order to sell the information to a person.
>
> > (6) Within 10 days of receipt of a request, the department shall notify every individual whose residence address has been requested pursuant to this subdivision.

[5] Subparagraph (3) of 18 U.S.C. § 2725 defines "personal information" to mean information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information  but does not include information on vehicular accidents, driving violations, and driver's status." However, DPPA applies to information disseminated by a state's *department of motor vehicles*. Here, the VIIC data Plaintiff seeks is not being disseminated by the DMV but by OPG-LA. Hence, DPPA may not even apply. For purposes of this motion Plaintiff assumes DPPA does apply since even if it does Plaintiff is still entitled to receive the data.

00125051.WPD

(7) For use in providing notice to the owners of towed or impounded vehicles.

(Emphasis added).

Disclosure of the names and addresses recorded in VIIC data is expressly allowed under subparagraphs (1), (4) and (7) of § 2721(b). The information is needed to give notice to class members all of whom were owners of vehicles towed and impounded.

Though the VIIC identity data must be disclosed, Plaintiff recognizes that the disclosure should be subject to a protective order. The protective order's terms, Plaintiff assumes, would bar any public dissemination of the identity data (or "personal information" as defined by 18 U.S.C. § 2725(3)) including any public court filing, as well as barring disclosure to Plaintiff Ms. Brewster (who has no need for the information), the press or any person not involved in insuring that the information is used as directed by the Court. The protective order's terms can also include a provision for destruction of the "personal information" data once it is no longer needed.

*OPG-LA's Position*: Yes.

# I.   **Introduction**

The Plaintiff has not cited to any authority that a court order requiring OPG-LA to disclose the DMV information would somehow shield OPG-LA and its members from the burden of violating Federal and State law.  The statutes cited below do contain limited exceptions to the prohibition against disseminating vehicle owners' and drivers' personal information. **A court order is not one of those exceptions.**  Requiring OPG-LA and its members to violate these statutory prohibitions imposes a great burden on them, exposing them to the real threat of serious financial and criminal penalty.

The *Driver Privacy Protection Act* ("DPPA"), 18 *U.S.C.* §§2721- 2725, prohibits the disclosure of motor vehicle records which Mr. Cook now seeks from OPG-LA. While Mr. Cook does not take issue with, or disagree with the applicability of the DPPA,

00125051.WPD

Mr. Cook erroneously argues that since his request is being made in conjunction with pending litigation, the litigation exception to the DPPA allows for dissemination of motor vehicle records.  Such a conclusion is flat out wrong and was denounced by the U.S. Supreme Court in *Maracich v. Spears*, 133 S.Ct. 2191 (2013), where the Supreme Court held that the phrase "in connection with litigation" did not include soliciting potential clients for future litigation. *Id.* at 2202. Although soliciting clients for potential future litigation does bear some connection with litigation, the Court looked to the statute's enumerated examples of serving process, investigating anticipated litigation, executing judgments, or carrying out court orders, to conclude that "in connection with litigation" meant only steps inherent to the litigation process. *Id.*  Mining for potential clients or putative class members, or attempting to ascertain damages, is not an exception to the DPPA nor was such a request allowed in the *Maracich* case.     It should not be allowed in this case either.

## II.     Mr. Cook Makes Blatant Misrepresentations Concerning Events in a Separate Actions

Mr. Cook's assertion (Plaintiff's portion of the Joint Stipulation, Issue #2) that in *Gonzalez-Tzita v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex), that OPG-LA's attorney, Steven M. Garber, agreed that log numbers were not privileged, blatantly mischaracterizes Mr. Garber's testimony.  Mr. Cook conveniently omits to provide this Court with the entirety of Mr. Garber's testimony, before Magistrate Eick, explaining why the log numbers, since they have only one practical use, should be considered within the umbrella of privileged DMV information:

". . . by analogy, it's like asking for medical file numbers for information which you're not going to get, and so in that regard, how is it relevant? (Reporter's Transcript, dated August 4, 2017, p. 28, lines 17 - 19, Ex. "U").

"THE COURT: Why don't you move on from relevance then to privilege?

Do you have any argument that these numbers themselves are privileged?

MR. GARBER: The numbers themselves, just if you just took a particular

log number with nothing else associated with it, the answer would be no.

In totality, I think it is, because again, it's like seeking somebody's Social

Security number with some other relevant information without their name.

Would you be entitled to seek Social Security numbers with other, perhaps,

identifiable information in order to get the person's name down the road?

I think the answer would be no. So in totality, I think yes, it is privileged.

It's part of an identifier of individuals . . . ." (Reporter's Transcript, dated

August 4, 2017, p. 29, lines 2 - 14, Ex. "U").

"It's not what the log number does. It's a key to open the door for

information that is highly personal to the individual whose information is

contained therein . So that's, I think, the distinction there."  (Reporter's

Transcript, dated August 4, 2017, p. 34, lines 4 - 7, Ex. "U").

Furthermore, the very limited subset of VIIC data produced by OPG-LA in that

action does not undermine the arguments for non-disclosure asserted in this action:

• Unlike the instant matter, which is at the pre-certification stage, **there is a**

**tentative settlement** in *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No.

CV 16-194-FMO(Ex).  Accordingly, Magistrate Eick ordered a very limited subset of the

VIIC database to be produced.  Specifically, OPG-LA was ordered to "provide to

Plaintiffs the following information for each vehicle seized under California Vehicle

Code §21100.4 during the time period January 11, 2014, through May 31, 2017: (1) log

number; (2) date the vehicle was seized; (3) date the vehicle was released; and (4) total

fees collected for the vehicle seizure and subsequent impound." Magistrate Eick denied

production of all other categories of VIIC information (including names and addresses

of vehicle owners) sought by Mr. Cook. (Minute Order, dated August 4, 2017, Ex. "V").

• Subsequently, Mr. Cook filed a Motion to Compel Compliance with his Subpoena Duces Tecum requesting the other categories of DMV information (names and addresses) that he was denied access to by Magistrate Eick.  Mr. Cook's Motion was denied. (Court Minutes, dated February 8, 2018, Ex. "T").  Mr. Cook has since filed a Motion For Review of the 2/8/18 Discovery Order which is currently under submission. (Dec., of SMG, para. 12).

The same reasoning applies to the limited redacted spreadsheet generated in *Castillo v. City of Maywood, et al., L.A.S.C.,* Case No.: BC 469942. This redacted spreadsheet (Mr. Cook's Exhibit "C") was generated for the sole purpose of demonstrating some of the categories of information that is available in the VIIC database. (Dec., of SMG, para. 15). Ultimately, Judge Berle denied Mr. Cook's Motion for Production of the VIIC data. (Dec., of SMG, para. 11).

## III.   Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs)." *Reno v. Condon*, 528 U.S. 141, 143 (2000); *Maracich v. Spears*, 133 S.Ct. 2191, 2194-2196 (2013).  The DPPA prohibits a state department of motor vehicles and its employees, and **contractors,** from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity" either "personal information" or "highly restricted personal information" obtained by the department in connection with a motor-vehicle record. 18 *U.S.C.* §2721(a)[6].  Plaintiff's assertion that the DPPA does not apply to OPG-LA and its members is clearly incorrect. The OPG-LA

---

[6]"[P]ersonal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 *U.S.C.* §2725(3). "[H]ighly restricted personal information" is defined as "an individual's photograph or image, social security number, [and] medical or disability information . . . ." 18 *U.S.C.* §2725(4).

00125051.WPD

and its members fall within the category of "contractor" for purposes of the DPPA.

The DPPA provides for both civil and criminal enforcement. A person who knowingly violates the DPPA is subject to a criminal fine. 18 *U.S.C.* §2723(a). The Attorney General may impose civil penalties on a person or entity that has "a policy or practice of substantial noncompliance" with the DPPA. 18 *U.S.C.* §2723(b). Under 18 *U.S.C.* §2724(a), "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." Congress passed the DPPA to safeguard a driver's control over their own private information. *Reno, supra*, at p. 143.

The Plaintiff's assertion that "[d]isclosure of the names and addresses recorded in VIIC data is expressly allowed under subparagraphs (1), (4) and (7) of §2721(b)" does not apply to the circumstances of the instant matter. The courts have interpreted exceptions to DPPA prohibitions very narrowly. As specifically applicable to the instant matter, a lawyer who files an action may not thereafter use DPPA-protected personal information to solicit new clients on the grounds that such use is "inextricably intertwined" with a use "in connection with" litigation. The holding of *Maracich*, *supra*., is exactly on point. In that case, the Supreme Court held that lawyers who obtain, disclose, or use personal information solely to find clients to represent in a lawsuit may not seek solace under the litigation exception of the DPPA. *Id*., at pp. 2195-2196. Acquiring personal information from motor vehicle records for the purpose of finding clients for a lawsuit is not a 'permissible use' within the meaning of § 2721(b)(4). To do so, said the Supreme Court, would undermine the entire statutory design of the statute. *Id*. at p. 2205.

There are serious consequences attendant to the disclosure of the personal information which the Plaintiff seeks. Not only does this expose OPG-LA to possible

criminal prosecution (and related attorneys' fees and criminal fines), Violation of the DPPA may result in a civil fine of up to $2,500.00 per violation, with the potential of thousands of individual names at issue.  Granting the instant motion will expose OPG-LA to the real threat of serious financial penalty for breach of DPPA.   The OPG-LA must oppose any disclosure of DMV information so that it is not deemed complicit in disclosing DPPA-protected personal information.

**IV.**     **The Court Is Permitted to Consider State Laws in Determining    Whether to Order Disclosure**

A court has broad discretion in supervising discovery and in striking a balance between disclosure and non-disclosure. *Richards of Rockford, Inc, supra*, at p. 389. The courts do place "'ultimate and necessary boundaries,'" on discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The fact that Federal law governs "privilege issues", does not rule out the application of State law where State law is not inconsistent with Federal law and is persuasive in the context of the dispute. See, *Doubleday v. Ruh*, 149 F.R.D. 601, 610 (E.D. Cal. 1993).

In the instant matter, the Court is permitted to use its broad discretion to consider California State prohibitions on disclosing private and sensitive personal information in determining whether to order the disclosure of the DMV information sought in this case. See, *Tech v. United States*, 284 F.R.D. 192, 202 (M.D.Pa. 2012).  California statutes intended to guard against the unauthorized disclosure of its citizens' private identifying information should be considered in evaluating whether to allow the requested discovery under the *Federal Rules of Civil Procedure*.  Legitimate interests in privacy are among the proper issues to be considered. *Tech, supra.*  Significantly, OPG-LA's concern that being compelled to produce such information could cause the OPG-LA and its members to be in violation of state law prohibiting disclosure is also relevant to the determination

of whether to compel disclosure. *Id.*

**A.    Disclosure of the VIIC Database Violates California Vehicle Code §1808.21**

*California Vehicle Code* §1808.21 prohibits disclosure of a vehicle owners' and drivers' personal information retrieved from DMV records. *County of Los Angeles v. Superior Court (Anderson-Barker)*, 242 Cal.App.4th 475, 478, 483 (2015).  The VIIC data sought by the Plaintiff consists of vehicle owners' and driver's personal information which was retrieved directly from DMV records by a statutorily authorized agency (the OPG-LA members from LAPD or LADOT).  ***California Vehicle Code* §1808.22(d) is inapplicable in that OPG-LA and its members are not attorneys.**  Section 1808.22(d) will not shield OPG-LA or its members. Requiring OPG-LA to disseminate the DMV information will expose OPG-LA and its members to liability for violating *California Vehicle Code* §1808.21.

**B.    California Penal Code §13201 prohibits OPG-LA from disclosing the information acquired from CHP 180 Forms**

*California Penal Code* §13201 states "Nothing in this chapter shall be construed to authorize access of any person or public agency to individual criminal offender record information unless such access is otherwise authorized by law." CHP 180 Forms constitute such criminal offender record information. Vehicles would not be impounded unless the LAPD suspected that a crime had been committed.  Additionally, *California Penal Code* §§11142 and 11143 provides that it is a misdemeanor to furnish to or receive a criminal record by a person not authorized to receive such a record.  Requiring OPG-LA to disclose the DMV information will expose OPG-LA and its members to criminal liability for violating *California Penal Code* §13201.

**C.    Disclosure of the VIIC Database Violates DMV Regulations**

The DMV requires every OPG-LA member to execute, under penalty of perjury,

00125051.WPD

an Information Security Statement (Declaration of Eric Rose, para. 16, Plaintiff's Exhibit "H") setting forth the obligations of each member in exchange for access to DMV's database:

- "CA DMV is committed to protect this information from unauthorized access, use, or disclosure."

- "In the case of confidential or personal information, a proper accounting of all disclosures must be made and the subject must be notified in accordance with statute and CA DMV directives."

- "Any person who knowingly obtains, discloses, or uses personal information from a motor vehicle record for a purpose not permitted under the Driver's Privacy Protection Act (Title 18 of the United States Code, Section 2721 - 2725), shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."

- DMV requires that each OPG-LA member to swear the following oath:  "I understand that failure to comply with these policies and regulations may result in disciplinary action in accordance with state and federal laws and regulations, and/or civil or criminal prosecution in accordance with applicable statutes." Requiring OPG-LA to disclose the DMV information will expose OPG-LA and its members to liability for violating their obligations to the DMV.

- In addition, DMV regulations require OPG-LA to give prior notice to each vehicle owner and driver whose information will be disclosed.  This places an enormous burden, both in cost (stationary, postage, etc.) and in person hours, on OPG-LA. OPG-LA does not have the resources nor the staff to handle such an endeavor.

## V.   The Constitutional Right to Privacy Prohibits Access to the VIIC Database

Federal courts recognize a constitutional right to privacy. *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) (citing *Whalen v. Roe*, 429 U.S. 589, 599

(1977)). The right of privacy includes protection against disclosure of private information. *Whalen*, *supra.*, at pp. 598–600 (1977) Federal courts also consider privacy rights protected by state constitutions or statutes. *Soto, supra,* at p. 616. To evaluate privacy objections under both federal or state law, the Court must balance a party's need for the information against the privacy rights implicated by disclosure. *Tierno v. Rite Aid Corp.*, 2008 U.S.Dist.LEXIS 58748, at *7-8. (N.D.Cal. July 31, 2008).

The subject Subpoena demanding access to OPG-LA's VIIC database calls for personal, financial, confidential, and privileged information with respect to third parties–vehicle owners and drivers–who are not named in this action, and who have a right to privacy. *United States Constitution*; *California Constitution Art I, § 1*. The disclosure of the VIIC database would trample on the privacy rights of these innocent non-parties. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992). Mr. Cook is seeking this information, in part, for the improper purpose of identifying and locating additional clients.  Any benefit that the Plaintiff may gain by obtaining this private, highly sensitive, personal, and confidential DMV information for use in the instant litigation is clearly outweighed by the breach of non-parties' privacy rights that will occur if disclosure is ordered.

**ISSUE NO. 3: Is production of VIIC data unduly burdensome?**

*Plaintiff's Position*:   No.

There is no burden. It will take OPG-LA but minutes to provide the VIIC data by exporting the electronically created and stored data as a text data file (such Microsoft Excel, ASCII delimited file, etc.). Declaration of Dwight W. Cook, ¶8. For instance, within three hours of the Magistrate Judge's 9/7/17 Order in *Gonzalez-Tzita et al. v. City of Los Angeles et al.* (case no. 2:16-cv-194 FMO (Ex)) directing OPG-LA to produce a subset of VIIC data in its original electronic form as text data, OPG-LA's counsel forwarded to Plaintiff's counsel an Excel spreadsheet of the data. Declaration of Donald

W. Cook ¶9. See also 2/10/14 Rose depo., 26:24-27:5 (**Exhibit D** at pp. 88-89 hereto) (When the City requests it, OPG-LA provides VIIC data to the City as a Microsoft Excel spreadsheet file).

Should OPG-LA argue (as it did in the *Gonzalez-Tzita* litigation) that it is too burdensome to produce the VIIC data because it is a criminal offense to disseminate confidential Department of Motor Vehicle information in violation of law,[7] the argument is frivolous, procedurally and substantively. Procedurally the argument is frivolous because its not a question of burden but privilege; if the information is not privileged then there can be no violation of federal and state law because the law criminalizes the wrongful dissemination of *privileged* DMV information. And since the question of whether the VIIC data is privileged or not will be resolved by Issue No. 2 *supra*, the OPG-LA's "burdensome" argument says nothing not already addressed.

Substantively, OPG-LA's argument it faces criminal prosecution is frivolous because both federal and state law provides that privileged DMV information can be disseminated ***pursuant to a court's order***. Because in this case any dissemination of VIIC data will be pursuant to this Court's order, by definition that court-ordered dissemination cannot and will not constitute a criminal violation. To argue otherwise is to ignore the obvious and plain meaning of the statutory provisions.

*OPG's Position*: Yes.

## I.   Mr. Cook's Assertions Concerning the VIIC Database Are Based on Speculation, Misrepresentations, and Hearsay

Mr. Cook has deliberately failed to inform the Court about the numerous cases that he has filed against the City and in which he has served similar discovery requests seeking access to the VIIC database from OPG-LA. Several state and federal judges have

---

[7]   E.g., *Gonzalez-Tzita et al. v. City of Los Angeles, et al.*, doc 82 filed 3/8/18 @ 9:12-10:10 (OPG-LA's opposition to motion for review).

00125051.WPD

now discussed his access to the VIIC database in extreme detail, and, with the exception of truly non-privileged information (disclosed relative to assisting settlement), all have ruled against disclosure.

Mr. Cook's, and his brother, Dwight W. Cook's factual arguments concerning the VIIC database asserted in support of this Motion are not evidence, but rather consists of pure speculation, unethical misrepresentations and/or are based on hearsay.   For example:

• "Plaintiff adds she has served a production request on defendant City to produce the VIIC data. (Though VIIC data is stored on an OPG-LA owned database, the City has unlimited access to VIIC data. E.g., 2/10/14 Rose depo., 59:1-60:6). There are several reasons why Plaintiff proceeds with enforcement of the subpoena in lieu of seeking the VIIC data pursuant to a F.R.Cv.P. 34 request." (Plaintiff's portion of the Joint Stipulation, Introductory Statement, fn 1).

• Mr. Cook's claim that the City has unlimited access to the VIIC data is incorrect and is a mischaracterization of the testimony of Eric Rose, Executive Director of the OPG-LA.

• The City has limited access to the VIIC database for the sole purpose of auditing financial reports to ensure contractual compliance by OPG-LA members with their obligations concerning fees paid to the City, such as Gross Receipts Fees, Vehicle Release Fees, City Parking Occupancy Taxes, Forfeiture Fees and proceeds from Outstanding Parking Citations collected by an OPG-LA. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W") (Current OPG Agreement, Article 9, Exhibit "X").

• The City cannot, and has not accessed VIIC data for any other purpose. In fact, OPG-LA has a record of refusing the City's request for VIIC data for any other purpose. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W") (Current OPG

00125051.WPD

Agreement, Article 9, Ex. "X").

• "A log number is akin to a Central District case number such as 5:14-2257 (the Brewster case number) which, when used in PACER, accesses all items on the docket. Should there be any question about the accuracy of VIIC data for a particular vehicle seizure, using the log number the City of Los Angeles can access the original source documentation for that seizure as stored in Laserfiche. 2/10/14 Rose depo., 63:25-64:13 (Exhibit D) (City of Los Angeles has direct access to VIIC and Laserfiche records and by using VIIC log number, the City can retrieve Laserfiche records.)" (Plaintiff's portion of the Joint Stipulation, Issue # 1).

• The only time that the City can access the source documentation contained in the Laserfiche System is as an auditing tool for the sole purpose of ensuring accuracy of the OPG-LA's members' financial obligation to the City. The City has its own direct access to DMV records via the LAPD Auto Records Clerk. The City has no reason or need to access the VIIC or Laserfiche databases for any reason other than for conducting a financial audit. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W").

• "The vehicle owners' names and addresses as recorded in VIIC is highly accurate. The information comes either directly from CHP 180 forms or, if the forms are illegible (as they sometimes are), the information comes from the California Department of Motor Vehicles (sometimes via the LAPD; sometimes via the OPG directly contacting an DMV-connected data system). See **Exhibit H** (Eric Rose decl. @ ¶13)." (Plaintiff's portion of the Joint Stipulation, Issue # 1).

• Other than acknowledging that all DMV information in the VIIC database comes from the DMV, Mr. Cook's assertion is another misrepresentation of the testimony of witnesses in other cases filed against the City that Mr. Cook has prosecuted in an effort to improperly obtain access to the VIIC database. No

00125051.WPD

witness, with actual personal knowledge of how the VIIC database works, has ever made the claim that the "vehicle owners' names and addresses as recorded in VIIC is highly accurate."

• The DMV requires that each OPG-LA member maintain the privacy and confidentiality of the personal information obtained from the DMV that has been inputted into the VIIC database. As discussed above, forced disclosure of the DMV information will place an enormous burden on the OPG-LA members.

• There is no process established that would ensure the accuracy of the information inputted into the VIIC information or prevent human error. Accordingly, the best and most accurate source of the information sought by the Plaintiff is the original CHP 180 Form (top sheet) created and maintained by the City.

• "See also 2/10/14 Rose depo., 26:24-27:5 (Exhibit D) (When the City requests it, OPG-LA provides VIIC data to the City as a Microsoft Excel spreadsheet file)." (Plaintiff's portion of the Joint Stipulation, Issue # 3).

• This assertion is deliberately deceptive.

• OPG-LA provides information in the VIIC database to the City for only one purpose: To permit the City to conduct audits of financial reports to ensure contractual compliance by OPG-LA members with their obligations concerning fees paid to the City, such as Gross Receipts Fees, Vehicle Release Fees, City Parking Occupancy Taxes, Forfeiture Fees and proceeds from Outstanding Parking Citations collected by an OPG-LA. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W") (Current OPG Agreement, Article 9, Ex. "X").

• OPG-LA has a record of refusing the City's request for VIIC data for any other purpose.

• "**Exhibit E**, which the City provided to my office in discovery in *Castillo v. City*

00125051.WPD

*of Maywood*, L.A.S.C. No. BC469942, is a representative contract between the City and an OPG." (Mr. Cook's Declaration, para. 4). "The City has unlimited access to all VIIC data. Part 14.3(c) (Exhibit E @ page *; see also 2/10/14 Rose depo., 61:17-23 (Exhibit D)." (Mr. Cook's Declaration, para. 4).

• **Mr. Cook is deliberately committing fraud on the court.** Mr. Cook knows very well that this version of the OPG agreement with the City was amended prior to any of the purported events set forth in Plaintiff's complaint in this matter.

• Mr. Cook has deliberately failed to present this Court with a copy of the current OPG Agreement (Ex. "X") (of which he was provided a copy in *Gonzalez-Tzita v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex), filed as Exhibit "6" to the City's Opposition to Mr. Cook's Motion To Compel Production, dated July 11, 2017), which specifically provides "Notwithstanding the Standard Provisions for City Contracts (Rev. 3/09), the OPGA VIIC and the data contained therein is *owned by the OPGA of Los Angeles*."Article 9.3 (emphasis added). (Current OPG Agreement (Ex. "X")

• Similarly, the current OPG Agreement provides that: "Notwithstanding the Standard Provisions for City Contracts (Rev. 3/09), the OPGA Document Control System and the data contained therein *are owned by the OPGA of Los Angeles*." Article 9.4 (emphasis added). (Current OPG Agreement (Ex. "X").

• Mr. Cook's claim that the City has unlimited access to the VIIC data is incorrect and is a misstatement of the testimony of Eric Rose, Executive Director of the OPG-LA. The City has limited access to the VIIC database and Laserfiche System for the purpose of auditing financial reports to ensure contractual compliance by OPG-LA members with their obligations concerning fees paid to the City, such as Gross Receipts Fees, Vehicle Release Fees, City Parking

00125051.WPD

Occupancy Taxes, Forfeiture Fees and proceeds from Outstanding Parking Citations collected by an OPG-LA.  The City cannot, and has not accessed VIIC data for any other purpose.  In fact, OPG-LA has a record of refusing the City's request for VIIC data for any other purpose. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W") (Current OPG Agreement, Article 9, Ex. "X").

• "The information recorded in VIIC is highly accurate. I know that to be true because the individual OPGs rely on VIIC data to generate their remittance reports they are contractually obligated to provide to the City. 2/10/14 Rose depo., 59:14-23, 60:3-6, 60:18-61:2 (Exhibit D)."(Mr. Cook's Declaration, para. 8).

• Mr. Cook falsely inflates the "accuracy" of the VIIC data based on his speculation that members of OPG-LA rely on the VIIC database to generate remittance reports to the City.  This is not true. The members of OPG-LA **do not** necessarily rely on the VIIC to generate their remittance reports. It is up to each garage to determine how it complies with the obligation to submit remittance reports to the City.

**Moreover, the OPGs have been submitting remittance reports to the City long before VIIC was ever created**.

• No witness, with actual personal knowledge of how the VIIC database works, has ever made the claim that the "vehicle owners' names and addresses as recorded in VIIC is highly accurate."

• There is no process established that would ensure the accuracy of the VIIC information or prevent human error. The best and most accurate source of the information sought by the Plaintiff is therefore the original CHP 180 Form (top sheet) maintained by the City.

• "Generating a copy of VIIC data is easy. Essentially, one who has the requisite privileges can export the VIIC data into a Microsoft Excel data file or, for that matter,

00125051.WPD

a generic data file (e.g.,ASCII delimited file). That is what OPG-LA's executive director Eric Rose did when he generated a subset of VIIC data I received from OPG-LA's counsel in 2014. 2/10/14 Rose depo. 49:9-50:19 (**Exhibit D**)*.*" (Mr. Cook's Declaration, para. 9).

• This redacted spreadsheet (Mr. Cook's Exhibit "C") was generated for the sole purpose of demonstrating some of the categories of information that are available in the VIIC database. (Dec., of SMG, para. 15).

• "There essentially is no burden for OPG-LA to produce the requested VIIC data in its original form as electronic data. Indeed, within about three hours of Magistrate Judge Eick issuing the 9/7/17 Order directing OPG-LA to produce VIIC data as electronic data in *Gonzalez-Tzita, supra* (doc 66 in that case), via email I received from counsel for OPG-LA the data Judge Eick ordered produced per his 8/4/17 Order (doc 58)." (Mr. Cook's Declaration, para. 9).

• Unlike the instant matter, which is at the pre-certification stage, **there is a tentative settlement** in the *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex) matter. Accordingly, Magistrate Eick ordered a very limited subset of the VIIC database to be produced (none of which contained any personal information for even one person). Specifically, OPG-LA was ordered to "provide to Plaintiffs the following information for each vehicle seized under California Vehicle Code §21100.4 during the time period January 11, 2014, through May 31, 2017: (1) log number; (2) date the vehicle was seized; (3) date the vehicle was released; and (4) total fees collected for the vehicle seizure and subsequent impound." Magistrate Eick denied production of all other categories of VIIC information (including names and addresses of vehicle owners) sought by Mr. Cook. (Minute Order, dated August 4, 2017, Ex. "V").

• Subsequently, Mr. Cook filed a Motion to Compel Compliance with

00125051.WPD

Subpoena Duces Tecum requesting the other categories of DMV information that he was denied access to by Magistrate Eick.  Mr. Cook's Motion was denied. (Court Minutes, dated February 8, 2018, Ex. "T").  Mr. Cook has since filed a Motion For Review of the 2/8/18 Discovery Order which is currently under submission as of the date of this Joint Stipulation. (Dec., of SMG, para. 12).

• "Besides being refuted by the plain terms of the contracts between the City and the OPGs, the City's claim is also refuted by the testimony of OPG-LA's executive director. 2/10/14 Rose depo., 26:24-27:5, 57:20-58:1, 59:1-60:6, 61:17-63:2 (acknowledging the City's unrestricted and unfettered right to obtain any VIIC data or Laserfiche record)." (Mr. Cook's declaration, para. 10, fn 6).

**• Once again, Mr. Cook is deliberately committing fraud on the court.** Mr. Cook knows very well that this version of the OPG agreement with the City was amended before any of the purported events set forth in Plaintiff's complaint took place.

• Mr. Cook has deliberately failed to present this Court with a copy of the current OPG Agreement (Current OPG Agreement, Article 9, Exhibit "X") (of which he was provided a copy in *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex), Filed as Exhibit "6" to the City's Opposition to Mr. Cook's Motion To Compel Production, dated July 11, 2017), which specifically provides "Notwithstanding the Standard Provisions for City Contracts (Rev. 3/09), the OPGA VIIC and the data contained therein is *owned by the OPGA of Los Angeles.*" Article 9.3 (emphasis added). (Current OPG Agreement, Article 9, Ex. "X").

• Similarly, the current OPG Agreement provides that: "Notwithstanding the Standard Provisions for City Contracts (Rev. 3/09), the OPGA Document Control System and the data contained therein *are owned by the OPGA of Los*

00125051.WPD

*Angeles.*" Article 9.4 (emphasis added). (Current OPG Agreement, Article 9, Ex. "X").

> • Mr. Cook's claim that the City has unlimited access to the VIIC database is incorrect and is a misstatement of the testimony of Eric Rose, Executive Director of the OPG-LA.

> • The City has limited access to the VIIC database and Laserfiche System for the purpose of auditing financial reports to ensure contractual compliance by OPG-LA members with their obligations concerning fees paid to the City, such as Gross Receipts Fees, Vehicle Release Fees, City Parking Occupancy Taxes, Forfeiture Fees and proceeds from Outstanding Parking Citations collected by an OPG-LA. (Dec., of Benjamin Jones, paras. 10 - 11, Ex. "W") (Current OPG Agreement, Article 9, Ex. "X").

• "[N]o other database, including the DMV's, has the information Plaintiff needs for class certification (because the DMV, unlike VIIC, cannot identify vehicle owners whose vehicles were seized by the LAPD under §14602.6, and does not record charges associated with those impounds)." (Mr. Cook's declaration, para. 14). Mr. Cook has not submitted any evidence demonstrating that his assertions regarding the VIIC database are based on "personal knowledge" rather than solely on pure speculation, unsupported conjecture and/or is based on hearsay.

• "I am familiar with the data systems (VIIC and Laserfiche) used by Official Police Garage of Los Angeles (OPG-LA) to track and identify vehicles seized at the direction of personnel employed by the City of Los Angeles. I am familiar with those systems based on (a) the January 3, 2014 declarations of David Ospina and Eric Rose (submitted, I am informed, in a case called *Castillo v. City of Maywood*, LA.S.C. No. BC 469942); (b) February 10, 2014 deposition testimony by Mr. Rose in the same case; (c) the public search function of vehicle seizures accessible at the OPG-LA website

(opgla.com); and (d) my April 15, 2014 telephone conversation with Mr. Ospina regarding the data systems. Mr. Ospina is a programmer and developer of information systems used by OPG-LA and the individual Official Police Garages, or OPGs. Per Mr. Rose's testimony, OPG-LA employs Mr. Ospina as an independent contractor to manage OPG-LA's information systems." (Dwight W. Cook's Declaration, para. 4).

   • Dwight W. Cook, brother of Mr. Donald Cook, grounds his purported "personal knowledge" of the VIIC database and Laserfiche System upon the hearsay statements of other individuals.  He has not had access to the VIIC database or Laserfiche System, has not inputted any information into the VIIC database or Laserfiche System, has not run any reports using the VIIC database or searched for documents using the Laserfiche System, or in any other way interacted with the VIIC database and/or the Laserfiche System.  Dwight W. Cook's entire testimony concerning the VIIC database and Laserfiche System is based solely on reading a transcript and/or on what Dwight W. Cook heard from another person.  His assertions are not based on personal knowledge of, or personal experience with, the VIIC database and Laserfiche System.  Dwight W. Cook's statements, based on hearsay, and not based on his personal knowledge, are inadmissible.  *Federal Rules of Evidence*, Rule 602.

## II.   The Discovery Sought Places a Great Burden on a Non-Party, OPG-LA

   Nothing asserted by the Plaintiff in her Motion overcomes the extreme burden and costs that will be placed on the members of OPG-LA [(1) the threat of serious criminal and civil liability as well as financial penalty to its members by requiring them to violate Federal and State statutes and DMV regulations prohibiting disclosure of vehicle owners' and drivers' information; (2) forces its members to disclose personal, financial, confidential, and privileged information with respect to third parties–vehicle owners and drivers–who are not named in this action; and (3) the expense – stationary, postage,

person hours, etc. – in giving prior notice to each vehicle owner and driver as required by the DMV], when Plaintiff can acquire the same information from a source more accurate, direct, convenient, and less burdensome to OPG LA or its members -- namely, a party, the City. *Fed. R. Civ. P. 26(b)*.

A Court Order requiring the members of Non-Party Witness OPG-LA to provide Plaintiffs with access to the VIIC system would require those members to violate the following laws and regulations:

• The *Driver Privacy Protection Act* ("*DPPA*"), 18 *U.S.C.* §§ 2721-2725, prohibiting the dissemination of information obtained from DMV records. Not only does this expose Non-Party Witness OPG-LA's members  to possible criminal prosecution (and related attorneys' fees and criminal fines), it exposes the members to civil fines of up to $2,500.00 per violation, with the potential of thousands of individual names at issue (with a potential of 50,000 violations according to Mr. Cook);

• *California Vehicle Code* § 1808.21 prohibiting disclosure of a vehicle owner's or a driver's personal information retrieved from the DMV records. *Anderson-Barker*, *supra*, at pp. 478, 483;

• *California Penal Code* § 13201 prohibiting the dissemination of individual criminal offender record information (CHP 180 Forms are documents containing such criminal offender record information); and,

• Disclosure of the VIIC database would violate each OPG-LA's members's oath to the DMV to not violate Federal and State laws prohibiting disclosure of drivers' information.

The real threat of serious criminal and civil liability as well as the financial penalties (and related attorneys' fees) for breaching Federal and State laws imposes on the members of Non-Party Witness OPG-LA, an annoyance, embarrassment, oppression, undue burden and undue expense. *McKesson Corp. v. Islamic Republic of*

00125051.WPD

*Iran*, *supra*, at p. 76.

The Plaintiff has not cited to any authority that a court order requiring OPG-LA and its members to disclose the DMV information would somehow shield them from the burden of violating Federal and State law. The statutes cited below do contain limited exceptions to the prohibition against disseminating vehicle owners' and drivers' personal information. A court order is not one of those exceptions.

## III.   Disclosure Implicates Substantial Privacy Concerns of Non-Parties Who Have Not Had an Opportunity to Oppose Disclosure

The Plaintiffs are seeking personal, financial, confidential, and privileged information with respect to third parties–vehicle owners and drivers–who are not named in this action, and who have a right to privacy. *United States Constitution; California Constitution* Art I, § 1. The disclosure of the VIIC database would trample on the privacy rights of these innocent non-parties. *Johnson by Johnson, supra,* at p. 1497. The right of privacy includes protection against disclosure of private information. *Whalen, supra*, at pp. 598–600.

## IV.   The Expense in Giving Prior Notice to Each Vehicle Owner and Driver as Required by the DMV Imposes a Great Financial Burden on Non-Party Witness OPG-LA's Members

Notice requirements arising from DMV regulations require OPG-LA's members to give prior notice to each vehicle owner and driver whose information will be disclosed. This places an enormous burden, both in cost (stationary, postage, etc.) and in person-hours, on the members.  Those members do not have the resources nor the staff to handle such an endeavor.

00125051.WPD

**ISSUE NO. 4: Assuming the Court orders production, must the VIIC data be produced in its original electronic format as computer text data?**

*Plaintiffs' Position:* Yes.

Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, states:

*Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

> (I) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms;

Committee Notes on the 2006 amendment explain:

> The amendment to Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced. The form of production is more important to the exchange of electronically stored information than of hard-copy materials, although a party might specify hard copy as the requested form. *Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.*
>
> .  .  .
>
> If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or

-51-

*forms that are reasonably usable. . . . But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.*

(Emphasis added.)

VIIC data is created and stored as electronic text data. It takes but a few *minutes* to produce the data Plaintiffs seek. It serves no legitimate purpose to allow OPG-LA to produce the VIIC data in any form other than its originally recorded form as electronic text data. Declaration of Donald W. Cook ¶9; Declaration of Dwight W. Cook ¶¶8-10.

*OPG-LA's Position*: No.

## I. OPG-LA does not maintain the DMV Information sought in the parameters demanded by Mr. Cook

OPG-LA does not maintain reports of the requested data in its ordinary course of business.  The VIIC data is not ordinarily stored in the manner sought by Mr. Cook. *Federal Rules of Civil Procedure* 34(b)(2)(E)(ii).  For example, OPG-LA does not store data according to the *California Vehicle Code* that was violated. Instead of asking OPG-LA to produce existing e-mails or existing reports, OPG-LA is being asked to query its database within the very specific parameters that Mr. Cook wants and then create a new document.  Mr. Cook is asking for electronically stored information that is not kept in the usual course of OPG-LA's business.

Complying with the Subpoena would require OPG-LA's employees, at OPG-LA's

member's expense (both in costs and in person-hours), to do Mr. Cook's work for him. *Federal Rule of Civil Procedure* Rule 34, does not generally require the responding party to create new documents in responding to a document production request, only to produce documents already in existence. Furthermore, production in the format requested, invites significant control risks in that such information can be altered after production (unlike static image PDF or TIFF files) and cannot be Bates numbered.

## II.  The Best Source of the Information Sought are the CHP 180 Forms

The original CHP 180 Forms are the most accurate source for the information sought by the Plaintiff.  Once a City employee has decided to

initiate a tow, that employee completes the CHP 180 Form. (Dec. of Eric Rose, para. 7; Plaintiff's Exhibit "H").  The CHP 180 Form is a carbonless packet consisting of seven sheets, designed to transfer information handwritten on the top sheet onto the underlying sheets (Dec. of Eric Rose, para. 8; Exhibit "H").  Upon completion of the appropriate sections, the law enforcement officer delivers the third and fourth sheets, entitled "Notice of Stored Vehicle," to the driver of the vehicle pursuant to *California Vehicle Code* § 22852. The bottom sheet (seventh sheet) of the CHP 180 Form is handed to the tow truck driver (Dec. of Eric Rose, para. 9; Plaintiff's Exhibit "H").  This bottom sheet is sometimes illegible or is missing some of the information that is written on the top sheet (Dec. of Eric Rose, para. 9; Plaintiff's Exhibit "H").  The law enforcement officer keeps the top sheet, which is normally more legible. The City maintains the original of the top sheets

(Dec. of Eric Rose, para. 9; Plaintiff's Exhibit "H").

It is the usual and customary business practice of each of OPG-LA's members to input certain vehicle impound information from the CHP 180 Form into the VIIC system. Each OPG-LA member decides what information regarding its vehicle towing and storage services is inputted into the VIIC database. However, as explained above, the

-53-

bottom sheet of the CHP 180 Form presented to the tow truck driver is sometimes illegible or does not have all the required information (Dec. of Eric Rose, para. 10; Plaintiff's Exhibit "H").

Accordingly, Mr. Cook's assertion that the VIIC is a vastly superior, more accurate and far more easily produced and useable source of vehicle owner's identity, rather than relying on his own staff to input the information into his own database, is nothing more than unsupported conjecture:

• Mr. Cook admits that the CHP 180 forms that he has already obtained from the City in other actions are "mostly legible" (Transcript of Proceedings on August 4, 2017, p. 8, lines 10 - 13, Ex. "U");

• Mr. Cook has refused to review the offered CHP 180 Forms to determine their legibility. Furthermore, no one can state with certainty that the hundreds of tow company employees who inputted the DMV information from the CHP 180 Forms into the VIIC over the past four years would have been more accurate than Plaintiffs' agents using the same CHP 180 Forms would be today. The best and most accurate source of the information sought by the Plaintiff is the original CHP 180 Form (top sheet) maintained by the City;

• Furthermore, once inputted, the VIIC information, including personal identifying information such as addresses, is not updated. Much of the information sought is two - four years old. (Declaration of Eric Rose, para. 15; Plaintiff's Exhibit "H"). The DMV would be the best source for obtaining the most current addresses of vehicle owners and drivers.

*The issue is not whether the City's scanned image files of paper CHP 180 forms are not the equivalent of the electronically created and stored VIIC text data* as asserted by Mr. Cook. *Rather, the issue is whether the Plaintiff can obtain the exact same information sought from a party, the City, rather than burdening a non-party, OPG-LA.*

00125051.WPD

**The answer is undisputedly yes!** *Fed. R. Civ. P. 26(b).*

# DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1. I am an attorney and a member of the bar of this Court. I am one of the attorneys representing Plaintiff, Lamya Brewster. I have also represented plaintiffs in numerous other cases involving the LAPD's seizures and impounds of vehicles. One such case still pending in its trial court is *Gonzalez-Tzita et al. v. City of Los Angeles, et al.*, 2:16-cv-194 FMO (Ex). From those cases I have had occasion to depose various individuals regarding the practices for LAPD-directed vehicle seizures, including record-keeping processes, and information systems used by the City of Los Angeles to track vehicle seizures.

2. For this case I believe the putative class size will be about 50,000 (based on numbers reported in a California court of appeal decision and what counsel for City of Los Angeles stated).

3. To prosecute the class claims as well as pursuing meaningful settlement discussion (the City has expressed an interest in settling the case) Plaintiff seek to identify the 50,000 or so putative class members, the amount each class member paid or was charged for the vehicle impound, and each class member's vehicle's reasonable rental value for the impound period. As explained below, there is but one source that can provide all this data easily, quickly and accurately -- the "*V*ehicle *I*mpound *I*nformation *C*enter" or VIIC database.

*Official Police Garages and the records they create pursuant to City contracts*

4. For the seizure and storage of vehicles made at the direction of an LAPD employee, the City of Los Angeles has contracted with 18 privately-owned towing and vehicle storage companies, each of which is known as "Official Police Garage" ("OPG"). Although each OPG contracts separately with the City (hence there are 18 separate contracts) the contract terms are identical. 3/7/14 Jones depo., 7:4-22 (**Exhibit I**) (Det.

00125051.WPD

Jones is an LAPD officer and coordinator between the LAPD and the OPGs). **Exhibit E**, which the City provided to my office in discovery in *Castillo v. City of Maywood*, L.A.S.C. No. BC469942, is a representative contract between the City and an OPG. In relevant part the contract states:

        A. The City requires that an OPG record in a computerized system the details and records of each vehicle seized. Parts 3.9 [contract], 9.3, 9.4 [amendment]) (**Exhibit E** @ pp. 108, 114).

        B. The City requires that the OPG record data on vehicle seizures in the "Vehicle Impound Information Center" database, or "VIIC." Article 9.3 (**Exhibit E** @ 71). The City has unlimited access to *all* VIIC data. Part 14.3(c) (**Exhibit E** @ page 114; see also 2/10/14 Rose depo., 61:17-23 (**Exhibit D**).

        C. The City requires that an OPG make its records on vehicle seizures available to the City on a 24/7 basis, without notice. The OPG "must permit [City] law enforcement personnel or representatives of the Board [of Police Commissioners] or City to make copies of business records at the OPG's place of business, or to remove business records for the purpose of reproduction." Part 14.3(e) (**Exhibit E** @ page 114).

5. The VIIC database has 51 data fields or elements. See **Exhibit J**, a print-out of VIIC data fields I received from Steven M. Garber, counsel for OPG-LA. The data collected include the following information (all stored as electronically created text data):

        A. Vehicle's registered and legal owner(s) (names and addresses);

        B. Vehicle seizure date;

        C. Vehicle release date;

        D. Whether the vehicle was sold at a lien sale;

        E. If the vehicle was sold at lien sale, the amount recovered;

F. Total fees collected for the vehicle seizure and subsequent impound; and

G. Year, make, model and license plate number of the seized vehicle (including the state).

6. The records and computer data the City requires that the OPGs create and maintain, are stored and managed by OPG-LA, a non-profit 503(c)(4) organization to "coordinate and manage the activities collectively of the designated official police garages for the city of L.A." 2/10/14 Rose depo., 7:14-8:16 (**Exhibit D**) (Mr. Rose is the executive director of OPG-LA. I deposed Mr. Rose in *Castillo v. City of Maywood*, L.A.S.C. No. BC 469942.). *See also* www.opgla.com, the website for the Official Police Garage Association of Los Angeles.

7. Besides VIIC data, OPGs are contractually obligated to store in another database called "Laserfiche," scanned images of CHP 180 forms the OPG receives from the LAPD for each vehicle seizure. Additionally, based on Mr. Rose's deposition testimony and in my experience in reviewing records stored in Laserfiche and produced by individual OPGs, many OPGs scan and store in Laserfiche other paper records the OPGs receive or generate in connection with a vehicle seizure. 2/10/14 Rose depo., 55:4-14, 69:7-70:3 (**Exhibit D** at pp. 92, 102-03 hereto).

8. The information recorded in VIIC is highly accurate. I know that to be true because the individual OPGs rely on VIIC data to generate their remittance reports they are contractually obligated to provide to the City. 2/10/14 Rose depo., 59:14-23, 60:3-6, 60:18-61:2 (**Exhibit D** at pp. 95-97 hereto).

9. Generating a copy of VIIC data is easy. Essentially, one who has the requisite privileges can export the VIIC data into a Microsoft Excel data file or, for that matter, a generic data file (e.g., ASCII delimited file). That is what OPG-LA's executive director Eric Rose did when he generated a subset of VIIC data I received from OPG-LA's counsel in 2014. 2/10/14 Rose depo. 49:9-50:19 (**Exhibit D** at pp. 90-91 hereto). The

process takes but a few minutes. There essentially is *no burden* for OPG-LA to produce the requested VIIC data in its original form as electronic data. Indeed, within about three hours of Magistrate Judge Eick issuing the 9/7/17 Order directing OPG-LA to produce VIIC data as electronic data in *Gonzalez-Tzita, supra* (doc 66 in that case), via email I received from OPG-LA's counsel the data Judge Eick ordered produced per his 8/4/17 Order (doc 58).

        *Why production by OPG-LA is necessary*

10. As in other similar towing cases when I have sought to obtain the VIIC data from the City, in this case the City takes the position it cannot obtain VIIC data (despite what the contracts say) that at most the City can only provide CHP 180 forms the LAPD has which document vehicle seizures, forms which would be produced as computer files consisting of the scanned document in PDF image format.[8] This is unacceptable and unworkable. The forms, filled out in handwriting, are often illegible. Furthermore, because the City does not calculate the fees for towing and storage charges (the OPGs do that) the release and financial data only appears in VIIC. I therefore issued the subpoena duces tecum directing OPG-LA to produce the VIIC data since OPG-LA is the

---

[8] Besides being refuted by the plain terms of the contracts between the City and the OPGs, the City's claim is also refuted by the testimony of OPG-LA's executive director. 2/10/14 Rose depo., 26:24-27:5, 57:20-58:1, 59:1-60:6, 61:17-63:2 (acknowledging the City's unrestricted and unfettered right to obtain any VIIC data or Laserfiche record).

The City's refusal to exercise its contract rights to obtain a copy of VIIC data is, I believe, a result of collusion between the City and OPG-LA to preclude a finding that VIIC data constitutes "public records" within the meaning of the California Public Records Act, Cal. Veh. Code § 6250 *et seq*. This issue is central in ongoing public records litigation involving another of my clients and the City. *Anderson-Barker v. Superior Court (Real Party in Interest City of Los Angeles)*, California court of appeal no. B285391; *City of San Jose v. Superior Court*, 2 Cal.5th 608 (2017) (California Supreme Court holds that under the public records act, a city must produce city employees' privately maintained text and emails that concern public business).

custodian for the data even were the City to produce the data. By the subpoena Plaintiff is doing what the City should but will not do -- require OPG-LA to generate the desired subset of VIIC data.

11. As it did in other cases, OPG-LA objected to the subpoena. See **Exhibit B**, true copy of the objections. Thereafter, OPG-LA's counsel Mr. Steven M. Garber and I held the requisite Local Rule 37-1 conference on February 20, 2018. As had happened in the past in other cases, Mr. Garber declined my offer that production of the VIIC data be pursuant to a protective order. I agreed Plaintiff would not move forward with the motion to compel until after resolution of the City's petition for certiorari.

12. Mr. Garber has suggested that Plaintiff should obtain class members' identities from the CHP 180 forms kept by the LAPD. These paper forms are filled in by handwriting. Afterwards, they are scanned into a database maintained by the City (the LAPD's "Documentum" database). As confirmed by Assistant City Attorney Gabriel S. Dermer (the City's attorney), the original paper forms are *not* available; only scanned image files. The scanned image files are, in fact, an unreasonable and unworkable "alternative":

A. CHP 180 forms do *not* collect data reflecting fees and storage charges, or release dates, or lien sale information and charges. So even if the forms were otherwise useable (they are not, see below) they would still be inadequate;

B. The scanned PDF image files of CHP 180 forms are often illegible. I know that to be true because I received hundreds of such forms from the City in the *Gonzalez-Tzita* litigation. In reviewing those forms about 7% to 9% of the forms were illegible (usually because of hard-to-read handwriting coupled with the forms having been generated from a scanned PDF image file).

C. There are approximately 50,000 vehicle seizures, meaning **50,000** CHP 180 forms. To utilize the forms' data for class certification, the data must be

00125051.WPD

inputted into a database, a massive undertaking. And even were it feasible to do so, there will be the inevitable data entry errors which Plaintiff will be unable to correct because unlike the City *or* the OPGs, Plaintiff cannot access DMV information. And even if Plaintiff could access DMV data, the inputted data would be still inadequate for reasons stated in subparagraph (A) above.

13. Vehicle owners' names and addresses as recorded in VIIC are highly accurate because:

A. For purposes of enforcing a stored vehicle lien (see Cal. Veh. Code §22851(a) (lien is created in favor of the tow company for towing and storage charges)), the OPG must mail notice to the vehicle's owner(s). See Cal. Civ. Code § 10652.5 (legal owner), § 3072 (registered owner). Thus, the OPGs have a financial incentive to insure that VIIC has accurately recorded vehicle owners' names and addresses;

B. As confirmed OPG-LA's executive director Eric Rose, to insure accurate entry of owners' identities (because sometimes the CHP 180 forms are not legible) the OPGs can and do "contact the LAPD Auto Records Clerk[] who has direct access to the DMV . . ." for the missing information. "On other occasions, the OPG-LA member will retrieve the missing information directly from the DMV by accessing the eTIMS (Enhanced Technical Information Management System) . . ." Consequently, "[i]n all cases . . . the DMV" is the "ultimate source" of the vehicle owners' identity information. See **Exhibit H** at page 126 hereto (¶13).

14. To my knowledge no other database, including the DMV's, has the information Plaintiff needs for class certification (because the DMV, unlike VIIC, cannot identify vehicle owners whose vehicles were seized by the LAPD under §14602.6, and does not record charges associated with those impounds).

///

00125051.WPD

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed

2  March 29, 2018, at Los Angeles, California.

3

4    _____

5                    Donald W. Cook

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00125051.WPD

**DECLARATION OF DWIGHT W. COOK**

I, DWIGHT W. COOK, declare:

1. Up until June 2017 when I retired, I was an Applications Programmer Analyst for the State of Minnesota. I was employed as a Programmer Analyst beginning May 1987. As a Programmer Analyst I provided systems analysis, database design, software design, testing and installation, customer service (including dataset "data and image" retrieval) for various entities. In the mid- to late 1990s, I designed and piloted the first Electronic Document Management System (EDMS) for the State of Minnesota. The system manages millions of records (or images), with a user base of approximately 5,000 (not including members of the public who have limited access to some of the information). I also designed the first metadata application and database for tracking the optically stored documents for the Minnesota Department of Transportation. That system was used to manage over 500,000 images, with a user base of approximately 200, and has since been expanded to cover millions more records and a far larger user base.

2. I have programmed and managed computer data systems on IBM mainframe and mini-computers, as well as networked PC workstations. I have been a network administrator. I regularly worked with Oracle, MySQL, and MS Access databases. That is, I regularly worked with these databases and I wrote code in MS Access to manipulate the data for collection, storage  and reporting purposes. Using MS Access, I regularly accessed, imported and/or copied data from Oracle data warehouses as large as several terabytes (one terabyte is 1,000 gigabytes).

3. I hold a programmer certificate (two-year degree) from Alexandria Technical College in Alexandria, Minnesota. I have completed numerous post degree courses and classes to enhance my expertise in the area of computer program development, data analysis, design, storage, management, and retrieval.

4. I am familiar with the data systems (VIIC and Laserfiche) used by Official

00125051.WPD

Police Garage of Los Angeles (OPG-LA) to track and identify vehicles seized at the direction of personnel employed by the City of Los Angeles. I am familiar with those systems based on (a) the January 3, 2014 declarations of David Ospina and Eric Rose (submitted, I am informed, in a case called *Castillo v. City of Maywood*, LA.S.C. No. BC 469942); (b) February 10, 2014 deposition testimony by Mr. Rose in the same case; (c) the public search function of vehicle seizures accessible at the OPG-LA website (opgla.com); and (d) my April 15, 2014 telephone conversation with Mr. Ospina regarding the data systems. Mr. Ospina is a programmer and developer of information systems used by OPG-LA and the individual Official Police Garages, or OPGs. Per Mr. Rose's testimony, OPG-LA employs Mr. Ospina as an independent contractor to manage OPG-LA's information systems.

5.  I have reviewed and analyzed subsets of VIIC data, provided to me by attorney Donald W. Cook. The files have been in the format of Excel spreadsheet and ASCII delimited files (a more generic data file format). I also reviewed a listing of the 51 fields created in VIIC for each VIIC record. I have been retained by Plaintiff's counsel to analyze the electronically-created and stored VIIC data for vehicles that I am informed were seized by the LAPD for impound under Cal. Veh. Code § 14602.6.

6.  All database management systems (or DBMS) assign to every record the DBMS creates, a unique numerical or alpha-numerical identifier. In VIIC, that identifier is the log number. Consequently, every vehicle seizure recorded in VIIC is assigned a log number unique to that vehicle seizure. Because the log number is unique and because the VIIC DBMS indexes include one based on the log number, by entering the log number one can quickly and reliably access *all* data associated with the vehicle seizure assigned that log number. If a VIIC record does not include a vehicle's license number or VIN (sometimes that data is missing) log number will still enable access to the VIIC data for that vehicle seizure.

7.   Additionally, the VIIC log number is used to relate the VIIC DBMS to Laserfiche, a document storage database the OPGs use in conjunction with the VIIC database. (The difference between the two databases is that VIIC consists of user-inputted text data that document vehicle seizures and generates data and reports based on user-inputted and/or calculated values [e.g., total amount for storage charges, etc.], whereas Laserfiche stores scanned images of paper CHP 180 forms, and other paper documents OPGs choose to scan into Laserfiche.) To locate records stored in Laserfiche for a particular vehicle seizure, one must have the log number (because Laserfiche records are all scanned image files of paper records).

8.   Assuming the Court orders OPG-LA to produce a subset of VIIC data for vehicles seized by the LAPD under Cal. Veh. Code § 14602.6, the data should be produced in its original electronic form as text data. The data should *not* be produced by printing onto paper, or by generating a PDF text or comparable file type. Producing the data in a form other than as exported text data in an ODBC compliant format, would be contrary to every reasonable industry expectation:

a.   When the data is provided for data analysis in a DBMS, *no one* produces electronically stored data as printed out onto paper. It is unheard of. The reason is simple. You want the data in its electronic form because that is how you analyze the data, perform compilations, and use the powerful analytical tools that are part and parcel of modern day data management systems. If the data is recorded electronically and must be provided to someone else so that person can utilize the data in a DBMS, the data is produced in its electronic form.

b.   Because everyone in the industry recognizes the value in having the data in its electronic form, all contemporary DBMS can produce (or "export") its data in an electronic form, whether proprietary or ODBC compliant. I know the VIIC system can do so -- Mr. Eric Rose admitted to it in his deposition and I reviewed

exported VIIC data in ODBC compliant file formats, VIIC data that I was informed by Plaintiff's counsel came from OPG-LA.

9.  Producing the court-ordered data in its original form as electronic data is easy. It requires less effort than one expends in printing the data onto paper. You export the selected data fields with their data (that is, you do not include data fields the court's order states need not be produced) into an ODBC compliant data file (be it Excel, Access or other type). The same search and retrieval parameters are used (limiting the records to LAPD vehicle seizures under §14602.6 for the time period the Court specifies). But because the data is exported into an electronic data file, the process is faster. The whole process takes no more than 15 minutes, *if that*. OPG-LA can produce any VIIC data the Court orders produced in just a matter of minutes.

10.  I cannot use VIIC data if provided printed onto paper, or if exported into a PDF file. The data would have to be manually inputted into a database program. Doing so is a labor-intensive and time-consuming process that will result in data input errors (no one is perfect at their job). That is why when the data is sought for data analysis purposes, no one produces data printed onto paper when it is available as electronic data. Instead, you export the desired data in the appropriate electronic data format. Here, based on Mr. Rose's deposition testimony that would be an Excel spreadsheet file. The only reason to produce the data printed onto paper or exported into a PDF file, is to make the data unuseable, or useable only at great expense and burden to the receiving party.

I declare under penalty of perjury of the State of California that the foregoing is true and correct except as to those matters about which I have been informed. As to the matters stated on information  and belief, I believe they are true. Executed March 29, 2018, at Alexandria, Minnesota.

_____

Dwight W. Cook

00125051.WPD

# DECLARATION OF STEVEN M. GARBER

I, Steven M. Garber, declare as follows:

1.   I am an attorney at law, duly licensed to practice before all the courts of the State of California and before the United States District Court for the Central District of California. I am a Shareholder of Steven M. Garber & Associates, A Professional Corporation, attorneys of record for Non-Party Official Police Garage Association of Los Angeles, a California Nonprofit Mutual Benefit Corporation. The following is known to me of my own personal knowledge, and if called upon as a witness, I could and would competently so testify. I make this declaration in support of Official Police Garage Association of Los Angeles' Opposition to Plaintiffs' Motion to Compel.

2.  Pursuant to Rule 201 of the Federal Rules of Evidence, Official Police Garage Association of Los Angeles, respectfully requests that this Court take judicial notice of the following:

3.  Attached as Exhibit "K" is a true and correct copy of the Motion for Disclosure of Public Records, dated March 27, 2014, filed in *Flynn v. City of Los Angeles*, L.A.S.C., Case No. BS 147850.

4.  Attached as Exhibit "L" is a true and correct copy of the Honorable James C. Chalfant's Minute Order and Tentative Decision, dated October 14, 2014, issued in *Flynn v. City of Los Angeles*, L.A.S.C. Case No.: BS 147850.

5.  Attached as Exhibit "M" is a true and correct copy of the Order of the Court of Appeal, Second District, Division One, Case No. B260363, dated February 20, 2015, denying Petition for Writ of Mandate, issued in *Flynn v. City of Los Angeles*.

6.  Attached as Exhibit "N" is a true and correct copy of the online Docket obtained from the California Supreme Court website, listing an entry on April 29, 2015, with the description "Petition for review denied," in *Flynn v. City of Los Angeles*, Case No. S224784.

7.  Attached as Exhibit "O" is a true and correct copy of the Verified Petition for Writ of Mandate Compelling Disclosure of Public Records, Materials and Information,

filed June 18, 2015, in *Anderson-Barker v. City of Los Angeles*, L.A.S.C. Case No. BS 156058.

8.   Attached as Exhibit "P" is a true and correct copy of the Declaration of Petitioner Pursuant to Code of Civil Procedure §170.6, dated June 19, 2015, filed in *Anderson-Barker v. City of Los Angeles*, L.A.S.C. Case No. BS 156058.

9.   Attached as Exhibit "Q" is a true and correct copy of the Honorable Amy D. Hogue's Order Denying Petition for Writ of Mandate, dated August 23, 2017, filed in *Anderson-Barker v. City of Los Angeles*, L.A.S.C. Case No. BS 156058.

10.   Attached as Exhibit "R" is a true and correct copy of the Civil Docket for this matter, *Brewster v. Beck*, CASE #: 5:14-cv-02257-JGB-SP, obtain from the United States District Court for the Central District of California on April 4, 2018.

11.   Attached as Exhibit "S" is a true and correct copy of the Deposition Subpoena for Personal Appearance and Production of Documents and Things, issued by Mr. Cook on September 10, 2013, in *Castillo v. City of Maywood, et al.,* L.A.S.C., Case No.: BC 469942, and served on Eric Rose.  A similar subpoena was also served on OPG-LA and on 16 members of the OPG-LA. A number of Informal Discovery Conferences were conducted by the Honorable Elihu M. Berle to resolve OPG-LA's and its members refusal to provide Mr. Cook with the DMV information.  Ultimately, Judge Berle refused to order disclosure of the DMV information contained in the VIIC database.

12.   Attached as Exhibit "T" is a true and correct copy of the Honorable Charles F. Eick's Court Minutes, dated February 8, 2018, filed in *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex), denying Mr. Cook's Motion to Compel Compliance with a Subpoena Duces Tecum requesting the exact type of DMV information as sought in the instant matter except that it pertained to vehicles towed under California Vehicle Code §21100.4.  Mr. Cook has since filed a Motion For Review of the 2/8/18 Discovery Order which is under submission as of the date of this Joint Stipulation.

13.  Mr. Cook's assertion (Plaintiff's portion of the Joint Stipulation, Issue #2) that

in *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex), that I agreed that log numbers were not privileged, blatantly mischaracterizes my testimony. Mr. Cook conveniently omits to provide this Court with the entirety of my testimony, before Magistrate Eick, wherein I explain why the log numbers, since they have only one practical use, should be considered within the umbrella of privileged DMV information. Attached as Exhibit "U" is a true and correct copy of the Reporter's Transcript, dated August 4, 2017.

14. Attached as Exhibit "V" is a true and correct copy of the Honorable Charles F. Eick's Court Minutes, dated August 4, 2017, filed in *Gonzalez-Tzita, v. City of Los Angeles, et al.*, U.S.D.C., Case No. CV 16-194-FMO(Ex).

15. This redacted spreadsheet (Mr. Cook's Exhibit "C") was generated for the sole purpose of demonstrating some of the categories of information that is available in the VIIC database.

16. Attached as Exhibit "W" is a true and correct copy of Declaration of Benjamin Jones, executed on July 12, 2017, in the matter of *Anderson-Barker v. City of Los Angeles*, L.A.S.C. Case No. BS156058. Mr. Jones is employed as a Detective for the City of Los Angeles.

17. Attached as Exhibit "X" is true and correct copy of the Black & White Garage, Inc., Official Police Garage Standard Duty Towing and Storage Services Agreement entered into between Black & White Garage, Inc., and the City of Los Angeles.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed April 5, 2018 at Calabasas, California.


/s/ *Steven M. Garber*
STEVEN M. GARBER

00125051.WPD