AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| LAMYA BREWSTER, individually etc., | ) |
| *Plaintiff* | ) |
| v. | ) |
| CITY OF LOS ANGELES, ET AL. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No. 5:14-CV-2257 JGB (SPx)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      CUSTODIAN OF RECORDS, OFFICIAL POLICE GARAGE OF LOS ANGELES

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment to Subpoena

| Place: Law Office of Donald W. Cook<br>    3435 Wilshire Blvd., Ste. 2910<br>    Los Angeles, CA 90010 | Date and Time:<br><br>01/31/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/08/2018

| *CLERK OF COURT* | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiff
_____ , who issues or requests this subpoena, are:

Donald W. Cook, 3435 Wilshire Blvd., Ste. 2910, Los Angeles, CA 90010 (213) 252-9444 doncook@earthlink.net

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Subpoena (OPG-LA)**        -70-        **EXHIBIT A**

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>ATTACHMENT TO SUPBOENA</u>

VIIC data in the possession of the Official Police Garage Association of Los Angeles for any vehicle seized and stored by an Official Police Garage of the City of Los Angeles where the seizure and storage was made at the direction of an employee of the City of Los Angeles, for vehicles seized and impounded on any date from November 2, 2012, to the present, where the seizure authority included Cal. Veh. Code §14606.2.

The VIIC data sought is the following:

(1) log number; (2) date the vehicle was seized; (3) date the vehicle was released; (4) whether the vehicle was sold at a lien sale; (5) if the vehicle was sold at lien sale, the amount recovered; (6) total fees collected for the vehicle seizure and subsequent impound; (7) year, make, model and license plate number of the seized vehicle (including the state); (8) name(s), address(es) and driver's license number(s) of the vehicle's registered owner(s), (9) name, address(es) and driver's license number of the person to whom the vehicle was released.

The data is sought in its original form as electronic data and should be produced in an ODBC compliant data file (such as Microsoft Access, Microsoft Excel, or similar file).

STEVEN M. GARBER (SBN 156153)
MASON YOST (SBN 134872)
STEVEN M. GARBER & ASSOCIATES
A PROFESSIONAL CORPORATION
24025 PARK SORRENTO, SUITE 240
CALABASAS, CALIFORNIA 91302
Phone: (323) 777-8000
Fax: (323) 777-3000

Attorneys for Non-Party Witness
OFFICIAL POLICE GARAGE ASSOCIATION OF LOS ANGELES,
A CALIFORNIA NONPROFIT MUTUAL BENEFIT CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMYA BREWSTER,<br><br>               Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, ET AL.<br><br>               Defendants. | Case No.:   5:14-CV-2257 JGB (SPx)<br><br>**OBJECTIONS OF NON-PARTY WITNESS OFFICIAL POLICE GARAGE ASSOCIATION OF LOS ANGELES TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**<br><br>Date:    January 31, 2018<br>Time:    10:00 a.m.<br>Place:   3435 Wilshire Blvd., Suite 2910<br>           Los Angeles, California  90010 |

       NON-PARTY WITNESS, OFFICIAL POLICE GARAGE ASSOCIATION OF LOS ANGELES, A CALIFORNIA NONPROFIT MUTUAL BENEFIT CORPORATION ("Non-Party Witness"), objects to the Deposition Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, issued by Plaintiff, LAMYA BREWSTER ("Plaintiff"), on January 8, 2018, pursuant to *Federal Rule of Civil Procedure* §§45(d)(1) and 45(d)(2)(B), on the following grounds:

/ / /

1

Objections to Subpoena (OPG-LA)      **-73-**      **EXHIBIT B**

## RESPONSE TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION:**

"VIIC data in the possession of the Official Police Garage
Association of Los Angeles for any vehicle seized and stored by an
Official Police Garage of the City of Los Angeles where the seizure
and storage was made at the direction of an employee of the City of
Los Angeles, for vehicles seized and impounded on any date from
November 2, 2012, to the present, where the seizure authority
included Cal. Veh. Code §14606.2.

The VIIC data sought is the following:

(1) log number; (2) date the vehicle was seized; (3) date the vehicle was
released; (4) whether the vehicle was sold at a lien sale; (5) if the vehicle
was sold at lien sale, the amount recovered; (6) total fees collected for the
vehicle seizure and subsequent impound; (7) year, make, model and license
plate number of the seized vehicle (including the state); (8) name(s),
address(es) and driver's license number(s) of the vehicle's registered
owner(s), (9) name, address(es) and driver's license number of the person to
whom the vehicle was released.

The data is sought in its original form as electronic data and should be
produced in an ODBC compliant data file (such as Microsoft Access,
Microsoft Excel, or similar file).

/ / /
/ / /
/ / /
/ / /

2

**OBJECTIONS TO REQUEST FOR PRODUCTION:**

Non-Party Witness objects to this request for production on the grounds and to the extent that:

1.    "Cal. Veh. Code §14606.2" does not exist.  Thus, Non-Party Witness does not have any responsive documents in its possession, custody and control.

2.    Requiring Non-Party Witness to disclosing the VIIC data is not proportional and is oppressive and burdensome to Non-Party Witness in that:

• The DMV information sought can be easily obtained from the City of Los Angeles, a party. The courts will prohibit a party from seeking information from a non-party when the same information can be obtained from an opposing party. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).

• The sensitive nature of the private identifying information sought imposes a substantial burden on Non-Party Witness in that it would require its members to violate Federal and State statutes prohibiting disclosure of vehicle owners' and drivers' information:

• The Driver Privacy Protection Act ("DPPA"), 18 *U.S.C.* §§ 2721-2725, exposes Non-Party Witness and its members to serious consequences attendant to the disclosure of this personal information. Violation of DPPA may result in criminal convictions and a fine of up to $2,500.00 per violation, with the potential of hundreds of thousands of individual names at issue.

• *California Vehicle Code* § 1808.21 prohibits the Non-Party Witness from disseminating personal information retrieved from DMV records. *County of Los Angeles v. Superior Court (Anderson-Barker)*, 242 Cal.App.4th 475, 478, 483 (2015).

• *California Penal Code* § 13201 prohibits the Non-Party Witness from disseminating individual criminal offender record information obtained

3

OBJECTION OF NON-PARTY WITNESS TO DEPOSITION SUBPOENA TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

**Objections to Subpoena (OPG-LA)**      **-75-**      **EXHIBIT B**

from CHP 180 Forms (The CHP 180 Form is a carbonless packet consisting of seven sheets, designed to transfer information, concerning the vehicle and the driver/owner of the vehicle, handwritten on the top sheet onto the underlying sheets.  Once a City employee (LAPD and/or LADOT) has decided to initiate a tow, the law enforcement officer completes portions of a CHP 180 Form at the scene and provides the bottom sheet to the tow driver).

• Ordering disclosure of the VIIC database would require Non-Party Witness' members to break DMV regulations prohibiting disclosure of vehicle owners' and drivers' personal information. In addition, DMV regulations require Non-Party Witness to give prior notice to each vehicle owner and driver whose information will be disclosed. This places an enormous burden, both in cost (stationary, postage, etc.) and in man hours, on Non-Party Witness. Non-Party Witness does not have the resources nor the staff to handle such an endeavor.

3.   The Request seeks documents and/or information in which Non-Party Witness, and its members have a legitimate expectation or right of privacy pursuant to the *United States Constitution*, the *California Constitution* (Art I, § 1), federal and state statute, or federal and state case law.

4.   The VIIC database contains private, financial, confidential, and privileged information including personal identifying information about registered owners, drivers, and individuals retrieving automobiles.

5.   Plaintiff has failed to comply with the requirements for obtaining "personal records" of consumers held by third parties as set forth in *California Code of Civil Procedure* §1985.3.

6.   Federal common law recognizes a qualified privilege for official information.  Driver and owner information collected by the California DMV is considered official information. To determine whether the information sought is

4

**Objections to Subpoena (OPG-LA)**          **-76-**          **EXHIBIT B**

privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery. *Sanchez v. City of Santa Ana* (9th Cir. 1990) 936 F.2d 1027, 1033;

7.     Disclosure of the VIIC database is a violation of DPPA. A lawyer who files an action may not thereafter use DPPA-protected personal information to solicit new clients on the grounds that such use is "inextricably intertwined" with a use "in connection with" litigation. *Maracich v. Spears*, 133 S.Ct. 2191, 2195-2196 (2013);

8.     Disclosure of the VIIC database violates California DMV Regulations which prohibit members of Non-Party Witness from violating DPPA.  The California DMV requires every member to execute, under penalty of perjury, an Information Security Statement.  That statement emphatically states at paragraph 4: "Any person who knowingly obtains, discloses, or uses personal information from a motor vehicle record for a purpose not permitted under the Driver's Privacy Protection Act (Title 18 of the United States Code, Section 2721 - 2725), shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."

The Statement also provides:  "CA DMV is committed to protect this information from unauthorized access, use, or disclosure."  It further states: "In the case of confidential or personal information, a proper accounting of all disclosures must be made and the subject must be notified in accordance with statute and CA DMV directives."

9.     The Request seeks production of confidential proprietary business information, including trade secrets, strategy, operations, financial planning, business operations, processes and technical documents containing information which has no direct bearing on the Plaintiff's contentions, which privilege Non-Party Witness asserts on behalf of itself, its members, clients, agents, and/or their individual principals.  The VIIC database contains confidential business

5

OBJECTION OF NON-PARTY WITNESS TO DEPOSITION SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Objections to Subpoena (OPG-LA)          -77-                          EXHIBIT B

1   information belonging to Non-Party Witness' members, such as payment of

2   Parking Occupancy Taxes, Gross Receipt Fees, and DMV fees, that are utilized to

3   further and carry out the business activities of Non-Party Witness' members.  Non-

4   Party Witness and its members take all reasonable efforts to maintain the secrecy

5   and security of the trade secrets.  The trade secrets are kept confidential and are

6   maintained and protected by secured systems, passwords, and protections so that

7   the trade secrets cannot be obtained by the public or non-designated personnel;

8

9   DATED: January 29, 2018                STEVEN M. GARBER & ASSOCIATES
                                           A PROFESSIONAL CORPORATION
10

11

12                                         By:
                                           STEVEN M. GARBER
13                                         Attorneys for Non-Party Witness
                                           OFFICIAL POLICE GARAGE
14                                         ASSOCIATION OF LOS ANGELES, A
                                           CALIFORNIA NONPROFIT MUTUAL
15                                         BENEFIT CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

6

OBJECTION OF NON-PARTY WITNESS TO DEPOSITION SUBPOENA TO PRODUCE DOCUMENTS,
INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

**Objections to Subpoena (OPG-LA)**          **-78-**          **EXHIBIT B**

| AGENCY | DIVISION | DATE IN | DATE OUT | STATUS | MAKE | MODEL | LICENSE | VIN | LOG NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| LAPD | HOBK | 10/17/2014 | 11/12/2008 | Released | TOYT | CAM | 6DXF007 | JTDBE32K530172362 | 04-87199 |
| LAPD | HOBK | 10/5/2008 | 11/4/2008 | Released | FORD | XPL | 4NQT590 | 1FMDU34X1PUD93200 | 04-86334 |
| LAPD | HOBK | 6/19/2008 | 8/19/2008 | Released | HOND | ACC | 4DAL386 | 1HGCD5692TA262395 | 04-75959 |
| LAPD | HOBK | 6/18/2008 | 7/29/2008 | Released | PONT | J20 | 2SNC115 | 1G2AB35QD07266421 | 04-75745 |
| LAPD | HOBK | 6/18/2008 | 7/29/2008 | Released | HOND | CIV | 5GST344 | 2HGEH2457NH536948 | 04-75747 |
| LAPD | HOBK | 6/18/2008 | 7/29/2008 | Released | TOYT | COA | 5DUT209 | 1NXAE92EXKZ040144 | 04-75757 |
| LAPD | HOBK | 6/18/2008 | 7/17/2008 | Released | NISS | WIN | 200 3RV1665 | 1N4A42D0TCS04109 | 04-75764 |
| LAPD | HOBK | 6/18/2008 | 7/17/2008 | Released | FORD | PAS | 6DNE7932 | 2FMZA51U9WBC80118 | 04-75790 |
| LAPD | HOBK | 6/18/2008 | 7/16/2008 | Released | VOLK | MIR | 5BXN536 | WVWEB3A2SE246077 | 04-75914 |
| LAPD | HOBK | 6/18/2008 | 8/6/2008 | Released | MITS | NONE | NONE | JA3A411A5SU076306 | 04-75916 |
| LAPD | HOBK | 6/17/2008 | 6/19/2008 | Released | FORD | F35 | 7K01930 | 1FTSW31P24EA62545 | 04-75674 |
| LAPD | HOBK | 6/17/2008 | 8/6/2008 | Released | INFI | I30 | 4MA8256 | JNKCA21D9VT513257 | 04-75724 |
| LAPD | HOBK | 6/17/2008 | 7/29/2008 | Released | CADI | DEV | 4XHU588 | 1G6CD5150J4271081 | 04-75728 |
| LAPD | HOBK | 6/16/2008 | 7/29/2008 | Released | FORD | EPD | 4UHV071 | 1FMEU15LX31B605011 | 04-75625 |
| LAPD | HOBK | 6/16/2008 | 6/20/2008 | Released | HOND | ACC | 2WGB235 | JHMCB7664MC072236 | 04-75639 |
| LAPD | HOBK | 6/15/2008 | 8/6/2008 | Released | STRN | SL | 4XBM076 | 1G8ZK527SYZ179081 | 04-75520 |
| BPD | HOBK | 6/15/2008 | 8/6/2008 | Released | FORD | XPL | 4HHT532 | 1FMZU32EXXZA85680 | 04-75523 |
| LAPD | HOBK | 6/15/2008 | 7/29/2008 | Released | FORD | AER | 2VAC115 | 1FMCA11U5MZA04656 | 04-75529 |
| LAPD | HOBK | 6/15/2008 | 7/29/2008 | Released | HOND | ACC | 2IRN120 | 1HGCA6169JA013746 | 04-75535 |
| LAPD | HOBK | 6/14/2008 | 8/6/2008 | Released | NISS | SEN | 5SWN582 | 1N4EB31B2MC797668 | 04-75467 |
| LAPD | HOBK | 6/14/2008 | 7/21/2008 | Released | CHEV | TAH | 5NVH047 | 1GNEC13RXWJ379015 | 04-75480 |
| LAPD | HOBK | 6/13/2008 | 7/13/2008 | Released | TOYT | CAM | 2ZDR654 | JT2VK12E3N0018474 | 04-75431 |
| LAPD | HOBK | 6/12/2008 | 7/16/2008 | Released | GMC | YUK | 1GKEK13KXSJ758898 | | 04-75219 |
| LAPD | HOBK | 6/12/2008 | 7/16/2008 | Released | CHEV | SLV | 5YFV352 | 2GCFC29Z6K1229871 | 04-75259 |
| LAPD | HOBK | 6/12/2008 | 7/29/2008 | Released | ACUR | INT | 7M24489 | JH4DA9356M0533605 | 04-75311 |
| LAPD | HOBK | 6/11/2008 | 9/16/2008 | Released | HOND | CIV | 6CXA501 | 1HGEG8650P1015143 | 04-75142 |
| LAPD | HOBK | 6/11/2008 | 9/16/2008 | Released | TOYT | CRE | 5VLD077 | JTZMX73E2F0036075 | 04-75007 |
| LAPD | HOBK | 6/10/2008 | 7/22/2008 | Released | TOYT | CAM | 5WC1576 | JT2BG12K1TO342837 | 04-75007 |
| LAPD | HOBK | 6/10/2008 | 7/11/2008 | Released | HOND | CIV | 5FND965 | 1NKKCP01D6STS15109 | 04-75013 |
| LAPD | HOBK | 6/10/2008 | 7/29/2008 | Released | INFI | G20 | 5ZFZ951 | 2HGEH33B2SH505877 | 04-75096 |
| LAPD | HOBK | 6/10/2008 | 7/16/2008 | Released | NISS | SEN | 5VDX504 | 1N4GB32A4NC749069 | 04-75102 |
| LAPD | HOBK | 6/9/2008 | 6/13/2008 | Released | HOND | CIV | 6DEPS14 | JHMEH6162PS015889 | 04-74892 |
| LAPD | HOBK | 6/9/2008 | 7/22/2008 | Released | MITS | MON | 5XVL706 | JA4FJ43E6H013969 | 04-74911 |

1     SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            FOR THE COUNTY OF LOS ANGELES

3
      RICARDO CASTILLO, DAVID      )
4     SANCANDI, LAURENCIO MARIN,   )
      JOSE RODRIGUEZ, EFRIN RUIZ,  )
5     VINCENT SOLTERO, BACILIA     )
      TIRADO, individually and as  )
6     class representatives,       )
                                   )
7           Plaintiffs,            )
                                   )
8        VS.                       )     Case no.
                                   )     BC469942
9     CITY OF MAYWOOD, CITY OF     )
      LONG BEACH, CITY OF          )
10    LOS ANGELES, CITY OF         )
      ESCONDIDO, CITY OF           )
11    RIVERSIDE, and DOES 1-100,   )
                                   )
12                                 )
            Defendants.            )
13    _____)

14

15

16                    Deposition of

17                     Eric Rose

18            Monday, February 10, 2014

19

20

21

22
      Reported by:  Leslie L. Chisum, CSR no. 9682
23

24

25

                                                      1

                INSTANT COURT REPORTING

```
 1        Deposition of Eric Rose, before Leslie L. Chisum, a
 2   Certified Shorthand Reporter for the State of California,
 3   with principal office in the county of Ventura, commencing
 4   at 11:11 a.m., Monday, February 10, 2014, at 3435 Wilshire
 5   Boulevard, Suite 2910, Los Angeles, California.
 6                              *   *   *
 7   APPEARANCES OF COUNSEL:
 8        For the Plaintiffs:
          ROBERT MANN, DONALD W. COOK, ATTORNEYS AT LAW
 9        BY:  DONALD W. COOK, ESQ.
          3435 Wilshire Boulevard, Suite 2910
10        Los Angeles, California 90010
          (213) 252-9444
11
          CYNTHIA ANDERSON-BARKER, ESQ.
12        3435 Wilshire Boulevard, Suite 2910
          Los Angeles, California 90010
13        (213) 381-3246
14        For the Witness:
          STEVEN M. GARBER & ASSOCIATES
15        BY:  STEVEN M. GARBER, ESQ.
          1901 Avenue of the Stars, Suite 1100
16        Los Angeles, California 90067
          (323) 777-8000
17
          For the Defendant City of Los Angeles:
18        CARMEN A. TRUTANICH, CITY ATTORNEY
          BY:  GABRIEL S. DERMER, DEPUTY CITY ATTORNEY
19        200 North Main Street, Room 916
          Los Angeles, California 90012
20        (213) 473-6858
21        For the Defendant City of Long Beach:
          ROBERT E. SHANNON, CITY ATTORNEY
22        BY:  HOWARD D. RUSSELL, ESQ.
          333 West Ocean Boulevard, 11th Floor
23        Long Beach, California 90802
          (562) 570-2200
24

25
```

                                                              2
                        INSTANT COURT REPORTING

```
 1                    I N D E X
 2    EXAMINATION:                                    Page
      Mr. Cook                                        4
 3
 4                  PLAINTIFFS' EXHIBITS
 5    A    Declaration of Donald Cook                 10
 6    B    E-mail from Eric Rose dated 8/1/2013       10
 7    C    Declaration of Eric Rose                   14
 8    D    Deposition Subpoena                        35
 9    E    Untitled document printed from Vehicle     47
           Information Impound Center
10
      F    Vehicle Report CHP 180                     55
11
      G    (No document marked)
12
      H    Los Angeles Official Police Garages 30-Day 81
13         Holds-Days Held-Summary Report
14                  INFORMATION REQUESTED
                        (None)
15
16         QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
                     PAGE         LINE
17                    6           12
                      6           18
18                    6           22
                     86           16
19
20
21
22
23
24
25
```

INSTANT COURT REPORTING

**2/10/14 Rose depo**          **-82-**          **EXHIBIT D**

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 10, 2014
 2                        11:11 A.M.
 3                        --oOo--
 4
 5    MR. COOK:  Recording on.  Today's date is
 6 February 10th, 2014.  It's about 11:12 a.m.  My name is
 7 Donald Cook.  I represent the plaintiffs in Castillo vs.
 8 City of Maywood and a bunch of other cities.  We're here
 9 for the deposition of non party Eric Rose.
10    I'd ask that each person identify themselves for
11 purposes of the video.
12    THE WITNESS:  Eric Rose.
13    MR. GARBER:  Steve Garber.
14    MR. RUSSELL:  Howard Russell.
15    MR. DERMER:  Gabriel Dermer.
16    MS. ANDERSON-BARKER:  Cynthia Anderson-Barker for
17 plaintiffs.
18                        Eric Rose,
19 called as a witness by and on behalf of the Plaintiffs,
20 and having been duly administered the oath, was examined
21 and testified as follows:
22
23                     EXAMINATION
24 BY MR. COOK:
25    Q.  State your name for the reporter's transcript.
```

**2/10/14 Rose depo**            **-83-**            **EXHIBIT D**

```
 1        A.  Eric William Rose.
 2        Q.  You have been deposed before on more than one
 3   occasion?
 4        A.  Yes.
 5        Q.  By whom are you employed?
 6        A.  I'm employed by Englander Knabe & Allen.
 7        Q.  And what's the nature of the business for that
 8   company?
 9        A.  It's a public affairs firm.
10        Q.  What position do you hold with the company?
11        A.  I'm a partner.
12        Q.  What is your relationship to Official Police
13   Garage a.k.a. OPG?
14        A.  I'm the executive director of the association.
15        Q.  How long have you been executive director of
16   OPG?
17        A.  Approximately eight years.
18        Q.  Do you know who your predecessor was?
19        A.  Yes.
20        Q.  Who was your predecessor?
21        A.  Ken Spiker.
22        Q.  Was he also employed by -- I'm sorry.  Your
23   company's name again?
24        A.  Englander Knabe & Allen.  No.
25        Q.  Do you have any plans to retire -- do you have a
```

```
 1  retirement date as executive director?
 2       A.  No.
 3       Q.  So as we sit here today, you don't have any
 4  plans to be leaving that position in the near future; is
 5  that correct?
 6       A.  That's what I just testified to.
 7       Q.  Okay.  And do you receive a salary from OPG?
 8       A.  No.
 9       Q.  Does the company you work for receive payment
10  from OPG?
11       A.  Yes.
12       Q.  And what does OPG pay your company --
13       MR. GARBER:  Objection.
14  BY MR. COOK:
15       Q.  -- for?
16       MR. GARBER:  Privacy.  Instruct him not to answer.
17  BY MR. COOK:
18       Q.  What is the amount of compensation OPG pays the
19  firm?
20       MR. GARBER:  Same objection.  Same instruction.
21  BY MR. COOK:
22       Q.  And has the compensation increased over the
23  years?
24       MR. GARBER:  Do you know how to answer the question?
25       Object vague as to time and assumes it increases, it
```

                                                        6
                    INSTANT COURT REPORTING

1   increased at any time.

2        Do you know how to answer the question?

3        MR. COOK:  I'm sorry.  Did you instruct him not to

4   answer?

5        MR. GARBER:  No.  I was just trying to shed a little

6   light on the question.

7        MR. COOK:  Okay.

8        Q.  Do you recall the question?

9        A.  No.

10       Q.  In the eight years since you've been executive

11   director, has the compensation paid by OPG to your firm

12   increased?

13       A.  No.

14       Q.  What type of organization is OPG?

15       A.  It's a 501(c)(4).

16       Q.  And that's referring to Internal Revenue code

17   section; correct?

18       A.  Yes.

19       Q.  Nonprofit organization; is that right?

20       A.  Yes.

21       Q.  What is the function of OPG?

22       A.  Official police garages tow and store impounded

23   vehicles for the City of Los Angeles.

24       Q.  I'm not sure that you've actually answered the

25   question.  I asked you what the function was of OPG, the

INSTANT COURT REPORTING                              7

**2/10/14 Rose depo**                -86-                **EXHIBIT D**

```
 1  503(c)(4) organization (sic).  I don't think a 503(c)(4)
 2  organization has tow trucks going around towing cars.
 3          So the question is what is the function of OPG, the
 4  503(c)(4) organization, of which you are an executive
 5  director?
 6          A.   The function of the 501(c)(4) is to coordinate
 7  and manage the activities collectively of the designated
 8  official police garages for the city of L.A.
 9          Q.   Who are the members of OPG?
10          A.   There are 18 members.
11          Q.   And the members are what?
12          A.   They're selected by the City of Los Angeles.
13          Q.   So to be a member of OPG, it must be a garage
14  that has a contract with the City of Los Angeles for
15  towing and storing vehicles; is that correct?
16          A.   Yes.
17          Q.   Is it correct then that over the time that
18  you've been executive director that the membership of OPG
19  has changed to the extent a garage drops out and a new
20  garage is put in its place?
21          A.   No.
22          Q.   So it's been the same -- as far as you know, the
23  same garages for the eight years you've been executive
24  director; is that true?
25          A.   Yes.
```

                                                    8
                    INSTANT COURT REPORTING

**2/10/14 Rose depo**                    **-87-**                    **EXHIBIT D**

1  information.

2       Q.  In other words, do you even know what a record

3  is in a database as used in reference to a computer

4  database?

5       A.  I'm not familiar with the terminology you are

6  using.

7       Q.  So you're not familiar with the term record as

8  referred to or when used in relationship to a computer

9  database; is that correct?

10       A.  That's not what I just testified to.

11       Q.  What is your understanding of the term record as

12  used in reference to a computer database?

13       A.  My -- well, my -- my view of that would be

14  information that would be entered into the computer

15  database would make up the record for the individual

16  vehicle.

17       Q.  It's correct that you've never used a

18  spreadsheet program?

19       A.  That's not correct.

20       Q.  Well, when do you have occasion to use a

21  spreadsheet program?

22       A.  I have it for various clients and different

23  functions.

24       Q.  Do you have occasion to use a spreadsheet

25  program for OPG?

INSTANT COURT REPORTING

26

1      A.  I do.
2          Q.  What do you use the spreadsheet program for for
3  OPG?
4          A.  To provide records for -- to the City of
5  Los Angeles when they request records.
6          Q.  Did you create -- by the way, is this using
7  Microsoft Access?  Excuse me.  Microsoft Excel.
8          A.  Yes.
9          Q.  And did you create this spreadsheet file?
10         A.  Be more specific.
11         Q.  Well, do you use a spreadsheet file to provide
12  information to the City of Los Angeles in your capacity as
13  executive director?
14         A.  I do.
15         Q.  Did you create that spreadsheet file?
16         A.  No.
17         Q.  So your predecessor -- withdrawn.
18         Do you know who created it?
19         A.  I do.
20         Q.  Who created it?
21         A.  A computer programmer working for me.
22         Q.  All right.  Does it have drop-down menus?
23         A.  Yes.
24         Q.  Does it have logical fields?
25         A.  I don't understand that term.

```
 1  the 14602.6 --
 2       A.  Yes.
 3       Q.  -- is that correct?
 4       A.  That's correct.
 5       Q.  Okay.  So that VIIC system keeps track in some
 6  manner of the code section under which the vehicle was
 7  seized, doesn't it?
 8       A.  That's correct.
 9       Q.  Do you know how the VIIC system captures that
10  information?
11       A.  I do.
12       Q.  How does it the VIIC system capture the
13  information?
14       A.  An individual Official Police Garage will input
15  the seizure code section into a computer at the time of
16  impound based on what the 180 sheet that they receive from
17  the officer states.
18       Q.  And the individual tow yard will also input,
19  say, the name of the registered owner for the vehicle --
20  isn't that correct -- as reflected on the CHP 180 form;
21  right?
22       A.  Not necessarily, no.
23       Q.  Well, when the vehicle is released to a person,
24  the -- I think you described earlier that the tow yard
25  will input the person's name; isn't that correct?
```

```
 1          A.  That's correct.
 2          Q.  And that information gets uploaded to VIIC; is
 3  that correct?
 4          A.  The information would be captured by VIIC.
 5          Q.  And additional information that's captured by
 6  VIIC would include such things as amount of the storage?
 7          A.  No.
 8          Q.  Don't the member garages have to pay a parking
 9  tax?
10          A.  Yes.
11          Q.  Does the VIIC -- does that information get
12  uploaded to VIIC, the parking tax collected for a stored
13  vehicle, you know, that's released and the person pays for
14  storage charges including the parking taxes?
15          A.  It's calculated.  It's not uploaded.
16          Q.  Okay.  So does VIIC then calculate -- excuse me.
17  Does some system, be it VIIC or some other system,
18  calculate the parking tax for each vehicle?
19          A.  Yes.
20          Q.  And that information, the calculated parking
21  tax, is also associated with, you know, the particular
22  vehicle seized on a particular date and released; is that
23  correct?
24          A.  Not in the manner in which you're suggesting.
25  It's not a push of a button and you can find it.  As you
```

                                                            50
                       INSTANT COURT REPORTING

1          Q.  Do you know what determines whether they make
2     the copy or they don't?
3          A.  It's up to an individual OPG.
4          Q.  And when they get the information on the
5     identity of the person claiming the vehicle, other than
6     making sometimes a copy of the identification, do they
7     make any other record of the identity of the person
8     claiming the vehicle?
9          A.  They -- they would note it I believe -- I'd have
10    to see the 180.  I believe they'd note it on the 180 that
11    is also kept by the OPG.
12         Q.  So they'd make a note on their copy of the 180
13    form that they received from the agency; is that correct?
14         A.  That's correct.  I believe that's correct.  I'd
15    have to see a 180.
16         Q.  I'm handing you what's been marked as Exhibit F.
17    Does that appear to be a copy of a CHP 180 form?
18         A.  It would be.
19         (Whereupon Plaintiffs' Exhibit F was marked
20         for identification.)
21    BY MR. COOK:
22         Q.  Looking at the 180 form, can you indicate where
23    on the 180 form that the member garage may make a record
24    of the person who's claiming the vehicle?
25         A.  Yes, I can.

INSTANT COURT REPORTING
                                                      55

**2/10/14 Rose depo**              **-92-**              **EXHIBIT D**

```
 1        Q.  Since it's -- with regard to five digits, do you
 2   know if there's any particular significance as to how that
 3   number is generated?
 4        A.  No.  It's random.
 5        Q.  Do you know how VIIC uses the log number?
 6        A.  Can you be more specific?
 7        Q.  Well, on the assumption that a calculated number
 8   or identifier, whatever the program generates is being
 9   done for some purpose, to accomplish some task --
10        A.  Uh-huh.
11        Q.  -- whether internal to the program --
12        A.  Right.
13        Q.  -- or of benefit to the end user.  That's where
14   I'm coming from.
15        A.  Okay.
16        Q.  You know, what's the purpose of the log number
17   if you know?
18        A.  I do.
19        Q.  And what is the purpose?
20        A.  Purpose of the log number is so that when the
21   city of L.A. wants to pull records and they randomly audit
22   an OPG, they can tell a specific OPG to go pull the log
23   number and provide a log number because, as you're aware,
24   not all vehicles have license numbers or VINs that are
25   readable.  So the log number is what the city will go back
```

57

INSTANT COURT REPORTING

**2/10/14 Rose depo**                    **-93-**                    **EXHIBIT D**

1  and ask an OPG can you pull the records.

2      Q.  The city asks OPG to pull log numbers?

3      A.  No.  That's not what I just said.

4      Q.  I'm asking.

5      A.  Yeah.

6      Q.  You've answered the question.

7      A.  Yeah.

8      Q.  In what form does the request from the city --

9  in what form does it take?

10     A.  Generally a phone call from someone saying can

11  you pull a file -- a 180, any information that the OPG may

12  have on a particular log number.

13     Q.  So the representative from the city will call --

14  sometimes may call OPG and ask give us any information you

15  have on a vehicle seizure under a particular log number?

16     A.  That's not what I said.

17     Q.  Would you read back his previous answer, please.

18     (Record read.)

19  BY MR. COOK:

20     Q.  Now, who was the person that you were referring

21  to in that answer?

22     A.  It could be any authorized police officer who

23  has access to the VIIC system.  Generally the detectives

24  at the Police Commission.

25     Q.  Who has access to the VIIC system?  Obviously

INSTANT COURT REPORTING

**2/10/14 Rose depo**            **-94-**            **EXHIBIT D**

```
 1   OPG does.  Obviously member garages do to the extent they
 2   can obviously upload data.  Who else has access to the
 3   VIIC system?
 4          A.  Can you be more specific by access?
 5          Q.  Retrieving information.
 6          A.  The general public.
 7          Q.  And is it through a website?
 8          A.  It is.
 9          Q.  Linked on the OPG?
10          A.  Yes.
11          Q.  As far as the access that -- did you say the
12   Police Commission has?
13          A.  Yes.
14          Q.  Is their access coextensive with the general
15   public?
16          A.  No.
17          Q.  They have greater access; is that true?
18          A.  They do.
19          Q.  What kind of access do they have that the
20   general public does not have?
21          A.  They have access to see all the details that you
22   see here plus the Police Commission can pull financial
23   data on any -- from any OPG.
24          Q.  All right.  So the VIIC system can provide to
25   the Police Commission financial data for a particular
```

                                                    59
                    INSTANT COURT REPORTING

**2/10/14 Rose depo**            **-95-**            **EXHIBIT D**

1   vehicle seizure; is that correct?
2         A.  No.
3         Q.  What financial data were you referring to that
4   the Police Commission can retrieve via VIIC?
5         A.  They can see overall -- they can see individual
6   OPG's remittance reports.
7         Q.  The remittance reports in -- the remittance
8   data, do you know how that is inputted into OPG -- into
9   VIIC?
10        A.  No.
11        Q.  Does OPG, you know, the 501(c)(4) organization,
12  is it responsible for inputting that financial data into
13  VIIC?
14        A.  No.
15        Q.  That financial data is inputted by the member
16  garages; is that true?
17        A.  That's not correct.
18        Q.  Okay.  Who inputs the financial data into VIIC?
19        A.  It's -- no one.  It's a programming issue.  So
20  based upon date in, date out, and information, it can
21  calculate --
22        Q.  Okay.
23        A.  -- moneys.
24        Q.  All right.  Okay.  It's calculated data based
25  upon date vehicle seized, date vehicle released, that sort

                                        60
              INSTANT COURT REPORTING

**2/10/14 Rose depo**          **-96-**          **EXHIBIT D**

1  of thing?

2      A.  Yes.

3      Q.  Correct?

4      And the system can calculate the financial data --

5  meaning storage fees, parking tax, and administrative

6  fees -- for each vehicle that's been recorded in VIIC as

7  being seized; is that correct?

8      A.  It's possible.

9      Q.  You say it's possible.  Does that mean that it's

10  something that maybe you don't deal with that much so

11  you're not sure one way or the other?

12      A.  It's not how the system works as I've just

13  described.  It's an aggregate.  It doesn't look at

14  individual vehicles, doesn't give you a report on

15  individual vehicles.  It gives the summaries in monthly

16  reports.

17      Q.  When the Police Commission wants to see all

18  information that VIIC has for a particular vehicle

19  seizure, what type of information can the Police

20  Commission see beyond the -- you know, agency, division,

21  et cetera that we see here on Exhibit E?

22      A.  They can see everything that is in the VIIC

23  system.

24      Q.  And -- okay.  What else is there in the VIIC

25  system with regard to particular vehicle seizures beyond

```
 1        A.  Right.
 2        Q.  -- out of this VIIC system.
 3        A.  Right.
 4        Q.  But the VIIC system is maintained by OPG;
 5   correct?
 6        A.  That's correct.
 7        Q.  So it sounds like to me is that there is
 8   information -- either it's calculated data or it's data
 9   that's inputted or a combination thereof -- that may be
10   available to the Police Commission, but you don't know?
11        A.  That's not correct.  I don't know what the
12   Police Commission looks at, and you'd have to ask the
13   Police Commission what they look at on the VIIC system.
14        Q.  All right.  Other than what they look at, my
15   question is what other information is there in VIIC for
16   the Police Commission to look at as to a particular police
17   vehicle seizure and release beyond what's recorded on
18   Exhibit E?
19        A.  Nothing to my knowledge.
20        Q.  So is it correct that, to the best of your
21   knowledge, the only thing the Police Commission can see
22   about a particular vehicle seizure using the VIIC system
23   is what's recorded on Exhibit E?  Is that true?
24        A.  That's not correct.
25        Q.  What other information about a particular
```

**2/10/14 Rose depo**                    **-98-**                    **EXHIBIT D**

1  vehicle seizure can the Police Commission view beyond

2  what's reflected on Exhibit E?  And I'm referring to the

3  category --

4       A.  Okay.

5       Q.  -- information?

6       A.  Okay.  Yeah.  It's very simple as we've

7  explained in the Declaration.  The Police Commission could

8  then take a log number and access the Laserfiche system

9  that is a scanned system of the vehicle.  The Laserfiche

10 system is run by the OPG, and the Police Commission has

11 access to it.  So if they wanted to find out additional

12 information about a vehicle, they would go and look at the

13 180.

14       Q.  The microfiche system is --

15       A.  You're dating yourself.

16       Q.  What?

17       A.  You're dating yourself.

18       MR. GARBER:  Laserfiche.

19       MR. COOK:  Laserfiche.

20       Q.  Laserfiche, is that part of VIIC, or is it a

21 separate system?

22       A.  It's a separate system.

23       Q.  Does it have a name?

24       A.  Laserfiche.

25       Q.  Laserfiche.  Just that.  And it's operated and

INSTANT COURT REPORTING

**2/10/14 Rose depo**                    **-99-**                    **EXHIBIT D**

```
 1   maintained by OPG?
 2        A.   Laserfiche is a very large company that is a
 3   data storage company.
 4        Q.   All right.
 5        A.   And we have a license to utilize the Laserfiche
 6   to scan documents and store documents.
 7        Q.   It's actually being stored on their server,
 8   their media; is that correct to the best of your
 9   knowledge?
10        A.   That's correct.
11        Q.   And the log number cross references to the
12   records in Laserfiche?
13        A.   That's correct.
14        Q.   And it's the log number that connects the
15   entries in VIIC to a corresponding record kept in
16   Laserfiche?
17        A.   That's correct.
18        Q.   Is that correct?
19        And is it true that in order to -- well, withdrawn.
20        Laserfiche, that has the scanned copies of the
21   documentation for a particular vehicle seizure; is that
22   true?
23        A.   Yes.
24        Q.   I take it from time to time you sit at a
25   computer terminal and you access VIIC; is that correct?
```

```
 1     A.  That would be correct.
 2         Q.  Other than having the log number, is there a way
 3   of accessing records in Laserfiche concerning LAPD 14602.6
 4   impounds?
 5         A.  No.
 6         Q.  So is it correct that the basic process is, when
 7   you want to access the documentation that's been saved,
 8   scanned, or whatever for a particular vehicle impound,
 9   you're going to use VIIC to get to your log number and
10   then from your log number go to Laserfiche?
11         A.  Yes.  You took us an hour and a half to get
12   there.
13         Q.  Have you ever --
14         A.  Can we take a break for one second?
15         MR. GARBER:  We can take a break for more than one
16   second.
17         MR. COOK:  Sure.  Off the record.
18         (Whereupon a recess was taken.)
19         MR. COOK:  Recording back on.
20         Q.  First of all, here's a witness fee check for
21   $57.50 witness fees plus mileage.
22         THE WITNESS:  I won't spend it all in one place.
23   BY MR. COOK:
24         Q.  Is it correct, Mr. Rose, that someone using
25   Laserfiche, you've got the log number, you call up on a
```

**2/10/14 Rose depo**             **-101-**                    **EXHIBIT D**

```
 1  number?
 2        A.  No.
 3        Q.  The other information kept in Laserfiche is
 4  basically the scanned documentation pertaining to the
 5  vehicle seizure; is that correct?
 6        A.  Right.  The image of the document.
 7        Q.  And the documents that are scanned in the
 8  Laserfiche would include the CHP 180 obviously?
 9        A.  That's correct.
10        Q.  Any other documents to your knowledge are
11  scanned into the system pertaining to a particular vehicle
12  seizure?
13        A.  It's the only required document to be scanned.
14        Q.  Okay.  Does that mean there may be other
15  documents that were scanned --
16        A.  Yes.
17        Q.  -- into the system?
18        A.  Yes.
19        Q.  For example, you mentioned earlier that,
20  depending upon the particular garage, maybe there's a copy
21  made of the identification for the person who retrieves
22  the vehicle.
23        A.  That's correct.
24        Q.  Would -- assuming that documentation was copied,
25  would that be scanned into laser tag?
```

INSTANT COURT REPORTING

**2/10/14 Rose depo**

**EXHIBIT D**

```
 1        A.  "Laser tag"?
 2        Q.  I'm sorry.  Laserfiche.
 3        A.  It could be.  It's not required.
 4        Q.  All right.  Again, it just depends upon the
 5   practices of the individual garages; is that true?
 6        A.  That's correct.
 7        Q.  The individual garages, they've got scanning
 8   equipment, et cetera, the hardware so they can scan
 9   documents directly into laser --
10        A.  Laserfiche.
11        Q.  -- Laserfiche; is that correct?
12        A.  That's correct.
13        Q.  Do you know what steps the individual garages
14   have to take to ensure that what they're scanning into
15   Laserfiche matches up or links with the data in VIIC?
16        A.  I do.
17        Q.  And what do they have to do?
18        A.  They have to ensure that they have a log number
19   as they upload the information to Laserfiche.
20        Q.  Okay.  So is it the case that first the data is
21   created in VIIC, a log number is generated?
22        A.  That's correct.
23        Q.  And then the garage will then use that log
24   number when they upload the documentation into Laserfiche?
25        A.  That's correct.
```

INSTANT COURT REPORTING

70

**2/10/14 Rose depo**                    **-103-**                    **EXHIBIT D**

# CONTRACT SUMMARY SHEET

TO:      THE OFFICE OF THE CITY CLERK, COUNCIL/PUBLIC SERVICES DIVISION, INDEX SECTION

FROM: Police Commisscon / Det. DeBellis

QUESTIONS CALL: (213) 972-0827

CONTRACT NO.: C-106443

CONTRACTOR NAME: A.T.S. Northeast Tow, Inc.

TERM OF CONTRACT: APRIL 15, 2004 THRU: APRIL 14, 2009
(5 years)

TOTAL AMOUNT:

— Heavy Duty —
PURPOSE OF CONTRACT: Towing and Storage provider for the City's Police Central Bureau.

**OPG Contract**      **-104-**      **EXHIBIT E**

**Title:**      **Official Police Garage**
                     **Heavy-Duty Towing and Storage**
                     **Services Agreement**

                     **Los Angeles Police Department**
                     **Central Bureau**

**Contractor:**    **A.T.S. Northeast Tow, Inc.**

**Agreement Number** C-106443

## TABLE OF CONTENTS

1.0   PARTIES TO THE AGREEMENT, REPRESENTATIVES, AND NOTICES .........2
    1.1   Parties to the Agreement ......................................................... 2
    1.2   Representatives of the Parties ................................................. 2
    1.3   Notices .................................................................................... 3

2.0   TERM OF AGREEMENT ..................................................................... 3

3.0   GENERAL SCOPE OF SERVICES ...................................................... 3
    3.1   General Duties ........................................................................ 3
    3.2   Geographic Area of Assignment ............................................. 4
    3.3   Hours of Operation .................................................................. 6
    3.4   Maximum Response Time ....................................................... 7
    3.5   Priority of Requests ................................................................ 7
    3.6   Response to Calls ................................................................... 8
    3.7   Compliance with Laws, Rules and Regulations ....................... 8
    3.8   Demeanor and Conduct .......................................................... 9
    3.9   Timekeeping .......................................................................... 10
    3.10  Towing of City Owned Vehicles ............................................. 10

4.0   FACILITY REQUIREMENTS ............................................................... 11
    4.1   General Requirements ........................................................... 11
    4.2   Business Office and Primary Storage Facility ........................ 11
    4.3   Primary Storage Facility – Investigative Hold Area and Evidentiary Hold Vehicles ..................................................... 12
    4.4   Secondary Storage Facilities ................................................. 14
    4.5   Satellite Secondary Storage Facilities ................................... 15
    4.6   Statutory Hold Vehicles ......................................................... 16

5.0   STAFFING AND EQUIPMENT REQUIREMENTS ............................... 17
    5.1   Staffing Requirements ........................................................... 17
    5.2   Equipment Requirements ....................................................... 18
    5.3   Communications and Computer Equipment ........................... 19
    5.4   Equipment at OPG's Expense ................................................ 20

6.0   PROTECTION AND HANDLING OF VEHICLES, VEHICLE PARTS AND ACCESSORIES, AND UNATTACHED PERSONAL PROPERTY ............. 20
    6.1   Impound Reports ................................................................... 20
    6.2   Inventory at Location Vehicle Was Impounded ...................... 20
    6.3   Protection and Handling of Vehicles and Vehicles Parts and Accessories ................................................................... 20
    6.4   Protection and Handling of Unattached Personal Property ..... 22

| | | | |
|---|---|---|---|
| **7.0** | **LIENS** | | **23** |
| | 7.1 | Probable Cause | 23 |
| | 7.2 | Liens | 23 |
| | | | |
| **8.0** | **ADDITIONAL POSTING REQUIREMENTS** | | **24** |
| | 8.1 | Business Identification | 24 |
| | 8.2 | Fees and Rates | 24 |
| | 8.3 | Notice Regarding Vehicle Code Section 22850.3 | 24 |
| | 8.4 | Impound Hearings | 24 |
| | | | |
| **9.0** | **REPORTING REQUIREMENTS** | | **25** |
| | 9.1 | Weekly Reports | 25 |
| | 9.2 | Monthly Reports | 25 |
| | | | |
| **10.0** | **FEES AND RATES** | | **26** |
| | 10.1 | General Requirements Regarding Fees and Rates | 26 |
| | 10.2 | Fees and Rates – Removal (Towing) | 27 |
| | 10.3 | Fees and Rates – Storage | 27 |
| | 10.4 | After-Hours Release Charges Prohibited | 28 |
| | 10.5 | Vehicle Release Fee | 28 |
| | 10.6 | Parking Occupancy Tax | 28 |
| | 10.7 | Lien Sale Vehicles | 29 |
| | 10.8 | Forfeited Vehicles | 29 |
| | 10.9 | Gross Receipts Fee | 29 |
| | | | |
| **11.0** | **CHANGES IN OWNERSHIP AND CONFLICTS OF INTEREST** | | **30** |
| | 11.1 | Changes in Ownership | 30 |
| | 11.2 | Conflicts of Interest | 30 |
| | | | |
| **12.0** | **AMENDMENTS AND CHANGES TO THE AGREEMENT** | | **30** |
| | | | |
| **13.0** | **DISCIPLINE, SUSPENSION AND TERMINATION** | | **30** |
| | 13.1 | Discipline and Suspension | 30 |
| | 13.2 | Termination | 31 |
| | | | |
| **14.0** | **STANDARD PROVISIONS FOR CITY CONTRACTS** | | **31** |
| | 14.1 | Standard Provisions for City Contracts | 31 |
| | 14.2 | Insurance | 31 |
| | 14.3 | Retention of Records, Audits and Inspections | 31 |
| | 14.4 | No Third Party Beneficiaries | 32 |
| | | | |
| **15.0** | **COMPLETE AGREEMENT** | | **33** |

*City of Los Angeles (LAPD) – A.T.S. Northeast Tow, Inc.*  
*Official Police Garage Agreement – Heavy Duty - Central Bureau*  
**OPG Contract**

*Page ii*

**EXHIBIT E**

-107-

Board within ten (10) days of receipt of notice of the complaint.
The Contractor's response to the Board must include details about
the result of its investigation, and, if the complaint was found to be
true, what measures the Contractor took to prevent similar
situations and resulting complaints from occurring in the future.

### 3.9    Timekeeping

The OPG must record the following times pertaining requests for tow
service by authorized City employees by means of a computer or time
stamp:

1)    The time that the request for tow service is received;

2)    The time that a tow unit is assigned the call for service and
given the location of the requested service;

3)    The time that a tow unit arrives at the location of requested
service;

4)    The time that the tow unit leaves the location of requested
service with the vehicle in tow.

5)    The time that a tow unit arrives at the OPG facility with the
vehicle;

6)    The time that vehicle parts or accessories, or unattached
personal property is removed from an impounded vehicle;
and

7)    The time that a vehicle is removed from the Investigative
Hold Area, pursuant to Section 4.3 below.

### 3.10    Towing of City Owned Vehicles

The OPG must tow City owned vehicles without charge to the City as
follows:

- Los Angeles Police Department vehicles within the OPG's
geographic area of assignment, provided that a tow truck from
LAPD's Motor Transport Division is unavailable or unable to
respond within thirty (30) minutes.

- City Department of Transportation vehicles within the OPG's
geographic area of assignment, provided that a tow truck from the

*City of Los Angeles (LAPD) – A.T.S. Northeast Tow, Inc.*
*Official Police Garage Agreement – Heavy Duty - Central Bureau*
**OPG Contract**
Page 10
-108-
**EXHIBIT E**

City's Fleet Services Division is not available or unable to respond
within thirty (30) minutes.

## 4.0    FACILITY REQUIREMENTS

### 4.1    General Requirements

a.    All storage facilities must comply with the zoning requirements set
forth in Section 12.17.6 of the Los Angeles Municipal Code, and all
other local, state and federal laws and regulations applicable to the
proposed use.

b.    All storage facilities must have landscaping that conforms to
general aesthetic and environmental concerns.

c.    All storage facilities must be inspected and approved by the Board
or its designee prior to use by the OPG.

d.    All towed and impounded vehicles must be maintained within the
confines of the OPG storage facility and not upon the public
streets, sidewalks, or public property.

e.    The OPG must maintain a primary place of business and storage
facilities, as specified in this Agreement, throughout the term of the
Agreement.  The OPG must notify LAPD in writing at least ninety
(90) days prior to the anticipated expiration or termination of a
lease, or initiation of any eviction proceeding relating to the OPG's
primary place of business or any of its storage facilities, or any
other anticipated loss of ownership, possession or control of such
place of business or storage facility.  The notice must also include
documentation evidencing that the OPG will acquire a substitute
site that complies with this Agreement in order to continue
performing under this Agreement without interruption.

### 4.2    Business Office and Primary Storage Facility

a.    The OPG must maintain a primary place of business located within
the geographic area of assignment, except as provided for under
Section 3.2(b) above.  The primary place of business must include
an adequate business office and a Primary Storage Facility
adjacent to the business office.

b.    The Primary Storage Facility must be enclosed and have a
sufficient number of spaces and be capable of accommodating the
storage of the following vehicles:

otherwise failed to perform satisfactorily under this Agreement, after written notice and hearing by the Board or its designee.

### 13.2 Termination

a.  This Agreement may be terminated pursuant to Section 3.2 of this Agreement.

b.  The Board or its designee may terminate this Agreement at any time for cause after written notice and hearing by the Board or its designee. The Board or its designee will provide the OPG with thirty (30 days) written notice of the termination. Such notice will specify the effective date of the termination. In the event of such termination for cause, the City may avail itself of all rights and remedies at law or equity.

## 14.0 STANDARD PROVISIONS FOR CITY CONTRACTS

### 14.1 Standard Provision for City Contracts

The OPG will comply with the *Standard Provisions for City Contracts* (Rev. October 2003), attached hereto as Attachment B and incorporated herein by this reference.

### 14.2 Insurance

The OPG must at all times during the term of this agreement maintain the types and amounts of insurance specified in Attachment B – *Standard Provisions for City Contracts*. Said insurance must protect the OPG and the City against any and all damages resulting from the OPG's activities as an official police garage.

### 14.3 Retention of Records, Audits and Inspections

a.  The OPG must retain all records generated or kept by the OPG in performance of this Agreement in an accessible location and for the period prescribed by law for that particular record. If a period of retention for a particular record is not otherwise prescribed by law, the OPG must retain the record pursuant to Section PSC-22 of the *Standard Provisions for City Contracts* (Attachment B).

b.  All relevant OPG records, equipment and storage facilities are subject to periodic inspection by the Board or its designee, or other concerned City personnel, to determine if the OPG is in compliance with applicable laws, rules and regulations and with the

requirements of this Agreement, without notice, twenty-four (24) hours a day, except as otherwise specified below in Subsection (c).

c.      The OPG must make available for examination or audit by any representative of the City or the Board, all data and records, including computer data files, related to the towing or storage services provided under this Agreement (collectively referred to the "Essential Records"). Essential Records must be made available without notice, twenty-four (24) hours a day, and as often as the City may deem necessary.

The OPG must make available for examination or audit by any representative of the City or Board, all other records of the OPG relating to all matters covered by this Agreement, including, but not limited to receipts, personnel files, and payroll and accounting data (collectively referred to as "Supplemental Records"). Supplemental Records must be made available as soon as possible during normal business hours upon request made to the OPG's management staff.

The records specified herein must be made available at the OPG's primary place of business within the geographic area of assignment. Nothing herein shall limit access to records by law enforcement personnel as provided for in Section 3.3(d) of this Agreement.

d.      The OPG and its employees must not interfere with, prevent, or refuse to permit concerned law enforcement personnel or representatives of the Board or the City to make an examination or inspection of any premises maintained by the OPG in the course of its business, for the purpose of determining whether the OPG is complying with all applicable laws, rules and regulations and with the requirements of this Agreement.

e.      No person shall interfere with, prevent, or refuse to permit concerned law enforcement personnel or representatives of the Board or City to make an examination, inspection or copy of any record kept by the OPG. The OPG must permit said law enforcement personnel or representatives of the Board or City to make copies of business records at the OPG's place of business, or to remove business records for the purpose of reproduction.

## 14.4   No Third Party Beneficiaries

This Agreement does not create or confer any third party rights, and as such, there are no third party beneficiaries under this Agreement.

# CONTRACT SUMMARY SHEET

TO:   THE OFFICE OF THE CITY CLERK,
      COUNCIL/PUBLIC SERVICES DIVISION        DATE: June 8, 2010
      ROOM 395, CITY HALL

FROM (DEPARTMENT): Los Angeles Police Department

CONTACT PERSON: Det. Ben Jones            PHONE: 213-996-1275

CONTRACT NO.: C-106443            COUNCIL FILE NO.: CF 08-418-S4

ADOPTED BY COUNCIL: 05-26-10
                    DATE

APPROVED BY BPW: _____
                    DATE

☐ NEW CONTRACT
☑ AMENDMENT NO. 1
☐ ADDENDUM NO. ___
☐ SUPPLEMENTAL NO. ___
☐ CHANGE ORDER NO. ___

CONTRACTOR NAME: A.T.S. Northeast Tow, Inc.

TERM OF CONTRACT: 10-14-09        THROUGH: 04-13-14

TOTAL AMOUNT: $0.00

PURPOSE OF CONTRACT:

Police towing and storage services as an Official Police Garage for
OPG Service Area: 11

*NOTE:  CONTRACTS ARE PUBLIC RECORDS - SCANNED AND UPLOADED TO THE INTERNET*

**Amendment to Contract**            -112-            **EXHIBIT E**

## FIRST AMENDMENT TO AGREEMENT NO. C-106443
### BETWEEN
### THE CITY OF LOS ANGELES
### AND A. T. S. NORTHEAST TOW, INC.
### FOR
### POLICE TOWING AND STORAGE SERVICES
### AS AN "OFFICIAL POLICE GARAGE"

**THIS FIRST AMENDMENT** to Agreement No. C-106443 between the City of Los Angeles, a municipal corporation (hereinafter referred to as "City"), acting by and through the Board of Police Commissioners (hereinafter referred to as "Board"), and A. T. S. Northeast Tow, Inc., a California corporation (hereinafter referred to as "Contractor") is entered into with reference to the following:

**WHEREAS,** the City issued a Request for Proposals for towing and storage services as an Official Police Garage (hereinafter referred to as "OPG"); and

**WHEREAS,** after receipt and evaluation of proposals, the City Council approved the Board's recommendation to award the contract to Contractor as the most advantageous to the City of Los Angeles; and

**WHEREAS,** the City and the Contractor entered into Agreement No. C-106443 to provide OPG services to the City on an as-needed basis for a term of five (5) years with the option to extend for an additional five (5) year period; and

**WHEREAS,** the City requires the continued OPG services of the Contractor and would like to exercise the option to extend the Agreement for an additional five (5) year period; and

**WHEREAS,** on May 26, 2010, the Los Angeles City Council approved the exercise of the option to extend the term of Agreement No. C-106443 for an additional five (5) years; and

**WHEREAS,** the term of Agreement No. C-106443 expired on October 14, 2009; and

**WHEREAS,** both parties have agreed to extend the term of said Agreement to April 13, 2014;

**NOW THEREFORE, the parties hereby agree to amend Agreement No. C-106443 as follows:**

    1.  **ARTICLE 2.0. TERM OF AGREEMENT is hereby amended to add the following:**

First Amendment to Agreement No. C-106443
A. T. S. Northeast Tow, Inc.(Official Police Garage Services)
**Amendment to Contract**

Page 1

**-113-**

**EXHIBIT E**

The term of this Agreement is extended to April 13, 2014, subject to the termination provisions herein. Either party may give notice to terminate on or before the end of the term.

**2. ARTICLE 3.0 GENERAL SCOPE OF SERVICES is hereby amended to modify ARTICLES 3.2. and 3.2.a to read as follows:**

**ARTICLE 3.2  Service Area of Assignment – Service Area No. Central Bureau**

a.    The Contractor will operate as the OPG for Service Area No. Central Bureau of the City, which is depicted in the map in *Los Angeles City Municipal Code section 80.77.4.B.1,* which shall replace the map constituting Attachment A of Agreement No. C-106443, and is incorporated by reference herein as Attachment A.

**3. ARTICLE 3.0 GENERAL SCOPE OF SERVICES is hereby amended to delete Articles 3.2.b through 3.2.g.**

**4. ARTICLE 3.0 GENERAL SCOPE OF SERVICES is hereby amended to modify ARTICLE 3.10 and add ARTICLE 3.11.**

**ARTICLE 3.10 Towing of City Owned Vehicles**

The Contractor will be required to tow and store designated City-owned emergency vehicles in need of Standard Duty Towing and/or Storage without charge to the City within the Contractor's assigned service area of responsibility.

**ARTICLE 3.11. Vehicle Holds at No Charge to the Police Department or the Properly Interested Person**

The Police Department may require Contractor to hold a vehicle for 48 hours at no charge while the Department or an agent of the Department processes evidence from the vehicle. Upon the termination of 48 hours for evidence processing, the properly interested person shall have the following 24 hours to claim the vehicle at no charge, and without incurring any storage fees. The daily storage rate shall be applied at the expiration of the 24-hour claiming period.

**5. ARTICLE 7.0 LIENS is amended to add ARTICLE 7.1.a to read as follows:**

**ARTICLE 7.1.a   Rates Reduced for Absence of Probable Cause**

If an authorized City employee directs a vehicle to be impounded, and it is later determined at a post-storage impound hearing that no probable

cause for the impound existed, the City of Los Angeles will pay one-half of the basic towing rate and one-half of the daily storage rate. No other fees shall be imposed.

**6.  ARTICLE 9.0 REPORTING REQUIREMENTS is amended to add ARTICLE 9.3 and 9.4 to read as follows:**

**ARTICLE 9.3 Vehicle Impound Information Center**

If the Contractor is an active member of the Official Police Garage Association of Los Angeles (hereinafter referred to as "OPGA"), the Contractor shall provide timely information to the OPGA Vehicle Impound Information Center (hereinafter referred to as "VIIC") database maintained by the OPGA. If the Contractor is not an active member of the OPGA, the Contractor shall, independently and at the Contractor's expense, provide all of the same systems and services the OPGA provides its active members and the public to locate vehicles impounded by an OPG in the City of Los Angeles and determine the fees or liens chargeable for towing and storage.

**ARTICLE 9.4 Document Control System**

If the Contractor is an active member of the OPGA, the Contractor shall participate in the OPGA Document Control System maintained by the OPGA. If the Contractor is not an active member of the OPGA, the Contractor shall, independently and at the Contractor's expense, maintain a Document Control system acceptable to the City and provide all of the same systems and services the OPGA Document Control system provides the City and the public.

**7.  ARTICLE 14.0 STANDARD PROVISIONS FOR CITY CONTRACTS is amended to modify ARTICLE 14.1 to read as follows:**

**ARTICLE 14.1 Standard Provisions for City Contracts**

The Contractor will comply with the *Standard Provisions for City Contracts* (Rev. **3/09**), attached hereto as Attachment B and incorporated herein by this reference.

**8.  SERVICE AREA ASSIGNMENT:**  The Agreement is further amended to revise throughout the Agreement any reference to "geographic area" by deleting the term "geographic area" and substituting the term "service area."

First Amendment to Agreement No. C-106443
A. T. S. Northeast Tow, Inc.(Official Police Garage Services)
**Amendment to Contract**

Page 3

**-115-**

**EXHIBIT E**

**9**. **RATIFICATION CLAUSE:** If Contractor's services were required prior to the execution of this Amendment, and services were performed in accordance with the terms and conditions of this Amendment, they are hereby ratified.

**10.** Except as amended herein, all other terms and conditions of Agreement No. C-106443 shall remain in full force and effect.

**[Signature page follows]**

First Amendment to Agreement <sup>No.</sup> C-106443
A. T. S. Northeast Tow, Inc.(Official Police Garage Services)
**Amendment to Contract**                    **-116-**

Page 4

**EXHIBIT E**

**IN WITNESS THEREOF,** the parties hereto have caused this agreement to be executed by their respective duly authorized representatives.

CITY OF LOS ANGELES

By: _____

    **JOHN MACK**
    **President**
    **Board of Police Commissioners**

Date: _____JUN 0 8 2010_____

APPROVED AS TO FORM:
**Carmen A. Trutanich City Attorney**

By: _____

    **Terry Martin Brown**
    **Assistant City Attorney**

Date: _June 7, 2010_

ATTEST:
**June Lagmay, City Clerk**

By: _____

    **Deputy City Clerk**

Date: _____6-8-10_____

A. T. S. Northeast Tow, Inc.

By: _____

    **Arthur Mercer**
    **President**

Date: _6/7/10_

A. T. S. Northeast Tow, Inc.

By: _____

    **Dolores Mercer**
    **Vice-President**

Date: _6-7-10_

**City Business License Number:** 0000235286-0001-8

**IRS Federal Tax ID Number:** 95-4378464

**City Agreement Number:** <u>C-106443</u>

First Amendment to Agreement No. C-106443
A. T. S. Northeast Tow, Inc.(Official Police Garage Services)
**Amendment to Contract**

Page 5

-117-

**EXHIBIT E**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


LEONARDO GONZALEZ-TZITA,   ) CASE NO: 2:16-CV-00194-FMO(Ex)
                               )
               Plaintiff,   )         CIVIL
                               )
   vs.                    )   Los Angeles, California
                               )
CITY OF LOS ANGELES, ET AL,   )   Friday, August 4, 2017
                               )
            Defendants.   )   (9:34 a.m. to 11:05 a.m.)


HEARING RE: PLAINTIFF'S MOTION TO COMPEL
(A) FURTHER RESPONSES TO REQUESTS FOR PRODUCTION
AND (B) COMPLIANCE WITH SUBPOENA DUCES TECUM

BEFORE THE HONORABLE CHARLES F. EICK,
UNITED STATES MAGISTRATE JUDGE


<u>APPEARANCES</u>:

For Plaintiff:         DONALD W. COOK, ESQ.
                      3435 Wilshire Blvd., Suite 2910
                      Los Angeles, CA 90010

For Defendants:       GABRIEL S. DERMER, ESQ.
                      Office of the City Attorney
                      City Hall East, Room 916
                      200 N. Main St., 9th Floor
                      Los Angeles, CA 90012

                      STEVE GARBER, ESQ.

Court Reporter:       Recorded; CourtSmart

Courtroom Deputy:     Stacey Pierson

Transcribed by:       Exceptional Reporting Services, Inc.
                      P.O. Box 18668
                      Corpus Christi, TX 78480-8668
                      361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          **Los Angeles, California; Friday, August 4, 2017; 9:34 a.m.**

2                          **(Call to Order)**

3          **THE CLERK:**  Calling 2:16-CV-194-FMO(Ex), Leonardo

4    Gonzalez-Tzita vs. the City Los Angeles, et al.  Appearances,

5    please.

6          **MR. COOK:**  Good morning, Your Honor, Donald Cook for

7    Plaintiffs and moving parties.

8          **THE COURT:**  Thank you.

9          **MR. DERMER:**  Good morning, Your Honor, Gabriel Dermer

10   for the defendant City of Los Angeles.

11         **THE COURT:**  Thank you.

12         **MR. GARBER:**  Good morning, Your Honor, Steve Garber

13   appearing on behalf of nonparty Official Police Garage

14   Association.

15         **THE COURT:**  Thank you.  This matter is before the

16   Court for a hearing on Plaintiff's motion to compel nonparty

17   witness OPGLA and Defendant City of Los Angeles to produce

18   documents.  I've read all of the papers filed in connection

19   with the motion, and I'm prepared to hear argument first for

20   the moving party.  Mr. Cook.

21         **MR. COOK:**  The only substantive dispute here really

22   are these log numbers.

23         **THE COURT:**  You say you need the log numbers to count

24   the putative class members and to itemize their

25   out-of-pocket expenses; is that right?

24

1          THE COURT:  The log numbers that are at issue in this

2     motion are log numbers generated by OPGLA; is that correct?

3          MR. GARBER:  That is correct, Your Honor.  And the

4     log numbers simply help OPGLA and the individual OPGs track

5     information in another system called Laserfiche.

6          THE COURT:  So those log numbers themselves can't

7     possibly implicate the DPPA, can they?

8          MR. GARBER:  I don't think it would, Your Honor.  But

9     the question then is what do you do with the log numbers.  I --

10         THE COURT:  Much of this motion is really arguing a

11     motion that's not yet before the Court, isn't it?

12         MR. GARBER:  No, I don't think so, Your Honor,

13     because you heard --

14         THE COURT:  Well, much of the motion argues that

15     these log numbers that were generated by the association you

16     represent are privileged.  They're not privileged.  They have

17     nothing to do with the DMV.  They have nothing to do the DPPA,

18     which you argue.  They have nothing to do with the DMV

19     regulation, which you argue.  So as far as this motion is

20     concerned, much of what's in the papers is irrelevant.

21         MR. GARBER:  I hear what you're saying, Your Honor,

22     and I think that I agree with some of it, that DPPA would not

23     be implicated with the exposure of log numbers, and that those

24     log numbers do not come from the Department of Motor Vehicles.

25     But the part that I would disagree with is the reason stated by

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>September 1, 2017</u>

          Signed                                         Dated


                    *TONI HUDSON, TRANSCRIBER*

# STEVEN M. GARBER & ASSOCIATES

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

24025 Park Sorrento, Suite 240
Calabasas, CA 91302
PHONE (323) 777-8000
FACSIMILE (323) 777-3000
E-MAIL: steve@smgarberlaw.com

June 8, 2017

**VIA EMAIL (doncook@earthlink.net) ONLY**

Donald W. Cook, Esq.
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010

      Re:     **Gonzalez-Tzita, et al. v. City of Los Angeles, et al.**
              U.S.D.C. No. 2:216-cv-194 FMO (Ex)

Dear Mr. Cook:

Further to our June 2, 2017, Local Rule 37-1 meeting, and as we discussed, I have endeavored to obtain certain information which may assist us in reaching a compromise resolution to the April 26, 2017 Subpoena issued to my client by your office and the May 9, 2017 objections thereto.

As correctly set forth in your June 5, 2017 letter, rather than requesting, "All VIIC data," as set forth in the April 26, 2017 Subpoena, you have agreed to limit the information sought to: 1) the date a vehicle was seized; 2) the date the vehicle was released; and 3) the total fees collected for that vehicle seizure and subsequent impound.  The applicable date range would include vehicles seized at any time from January 11, 2014 through vehicle release date up to and through May 31, 2017.  The search is further limited to vehicles towed only under Cal. Gov't Code § 53075.61 and Cal. Veh. Code § 21100.4, and you have asked that the resulting search results be provided in an Excel spreadsheet.  Although not discussed at the June 2nd meeting, your June 5th letter also now requests log numbers for each vehicle seizure.

In a further effort to reach a compromise regarding the Subpoena, and as we discussed during our June 2nd meeting, I can now advise you that no vehicle seizures that occurred pursuant to either Cal. Gov't Code § 53075.61 and/or Cal. Veh. Code § 21100.4, from January 11, 2014 to the present, resulted in a lien sale.  ==Additionally, and in an attempt to reasonably resolve the current impasse only, OPG-LA will provisionally agree to provide you with the limited subset of information requested at the June 2nd meeting (e.g.: Excel spreadsheet with: 1) date in; 2) date out; and 3) the total fees collected for that vehicle seizure and subsequent impound).==  This is, as we discussed, without waiving any and all rights my client has concerning any future requests and/or production of any VIIC data in this or any other matter.

Next, and as also discussed during our June 2nd Local Rule 37-1 meeting, I am informed by Deputy City Attorney Gabriel Dermer that the City of Los Angeles has now produced several

Donald W. Cook, Esq.
**Re:   Gonzalez-Tzita, et al. v. City of Los Angeles, et al.**
U.S.D.C. No. 2:216-cv-194 FMO (Ex)
June 8, 2017
Page 2


boxes of redacted CHP-180 forms prepared in connection with vehicle seizures under Cal. Gov't Code § 53075.61 and Cal. Veh. Code § 21100.4.  In that light, and given the lack of any apparent relevancy to the instant class action matter, the new request for log numbers is not acceptable.

From a logistical standpoint, and as we peripherally touched upon during our June 2nd meeting, I would suggest the following protocol:

1) The April 26, 2017 Subpoena issued by your office be formally withdrawn;

2) A new Subpoena be prepared (which I will accept service of via email) limiting the requested production to the categories agreed upon (i.e.: date in, date out and total dollar amount) and withdrawing the requested testimony at deposition of an OPG-LA representative; and

3) That a Stipulation and Proposed Order be prepared and executed by our respective offices, as well as the City Attorney's Office, and then be submitted to the Court for approval.

Please let me know if you are amenable to the foregoing and we can proceed apace from there.

Nothing contained herein shall be deemed to be a waiver of any of my client's rights, all of which are hereby expressly reserved.

Very truly yours,

**STEVEN M. GARBER & ASSOCIATES**

*Dictated But Not Read To Avoid Delay*

**STEVEN M. GARBER**

SMG:mrg

cc: Deputy City Attorney Gabriel S. Dermer (via email only)


**Garber 6/8/17 letter**                    **-123-**                         **EXHIBIT G**

# DECLARATION OF ERIC ROSE

I, Eric Rose, declare as follows:

1. I am an individual over eighteen years of age. The matters stated herein are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true. If called upon as a witness, I could and would competently testify thereto. I make this declaration in support of Non-Party Official Police Garage Association of Los Angeles' Opposition to Plaintiffs' Motion to Compel.

2. I am the Executive Director of the Official Police Garage Association of Los Angeles, a California Non-Profit Mutual Benefit Corporation ("OPG-LA"). As part of my duties, and as Custodian of Records for the OPG, I am responsible for the collection of electronically-stored information related to litigation matters. As Executive Director, I am also familiar with the separate record keeping and data storage practices maintained by each of the members of the OPG-LA. I am a reserve officer with the Los Angeles Police Department ("LAPD") and am familiar with the LAPD procedures for towing vehicles from the streets and highways of Los Angeles. I am also familiar with the Los Angeles Department of Transportation ("LADOT") procedures concerning the towing of vehicles which are basically the same as those of the LAPD.

3. I am informed that the Plaintiffs are requesting that OPG-LA disclose the following information: "VIIC data in the possession of the Official Police Garage Association of Los Angeles for any vehicle seized and stored by an Official Police Garage of the City of Los Angeles where the seizure and storage was made at the direction of an employee of the City of Los Angeles, for vehicles seized and impounded on any date from January 11, 2014, to the present, where the seizure authority included Cal. Veh. Code §21100.4. The VIIC data sought is the following: (1) log number; (2) date the vehicle was seized; (3) date the vehicle was released; (4) total fees collected for the vehicle seizure and subsequent impound; (5) year, make, model and license plate number of the seized vehicle (including the state); (6) name(s), address(es) and driver's license number(s) of the vehicle's registered owner(s), (7) name, address(es) and driver's license number of the person to whom the vehicle was released."

4. The OPG-LA is a private 501(c)(4) organization, comprised of 19 tow companies ("member(s)"), which, at the request of LAPD and/or LADOT, tow and store vehicles that are illegally parked or abandoned on the streets and highways of Los Angeles, collect towing and storage fees (which are owed by the vehicles' registered owners), and cause to be sold any unclaimed vehicles.

5. I have regular contact with OPG-LA personnel and staff, OPG-LA members and their personnel, and City of Los Angeles ("City") personnel who are responsible for towing contract compliance.

6. Each member of OPG-LA has an individual towing contract with the City, pertaining to a specific Service Area Assignment-its "service area"-in which it provides the tow services.

7. To initiate the towing process, communications personnel for either LAPD or the LADOT, will notify the specific member of OPG-LA, in whose service area the subject vehicle is located, that a request has been made that a vehicle be impounded. The member then dispatches a truck to the location to tow the vehicle. At that time, the law enforcement officer (LAPD or LADOT) completes portions of a Vehicle Report (CHP 180 Form) at the scene. Each law enforcement officer has direct access to the California Department of Motor Vehicles ("DMV") database.

8. The CHP 180 Form is a carbonless packet consisting of seven sheets, designed to transfer information handwritten on the top sheet onto the underlying sheets. Attached as Exhibit "D" is a true and correct copy of a blank CHP 180 Form.

9. Upon completion of the appropriate sections of the CHP 180 Form, the law enforcement officer delivers the third and fourth sheets, entitled "Notice of Stored Vehicle," to the driver of the vehicle pursuant to *California Vehicle Code* §22852. The law enforcement officer keeps the top sheet. I am informed and believe that the City maintains the original of the top sheets (both LAPD and LADOT). The bottom sheet (seventh sheet) of the CHP 180 Form is handed to the tow truck driver. This bottom sheet is sometimes illegible or is missing some of the information that was legibly written on the top sheet.

2
Declaration of Eric Rose in Support of Non-Party Official Police Garage Association of Los Angeles'
Opposition to Plaintiffs' Motion to Compel
**1/19/18 Rose decl.**                                                          **EXHIBIT H**

10. It is the usual and customary business practice of each OPG-LA member to input certain vehicle impound information from the CHP 180 Form into a Vehicle Information Impound Center ("VIIC"), a web-based system privately owned and operated by OPG-LA.  The OPG-LA members use VIIC to assist in the management of their businesses.

11. The VIIC database is comprised of 51 different "fields" of information.  This includes: (a) the identity of the Agency and Division initiating the tow, (b) Date In, © Date Out, (d) Status of the Vehicle, (e) Make of the Vehicle, (f) Model of the Vehicle, (g) License Plate Number, (h) VIN, and (i) a Log Number.  It also includes personal and confidential financial information concerning: (j) Franchise Fees paid by each OPG, (k) Parking Occupancy Taxes, (l) Gross Receipts Fees (which is a percentage of the gross revenue generated by the OPG, including towing, storage, and sale of lien sale vehicles), (m) DMV fees, and (n) personal identifying information about the registered owner of the Vehicle, and (o) personal identifying information about the individuals retrieving the Vehicle.  The VIIC system does not capture the Driver's License Numbers of either the registered owner or the driver of the towed/impounded vehicle.

12. As explained above, when the bottom sheet of the CHP 180 Form is presented to the tow truck driver, occasionally, the required information is illegible or missing.  Sometimes, after an initial CHP 180 Form is provided to the tow truck driver, the law enforcement officer will prepare and submit a new/amended CHP 180 Form containing the additional information which was not initially provided.

13. The OPG-LA member will sometimes contact the law enforcement officer who initiated the tow to request the missing information.  The OPG-LA member may also contact the LAPD Auto Records Clerk, who has direct access to the DMV information, to obtain missing information.  On other occasions, the OPG-LA member will retrieve missing information directly from the DMV by accessing the eTIMS (Enhanced Technical Information Management System) (a system which tracks the life cycle of traffic tickets and violations, including collections, payments, and reporting).  In all cases, whether via the CHP 180 Form, the law enforcement officer, the LAPD Auto Records Clerk, or the eTIMS, the ultimate source of the information inputted into the VIIC system, comes from the DMV.

14. While the OPG-LA members expect that their employees will accurately input the vehicle tow information into the VIIC system, there is no process established that would ensure the accuracy of the VIIC information or prevent human error.  The best and most accurate source of the information sought by the Plaintiffs is the original CHP 180 Form (top sheet) maintained by the City.

15. Furthermore, once inputted, the VIIC information, including personal identifying information such as addresses, is not updated.  Much of the information sought is two - four years old.  The DMV would be the best source for obtaining current addresses of owners and drivers.

16. The OPG-LA and its members are required to maintain the confidentiality of the personal information that has been inputted into the VIIC system.  Forced disclosure of the information sought will place an enormous burden on the OPG-LA members:

    A.    The DMV requires every OPG-LA member to execute, under penalty of perjury, an Information Security Statement in order to access the eTIMS (Attached as Exhibit "E" is a true and correct copy of the Information Security Statement).  That statement emphatically states at paragraph 4: "Any person who knowingly obtains, discloses, or uses personal information from a motor vehicle record for a purpose not permitted under the Driver's Privacy Protection Act (Title 18 of the United States Code, Section 2721 - 2725), shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."

    B.    The DMV requires that each OPG-LA member swear an oath not to violate DMV regulations as well as any applicable state and federal laws:  "I understand that failure to comply with these policies and regulations may result in disciplinary action in accordance with state and federal laws and regulations, and/or civil or criminal prosecution in accordance with applicable statutes."

    C.    The Statement also provides: "In the case of confidential or personal information, a proper accounting of all disclosures must be made and the subject must be notified in accordance with statute and CA DMV

Declaration of Eric Rose in Support of Non-Party Official Police Garage Association of Los Angeles'
**1/19/18 Rose decl.**      Opposition to Plaintiffs' Motion to Compel      **EXHIBIT H**

directives."  Any order requiring disclosure would force the OPG-LA members to incur the significant cost of notifying each of the thousands of individuals whose private personal information is being sought by the Plaintiffs.

D.    The punitive nature of the Driver's Privacy Protection Act of 1994 (the "DPPA," 18 U.S.C. §§ 2721-2725) (up to $2,500.00 per violation, with the potential of thousands of individuals at issue) will place an enormous burden on the OPG-LA members for each violation of the DPPA should the Court order that the VIIC information be produced.

E.    CHP 180 Forms are also considered to be criminal offender information documents that the OPG-LA members are prohibited from disseminating (*California Penal Code* § 13201).  Disclosure would require the OPG-LA members to violate the Penal Code.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed January 19, 2018 at Los Angeles, California.

_____
Eric Rose, Executive Director,
Official Police Garage Association
of Los Angeles

Declaration of Eric Rose in Support of Non-Party Official Police Garage Association of Los Angeles'
**1/19/18 Rose decl.**        Opposition to Plaintiffs' Motion to Compel        **EXHIBIT H**

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2             FOR THE COUNTY OF LOS ANGELES

 3
    RICARDO CASTILLO, DAVID   )
 4  SANCANDI, LAURENCIO MARIN, )
    JOSE RODRIGUEZ, EFRIN RUIZ,)
 5  VINCENT SOLTERO, BACILIA   )
    TIRADO, individually and as)
 6  class representatives,     )
                               )
 7          Plaintiffs,        )
                               )
 8       VS.                   )   Case no.
                               )   BC469942
 9  CITY OF MAYWOOD, CITY OF   )
    LONG BEACH, CITY OF        )
10  LOS ANGELES, CITY OF       )
    ESCONDIDO, CITY OF         )
11  RIVERSIDE, and DOES 1-100, )
                               )
12                             )
            Defendants.        )
13  _____)

14

15

16                 Deposition of

17                 Benjamin Jones

18             Friday, March 7, 2014

19

20

21

22
    Reported by:  Leslie L. Chisum, CSR no. 9682
23

24

25
                                                    1
              INSTANT COURT REPORTING
```

1          Deposition of Benjamin Jones, before Leslie L.

2    Chisum, a Certified Shorthand Reporter for the State of

3    California, with principal office in the county of

4    Ventura, commencing at 10:41 a.m., Friday, March 7, 2014,

5    at 3435 Wilshire Boulevard, Suite 2910, Los Angeles,

6    California.

7                              *   *   *

8    APPEARANCES OF COUNSEL:

9          For the Plaintiffs:
           ROBERT MANN, DONALD W. COOK, ATTORNEYS AT LAW
10         BY:  DONALD W. COOK, ESQ.
           3435 Wilshire Boulevard, Suite 2910
11         Los Angeles, California 90010
           (213) 252-9444
12
           CYNTHIA ANDERSON-BARKER, ESQ.
13         (No appearance)
           3435 Wilshire Boulevard, Suite 2910
14         Los Angeles, California 90010
           (213) 381-3246
15

16         For the Defendant City of Los Angeles:
           CARMEN A. TRUTANICH, CITY ATTORNEY
17         BY:  GABRIEL S. DERMER, DEPUTY CITY ATTORNEY
           200 North Main Street, Room 916
18         Los Angeles, California 90012
           (213) 473-6858
19
           For the Defendant City of Long Beach:
20         ROBERT E. SHANNON, CITY ATTORNEY
           (No appearance)
21         BY:  HOWARD D. RUSSELL, ESQ.
           333 West Ocean Boulevard, 11th Floor
22         Long Beach, California 90802
           (562) 570-2200
23

24

25

                                                              2
                     INSTANT COURT REPORTING

**3/7/14 Jones depo**            **-130-**            **EXHIBIT I**

```
 1                          I N D E X

 2   EXAMINATION:                                       Page

 3   Mr. Cook                                           4

 4

 5                    PLAINTIFFS' EXHIBITS

 6   A    Notice of Pending Lien Sale for Vehicles      23
          Valued $4000 or Less
 7
     B    Invoice                                       26
 8
     C    Notice of Removal and Billing                 27
 9
     D    Los Angeles Police Department 30-Day Hold     27
10        Vehicle Impound Checklist

11   E    List                                          35

12   F    Document titled Swanney McDonald Tow          52
          Official Police Garage Unit 3
13

14                  INFORMATION REQUESTED
                          (None)
15

16        QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
                          (None)
17

18

19

20

21

22

23

24

25
```

                                                   3
                    INSTANT COURT REPORTING

**3/7/14 Jones depo**              **-131-**              **EXHIBIT I**

```
 1                    Benjamin Jones,
 2  called as a witness by and on behalf of the Plaintiffs,
 3  and having been duly administered the oath, was examined
 4  and testified as follows:
 5
 6                    EXAMINATION
 7  BY MR. COOK:
 8      Q.  Good morning, sir.  I represent plaintiffs in
 9  this matter.  My name is Donald Cook.  Have you ever had
10  your deposition taken before?
11      A.  Yes.
12      Q.  If you need a break, say so.  By the way, I
13  notice you don't have any water.  Do you need any water?
14      A.  No.
15      Q.  Your name, please?
16      A.  Benjamin Jones, J-o-n-e-s.
17      Q.  And I can tell by your uniform you are a
18  sergeant with the Los Angeles Police Department; is that
19  correct?
20      A.  No.  I'm a Detective III with the Los Angeles
21  Police Department.
22      Q.  Gosh.  Those sure look like sergeant stripes.
23      A.  They're similar, but they're not.
24      Q.  They're different.  Okay.  All right.  How long
25  have you been a Detective III?
```

1    A.  Seven years.

2    Q.  How long have you been employed by the LAPD as

3 an officer?

4    A.  22 years.

5    Q.  And what is your current assignment?

6    A.  I'm assigned to Commission Investigation

7 Division, and I'm the Official Police Garage coordinator

8 among other things.

9    Q.  How long has that been your position?

10   A.  About seven years.

11   Q.  Sounds like since you've been Detective III

12 roughly?

13   A.  Yes.

14   Q.  OPG coordinator.  Can you generally describe

15 those duties?

16   A.  As an Official Police Garage coordinator, it's

17 my job to maintain the city's relationship with the

18 official police garages from a regulatory standpoint.

19   Q.  Okay.  So issues come up as to whether or not,

20 say, a particular garage has supplied the necessary

21 records or there appears to be some problem or whatever,

22 you're the point person for the city?

23   A.  There's a lot in that, what you just said.

24 Basically my job is as the regulatory arm of the Board of

25 Police Commissioners.  We're charged with administering

INSTANT COURT REPORTING

5

1  discipline when necessary.  If someone makes a complaint
2  about their car got scratched or was damaged or something
3  like that, we would investigate those types of claims
4  there.  Not as far as records go.  Most of them are a
5  matter of what records they keep and the city keeps.  As
6  far as their own records, that's separate from my
7  function.
8       Q.  Are there contracts between the garages and the
9  city?
10      A.  Yes.
11      Q.  Are there contracts -- first of all, is -- OPG
12  Association of Los Angeles is a separate legal entity as
13  you understand it from the individual garages that
14  actually do the tows; is that correct?
15      A.  Our relationship is with each individual garage
16  based on the contractual basis.  The OPG Association is
17  something that the OPGs themselves have organized.
18      Q.  Okay.  So my question then is is there any
19  contractual relationship directly between OPG, the five --
20  you know, the separate company, and the city?
21      MR. DERMER:  The association?
22  BY MR. COOK:
23      Q.  Yeah, the association.  Maybe -- I know this
24  terminology gets confusing.  When I say association, I'm
25  going to refer to the Official Police Garage Association

6

INSTANT COURT REPORTING

1   of much Los Angeles as distinguished from the individual

2   garages.

3       A.  Okay.

4       Q.  When I say OPG, I'm referring to one or more of

5   the -- I think there are 18 separate garages.  All right?

6       A.  Right.

7       Q.  Okay.  Is there, to your knowledge, any contract

8   between the association and the City of Los Angeles?

9       A.  There is not.

10      Q.  All right.  The contracts that exist are between

11  the city and the individual OPG garages; is that true?

12      A.  That's correct.

13      Q.  Are the contracts with each garage essentially

14  the same in terms of the garages' requirements, what

15  they're supposed to do, that sort of thing?

16      MR. DERMER:  Objection.  Vague.

17      You can answer.

18      MR. COOK:  I would think they would be but, you

19  know --

20      THE WITNESS:  The contracts are individual to each

21  OPG and its specific areas.  But the scope of work is

22  generally the same for each.

23  BY MR. COOK:

24      Q.  All right.  I mean, one of the distinctions

25  between the individual OPG garages is S & J Towing only

7

INSTANT COURT REPORTING

**3/7/14 Jones depo**              **-135-**              **EXHIBIT I**

| | Field Name |
|---|---|
| 1 | LOGNUMBER |
| 2 | TIME |
| 3 | DATE_IN |
| 4 | RATE |
| 5 | YEAR |
| 6 | MAKE |
| 7 | MODEL |
| 8 | BODYTYPE |
| 9 | COLOR |
| 10 | LICENSE |
| 11 | STATE |
| 12 | LIC_YEAR |
| 13 | FULLID |
| 14 | REP_AGY |
| 15 | DIV |
| 16 | TYPE |
| 17 | KEYS |
| 18 | PROPERTY |
| 19 | HOLD |
| 20 | DRIVABLE |
| 21 | ADDRESS |
| 22 | STREET |
| 23 | RD |
| 24 | TOW_IN |
| 25 | LABOR |
| 26 | REL_BY |
| 27 | REL_TO |
| 28 | REM_BY |
| 29 | FORM46 |
| 30 | LIENDATE |
| 31 | CLEARDATE |
| 32 | REL_STATUS |
| 33 | DATE_OUT |
| 34 | STORAGE |
| 35 | TAX |
| 36 | OTHER_FEE |
| 37 | VRF |
| 38 | DOOLITTLE |
| 39 | TOTAL |
| 40 | RES_ADDRESS |
| 41 | RES_CITY |
| 42 | RES_STATE |
| 43 | RES_ZIPCODE |
| 44 | RES_PHONE |
| 45 | DMV_FEE |
| 46 | DOT_FEE |
| 47 | PROP_BOOKED |
| 48 | RECEIVED |
| 49 | DISPATCHED |
| 50 | ARRIVED |
| 51 | IN_TOW |

**VIIC data fields**                    **-136-**                    **EXHIBIT J**

COPY

1   **DONALD W. COOK**, CSB #116666
    ATTORNEY AT LAW
2   3435 Wilshire Blvd., Suite 2910
    Los Angeles, CA  90010
3   (213) 252-9444 / (213) 252-0091 facsimile
    manncook@earthlink.net
4
    Attorney for Petitioner
5

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 27 2014

Sherri R. Carter, Executive Officer/Clerk
By Araceli Rodriguez, Deputy

**RECEIVED**

MAR 2 8 2014

**Public Safety**
**General Counsel Division**

6
7
8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF LOS ANGELES**

10

11   COLLEEN FLYNN,                          Case No. BS 147 850

12                      Petitioner,          **NOTICE OF MOTION AND**
                                             **MOTION FOR DISCLOSURE OF**
13                                           **PUBLIC RECORDS;**
                                             **MEMORANDUM OF POINTS**
14   vs.                                     **AND AUTHORITIES**

15   CITY OF LOS ANGELES, a municipal        (Cal. Gov't Code § 6258)
     corporation, and DOES 1 through 100, inclusive,
16                                           Date: 8-12-14
17                      Respondents.         Time: 1:30pm
                                             Dept: 85
18

19   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20          PLEASE TAKE NOTICE that on ___August 12___, 2014, at __1:30__ a.m. or as soon

21   thereafter as counsel may be heard, in Department __85__ of the above-entitled Court, located at 111 North

22   Hill Street, Los Angeles, California, Petitioner will move the Court for an order compelling Respondent

23   City of Los Angeles to disclose the following public records, to wit:

24          1. *All* data recorded in Vehicle Information Impound Center ("VIIC") database.

25          2. *All* documents as scanned into Laserfiche regarding vehicle seizures. This includes, but is not

26   limited to, documents that are indexed in Laserfiche by log number.

27          This motion shall be pursuant to Cal. Gov't Code §§ 6258, 6259, and shall be pursuant to

28

                                             1
          NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

1  Petitioner's Verified Petition, the accompanying points and authorities, the Declarations of Colleen Flynn

2  and Donald W. Cook filed under separate cover, and whatever other matter may be presented at the time

3  the motion is heard. (Exhibit references that are **bolded** refer to exhibits attached to the separately filed

4  declarations.)

5  DATED: March 27, 2014

6  **DONALD W. COOK**
   Attorney for Petitioner

7

8  By _____

9  Donald W. Cook

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

## I. CASE BACKGROUND AND RELIEF REQUESTED.

Petitioner requested the City of Los Angeles ("City") to provide access to, or copies of, certain records, to wit:

1. *All* data recorded in Vehicle Information Impound Center ("VIIC") database.

2. *All* documents as scanned into Laserfiche regarding vehicle seizures. This included, but was not limited to, documents that are indexed in Laserfiche by log number.

See Exhibit A to Verified Petition; Declaration of Colleen Flynn ¶2.

The City ultimately responded by stating it was refusing to produce the records. See Exhibits B and C to Verified Petition; Declaration of Colleen Flynn ¶3.

It appears the City's position is two-fold. First, the City claims that since the requested records may actually be stored in computer data bases *not* owned by the City but instead owned by third parties, the City is under no obligation to provide the records. Second, the City claims the records are exempt "investigatory" records and/or "official information."

Besides the inherent contradiction (if the records are not in the City's possession then they cannot be exempt as either investigatory records or official information) the City's claims are substantively without permit. Regardless of who owns and/or maintains the data bases, the City created the CHP 180 forms, and routinely uses both the forms and VIIC data. The City also has unlimited rights of access to the records on a 24/7 basis without notice. Finally, as all of the requested records were routinely made available to third parties and the general public; hence, a claim of privilege, whether investigatory or some other, fails as a matter of law.

Because the City refuses to produce the requested records and cannot justify its refusal, Petitioner is entitled to an order compelling the City to provide access and/or copies, and an order awarding reasonable attorney fees and expenses.

## II.    THE CALIFORNIA PUBLIC RECORDS ACT AND BURDEN OF PROOF.

"The Public Records Act . . . was enacted in 1968 and provides that 'every person has a right to inspect any public record, except as hereafter provided.' (§ 6253, subd. (a).) We have explained that the act was adopted 'for the explicit purpose of "increasing freedom

NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

**Motion for Discl., 3/27/14**          **-139-**          **Exhibit K**

1   of information" by giving the public "access to information in possession of public

2   agencies.'" (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d

3   470].) As the Legislature declared in enacting the measure, 'the Legislature . . . finds and

4   declares that access to information concerning the conduct of the people's business is a

5   fundamental and necessary right of every person in this state.' (§ 6250.)" (*Roberts v. City*

6   *of Palmdale* (1993) 5 Cal.4th 363, 370, 20 Cal.Rptr.2d 330, 853 P.2d 496.)

7   *City of Los Angeles v. Superior Court*, 41 Cal. App. 4th 1083, 1086 (1996).

8       Under the California Public Records Act ("PRA") if a record is a public record then the

9   presumption is that it must be disclosed. Cal. Gov't Code §§ 6253(a); 6256. The agency is required to

10  respond to the request within ten days. Cal. Gov't Code § 6253(c). If the agency objects to disclosure,

11  *the agency carries the burden of proof to show that the requested records are exempt from disclosure.*

12  Cal. Gov't Code § 6255. If the agency fails to carry that burden, the requested record *must be disclosed.*

13  *New York Times v. Superior Court*, 218 Cal. App. 3d 1579, 1586-87 (1990) (Court of Appeal reversed

14  trial court because that court failed "to place the burden on the agency to justify withholding the

15  information sought" under the Public Records Act.); *Braun v. City of Taft*, 154 Cal.App.3d 332, 345

16  (1984) ("The burden of demonstrating a need for nondisclosure is upon the agency claiming the right to

17  withhold the information.").

18      Moreover, exemptions to disclosure of public records are narrowly construed so as to favor

19  disclosure. *Citizens for a Better Environment v. Dept. of Food & Agriculture*, 171 Cal.App.3d 704, 711

20  (1985) (citing cases).

21      If the record is a public record subject to disclosure, then the person has an *unconditional* right

22  to inspect the record (subject to reasonable time and place restrictions). Cal. Gov't Code § 6253(a).

23  Subject to reimbursement for direct cost of duplication, the agency is under a duty to provide copies of

24  the record unless providing copies would be impractical. Cal. Gov't Code § 6256.

25  **III. CREATION AND STORAGE OF VIIC DATA AND CHP 180 FORMS.**

26      For many years, the City of Los Angeles has hired privately-owned tow companies to tow and

27  store vehicles at the direction of City personnel, principally Los Angeles Police Officers. These tow

28

4

00094833.WPD

**Motion for Discl., 3/27/14**          **-140-**          **Exhibit K**

1  companies, known as an OPGs ("*Official Police Garage*"), perform their services for the City pursuant

2  to the directions spelled out in their respective contracts with the City. There are presently 17 privately-

3  owned tow companies under contract with the City. Although the City contracts separately with each

4  individual OPG, the contracts are essentially identical on all material terms. Declaration of Donald W.

5  Cook ("Cook decl.") ¶2.

6       Whenever a vehicle is towed and stored, an LAPD officer prepares a CHP 180 form documenting

7  that event. The LAPD gives a copy of the CHP 180 form to both the driver and the tow company. The

8  tow company (a) enters information about the vehicle seizure into a computer data base called "VIIC"

9  ("*Vehicle Impound Information Center*"), and (b) scans the CHP 180 form into "Laserfiche," a document

10  management data base that stores the scanned CHP 180 form. Cook decl., ¶¶5-6; LAPD manual 4/220.10,

11  4/222.50, 4/222.51 (**Exhibit E**).

12  **IV.    THE REQUESTED COMPUTER RECORDS ARE PUBLIC RECORDS THE CITY**

13        **USES.**

14      **A.  VIIC Data And CHP 180 Forms Are "Public Records."**

15      The CPRA defines "Public Records":

16         (e) "Public records" includes any writing containing information relating to the

17      conduct of the public's business prepared, owned, used, or retained by any state or local

18      agency regardless of physical form or characteristics. "Public records" in the custody of,

19      or maintained by, the Governor's office means any writing prepared on or after January

20      6, 1975.

21  Cal. Gov't Code 6252(e).

22      Unquestionably, the CHP 180 forms Petitioner seeks are public records. Because a City employee

23  fills out the form to document a vehicle seizure, the CHP 180 form is a "writing containing information

24  relating to the conduct of the public's business prepared, owned, used, or retained by" the City of Los

25  Angeles.

26      Turning to the VIIC data, it is immaterial that the data is electronically stored, or that the data was

27  created by the tow companies (the OPGs) and is maintained in a data system owned by OPG-LA. (OPG-

28

NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

**Motion for Discl., 3/27/14**      **-141-**      **Exhibit K**

1  LA, a separate company from the OPGs, manages the data bases on the OPGs' behalf to insure that the

2  OPGs satisfy their contractual obligations with the City. See Cook decl., ¶3.)

3  First, "Public Records" are not limited to paper documents; electronically-stored data fall within

4  the scope of § 6252(e) ("regardless of physical form or characteristics"). *See also* Cal. Gov't Code §

5  6254.9(d) ("Public records stored in a computer shall be disclosed as required by this chapter."); 88

6  Ops.Cal.Atty.Gen. 153, 157 (2005) (Electronically-stored data defining geographic boundaries of

7  "assessor's parcels" are "public records" within the meaning of § 6252(e)).

8  Second, City personnel created the filled-out CHP 180 form, while the City also requires that the

9  OPGs create and maintain the VIIC data and scanned CHP 180 forms *for City use*:

10  "The OPG must retain all records generated or kept by the OPG in performance

11  of this Agreement in an accessible location . . ." Subparagraph (a), Part 14.3, OPG

12  contract (**Exhibit D**).

13  *   *   *

14  "All relevant OPG *records* . . . are subject to periodic inspection by the Board or

15  its designee, or other concerned City personnel, to determine if the OPG is in compliance

16  with applicable laws, rules and regulations and with the requirements of this Agreement,

17  without notice, twenty-four (24) hours a day . . ." Subparagraph (b), Part 14.3, OPG

18  contract (**Exhibit D**).

19  *   *   *

20  "The OPG must make available for examination or audit by any representative of

21  the City or the Board, all data and records, including computer data files, related to the

22  towing or storage services provided under this Agreement (collectively referred to as the

23  'Essential Record'). Essential records must be made available without notice, twenty-four

24  (24) hours a day, and as often as the City may deem necessary." Subparagraph (c), Part

25  14.3, OPG contract (**Exhibit D**).

26  *   *   *

27  "No person shall interfere with, prevent, or refuse to permit concerned law

28

6

NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

1    enforcement personnel or representatives of the Board or City to make an examination,

2    inspection or copy of any record kept by the OPG. The OPG must permit said law

3    enforcement personnel or representatives of the Board or City to make copies of business

4    records at the OPG's place of business, or to remove business records for the purpose of

5    reproduction." Subparagraph (e), Part 14.3, OPG contract (**Exhibit D**).

6  Cook decl., ¶4.

7        Plainly, per its contracts with the OPGs, at a minimum the City has "use" of the VIIC data and

8  scanned CHP 180 forms. *Batt v. City and County of San Francisco*, 184 Cal.App.4th 163, 172 (2010)

9  (For purposes of statutory construction, "use" " 'means to employ; to put to a purpose; to employ for the

10  attainment of some purpose or end; to avail one's self of.' " (*quoting with approval Whitaker v. Regents,*

11  *etc.*, 39 Cal.App.111, 115 (1918)).

12       In addition, the City ***and only the City*** has unlimited access to the VIIC data and CHP 180 forms

13  scanned into Laserfiche; neither the OPGs (the individual tow companies) nor OPG-LA (the umbrella

14  organization for the tow companies) can access all VIIC data and/or the Laserfiche-stored CHP 180

15  forms:

16       Q: What other information about a particular vehicle seizure can the Police Commission

17       view beyond what's reflected on Exhibit E?  And I'm referring to the category –

18       A: Okay.

19       Q: – information?

20       A: Okay.  Yeah.  It's very simple as we've explained in the Declaration.  The Police

21       Commission could then take a log number and access the Laserfiche system that is a

22       scanned system of the vehicle.  The Laserfiche system is run by the OPG [*i.e.,* OPG-LA],

23       and the Police Commission has access to it.  So if they wanted to find out additional

24       information about a vehicle, they would go and look at the [CHP form]180.

25  Rose depo., 63:25-64:13 (**Exhibit B**) (Deponent Eric Rose is OPG-LA's Executive Director).

26                                    *    *    *    *

27       Q: I take it from time to time you sit at a computer terminal and you access VIIC; is that

28

                                          7
─────────────────────────────────────────────────────────

00094833.WPD

1   correct?

2   A: I do.

3   Q: Do you also access Laserfiche?

4   A: No.

5   Q: Does anyone within OPG [OPG-LA] access Laserfiche? I'm talking about OPG the

6   501(c)(4) organization --

7   A: No.

8   Q: -- as distinguished from --

9        Do you know if individual member garages access Laserfiche?

10  A: They can only see their own information on Laserfiche. So the answer is yes to see

11  their own information that they've uploaded.

12  Q: Okay. Is it correct that to your knowledge the Police Commission can access

13  Laserfiche?

14  A: They have an administrative right, so the answer is they could access Laserfiche.

15  Q: Whether they do or not depends on whether they want to go through the trouble versus

16  making a member garage do it?

17  A: That's correct.

18  Q: And -- but it's your understanding, given their administrative rights, the Police

19  Commission could access the records for any of the member garages unlike the garages

20  themselves that can only access their own records; is that true?

21  A: That would be correct.

22  Rose depo., 65:24-67:1 (**Exhibit B**).

23      So for purposes of the CPRA, the City possess the VIIC data and the scanned CHP 180 forms.

24  *Consolidated Irrigation District v. Superior Court*, 205 Cal.App.4th 697, 710 (2012) (A public "agency

25  has constructive possession of records if it has the right to control the records, either directly or through

26  another person"); *cf. Unger v. Los Angeles Transit Lines*, 180 Cal.App.2d 172, 175 (1960) (Party deemed

27  to be in actual "possession" of requested information based on its attorneys having possession).

28

NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

**Motion for Discl., 3/27/14**          **-144-**          **Exhibit K**

**B. The City Has Waived Any Claim That The Requested Records Are Exempt.**

Even if one could consider that VIIC data and CHP 180 forms are "investigatory records" and contain "official information" (they do not), the requested records still must be disclosed.

Section 6254.5 of the Public Records Act states:

> Notwithstanding any other provisions of the law, whenever a state or local agency discloses a public record which is otherwise exempt from this chapter, to any member of the public, *this disclosure shall constitute a waiver of the exemptions specified in Sections 6254, 6254.7, or other similar provisions of law.* [Emphasis added].

So if a public record would otherwise be exempt, once the public agency discloses the record to "any member of the public," the agency *waives* any privilege barring disclosure. At that point the agency must produce the record to *all* who requests it. *Black Panther Party v. Kehoe*, 42 Cal.App.3d 645, 655-57 (1974) (Holding the public agency's disclosure of records to licensees made the otherwise exempt from disclosure record, subject to disclosure); 71 Ops.Cal.Atty.Gen. 235, 239-40 (1988) (Upon voluntarily disclosing otherwise exempt records, agency could not bar production to others who sought the same records).

Here, the City gave to the individual OPGs the LAPD-executed CHP 180 forms for entry into the OPG-LA data system. The LAPD also gave a copy of the CHP 180 form to the vehicle's driver and, via mail, delivers a copy to the vehicle's registered owner. Cook decl., ¶6; LAPD Manual 4/222.50, 222.51 (**Exhibit E**). Regarding the VIIC data, that was created by the OPGs, and is freely shared, along with the CHP 180 forms, with the individual OPGs, OPG-LA, and members of the public. Cook decl., ¶¶5, 8. Therefore, even assuming the CHP 180 forms and VIIC data would be otherwise exempt from disclosure, the City waived any exemption. *Black Panther Party*, 42 Cal.App.3d at 356-57 ("When [the public agency] elect[ed] to supply copies of [privileged] complaints to collection agencies, the complaints become public records available for public inspection.").

**V.     PETITIONER IS ENTITLED TO A MANDATORY AWARD OF ATTORNEYS FEES.**

In pertinent part § 6259(d) of the PRA states:

> The court shall award court costs and reasonable attorney fees to the plaintiff

9

00094833.WPD

**Motion for Discl., 3/27/14**          **-145-**          **Exhibit K**

1    should the plaintiff prevail in litigation filed pursuant to this section.

2        Petitioner is entitled to a mandatory award if the filing of his Petition results in an order of

3    disclosure, favorable settlement, or otherwise results in achieving petitioner's objective. *Belth v.*

4    *Garamendi*, 232 Cal. App. 3d 896, 901-02 (1991).

5        Upon issuance of an order compelling disclosure, Petitioner requests that the Court award

6    Petitioner attorneys fees, with the exact amount set after submission of counsel's declaration establishing

7    total time expended.

8    **VI.    CONCLUSION.**

9        For the foregoing reasons, this Court should issue its Order directing the City to disclose the

10   requested VIIC data and CHP 180 forms, and to award Petitioner her fees and costs in the bringing of

11   this Petition and Motion.

12   DATED: March 27, 2014

13                              **DONALD W. COOK**
                                 Attorney for Petitioner
14

15                          by_____

16                                  Donald W. Cook

17

18

19

20

21

22

23

24

25

26

27

28

                                        10
─────────────────────────────────────────────────
NOTICE OF MOTION AND MOTION FOR DISCLOSURE OF PUBLIC RECORDS ETC.

00094833.WPD

**Motion for Discl., 3/27/14**              **-146-**                    **Exhibit K**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/14/14 | | | DEPT. 85 |
|---|---|---|---|
| HONORABLE JAMES C. CHALFANT | JUDGE | A. FAJARDO | DEPUTY CLERK |
| HONORABLE #9 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| J. DE LUNA, C.A. | Deputy Sheriff | B. JAMES, CSR# 9296 | Reporter |

| 1:30 pm | BS147850 | | |
|---|---|---|---|
| | COLLEEN FLYNN | Plaintiff Counsel | DONALD W. COOK    [X] |
| | VS | Defendant Counsel | DEBRA L. GONZALES    [X] |
| | CITY OF LOS ANGELES | | |

**NATURE OF PROCEEDINGS:**

MOTION OF PETITIONER COLLEEN FLYNN, FOR DISCLOSURE OF PUBLIC RECORDS

The matter is called for hearing.

Counsel read the Court's Tentative Decision.

After argument, the Court rules in accordance with his Tentative which is adopted and filed as the final ruling of the Court.

The Motion for Disclosure of Public Records/Petition for Writ of Mandate is denied.

An ORDER TO SHOW CAUSE RE: JUDGMENT is set on NOVEMBER 20, 2014 at 9:30a.m. in this department.

Counsel for the Respondent is to prepare a proposed Judgment and serve it on opposing Counsel to approve as to form.  After ten(10) days, Counsel is to submit the proposed Judgment to the Court along with a declaration stating the nature and extent of any objections received.

Notice is waived.

Page   1 of   1   DEPT. 85

```
MINUTES ENTERED
10/14/14
COUNTY CLERK
```

**Minute Order and Ruling, 10/14/14**

**Exhibit L**

Flynn v. City of Los Angeles                    Tentative decision on petition for writ of
BS 147850                                       mandate: denied


     Petitioner Colleen Flynn ("Flynn") applies for a writ of mandate directing Respondent
City of Los Angeles ("City") to produce records in response to Flynn's CPRA request.
     The court has read and considered the moving papers, opposition, and reply, heard oral
argument and required supplemental briefing, and renders the following tentative decision.

### A. **Statement of the Case**

     Petitioner Flynn commenced this proceeding on March 27, 2014.  Flynn seeks a writ of
mandate pursuant to the California Public Records Act ("CPRA") (Govt. Code §6250 *et seq.),*
directing the City to release public records pursuant to a public records request.
     The Petition alleges in pertinent part as follows.  On or about March 10, 2014, by way of
a letter to Steve Soboroff, President of the Los Angeles Board of Police Commission, and
Charlie Beck, Chief of the Los Angeles Police Department ("LAPD"), Petitioner requested that
the City provide the disclosures and/or production of all data regarding vehicle seizures recorded
in the Vehicle Information Impound Center ("VIIC") database, and all documents scanned into
Laserfiche, including documents indexed by log number.
     The City, in nearly identical responses dated March 19 and 20, 2014, refused to produce
or provide access to the records.
     Petitioner seeks to compel production of the requested public records.

### B. **Governing Law**

     The CPRA (Govt. Code §6250 *et seq.*) was enacted in 1968 to safeguard the
accountability of government to the public.  San Gabriel Tribune v. Superior Court, (1983) 143
Cal.App. 762, 771-72.  Govt. Code[1] section 6250 declares that "access to information concerning
the conduct of the people's business is a fundamental and necessary right of every person in this
state."  The CPRA's purpose is to increase freedom of information by giving the public access to
information in possession of public agencies.  CBS, Inc. v. Block, (1986) 42 Cal. 3d 646, 651.
The CPRA was intended to safeguard the accountability of government to the public, and it
makes public access to governmental records a fundamental right of citizenship.  Wilson v.
Superior Court, (1996) 51 Cal.App.4th 1136, 1141.  This requires maximum disclosure of the
conduct of government operations.  California State University Fresno Assn., Inc. v. Superior
Court, ("California State University") (2001) 90 Cal.App.4th 810, 823.
     The CPRA makes clear that "every person" has a right to inspect any public record.
§6253(a).  The term "public record" is broadly defined to include "any writing containing
information relating to the conduct of the people's business prepared, owned, used or retained by
any state or local agency regardless of physical form or characteristics.  §6252(e).  The inspection
may be for any purpose; the requester's motivation is irrelevant.  §6257.5.  If a record is a public
record then the presumption is that it must be disclosed. §§ 6253(a), 6256.

------

[1]All further statutory references are to the Government Code unless expressly stated
otherwise.

The agency is required to respond to the request within ten days.  §6253(c).  The right to inspect is subject to certain exemptions, which are narrowly construed.  <u>California State University</u>, *supra*, 90 Cal.App.4th at 831.  The exemptions are found in sections 6254 and 6255.  In pertinent part, public records exempt from disclosure include (1) personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy (§6254(c)), and (2) records subject to a "catch-all" exemption where the facts of the particular case demonstrate that the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.  §6255.

The burden of demonstrating that exemptions apply lies with the governmental entity.  §6255.  If the agency fails to carry that burden, the requested record must be disclosed.  <u>New York Times v. Superior Court</u>, (1990) 218 Cal.App.3d 1579, 1586-87.

A petition for traditional mandamus is appropriate in actions "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station...."  CCP §1085.  This includes actions to compel compliance with CPRA.  §§ 6258, 6259.  No administrative record is required for traditional mandamus.  The court must uphold the agency's action unless it is "arbitrary and capricious, lacking in evidentiary support, or made without due regard for the petitioner's rights."  <u>Sequoia Union High School District v. Aurora Charter High School</u>, (2003) 112 Cal.App.4th 185, 195.

## C. <u>Statement of Facts</u>

For many years, the City has hired privately-owned tow companies to tow and store vehicles at the direction of City personnel, principally LAPD officers.  These tow companies, known as OPGs ("Official Police Garages"), perform their services pursuant to the directions spelled out in their respective contracts with the City.  There are presently 17 privately-owned OPGs which contract with the City.  Although the City contracts separately with each OPG, the contracts are materially identical.  Cook Decl., ¶2.

Whenever an LAPD officer needs a vehicle impounded, he or she must notify LAPD Communications, which contacts an OPG.  Jones Decl., ¶5.  The LAPD officer prepares a CHP 180 form documenting that event.  There are seven pages to the CHP 180 form.  The officer gives pages three and four to the driver, if he or she is available, and the page seven of the form to the OPG tow truck driver.  Jones Cecl., ¶5.[2]  LAPD also mails a copy to the vehicle's registered owner.  Cook Decl., ¶6; 4 LAPD Manual §222.50.

The tow company enters certain information about the vehicle seizure into VIIC, a computer data base maintained by OPG-LA.[3]  Cook Decl., ¶5.  OPG-LA uses VIIC to accumulate data from the records of the individual OPGs contracting with the City.

───────────────

[2]The City maintains its version of the CHP 180 form in an LAPD investigative file.  Jones Decl., ¶10.

[3]OPG-LA is a separate company whose members are the OPGs who contract with the City.  OPG-LA manages the OPGs' databases and recordkeeping duties to insure that the OPGs satisfy their contractual obligations to the City.  Cook Decl., ¶3; Jones Decl., ¶6.

2

The tow company also scans its version of the CHP 180 form[4] into Laserfiche, a large document storage company hired by OPG-LA to store OPG-scanned documents. Cook Decl., ¶6; Cook Decl., Ex. B., p.65. OPG-LA has an agreement with Laserfiche for the electronic storage of its member OPGs' records. Jones Decl., ¶8. The documents scanned into Laserfiche include the OPG's scanned CHP 180 forms and the OPG's vehicle impound information. Cook Decl., Ex.B, p.69. Each OPG can access its own Laserfiche records, but not another OPG's records. *See* Cook Decl., Ex.B, pp. 63-64. The City's Police Commission also can access all Laserfiche records. Cook Decl., Ex.B, pp. 66, 69.

On March 10, 2014, Petitioner Flynn served the City with a CPRA request seeking: (1) all data recorded in the VIIC database; and (2) all documents scanned into Laserfiche regarding vehicle seizures, including but not limited to, documents indexed in Laserfiche by log number.

The City responded on March 19, 2014 stating that the records sought were not City records and in any event they were exempt from disclosure under sections 6254(f), 6254(k), and 6255.

### D. Initial Analysis

Petitioner seeks a writ of mandate directing the City to produce the VIIC and Laserfiche records sought in his CPRA request.

Petitioner must establish that the records in question (1) qualify as public records, and (2) are in the City's possession. Consolidated Irrigation District v. Superior Court, ("Consolidated Irrigation") (2012) 205 Cal.App.4th 697, 709.

### 1. Does the City Constructively Possess the Database Records?

Possession generally denotes custody, control, or dominion, and can be actual or constructive. Batt v. City and County of San Francisco,(2010) 184 Cal.App.4th 163, 172. For purposes of the CPRA, a public agency possesses records either through actual or constructive possession. Consolidated Irrigation, *supra*, 205 Cal.App.4th at 710 (public agency has constructive possession "if it has the right to control the records, either directly or through another person").

Petitioner concludes that the City has constructive possession of the VIIC and Laserfiche data. Mot. at 6-9. Petitioner notes that the City/OPG contracts grant the City with virtually unfettered and unlimited use of the VIIC data and OPG-scanned CHP 180 forms on Laserfiche. The contracts require the OPGs to retain all records generated or kept by the OPGs in performing the agreement, including the VIIC data and scanned CHP 180 forms, in an accessible location. Cook Decl., Ex.D, §14.3(a).[5] The contracts also require the OPGs to permit City representatives

---

[4]The OPG's version of the form is materially different than the LAPD copy. *Compare* Cook Ex. F (LAPD form) *with* Jones Ex.6 (Laserfiche copies of form).

[5]"The OPG must retain all records generated or kept by the OPG in performance of this Agreement in an accessible location...." Id.

3

to examine and copy the records. Id., §14.3(e).[6] Petitioner concludes that the City has unlimited
access to the VIIC data and the OPG-scanned CHP 180 forms in Laserfiche, and therefore
constructively possesses the data.

The City opposes, arguing that does not constructively possess the data in either database
because it does not own the records, nor have a right of control over them. Opp. at 5-8. The City
initially contends that it is like the city in Consolidated Irrigation, which did not have a duty to
disclose records it did not possess and to which it had no ownership rights. 205 Cal.App.4th at
709-11. Similarly, the vehicle impound records are maintained and possessed by a private
subcontractor (OPG-LA or Laserfiche) hired by the City's independent contractors (OPGs), and
the City has no contractual relationship with the private subcontractors. Jones Decl.., ¶'s 2, 8.

The court has no difficulty dispensing with this argument. OPG-LA is a document
management entity created by the OPGs to manage their databases and perform their
recordkeeping. It is not an independent contractor. Rather, OPG-LA is the mere recordkeeping
agent for the OPGs' documents with no ownership and little control of those documents. This is
even more true of Laserfiche, which electronically stores the OPGs' documents without having
any interest in their content.[7] OPG-LA and Laserfiche have no ownership and no pertinent
control over the databases they hold.

Given that the records are the property of the OPGs, the City then argues that it has no
rights of ownership nor control over the requested records. It cannot maintain them, modify
them, delete them, and does not own them. Therefore, the City does not constructively possess
the records. The City concludes that Petitioner is not asking for City records, but rather for
private records to which the City has access and made limited use. Without any right of
ownership or control over the records, the City does not constructively possess them. Opp. at 7.

The City is correct. As it argues, the CPRA grants public access only to records in the
possession of public agencies; the law does not compel agencies to retrieve records from private
independent contractors. See Filarksy v. Superior Court, (2002) 28 Cal.4th 419, 425. The
requirement of possession serves to distinguish between records that a public agency merely has
access to and uses from records which it owns or controls, with only the latter being subject to
public disclosure. See Consolidated Irrigation, supra, 205 Cal.App.4th at 709-11.

To be in constructive possession of a record, a public agency must have more than the
mere possibility of control over the records. Id., at 711. An agency constructively possesses
records only where the agency has an established right of control or dominion over the records;
conjecture that the agency could acquire this right is insufficient. Additionally, the mere status of
a private independent contractor as an agent of its public agency principal does not mean the
public agency has constructive possession of the records. By definition, the independent

_____

[6]"No person shall interfere with, prevent, or refuse to permit concerned law enforcement
personnel or representatives of the Board or City to make an examination, inspection or copy of
any record kept by the OPG. The OPG must permit said law enforcement personnel...to make
copies of business records at the OPG's place of business...." Id

[7]Laserfiche has limited control in that each OPG may view only of its owned scanned
documents.

4

contractor is not subject to the principal's control and is only bound by contract to achieve some result. *See* Weinberg v. Clark, (1932) 120 Cal.App. 362, 366 ("An independent contractor is one who in rendering service exercises an independent employment or occupation, and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished").

Petitioner has not met its burden of showing that the City constructively possesses the data in VIIC or at Laserfiche. As stated, the OPGs own the records maintained by OPG-LA and Laserfiche. Pursuant to the OPGs' direction, OPG-LA has granted the City access to the VIIC and Laserfiche databases by providing user names and passwords to LAPD personnel assigned to the Commission Investigation Division ("CID"), which has made only limited use of that access by reviewing VIIC information and conducting financial spot checks of the OPGs by reviewing remittance reports in Laserfiche. Jones Decl., ¶'s 9, 10. City personnel do not have authority to modify or change the records, and have no other control over their contents. Jones Decl., ¶9. The City has never accessed all of the data in either the VIIC or Laserfiche. Id. CID does not use Laserfiche to retrieve a copy of the CHP 180 because the Laserfiche copy is only the OPG's portion of the form and is almost always illegible. Id.

Under these circumstances, the City does not constructively possess the VIIC and Laserfiche data. The key issues are ownership and control. The City has neither. It only has the right to access.

In reply, Petitioner attempts to show the City does have ownership. Petitioner presents a particular City/OPG contract, which provides at page 11 of attachment B as follows:

> **"PSC-27 Ownership**
> Unless otherwise provided for herein, all documents, materials, data and reports originated and prepared by **CONTRACTOR/CONSULTANT** [the OPG] under this contract shall be and remain the property of the **CITY** for its use in any manner it deems appropriate...." Reply Cook Decl., Ex.B.[8]

Petitioner argues that the OPGs created the VIIC data and scanned the CHP 180 form into Laserfiche pursuant to their City/OPG contractual obligations to provide timely information to VIIC and participate in a "Document Control System," as set forth in an amendment to the City/OPG contract. Reply Cook Decl., Ex.D (§9.3, 9.4). Petitioner concludes that, since the OPGs created the VIIC data and scanned documents into Laserfiche pursuant to their contracts with the City, then the City owns the records.

The problem with this evidence is that it is made for the first time in reply. Petitioner's theory in her moving papers was that the City has constructive possession of the VIIC and Laserfiche data, making them public records. Therefore, Petitioner was obligated to demonstrate the City's ownership and/or control of the records in her moving papers. New evidence raised for the first time in a reply brief is not properly presented to a trial court and may be disregarded. Regency Outdoor Advertising v. Carolina Lances, Inc., (1995) 31 Cal.App.4th 1323, 1333.

---

[8]The City has admitted that all OPG contracts have the same recordkeeping requirements. Jones Decl., ¶7.

**Minute Order and Ruling, 10/14/14**         **Exhibit L**

Petitioner has no excuse for waiting until reply to demonstrate the City's ownership of VIIC and Laserfiche records.  Consequently, Petitioner has waived her right to present this evidence.

This conclusion is not merely technical in nature.  The City has presented evidence that it does not own or control these records.  The contract provision set forth in Exhibit B arguably conflicts with the City's evidence.  That provision is part of a standard attachment and states that "[u]nless otherwise provided herein", the City owns the documents and data generated by the OPG "under this contract".  This contract language raises at least two issues: (1) Are there other provisions in the City/OPG contract which indicate that the OPG owns the documents it creates, and therefore meet the "unless otherwise provided herein" condition? and (2) Were the Laserfiche scans and VIIC data generated "under" the City/OPG contract, or were they generated pursuant to a separate contract between the OPG and OPG-LA and Laserfiche?[9]

Because Petitioner presented this evidence only in reply, the court cannot reach conclusions about the City's ownership.  Therefore, Petitioner has failed to meet her burden of showing constructive possession.  As the City argues, Petitioner has not requested City records in private hands, but rather private records which the City does not constructively possess.  *See* Opp. at 8.

### 2. Are the Databases Public Records?

The CPRA defines "public records" to include: "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." §6252(e).[10]

The VIIC data on vehicle seizures is created by the OPGs and is electronically stored in a data system managed by third party OPG-LA.  If the VIIC data is a public record, the fact that the data is stored electronically does not affect its public record status.  *See* §6251(e) (form of writing does not affect public record status).

The City argues that the court should not rely on the literal language in section 6252(e) that the mere "use" of records by a public agency would qualify as "public records."  Courts should not "rely too heavily on characterizations such as 'disjunctive' form versus 'conjunctive' form to resolve difficult issues of statutory construction," and instead must "look at all parts of the statute."  *See* Kelly v. Wauconda Park Dist., (7th Cir. 1986) 801 F.2d 269, 270 n.1.  The City argues that the overall policy of the CPRA assumes some element of government control over, or ownership of, a requested record.  Opp. at 9.

---

[9]The partial amendment presented by Petitioner (Ex.D) does not answer this question.  The original contract appeared to call only for weekly and monthly reports (A.T.S. Northeast Tow Contract, p. 25) and did not require any additional information.  The partial amendment added VIIC and Document Control System requirements, but the court cannot evaulate these requirements without the complete amendment.

[10]It is undisputed that the CHP 180 form is a "writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by" the City.  The CHP 180 form is filled out by an LAPD officer pursuant to a vehicle seizure.  It is maintained by the City as part of LAPD's investigative file.

6

As the City argues, the CPRA was modeled on its federal predecessor, the Freedom of
Information Act (5 U.S.C. §552 *et seq.* ("FOIA")), and the legislative history and judicial
construction of FOIA serves "to illuminate the interpretation of its California counterpart."
Times Mirror Co. v. Superior Court, (1991) 53 Cal.3d 1325, 1338 (internal quotations omitted).
The United States Supreme Court held that "Congress contemplated that an agency must first
either create or obtain a record as a prerequisite to its becoming an 'agency record' within the
meaning of the FOIA." Forsham v. Harris, ("Forsham") (1980) 445 U.S. 169, 182 (data
possessed by recipient of federal grant was not a public record because it was not created or
obtained by agency). The Court rejected the idea that government funding plus a right of
government access to the data made them agency records. Id. at 171.

As in Forsham, the data within the VIIC and Laserfiche databases are not "public
records" under the CPRA. The City has never physically acquired the requested data. It has
viewed over the internet VIIC reports, and has used Laserfiche only sporadically to conduct spot
checks of OPGs by reviewing their remittance reports. *See* Jones Decl., ¶10. Assuming that an
internet viewing is the same as obtaining a record, the vast majority of the electronic records in
the VIIC and Laserfiche databases have never been viewed or used by the City. Jones Decl., ¶'s
9, 10. While the City has the right to make copies of the records upon request, it has not done so.
Thus, it cannot be said that the City has "obtained" the data for purposes of defining a public
record. The right to access a record is not the same as having obtained it.

The VIIC and Laserfiche databases are not public records.

### 3. Are the Records Exempt?

Pursuant to section 6254.5,[11] if a public record would otherwise be exempt, the agency
waives any privilege barring disclosure once the public agency discloses the record to "any
member of the public." At that point the agency must produce the record to all who requests it.
Black Panther Party v. Kehoe, ("Black Panther") (1974) 42 Cal.App.3d 645, 655-57.

Petitioner argues that no "official information" or "investigatory records" exemption can
apply to the VIIC and Laserfiche databases. The City gave the executed CHP 180 forms to the
individual OPGs for entry into the OPG-LA data system. The LAPD also gave a copy of the
CHP 180 form to the vehicle's driver and delivers a copy to the vehicle's registered owner via
mail. Some VIIC information (model, reason for impound, location, and charges) is freely
shared between OPG-LA and members of the public who enter a VIN. Cook Decl., ¶8.
Petitioner concludes that, assuming the CHP 180 forms and VIIC data otherwise are exempt from
disclosure, the City waived any such exemption. Black Panther, *supra*, 42 Cal.App.3d at 356-57.

The City opposes, relying on the fact that the information on its CHP 180 forms differs
from the forms in the Laserfiche database, and concluding that the forms are exempt from
disclosure (§6254(f)). Opp. at 11. The City also argues that the databases contain OPG
financial and tax information and personal identifying information from the impounded car's

---

[11]Section 6254.5 states: "Notwithstanding any other provisions of the law, whenever a
state or local agency discloses a public record which is otherwise exempt from this chapter, to
any member of the public, this disclosure shall constitute a waiver of the exemptions specified in
Sections 6254, 6254.7, or other similar provisions of law."

**Minute Order and Ruling, 10/14/14**

**Exhibit L**

driver which is subject to a privacy privilege (§6254(k)).  Finally, the City argues that the burden of producing all data in the VIIC and all of the Laserfiche database would be an undue burden such that the public interest in disclosure is clearly outweighed by the public interest in non-disclosure (§6255).  *See* American Civil Liberties Union Foundation v. Deukmejian, (1982) 32 Cal.3d 440, 452 (expense and inconvenience to public agency must be considered).  Opp. at 12.

The City has failed to make an evidentiary showing of the burden of production, what redactions would have to be made, and how to separate the exempt from non-exempt records. The City has the burden to show exemption, and has not met its burden.

### F. Analysis of Supplemental Briefs

The court held a hearing on August 12, 2014 and issued the above portion of this tentative ruling denying the petition.  The court did not adopt its tentative but instead ordered the parties to meet and confer regarding what information is contained in the VIIC and Laserfiche, and what information is actually being sought.  The City also was directed to submit supplemental briefing on (1) ownership and control, (2) privacy, and (3) undue burden by September 23, 2014.  Petitioner was directed to file a supplemental reply by October 7, 2014. Both parties' supplemental briefs were timely filed.

Petitioner has clarified that she seeks (1) all VIIC data regarding vehicles seized at the direction of an LAPD officer, and (2) all records scanned by OPGs into Laserfiche pursuant to the OPG's contractual responsibilities with the City.

The issue is ownership and control.  As stated *supra*, the standard contract provision PSC-27 Ownership set forth in Exhibit B provides that the City owns documents originated and prepared by the OPG "under" their contract, which conflicts with the City's evidence of non-ownership.  The court noted that the provision is part of a standard attachment which states that "[u]nless otherwise provided herein", the City owns the documents and data generated by the OPG "under this contract".

The City first argues that Petitioner's reliance on Articles 9.3 and 9.4 of the OPG contracts to contend that "the OPGs created VIIC data *because* Article 9.3 *required* it, and the OPGs stored CHP 180s in Laserfiche *because* Laserfiche is the "Document Control System" the OPGs *must* use per Article 9.4" is misplaced.  Nothing in Article 9.3 requires any OPG to input specific information into VIIC and nothing in Article 9.4 requires any OPG to store specific information on Laserfiche.  City Supp. at 1.  The court agrees that these provisions require that OPGs provide information to VIIC (§9.3) and maintain a Document Control System (Laserfiche) without requiring specific information to be placed in it.

The City then points out that standard contract provision is not PSC-27 Ownership has been superseded by PSC-23 Ownership and License ("PSC-23").  Jones Decl., ¶'s 6, 8.  PSC-23 provides:

> "Unless otherwise provided for herein, all Work Products originated and prepared
> by CONTRACTOR or its subcontractors of any tier under this Contract shall be
> and remain the exclusive property of the CITY for its use in any manner it deems
> appropriate. Work Products are all works, tangible or, not, treated under this
> Contract including, without limitation; documents, material, data, reports, manuals,

**Minute Order and Ruling, 10/14/14**

**Exhibit L**

specifications, artwork, drawings, sketches, computer programs and databases, schematics, photographs, video and audiovisual recordings, sound recordings, marks, logos, graphic designs, notes, websites, domain names, inventions processes, formulas matters and combinations thereof, and all forms of intellectual property. CONTRACTOR hereby assigns, and agrees to assign, all goodwill, copyright, trademark, patent, trade secret and all other intellectual property rights worldwide in any Work Products originated and prepared by CONTRACTOR under this Contract. CONTRACTOR. further agrees to execute any documents necessary for the CITY to perfect, memorialize, or record the CITY'S ownership of rights provided herein."

"For all Work Products delivered to the CITY that are not originated or prepared by, CONTRACTOR or its subcontractors of any tier under this Contract, CONTRACTOR hereby grants a non-exclusive perpetual license to use such Work Products for any CITY purposes."

"The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties." Bank of the West v. Superior Court, (1992) 2 Cal.4th 1254, 1264.  This mutual intention is determined by objective manifestations of the parties intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated, the object, nature, and subject matter of the contract, and the subsequent conduct of the parties.  Morey v. Vannucci, (1998) 64 Cal.App.4th 904, 912.  Where the meaning of words used in a contract is disputed, the trial court must provisionally receive any proferred extrinsic evidence relevant to show whether the contract is susceptible of the particular meaning.  Id.  Extrinsic evidence is thus admissible to interpret the language of a written instrument, as long as such evidence is not used to give the instrument a meaning to which it is not reasonably susceptible.  Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, any conflict must be resolved by the jury.  Id.  In general, parties to a commercial transaction are entitled to limit the liability of one to another, or otherwise allocate the risk of doing business.  Philippine Airlines, Inc. v. McDonnell Douglas Corp., (1987) 189 Cal.App.3d 234, 237.  However, contractual clauses seeking to limit liability are strictly construed and any ambiguity is resolved against the party seeking to limit liability.  Id.

The City presents evidence that LAPD, which administers the City's OPG contracts, has always understood that the records generated by the OPGs, including the information stored in the VIIC and Laserfiche, belong exclusively to the tow companies.  Jones Decl., ¶'s 2, 9, 13. Each OPG decides what information to input in VIIC and what documents to store in Laserfiche. Id., ¶10's 10-11.  LAPD's understanding of the purpose of PSC-23 is for the City to obtain ownership and licensing rights when the contractor is providing goods to the City, and the OPGs provide towing and storage services, not deliverable goods. Id., ¶5.  No City representative has ever considered the VIIC and Laserfiche documents as OPG Work Product belonging to the City under section PSC-23. Id., ¶13.  Various OPGs confirm that they own these documents. See, e.g., Smart Decl., ¶13.

9

The OPG contract is susceptible of interpretation in the manner indicated by the City and OPGs. *See* Civ. Code §1639. Article 14.3 is a standard provision in all OPG contracts, and provides for the OPG's retention of VIIC and Laserfiche records, and inspection for purposes of audit (§14.3(b), (c)) and law enforcement (§14.3(d), (e). PSC-23 is a standard provision tacked on to City contracts and was not created specifically for the OPG contracts. PSC-23 provides ownership of Work Product to the City "unless otherwise provided for" in the OPG contract. Article 14.3 meets the "otherwise provided for" requirement, thereby negating PSC-23 ownership. There is no reason to provide for limited access to City personnel (law enforcement and auditors) of records which are owned by the City. To the extent the City wanted to include a provision for access to documents owned by it, the access would be unfettered, not limited. The interpretation by the parties to the OPG agreement is reasonable.

Moreover, the evidence of the parties' contract performance is compelling evidence of their intent. Petitioner correctly argues that the parties' understanding and self-serving interpretations of a contract term after a dispute has arisen is irrelevant (Southern California Edison v. Superior Court, (1995) 37 Cal.App. 839, 851), and the City presents no evidence of negotiation. But the City's evidence of performance shows that the contract parties have always interpreted their contract as vesting ownership of these documents in the OPGs, not just since this dispute arose, and have acted accordingly. For example, the City has obtained a search warrant when it wanted physical possession of the records stored at Laserfiche, even though Article 14.3(e) gives law enforcement a right of access. *See* Jones Decl., Ex.1. This is powerful evidence that the parties have performed the OPG contracts with the intent that the OPGs own the information in VIIC and Laserfiche.

Petitioner argues that the City's evidence shows that it owns the records because CID personnel retrieved and provided documents from Laserfiche. Pet. Supp. at 5. This is an issue of access, not ownership.[12]

In sum, the OPG contracts must be interpreted consistently with the contract parties' intent. The terms of the contract, and the parties course of performance, demonstrates that the OPGs own the documents in VIIC and Laserfiche and not the City. While the City has access to these documents, it does not control them.[13]

### G. Conclusion

Petitioner Flynn has not shown that the records in question (1) qualify as public records, and (2) are in the City's constructive possession. The petition for writ of mandate is denied. The

---

[12]The City's ownership in PSC-23 only applies to Work Products prepared by an OPG under the OPG contract. Petitioner shows that VIIC and Laserfiche documents are prepared under the contract. Pet. Supp. at 6. Specifically, section 61 requires the OPG tow truck operator to fill out the CHP 180, and section 9.3 requires the OPG to maintain the VIIC system. Section 9.4 requries the OPG to participate in a Document Control System, which is Laserfiche. The documents prepared for those systems are prepared under the OPG contract.

[13]Because of this conclusion, the court need not address the privilege and undue burden issues.

City's counsel is ordered to prepare a proposed judgment, serve it on Petitioner's counsel for approval as to form, wait ten days after service for any objections, meet and confer if there are objections, and then submit the proposed judgment and writ along with a declaration stating the existence/non-existence of any unresolved objections.  An OSC re: judgment is set for November 20, 2014 at 9:30 a.m.

11

**Minute Order and Ruling, 10/14/14**

**Exhibit L**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

COURT OF APPEAL – SECOND DIST.

# F I L E D

Feb 20, 2015

JOSEPH A. LANE, Clerk

sstahl          Deputy Clerk

| | |
|---|---|
| COLLEN FLYNN, | B260363 |
| Petitioner, | (L.A.S.C. No. BS147850) |
| v. | (JAMES C. CHALFANT, Judge) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | O R D E R |
| CITY OF LOS ANGELES, | |
| Real Party in Interest. | |

THE COURT*:

The petition for writ of mandate, filed December 1, 2014, the preliminary opposition, filed December 11, 2014; the reply, filed December 15, 2014; the request for judicial notice, filed January 21, 2015; and the opposition, filed January 23, 2015; have been read and considered.

The request for judicial notice is denied.  The petition is denied.

_____
*ROTHSCHILD, P. J.          CHANEY, J.          JOHNSON, J.

**Order, 2/20/15**                    -159-                    **Exhibit M**

Appellate Courts Case Information

CALIFORNIA COU[RT]
THE JUDICIAL BRANCH OF CALIF[ORNIA]

Supreme Court

Change cou[rt]

*Court data last updated: 07/10/2017 10:24 AM*

**Docket (Register of Actions)**

**FLYNN v. S.C. (CITY OF LOS ANGELES)**
**Case Number S224784**

| Date | Description | Notes |
|------|-------------|-------|
| 03/03/2015 | Petition for review filed | Petitioner: Colleen Flynn<br>Attorney: Donald W. Cook    CRC 8.25(b) |
| 04/29/2015 | Received: | Amended Proof of Service showing service on the Court of Appeal.<br>from counsel for petitioner |
| 04/29/2015 | Petition for review denied | |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use | Privacy    ©[ ]
Judicial Council of Calif[ornia]

**Docket (Flynn)**

**Exhibit N**



1  **DONALD W. COOK**, CSB #116666
   ATTORNEY AT LAW
2  3435 Wilshire Blvd., Suite 2910
   Los Angeles, CA 90010
3  (213) 252-9444 / (213) 252-0091 facsimile
   manncook@earthlink.net
4
   Attorney for Petitioner
5

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 1 8 2015

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

D-85        JAMES C. CHALFANT

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

11  CYNTHIA ANDERSON-BARKER,

12                          Petitioner,

13  vs.

14

15  CITY OF LOS ANGELES, a municipal
    corporation, and DOES 1 through 100, inclusive,
16
17                          Respondents.
18

Case No.  **BS 1 5 6 0 5 8**

**VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION**

(Cal. Gov't Code § 6258)

REFERRED TO CITY ATTORNEY
FOR DISPOSITION
JUN 18 2015
EGG 3.50PM

Petitioner alleges:

_Jurisdiction_

1. This Court has jurisdiction over this Petition pursuant to Cal. Gov't Code §§ 6258 and 6259.

_Parties_

2. Petitioner is CYNTHIA ANDERSON-BARKER, an individual.

3. Petitioner is informed and believes and based thereon alleges that respondent CITY OF LOS ANGELES ("City") is, at all times relevant hereto, a municipal corporation organized and existing under the laws of the State of California and is a "local agency" within the meaning of Cal. Gov't Code § 6252(b).

4. Petitioner is ignorant of the true names and capacities of the respondents sued herein by the

1

VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION
00304222.WPD

**Verified Petition, 6/18/15**                    **-161-**                    **Exhibit O**

1   fictitious names of DOES 1 through 100 and Petitioner will ask leave of this Court to amend this Petition

2   to set forth the true names and capacities of these respondents when their true names have been

3   ascertained. Petitioner is informed and believes and based thereon alleges that DOES 1 through 100 are

4   responsible in some manner for the occurrences herein alleged and Petitioner's damages as herein alleged

5   were proximately caused by such occurrences.

6       5.  Petitioner is informed and believes and based thereon alleges that at all times mentioned

7   herein, each respondent was the agent, servant and employee of each remaining respondent and in doing

8   all the things hereinafter alleged each respondent was acting within the course and scope of this agency

9   and employment. Petitioner is informed and believes and based thereon alleges that the acts and conduct

10  alleged herein of each such respondent were known to, authorized and ratified by each respondent.

11                                          Facts

12      6.  On or about June 4, 2015, by way of a letter to Steve Soboroff, President of the Los Angeles

13  Board of Police Commission, and Charlie Beck, Los Angeles Police Department ("LAPD") Chief, under

14  the California Public Records Act (CPRA) Petitioner requested that the City provide the disclosures

15  and/or production of the following public writings (as defined by the CPRA):

16      ● *All* data recorded in Vehicle Information Impound Center ("VIIC") database, for any vehicle

17      seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form

18      was prepared;

19      ● *All* CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to

20      the present, for which a CHP 180 form was prepared. This includes, but is not limited to,

21      documents that are indexed in Laserfiche, included documents indexed by log number.

22  See **Exhibit A**, true copy of June 4, 2015 letter.

23      2.  Respondent City, by letter dated June 12, 2015, refuses to produce or provide access to, the

24  requested public writings. See **Exhibit B**, June 12, 2015, response by Police Commission Executive

25  Director Richard Tefank.

26      3.  The records sought by Petitioner are "public" and not exempt from disclosure. Nonetheless,

27  the City is refusing to provide the requested records as it is required to do so under the law.

28      4.  Respondent's claim that it does not "own" the requested public records is false, and

                                          2
VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION
                                                                    00104222.WPD

**Verified Petition, 6/18/15**                   **Exhibit O**

1  Respondent knows its claim is false. The VIIC data is created pursuant to contracts between Respondent

2  and privately-owned official police garages ("OPGs"). The contracts specifically provide that all records

3  and data created and/or maintained by the OPGs and their agent, the Official Police Garage Association

4  of Los Angeles ("OPG-LA"), a non-profit §501(c)(4) corporation, are owned by Respondent, and further

5  that Respondent has unlimited use and access to the data and records.

6      5. Petitioner is informed and believes and based thereon alleges that in claiming Respondent does

7  not "own" the requested public records at issue, Respondent's agents have committed perjury and have

8  suborned perjury:

9      A. In *Flynn v. City of Los Angeles*, BS 147850, Respondent submitted a declaration from

10  LAPD Det. Ben Jones. In it, Det. Jones asserted that whenever Respondent sought VIIC data

11  and/or CHP 180 forms stored the OPG-LA data storage system called "Laserfiche," the LAPD

12  would seek a search warrant to obtain the data or records. Jones' assertion was false, and Jones

13  knew his assertion was false. In fact, Petitioner is informed and believes and based thereon

14  alleges that Respondent (whether through the LAPD or other city agency) has *never* sought a

15  search warrant to obtain VIIC data or CHP 180 forms as stored in Laserfiche. Petitioner is

16  informed and believed and based thereon alleges that whenever Respondent seeks VIIC data

17  and/or CHP 180 forms as stored in Laserfiche, Respondent exercises its ownership and access

18  rights to the data and records to obtain these public records.

19      B. Petitioner is informed and believes and based thereon alleges that the declaration

20  signed by Det. Jones in *Flynn v. City of Los Angeles*, BS 147850, was not drafted by Jones but

21  rather, by an attorney for Respondent. Petitioner is further informed that the Respondent's

22  attorney drafted the declaration for the purpose of deceiving the *Flynn* court as to the ownership

23  of VIIC data and CHP 180 forms stored in Laserfiche. In so drafting the declaration and

24  submitting it to the *Flynn* court, the attorney violated Rule 5-200(A) and (B) of the California

25  Rules of Professional Conduct

26  ///

27  ///

28  ///

3

**Verified Petition, 6/18/15**      **-163-**      **Exhibit O**

<u>Grounds for Relief</u>

6.  According to the California Public Records Act (CPRA), a "public record" is "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics"; and a "writing" is any "handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any form of communication or representation." Government Code §§ 6252(e) and (f).  The requested writings, materials and information are "public records" under the CPRA.  Every citizen has the right to inspect any public record at all times during the office hours of the local agency, unless the record is specifically exempt from disclosure.

7.  There is no lawful or proper reason for Respondent's refusal to provide the records, materials and information Petitioner has requested.  Respondent's wrongful refusal to provide the requested records, violates the CPRA and the United States and California Constitutions.  This Court has jurisdiction to order the requested records disclosed at the earliest possible time.  Furthermore, Petitioner is entitled to a mandatory award of attorneys' fees and costs incurred in bringing this Petition.

<u>Relief Sought</u>

8.  Petitioner requests an Order of this Court compelling Respondent to immediately provide the records responsive to Petitioner's June 4, 2015, request for public records, or, in the alternative, to show cause why respondents should not do so at a hearing at the earliest possible time.

9.  Petitioner requests that this Court order Respondent to pay Petitioner's attorneys' fees and reasonable expenses incurred in bringing this Petition and in obtaining the relief sought, in an amount to be shown according to proof.

WHEREFORE, Petitioner prays:

10.  For an Order of this Court compelling Respondents, and each of them, to immediately provide the records, materials and information requested by Petitioner or, in the alternative;

11.  For an Order of this Court compelling Respondent to allow access to the records responsive to Petitioner's requests, or to show cause why they should not do so at a hearing at the earliest possible time;

12.  For an Order awarding reasonable attorney's fees;

VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION

001|04222.WPD

**Verified Petition, 6/18/15**          **-164-**          **Exhibit O**

1    13.  For an Order awarding court costs and reasonable expenses; and

2    14.  For such other and further relief as the Court may deem just and proper.

3  DATED: June 17, 2015

4                                   **DONALD W. COOK**
                                   Attorney for Petitioner
5

6                        By_____
7                                   Donald W. Cook

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION

00H04222.WPD

**Verified Petition, 6/18/15**              **-165-**                    **Exhibit O**

1      **VERIFICATION OF CYNTHIA ANDERSON-BARKER**

2      I, CYNTHIA ANDERSON-BARKER, declare:

3      I am the Petitioner in this action.  I have read the foregoing Petition.  The matters stated therein

4      are true of my own personal knowledge except as to those matters alleged on information and belief and

5      as to those matters, I believe them to be true.

6      Executed on June 4, 2015, at Los Angeles, California.

7

8      CYNTHIA ANDERSON-BARKER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

VERIFIED PETITION FOR WRIT OF MANDATE COMPELLING DISCLOSURE OF PUBLIC RECORDS, MATERIALS AND INFORMATION

00104222.WPD

**Verified Petition, 6/18/15**

**-166-**

**Exhibit O**

# CYNTHIA ANDERSON-BARKER

*ATTORNEY AT LAW*

3435 Wilshire Blvd., Ste. 2910, Los Angeles, CA 90010

(213) 381-3246

June 4, 2015

**By Hand Delvery**

President Steve Soboroff
Los Angeles Board of Police Commissioners
100 West First St., Ste. 134
Los Angeles, CA 90010

Chief Charlie Beck
Los Angeles Police Department
100 West First Street
Los Angeles, CA 90012

Re:   Public Records Request

Dear President Soboroff and Chief Beck:

Pursuant to Cal. Gov't Code §§ 6250, et seq., I request that the City of Los Angeles and LAPD provide a copy, in electronic format (e.g., Microsoft Excel file; data image file(s)), of the following electronically stored data:

- *All* data recorded in Vehicle Information Impound Center ("VIIC") database, for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared;

- *All* CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared. This includes, but is not limited to, documents that are indexed in Laserfiche, included documents indexed by log number.

Please note that pursuant to Cal. Gov't Code § 6253.9, the public records "shall" be made "available in an electronic format." Please note that pursuant to contracts, the City and LAPD has a right to access and possess the above electronically stored records even though the records are stored in systems maintained by the Official Police Garage Association of Los Angeles.

Under the California Public Records Act, you have ten days within which to respond to this request. If you choose to withhold information, you must justify such withholding pursuant to Cal. Gov't Code § 6255.  If I am required to bring a lawsuit to obtain these records, I will be entitled to attorneys fees under the Public Records Act.

Sincerely,

Cynthia Anderson-Barker

CAB:ms

Anderson-Barker 6/4/15 letter

00104055.WPD

EXHIBIT A

# LOS ANGELES POLICE COMMISSION

BOARD OF
POLICE COMMISSIONERS

STEVE SOBOROFF
PRESIDENT

PAULA MADISON
VICE PRESIDENT

SANDRA FIGUEROA-VILLA
KATHLEEN KIM
ROBERT M. SALTZMAN

MARIA SILVA
COMMISSION EXECUTIVE ASSISTANT II

ERIC GARCETTI
Mayor

RICHARD M. TEFANK
EXECUTIVE DIRECTOR

ALEXANDER A. BUSTAMANTE
INSPECTOR GENERAL

EXECUTIVE OFFICE
POLICE ADMINISTRATION BUILDING
100 WEST FIRST STREET, SUITE 134
LOS ANGELES, CA 90012-4112

(213) 236-1400 PHONE
(213) 236-1410 FAX
(213) 236-1440 TDD

June 12, 2015

Ms. Cynthia Anderson-Barker,
Attorney at Law
3435 Wilshire Boulevard,
Suite 2910
Los Angeles, California 90010

Re:  California Public Records Act Request

Dear Ms. Anderson-Barker:

This is in response to your letter received by the Board of Police Commissioners ("Board") on June 4, 2015, requesting certain records from the Board under the California Public Records Act (Cal. Gov't. Code § 6250, *et seq.*, hereafter "CPRA").

The Board is cognizant of its responsibilities under the CPRA. It recognizes that the statutory scheme was enacted in order to maximize citizen access to the workings of government.  However, the CPRA does not mandate the disclosure of all documents within the government's possession.  Rather, by specific exemption and reference to other statutes, the CPRA recognizes that there are boundaries where the public's right to access must be balanced against such weighty considerations as the right of privacy, a right of Constitutional dimension under California Constitution, Article 1, Section 1. The law also exempts from disclosure records that are privileged or confidential or otherwise exempt under either express provisions of the CPRA or pursuant to applicable federal or state law.

You have requested "a copy, in electronic format (e.g. Microsoft Excel file, data image file(s)), of the following electronically stored data:

*All* data recorded in Vehicle Information Impound Center ("VIIC") database, for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared;

*All* CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared. This includes, but is not limited to, documents that are indexed in Laserfiche, included [sic] documents indexed by log number."

Ms. Cynthia Anderson-Barker
Page 2
1.0

## Data in VIIC Database

I understand your request in Item 1 to seek *"all data"* in the VIIC database relating to Los Angeles Police Department (LAPD) vehicle seizures for which a CHP 180 form (Vehicle Report) was prepared, *whether or not the data is recorded on the CHP 180 form*. This request is for the five-year period of June 1, 2010 to June 4, 2015.

The VIIC database is a web-based system which is privately owned, operated, and maintained by the Official Police Garage Association of Los Angeles (OPG-LA). The OPG-LA is a private 501(c) (4) organization comprised of 18 tow companies which have Official Police Garage (OPG) towing contracts with the City of Los Angeles (City). The individual OPG members of the OPG-LA are allowed to put certain vehicle tow information into their information management systems and then upload the information to VIIC to assist in the management of their businesses. The VIIC database contains information that OPG-LA members enter into the system about the tows they perform for the City of Los Angeles, City of San Fernando, City of Beverly Hills, City of West Hollywood and a number of other law enforcement agencies. The VIIC database is comprised of 51 different "fields" of information including personal identifying information about the individuals retrieving vehicles and confidential financial information of the OPG tow companies.

Most importantly, the VIIC database is *not* owned, operated, maintained or possessed by the City, the Board, or the LAPD. No City personnel have programming rights enabling them to apply any computer programs to the OPG-LA's VIIC database to extract "all data" related to LAPD vehicle seizures.

## CHP 180 Forms Held in an Electronic Format

I understand your request in Item 2 to seek *"all CHP 180 forms"* held in an electronic format, including those located in the Laserfiche system, relating to LAPD vehicle seizures. This request is for the five-year period of June 1, 2010 to June 4, 2015.

1. *CHP 180 Forms Held in an Electronic Format*
   The Board does not hold CHP 180 forms in an electronic format in its computer systems. However, the LAPD, Records and Identification Division, stores various types of investigative reports in a computer database. Therefore, the LAPD will respond to this portion of your request.

2. *Laserfiche Document Storage System*
   Laserfiche is a data storage company which OPGs use, pursuant to a license, to scan and store electronic records pertaining to the vehicle tows they perform. The electronic records themselves reside in Laserfiche's private data storage center. The individual tow companies normally scan the OPG copy of the CHP 180 form (which is the last page of the form, a yellow copy that is often illegible) and maintain copies of the forms in the Laserfiche system. The OPGs also maintain many other types of documents in the Laserfiche system including many which contain personal information such as drivers' licenses, state-issued identification cards, Consular Identification cards, Certificates of Title, state-issued Repossessor licenses, Certificates of Repossession, vehicle registrations, passports, and credit cards.

6/12/15 TeFank letter

**Verified Petition, 6/18/15**

-169-

EXHIBIT B

Exhibit O

Ms. Cynthia Anderson-Barker
Page 3
1.0

Most importantly, the Laserfiche system is *not* owned, operated, maintained or possessed by the City, the Board, or the LAPD. No City personnel have programming rights enabling them to apply any computer programs to the OPG-LA's Laserfiche system to extract "all CHP 180 forms" related to LAPD vehicle seizures.

### No Public Records to Disclose

Based on the above information, your reliance on California Government Code section 6253.9 is misplaced. Section 6253.9(a)(1) states in pertinent part:

. . . any agency that has information that constitutes an **identifiable public record not exempt from disclosure** pursuant to this chapter that is in an electronic format shall make that information available in an electronic format when requested by any person and, when applicable, shall comply with the following: (1) The agency shall make the information available in **any electronic form in which it holds the information**. (Emphasis added.)

Section 6253.9 relates to "identifiable **public record[s]** not exempt from disclosure." First, "*all data*" in the VIIC database and the CHP 180 forms in the Laserfiche system are not "public records" as defined in Government Code section 6252 because they are not "prepared, owned, used, or retained" by the Board.[1] Secondly, although the OPG-LA has given a limited number of City employees "access" to information in the VIIC database and OPG documents in the Laserfiche system, such "access" is for the limited purpose of locating towed vehicles and conducting financial audits to ensure proper collection of fees for vehicles towed under City towing contracts. Therefore, the Board does not "hold" or "possess" the data in the VIIC database or the CHP 180 forms in the Laserfiche system as contemplated by section 6253.9(a)(1). Consequently, your request for the data in the VIIC database and the CHP 180 forms in the Laserfiche system are denied because the records are not in the possession of the Board.

As you may know, the issue of whether the information in the VIIC database and the documents in the Laserfiche system constituted "public records" under the CPRA was vigorously litigated in the case of *Colleen Flynn v. City of Los Angeles,* BS 147850. The Honorable James C. Chalfant received extensive briefing, including supplemental briefs addressing issues raised about the City's contracts with the OPGs, and held two lengthy hearings to consider the parties arguments on all the issues raised. After considering all the legal arguments presented by the parties, Judge Chalfant ruled that "[t]he VIIC and Laserfiche databases are not public records" under the CPRA. Additionally, the California Court of Appeal denied the Petition for Writ of Mandate which sought review of Judge Chalfant's decision and the California Supreme Court denied a Petition for Review. Copies of the Judgment, Judge Chalfant's decision, and the appellate courts' orders are attached for your reference.

---

1 Even if the data in the VIIC database and the CHP 180 forms in the Laserfiche system were public records under the CPRA, they would be exempt under Government Code sections 6254(f), 6254(k) and 6255.

*www.LAPDOnline.org*
*www.joinLAPD.com*

**6/12/15 TeFank letter**

**Verified Petition, 6/18/15**

**-170-**

EXHIBIT B

**Exhibit O**

Ms. Cynthia Anderson-Barker
Page 4
1.0

For all of the above reasons, your requests are denied. Should you have any questions regarding this matter, please contact Detective III Benjamin Jones, Commission Investigation Division, at (213) 996-1270.

Very truly yours,

RICHARD M. TEFANK, Executive Director
Board of Police Commissioners

Enclosures

*www.LAPDOnline.org*
*www.joinLAPD.com*

**6/12/15 TeFank letter**
**Verified Petition, 6/18/15**

-171-

EXHIBIT B

Exhibit O

RECEIVED

JUN 2 3 2015

**Public Safety**
**General Counsel Division**

1 | **DONALD W. COOK**, CSB #116666
ATTORNEY AT LAW
2 | 3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
3 | (213) 252-9444 / (213) 252-0091 facsimile
manncook@earthlink.net
4 |
Attorney for Petitioner
5 |

REFERRED TO CITY ATTORNEY
FOR DISPOSITION
JUN 22 2015

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11 | CYNTHIA ANDERSON-BARKER,                 Case No. BS156058
                                            (Assigned to the Hon. James C.
12 |                     Petitioner,          Chalfant, Dept. 85)

13 |                                          **DECLARATION OF PETITIONER**
      vs.                                     **PURSUANT TO CODE OF CIVIL**
14 |                                          **PROCEDURE § 170.6**

15 | CITY OF LOS ANGELES, a municipal
      corporation, and DOES 1 through 100, inclusive,
16 |
                        Respondents.
17 |

18

19 |        I, CYNTHIA ANDERSON-BARKER, declare:

20 |        1. I am the Petitioner in the above matter.

21 |        2. I am informed and believe that the Hon. James C. Chalfant, the judge to whom this case is

22 | assigned, is prejudiced against me and my attorney, or our interests, so that I cannot have a fair and

23 | impartial trial before Judge Chalfant.

24 |        I declare under penalty of perjury that the foregoing is true and correct. Executed June 19, 2015,

25 | at Los Angeles, California.

26

27 |                                    _____
                                          Cynthia Anderson-Barker
28

                                          1
────────────────────────────────────────────────
DECLARATION OF PETITIONER PURSUANT TO CODE OF CIVIL PROCEDURE § 170.6

00104251.WPD

**Declaration, 6/19/15**                    **-172-**                    **Exhibit P**

1                    PROOF OF SERVICE BY MAIL

2       I am a resident of the county of Los Angeles; I am over the age of 18 and not a party to the within

3 action; my business address is 3435 Wilshire Blvd., Suite 2910, Los Angeles, CA 90010.

4       On June 19, 2015, I served the within DECLARATION OF PETITIONER PURSUANT TO

5 CODE OF CIVIL PROCEDURE § 170.6 on the interested parties herein by placing a true copy thereof

6 enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles,

7 California addressed as follows:

8 City Clerk, City of Los Angeles
      200 N. Spring St., Rm. 360
9 Los Angeles, CA 90010

10       I declare under penalty of perjury that the above is true and correct.

11       Executed on June 19, 2015, at Los Angeles, California.

12

13                                       _____

14                                      Donald W. Cook

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
Superior Court of California
County of Los Angeles

AUG 23 2017

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Fernando Becerra, Jr.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CYNTHIA ANDERSON-BARKER,

               Petitioner,

vs.

CITY OF LOS ANGELES, a Municipal Corporation, and DOES 1 through 100, inclusive,

               Respondents,

Case No.:  BS156058

[TENTATIVE] ORDER DENYING PETITION FOR WRIT OF MANDATE

Hearing Date:  August 23, 2017
Time: 9:30 a.m.
Dept.: 86

      Petitioner Cynthia Anderson-Barker ("Petitioner") seeks a writ of mandate under Code Civ. Proc. § 1085(a) ordering Respondent the City of Los Angeles ("Respondent" or the "City") to produce copies of certain government records pursuant to the California Public Records Act ("CPRA") (Gov. Code §§ 6250 *et seq.*).

      For the reasons set forth below, the Court DENIES the petition.

- 1 -

## I.    Statement of the Case

On June 4, 2015, Petitioner made a California Public Records Act (CPRA) request to the LAPD for the following documents:

1. Computer data recorded in Vehicle Information Impound Center ("VIIC") database, for any vehicle seized at the direction of the Los Angeles Police Department ("LAPD") at any time from June 1, 2010 to the present, for which a CHP 180 form was prepared;

2. CHP 180 forms for any vehicle seized at LAPD direction at any time from June 1, 2010 to the present. This includes CHP 180 forms indexed in Laserfiche by log number.

(Petitioner Exh. A.)  The LAPD denied Petitioner's request on the grounds that (1) the VIIC databased is not owned, operated, maintained, or possessed by the City; (2) the Laserfiche system is not owned, operated, maintained, or possessed by the City; (3) CHP 180 forms are exempt under Government Code § 6254(f) because they are "investigatory or security files compiled by . . . [a] local police agency"; (4) CHP 180 forms are exempt under Government Code § 6254(k) and Evidence Code § 1040 because they constitute privileged official information; and (5) CHP 180 forms are exempt under Government Code § 6255 because producing the forms would be unduly burdensome.

On June 18, 2015, Petitioner filed this petition for a writ of mandate compelling the City to produce the above documents.  Anderson-Barker propounded discovery seeking information regarding the City's claim it does not own the VIIC data or the Laserfiche scans and Detective Jones's statement LAPD has obtained search warrants to secure such materials.  The trial court, Judge Joanne O'Donnell presiding, granted Anderson-Barker's motion to compel discovery.  In a written order, the court held that CPRA qualified as a "special proceeding of a civil nature" and was therefore subject to the Civil Discovery Act.  The Court of Appeal rendered a published

- 2 -

decision in May 2017, *City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, similarly concluding that CPRA is subject to the Civil Discovery Act.

## II.    Relevant Prior Litigation

This action is one of several actions prosecuted by Anderson-Barker in an effort to obtain government records memorializing the towing and retention of vehicles by Official Police Garages ("OPGs") in Los Angeles County.  In *County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, Anderson-Barker was the real party in interest seeking to obtain CHP 180s "imaged into the County's electronic archive SECDA." The trial court, Judge Joanne O'Donnell presiding, ordered the County to disclose, without redaction, "all electronically stored 'CHP 180' forms in the possession of the Los Angeles County Sheriff's Department from January 1, 2012, to the present." (*Id.* at 478.)   The court of appeal reversed the trial court finding the forms "as requested" were exempt from disclosure under Government Code Section 6254(l) (exempting records "the disclosure of which is exempted or prohibited pursuant to federal or state law") citing Govt. Code Section 6254.1, subd. (b) (exempting disclosure of residence addresses contained in DMV records) and Vehicle Code Section 1808.21 (which designates residential addresses in DMV records as "confidential" and prohibits disclosure of the addresses to persons other than a "court, law enforcement agency, or other government agency.")  Although Anderson-Barker asked the appellate court to order production of the CHP 180s with residential addresses redacted, the court declined to do so noting that such relief was not requested by the petitioning party.

As recounted in *City of Los Angeles v. Superior Court, supra*, Colleen Flynn sued the LAPD in March 2014 (Case No. BS147850) seeking a writ of mandate compelling LAPD to produce electronically stored data regarding OPGs' towing and retention of vehicles, i.e., "all data recorded in the [VIIC] database" and "[a]ll documents as scanned into Laserfiche regarding the vehicle seizures . . . ." (9 Cal.App.5th at 276.) In an October 14, 2014 order, the trial court, Judge

- 3 -

)

James Chalfant presiding, denied Flynn's petition. (Exh. O, AR 94-104.)   Judge Chalfant
concluded the City did not have possession or constructive possession of the VIIC and Laserfiche
data under Section 6253 of the CPRA. He cited *Consolidated Irrigation District v. Superior Court*
(2012) 205 Cal.App.4th 697, 709) for the proposition that a public agency has constructive
possession "if it has the right to control the records, either directly or through another person."
Judge Chalfant agreed with the City's argument it did not have ownership or control over the VIIC
and Laserfiche documents (notwithstanding its contractual right of access to the documents)
because the City "cannot maintain them, modify them, delete them, and does not own them." (AR
97.) He also concluded that the OPGs' status as agents or independent contractors of the City did
not mean the City had constructive possession of the records. Judge Chalfant identified the "key
issues" as "ownership and control" noting that the City had neither and had, at most, "the right to
access." (AR 98.)   Because it was raised, for the first time, in the reply memorandum, Judge
Chalfant rejected petitioner's arguments based on contractual language assigning ownership of
records to the City ("Unless otherwise provided for herein, all documents, materials, data and
reports originated and prepared by [OPG] under this contract shall be and remain the property of
the CITY for its use in any manner it deems appropriate. . . .") (Exh. O, AR 98.)  Judge Chalfant
also denied the petition on the grounds that the VIIC and Laserfiche data were not public records
because the "City has never physically acquired the requested data," and merely "viewed over the
internet VIIC reports" and "used Laserfiche only sporadically to conduct checks of OPGs by
reviewing their remittance reports." Flynn's efforts to challenge Judge Chalfant's order by filing
a petition for writ of mandate in the court of appeal and seeking review by the California Supreme
Court were unsuccessful.

Anderson-Barker meanwhile filed this petition for writ of mandate against the City of Los
Angeles (Case No. BS 156058) on June 18, 2015 and, as noted above, promulgated discovery.
While the parties litigated a discovery dispute in the trial and appellate courts, Anderson-Barker
initiated a third lawsuit, filing a January 27, 2016 petition for writ of mandate against the City

- 4 -

(Case No. BS159845).  That petition sought, among other things, to compel the City to provide "all CHP 180 forms from January 1, 2008 through present" and "all VIIC data CHP forms."  (Pet. p. 2.)   On October 19, 2016, this Court granted the petition.  Form language in the operative agreement between the City and the OPGs provided that "all [OPG] Work Products originated and prepared by [OPG or its subcontractors] . . . *shall be and remain the property of the CITY* for its use in any manner it deems appropriate," defining "Work Products" as "all works, tangible or not, created under this Contract including, without limitation, documents, material, data, reports . . . computer programs and databases . . . and all forms of intellectual property." (*Id.*) (Emphasis added.) Section 14.3(a) of the operative agreement required the OPG to make "all records generated or kept by the OPG in performance of this Agreement in an accessible location;" to allow "periodic inspection" by the City to ensure compliance (14.3(b)); and to "make available for examination or audit by any representative of the City . . . all data and records, including computer data files, related to the towing or storage services provided under the Agreement." (14.3(c).) (Exh. L., AR 82.)    With respect to CHP 180 forms, the Court granted the petition, ordering the City to "produce CHP 180 forms with residence and mailing addresses redacted," noting that the City "does not submit any evidence that producing the redacted CHP 180 forms would be unduly burdensome."   (Exh. L., AR 81.) With respect to VIIC data, the Court construed the OPG agreement to give the City constructive possession of the data and ordered the City to produce redacted copies of the information.  (Exh. L., AR 82-83.)  The Court's Judgment Directing Issuance of Writ of Mandate was issued on November 15, 2016 and specified 90 days for compliance.  Neither side filed a notice of appeal in that action. (Exh. L., AR 75.)  It appears that no records have been produced in compliance with the Judgment. (Dermer Decl., Exh. 2.)

## III.    Standard of Review

### A.    *Traditional Writ of Mandate*

- 5 -

Code of Civil Procedure section 1085(a) provides in relevant part:

A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person.

"There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty. (*California Ass'n for Health Services at Home v. Department of Health Services* (2007) 148 Cal.App.4th 696, 704.) "Generally, a writ will lie when there is no plain, speedy, and adequate alternative remedy . . . ." (*Pomona Police Officers' Ass'n v. City of Pomona*, (1997) 58 Cal.App.4th 578, 583-84.)

"When there is review of an administrative decision pursuant to Code of Civil Procedure section 1085, courts apply the following standard of review: '[J]udicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law.' [Citations.]" (*Pomona Police Officers' Ass'n, supra*, 58 Cal.App.4th at 584)

B.   *California Public Records Act*

Pursuant to the CPRA (Gov. Code § 6250, et seq.), individual citizens have a right to access government records. In enacting the CPRA, the California Legislature declared that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250; see also *County of Los Angeles v. Superior Court*, (2012) 211 Cal.App.4th 57, 63.) "Public records" are defined in Section 6252(e):

- 6 -

(e) "Public records" includes any writing containing information relating to the conduct of the public's business **prepared, owned, used or retained** by any state or local agency regardless of physical form or characteristics. . . ."

(Gov. Code § 6252(e).) (Emphasis added.) Section 6253 addresses an agency's obligation to allow inspection of "Public records:"

(b) Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable. Upon request, an exact copy shall be provided unless impracticable to do so.

(c) Each agency, upon a request for a copy of records, shall . . . determine whether the request . . . seeks copies of disclosable public records **in the possession of the agency** and shall promptly notify the person making the request of the determination and the reasons therefor . . . ."

(Gov. Code, § 6253(b) and (c).) (Emphasis added.)  Section 6270 prevents the transfer of public records to private entities as a means of avoiding disclosure:

(a) Notwithstanding any other provision of law, no state or local agency shall sell, exchange, furnish or otherwise provide a public record subject to disclosure pursuant to this chapter to a private entity in a manner that prevents a state or local agency from providing the record directly pursuant to this chapter.

(Gov. Code § 6170(a).)

On March 17, 2017, the California Supreme court issued a decision in *County of San Jose v. Superior Court* (2017) 2 Cal.5th 608.  The issue in that case was whether, under the CPRA, a city was obligated to produce text messages sent or received on personal electronic devices by city officials in the course of their official duties.  The decision focused on the question whether the text messages were "public records" within the meaning of CPRA Section 6252 subd. (e),

- 7 -

)

particularly whether they were "**prepared, owned, used or retained**" by the agency. The court noted that "documents otherwise meeting CPRA's definition of 'public records' do not lose this status because they are located in an employee's personal account." The Court concluded that the communications did not "cease to be public records just because they were sent or received using a personal account" noting that "[s]ound public policy supports this result." (*Id.* at 625.)

In dicta, the court distinguished the question whether the requested documents were "public records" from the question whether the agency had actual or constructive possession of them giving rise to "an obligation to search for, collect, and disclose the material requested" under Section 6253 subd. (c). With regard to the latter, the court cited *Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 710 for the proposition that "[A]n agency has constructive possession of records if it has the right to control the records, either directly or through another person." It identified *Consolidated Irrigation* as a case where a city was not held to be in possession of the requested documents because there was no contractual relationship between the city and the subcontractors whose files had been requested by the petitioner. It contrasted *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1426 as a case where a city had an obligation to produce a consultant's records because the city "had a contractual ownership interest and right to possess this material." (Id. at 623.) Although, with regard to the employees' text messages, the court did not expressly decide whether or not the agency had possession of the data for purposes of Section 6253, subd. (c), its instructions for remand presumed that the agency had constructive possession of the information. Mindful of the employees' privacy interests in data stored on their personal electronic devices, the court suggested that "an agency's first step should be to communicate the request to the employees in question" and that the agency "may then reasonably rely on those employees to search their own personal files, accounts and devices for responsive material." (*Id.* at 628.)

- 8 -

)

**IV.     Analysis**

A.     _Petitioner Is Estopped from Compelling Disclosure of VIIC and Laserfiche Data_

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, [courts] have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements. [Citations.]." (_Lucido v. Superior Court_ (1990) 51 Cal.3d 335, 341.) "The doctrine 'rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation.' [Citation.]" (_Rodgers v. Sargent Controls & Aerospace_ (2006) 136 Cal.App.4th 82, 89–90.)

The City contends that Petitioner is collaterally estopped from requesting VIIC database and Laserfiche data based on the decision issued in _Flynn v. City of Los Angeles_, Case No. BS147850.  In that case, Petitioner Colleen Flynn made a CPRA request to the LAPD for disclosure of (1) "_All_ data recorded in [the VIIC] database" and (2) "_All_ documents as scanned into Laserfiche regarding vehicle seizures." (City RJN Exh. A p. 2.) After the City denied the request, Flynn filed a petition for writ of mandate to compel disclosure.  As described above, Judge Chalfant denied the petition.

- 9 -

)

There is no dispute that the issue sought to be precluded from relitigation by the City is identical to the issue in *Flynn* because the VIIC and Laserfiche data sought by Petitioner in this case are a subset of the documents sought in *Flynn*. There is also no dispute that the *Flynn* court issued a final decision on the merits. Thus, the only element of collateral estoppel in dispute is whether Petitioner in this case is in privity with Colleen Flynn.

"The concept of privity for the purposes of ... collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel. [Citations.]' [Citations.]" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90–91.) The City contends that Anderson-Barker and Flynn are in privity because Anderson-Barker is being represented by Donald Cook, the same counsel that represented Flynn. (See *Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1237 ["[S]imilarity of counsel is one factor that may be considered on the issue of whether a non-party's interest was truly represented in the first lawsuit."].) Moreover, the City submits evidence that Anderson-Barker, Flynn, and Cook are all attorneys who share a common business address. (Opp. p. 6 fn. 3.) In reply, Petitioner merely asserts that such evidence is insufficient to establish privity. (Reply at 1:18-19.)

The Court finds that the evidence presented by the City is sufficient to establish privity. The fact that Anderson-Barker and Flynn share an office and are, in the same time period and represented by the same counsel, seeking disclosure of the exact same files from the City strongly suggests that they are working in concert and are "sufficiently close" to justify application of the doctrine of equitable estoppel. The issue of whether the City has possession of the VIIC and

- 10 -

)

Laserfiche data such that it must provide them for inspection under Section 6253 was thoroughly litigated in *Flynn*. Public policy and judicial economy favor applying collateral estoppel to prevent relitigation of the same issue here.

Petitioner goes on to contend that even if the elements of collateral estoppel are met, estoppel is precluded by the City's fraud in *Flynn*. Petitioner argues that the City committed fraud by submitting the Declaration of Detective Benjamin Jones in support of their opposition, which allegedly contained a false statement. Petitioner cites the following paragraph from Jones' 2014 Declaration in the *Flynn* case:

> "[I]t has always been my understanding and interpretation of the Agreements [between the City and OPGs] that the records generated and maintained by the OPGs, including the information in VIIC and the documents stored in Laserfiche, belong to the tow company. My understanding and interpretation of the Agreements has always been that the records are not owned by, nor are they the property of, the city. Further, even though Article 14.3, paragraph (e) gives the City the right to remove business records for the purposes of reproduction, in those instances when that has been necessary, **the LAPD has obtained a search warrant to obtain physical possession of the records.**"

(Petitioner Exh. P ¶ 8, emphasis added.)   This exact paragraph is also included in Jones' Declaration in support of the City's opposition in this case.  (See Jones Decl. ¶ 8.)  Petitioner argues that Jones' statement was "indisputably false" because the City has the ability to obtain VIIC and Laserfiche data without a search warrant. In support of this position, Petitioner submits an e-mail from OPG-LA's Director, Eric Rose, to Jones in which Rose provides Jones with "all the OPG stats [Jones] requested."  (Cook Reply Decl. ¶ 3, Exh. S.)  The evidence provided by Petitioner does not establish that Jones' statement was false. Jones stated that the LAPD typically obtains a search warrant in order to remove *physical business records* from an OPG. The fact that OPG-LA's Director e-mailed Jones electronic files containing "OPG stats" is irrelevant.  On the contrary, the sample search warrant cited by Jones shows that in at least one instance the LAPD

- 11 -

did obtain a search warrant to search an OPG office for physical records.  (Petitioner Exh. Q p.
112, 114.)

Accordingly, the Court finds that the City has established the elements of collateral
estoppel and that Petitioner has failed to submit evidence of fraud or other grounds precluding
estoppel.  Petitioner is thus collaterally estopped form seeking disclosure of VIIC and Laserfiche
data.

B.     *In the Alternative, the Court Denies the Petition because the Language in the*
       *Operative OPG Agreements Assigns Ownership of the VIIC and Laserfiche Data*
       *to the OPGs rather than to the City*

As set forth in the Jones Declaration, the current version of the OPG agreement provides,
"the OPGLA VIIC and the data contained therein is owned by the Official Police Garage
Association of Los Angeles" and "the OPGLA Document Control System [Laserfiche] and the
data contained therein is owned by the OPGA of Los Angeles." (Jones Decl, ¶¶ 7, 10 and Exh. 2,
Art. 9.4.)  The specific language in this provision overrides the form language in PSC-23 that
would arguably make such records the property of the City.  A contract assigning ownership of
records to the City would be evidence the City, as owner, has ultimate control over them.  Without
evidence of ownership, Petitioner has failed to establish the City has constructive possession of
the VIIC and Laserfiche records rendering them subject to inspection under Section 625, subd. (c).

The City meanwhile presents substantial evidence it does not possess or control the VIIC
or Laserfiche records.  Jones testifies that the VIIC and Laserfiche records are not in the City's
"actual possession" because they "are not stored on City servers." (Jones Decl. ¶ 14.) He explains
that the OPGs use the VIIC data for their own purposes and that the OPGs are not required to input
any specific data into the VIIC database. (Jones Decl. ¶. 9.)  The same is true with respect to the
Laserfiche data.  (*Id.*, ¶ 10.)  Although the City has internet access to the records, "no City

- 12 -

)

personnel have the ability to apply a specific computer program" to the VIIC or Laserfiche databases. (*Id.*, ¶ 12.) According to Jones, "No City personnel . . . have the authority to modify (add or delete from) any of the information in VIIC or any electronic records in Laserfiche" and none "have any control over the content of either of those databases." (*Id.*, ¶ 16.) The City has therefore established it does not have control over the records and that the VIIC and Laserfiche records are not in its actual or constructive possession.

Petitioner argues the new provision assigning ownership of the data to OPGLA is unenforceable because it is not supported by consideration. The Court rejects that argument because it is not supported admissible evidence. Moreover, there is no evidence Petitioner has any standing to assert the rights of a third party beneficiary under the OPG agreement.

Petitioner also argues, in the alternative, that even if new language in the OPG agreements assigns ownership of the data to the OPGs, the new language does not negate the old language assigning ownership of pre-2014 data to the OPGS. The Court rejects this argument because the form language of the prior contract is significantly undermined by the City's evidence that it has no physical possession of the data and does not and cannot exercise control, i.e., that it does not input the data, cannot add or delete data, cannot manipulate the data etc. The Court is not persuaded the City in fact has possession or control of the pre-2014 data.

Petitioner's argument the Supreme Court's decision in *City of San Jose* compels a different result is also unpersuasive. As noted above, that decision examined the question whether agency employees' text messages were "public records" as defined under CPRA under Section 6252(c). It did not enlighten the issue whether the City, in this case, has possession or constructive possession of the requested records under Section 6253(c).

- 13 -

C.   *The City Has Established that the Burden of Producing CHP 180 Forms in the LAPD's Database Is Excessive*

Having established that Petitioner cannot compel inspection of VIIC and Laserfiche data, the only remaining issue is whether the City may be compelled to disclose CHP 180 forms that have been scanned into the LAPD's own Documentum computer database. While there is no question that these forms are in the City's possession, the City contends that the CHP 180 forms are exempt from disclosure because: (1) the CPRA exempts from disclosure records of investigations conducted by a local policy agency; and (2) producing the CHP 180 forms would be unduly burdensome.

1.   The CPRA Does Not Exempt from Disclosure Portions of CHP 180 Forms Disclosed to the Public

Government Code section 6254(f) exempts from disclosure "[r]ecords of . . . investigations conducted by . . . any state or local police agency . . . ." This exemption "protects witnesses, victims, and investigators, secures evidence and investigative techniques, encourages candor, recognizes the rawness and sensitivity of information in criminal investigations, and in effect makes such investigations possible. [Citations.]"   (*Dixon v. Superior Court* (2009) 170 Cal.App.4th 1271, 1276.)

The City contends that the requested CHP 180 forms are exempt from disclosure because they are records of investigations conducted by the LAPD for a law enforcement purpose. In his declaration, Detective Jones explains how CHP 180 forms are generally processed:

When a LAPD officer needs to impound a vehicle as a result of a police investigation, he must notify LAPD Communications Division personnel, who will contact the appropriate OPG to request a tow. The assigned OPG will dispatch a tow truck to the officer's location

- 14 -

)

to tow the vehicle.  The LAPD officer will complete the portion of a Vehicle Report (CHP
180) which must be completed in the field.  The CHP 180 is a California Highway Patrol
carbonless packet of forms consisting of seven pages.  The officer will deliver the third and
fourth pages of the packet entitled "Notice of Stored Vehicle" to the driver of the vehicle
(if available) pursuant to California Vehicle Code § 22852.  The officer will deliver the last
page of the CHP 180 to the OPG tow truck driver.

(Jones Decl. ¶ 4.)  Petitioner responds that the CHP 180 forms Petitioner seeks are not investigatory
records because they are routinely provided to non-law enforcement personnel for non-
investigatory purposes.  (Reply p. 8.)

Government Code section 6254.5 provides that "if a state or local agency discloses a public
record that is otherwise exempt from this chapter, to a member of the public, this disclosure shall
constitute a waiver of the exemptions specified in Section 6254 . . . ."  According to Jones'
Declaration, when an LAPD officer completes a CHP 180 form in the field, the "Notice of Stored
Vehicle" portion of the form is provided to the driver of the vehicle and the "Vehicle Report"
portion of the CHP 180 is provided to the OPG tow truck driver.  (Jones Decl., Exh. 1 pp. 14-18.)
Because these portions of the CHP 180 form are disclosed to the public, the Court finds that they
are not exempt from disclosure under the CPRA.  In any event, it is clear that these portions of the
CHP 180 form do not contain the type of sensitive information or investigative techniques that
Section 6254(f) was designed to protect.  On the other hand, the "Stolen/Embezzled Narrative"
portion of the CHP 180 form is not disclosed to the public and includes a "Recovery Narrative"
that calls for the officer to provide information about "witnesses, clues, and other crimes."  (Jones

- 15 -

Decl., Exh. 1 p. 13.)  The Court finds that this portion of the CHP 180 form is exempt from disclosure under Section 6254(f).[1]

### 2.   The City Has Established that Producing the CHP 180 Forms Would be Unduly Burdensome

Government Code section 6255 provides that an "agency shall justify withholding any record by demonstrating that . . . on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255.)  The City contends that the public interest in this case weighs against requiring disclosure of the CHP 180 forms because producing those forms would be unduly burdensome on the LAPD.  The City submits evidence that the Documentum database stores all of its records including its CHP 180 forms under Division Records Numbers, which correspond to individual investigations. (Avery Decl. ¶¶ 4-5.)  The database does not have a feature allowing it to retrieve all CHP 180 forms for a particular period. (*Id.* ¶ 5.)  As a result, in order to locate all the CHP 180 forms relating to LAPD vehicle seizures from June 1, 2010 to the present, the Department would need to ascertain the DR Numbers for each of the 365,973 vehicle tows that have occurred since June 1, 2010 and individually enter each of those numbers into the Documentum database. (Jones Decl., ¶13.)

In opposition, Petitioner argues that the LAPD can avoid the burden of searching its Documentum database for the CHP 180 forms because it has the ability to retrieve the forms more easily via the Laserfiche database.  Petitioner submits the Declaration of Dwight W. Cook, an Applications Programmer Analyst, who declares that he is familiar with the VIIC and Laserfiche

---

[1] The Court notes that it is unclear whether Petitioner is even seeking disclosure of the "Stolen/Embezzled Narrative" portion of the CHP 180 form.  The sample CHP 180 form provided by Petitioner contains only the Vehicle Report and Notice of Stored Vehicle pages. (See Petitioner Exh. E.)

- 16 -

data systems, has reviewed declarations and deposition testimony concerning those systems, and has spoken to David Ospina, the programmer and developer of those systems. (Dwight Cook Decl. ¶ 4.) Cook opines that the City could easily create a program that selects, retrieves, and copies CHP 180 forms from the Laserfiche database to a USB drive. (*Id.* ¶ 10.) The City objects that Cook's declaration is based on speculation and overlooks the fact that the individual CHP 180 forms would need to be redacted before they can be produced. The City also cites Jones' Declaration stating that City personnel do not have the ability to apply a specific computer-program to the VIIC database or Laserfiche system to extract copies of the CHP 180 forms. (Jones Decl. ¶ 12.)

Petitioner counters that the City can shift the burden to the OPGs based on language in the OPG contracts stating, "[t]he OPG must make available for examination or audit by any representative of the City or the Board, all data and records, including computer data files, related to the towing or storage services provided under this Agreement." (Jones Decl., Exh. 2 ¶ 14.3(c).) From Petitioner's point of view, this language suggests that OPGs must make the Laserfiche database "available for examination . . . by any representative of the City" and, presumably, must make the database available in a way that permits City representatives to extract the files that are needed.

The Court finds that the City has the better side of the argument. As noted in *City of San Jose*, "agencies are obliged to disclose all records they can locate 'with reasonable effort.' [citations.]" and need not " ' undertake extraordinarily extensive or intrusive searches . . .' [citations.]" (*City of San Jose*, 1 Cal. 5th at 627.) The City has established that searching for the requested documents would pose a burden on its employees.

Compelling the City to produce the documents by shifting the burden to the OPGs would allow Petitioner to circumvent the language of Section 6253(c) which limits the City's obligation

- 17 -

to allow inspection of documents that are *within its possession*, i.e., documents within its control. Evidence of access to the documents is not evidence of control over them.  Moreover, there is nothing in the OPG agreement suggesting the OPGs agreed to write programs to facilitate the City's review of data or otherwise bargained for assuming the burden that Petitioner asks the Court to impose on them  The Court is also not persuaded that the City itself has the capacity to write programs or otherwise manipulate the data.  (Jones Decl. ¶ 12.)  As noted above, there is no evidence Petitioner has rights under the OPG agreement as a third party beneficiary or otherwise. Petitioner has therefore failed to successfully rebut the City's evidence it will suffer an undue burden if it must retrieve and produce the CHP 180s from its own files.

**V.     Conclusion**

For the reasons noted above, the Court DENIES the petition for writ of mandate.

Dated: _8/23/17_                                    _____
                                                         AMY D. HOGUE
                                                  JUDGE OF THE SUPERIOR COURT

- 18 -

ACCO,(SPx),DISCOVERY,MANADR,REOPENED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside)
## CIVIL DOCKET FOR CASE #: 5:14-cv-02257-JGB-SP

Lamya Brewster v. City of Los Angeles, et al      Date Filed: 11/02/2014
Assigned to: Judge Jesus G. Bernal      Jury Demand: Plaintiff
Referred to: Magistrate Judge Sheri Pym      Nature of Suit: 440 Civil Rights: Other
Demand: $0      Jurisdiction: Federal Question
Case in other court: 9th Circuit, 15-55479
Cause: 42:1983 Civil Rights Act

**Plaintiff**

**Lamya Brewster**      represented by    **Barrett S Litt**
*individually and as class representative*      Kaye McLane Bednarski and Litt LLP
975 East Green Street
Pasadena, CA 91106
626-844-7660
Fax: 626-844-7670
Email: blitt@kmbllaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cynthia M Anderson-Barker**
Cynthia M Anderson-Barker Law Offices
3435 Wilshire Boulevard Suite 2910
Los Angeles, CA 90010
213-381-3246
Fax: 213-252-0091
Email: cablaw@hotmail.com
*TERMINATED: 11/17/2014*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine Elizabeth Sweetser**
Schonbrun Seplow Harris and Hoffman LLP
11543 W Olympic Blvd
Los Angeles, CA 90064
310-396-0731
Fax: 310-399-7040
Email: csweetser@sshhlaw.com
*ATTORNEY TO BE NOTICED*

**Paul L Hoffman**
Schonbrun Seplow Harris and Hoffman LLP
11543 W Olympic Blvd
Los Angeles, CA 90064
310-396-0731
Fax: 310-399-7040
Email: hoffpaul@aol.com

**Docket (Brewster)**      **-192-**      **Exhibit R**

*ATTORNEY TO BE NOTICED*

**Donald Webster Cook**
Donald W Cook Attorney at Law
3435 Wilshire Boulevard Suite 2910
Los Angeles, CA 90010
213-252-9444
Fax: 213-252-0091
Email: manncook@earthlink.net
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

| **Chief Charlie Beck**<br>*individually* | represented by | **Adena Michelle Hopenstand**<br>Los Angeles City Attorney Office<br>200 North Main Street Room 916<br>Los Angeles, CA 90012<br>213-473-6875<br>Fax: 213-473-6818<br>Email: adena.hopenstand@lacity.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Gabriel Seth Dermer**<br>Office of the City Attorney<br>City Hall East Room 916<br>200 North Main Street 9th Floor<br>Los Angeles, CA 90012<br>213-473-6850<br>Fax: 213-473-6818<br>Email: gabriel.dermer@lacity.org<br>*ATTORNEY TO BE NOTICED* |

<u>**Defendant**</u>

| **City of Los Angeles**<br>*a municipal corporation* | represented by | **Adena Michelle Hopenstand**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Gabriel Seth Dermer**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

<u>**Defendant**</u>

| **Los Angeles Police Department**<br>*a public entity* | represented by | **Adena Michelle Hopenstand**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Gabriel Seth Dermer**<br>(See above for address) |

**Docket (Brewster)**                    **-193-**                    **Exhibit R**

*ATTORNEY TO BE NOTICED*

**Defendant**

**Chief Charlie Beck**            represented by   **Adena Michelle Hopenstand**
*in his official capacity*                                 (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Gabriel Seth Dermer**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1 through 10*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2014 | 1 | COMPLAINT Receipt No: 0973-14714483 - Fee: $400, filed by Plaintiff Lamaya Brewster. (Attorney Donald Webster Cook added to party Lamaya Brewster(pty:pla))(Cook, Donald) (Entered: 11/02/2014) |
| 11/02/2014 | 2 | CIVIL COVER SHEET filed by Plaintiff Lamaya Brewster. (Cook, Donald) (Entered: 11/02/2014) |
| 11/02/2014 | 3 | NOTICE of Interested Parties filed by Plaintiff Lamaya Brewster, identifying Lamya Brewster. (Cook, Donald) (Entered: 11/02/2014) |
| 11/02/2014 | 4 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Lamaya Brewster. (Cook, Donald) (Entered: 11/02/2014) |
| 11/04/2014 | 5 | NOTICE RE INTRA-DISTRICT TRANSFER by Clerk of Court due to incorrect intra-district venue selected by the filer. Case is transferred to the Eastern Division. Case has been assigned to Judge Jesus G. Bernal for all further proceedings. Any matters that may be referred to a Magistrate Judge are assigned to Sheri Pym. New Case Number EDCV 14-2257 JGB(SPx). (esa) Modified on 11/4/2014 (esa). (Entered: 11/04/2014) |
| 11/04/2014 | 6 | NOTICE OF ASSIGNMENT to District Judge Jesus G. Bernal and Magistrate Judge Sheri Pym. (esa) (Entered: 11/04/2014) |
| 11/04/2014 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (esa) (Entered: 11/04/2014) |
| 11/04/2014 | 8 | 21 DAY Summons Issued re Complaint 1 as to defendants Charlie Beck, Charlie Beck, City of Los Angeles, Los Angeles Police Department. (esa) (Entered: 11/04/2014) |
| 11/05/2014 | 9 | PROOF OF SERVICE Executed by Plaintiff Lamya Brewster, upon Defendant City of Los Angeles served on 11/5/2014, answer due 11/26/2014. Service of the Summons and Complaint were executed upon Julie Amanti, Deputy City Clerk in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Cook, Donald) (Entered: 11/05/2014) |
| 11/05/2014 | 10 | PROOF OF SERVICE Executed by Plaintiff Lamya Brewster, upon Defendant Los Angeles Police Department served on 11/5/2014, answer due 11/26/2014. Service of the Summons and Complaint were executed upon Julie Amanti, Deputy City Clerk in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Cook, Donald) (Entered: 11/05/2014) |

**Docket (Brewster)**            **-194-**            **Exhibit R**

| 11/05/2014 | 11 | PROOF OF SERVICE Executed by Plaintiff Lamya Brewster, upon Defendant Charlie Beck served on 11/5/2014, answer due 11/26/2014. Service of the Summons and Complaint were executed upon Ethelinda Llanera, Sr. Clerk Typist in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Cook, Donald) (Entered: 11/05/2014) |
|---|---|---|
| 11/13/2014 | 12 | STANDING ORDER upon filing of the complaint by Judge Jesus G. Bernal. (ima) (Entered: 11/13/2014) |
| 11/17/2014 | 13 | EX PARTE APPLICATION for Temporary Restraining Order as to To Compel Release of LAPD Hold on Vehicle - *Plaintiffs Application for Temporary Restraining Order; Memorandum of Points and Authorities* - Ex Parte Application filed by Plaintiff Lamya Brewster. (Attachments: # 1 Declaration of Lamya Brewster In Support of Application for TRO, # 2 Declaration of Tishon Johnson In Support of Application for TRO, # 3 Declaration of Yonnie Percy In Support of Application for TRO, # 4 Declaration of Cynthia Anderson-Barker In Support of Application for TRO, # 5 Declaration of Donald W. Cook In Support of Application for TRO, # 6 Proposed Order Granting Temporary Restraining Order)(Cook, Donald) (Entered: 11/17/2014) |
| 11/17/2014 | 14 | PROOF OF SERVICE filed by Plaintiff Lamya Brewster, re EX PARTE APPLICATION for Temporary Restraining Order as to To Compel Release of LAPD Hold on Vehicle - *Plaintiffs Application for Temporary Restraining Order; Memorandum of Points and Authorities* - Ex Parte Application 13 *Proof of Service of Plaintiffs Application for TRO and Supporting Documents,* served on 11/17/2014. (Cook, Donald) (Entered: 11/17/2014) |
| 11/17/2014 | 15 | MEMORANDUM in Opposition to EX PARTE APPLICATION for Temporary Restraining Order as to To Compel Release of LAPD Hold on Vehicle - *Plaintiffs Application for Temporary Restraining Order; Memorandum of Points and Authorities* - Ex Parte Application 13 *in OPPOSITION to Plaintiff's Application for Temporary Restraining Order* filed by Defendants Charlie Beck, Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Attachments: # 1 Declaration of Sharon Dickinson, # 2 Declaration of Detective Travonne Dixon and Exhibits A-E thereto, # 3 Declaration of Elizabeth Fitzgerald, # 4 Declaration of Scott Frus and Exhibits F-G thereto, # 5 Declaration of Adena M. Hopenstand and Exhibit H thereto, # 6 Notice of Lodging of Non-Paper Physical Exhibit, # 7 Objections to Evidence submitted by Plaintiff in support of her TRO Application, # 8 Proposed Order re Objections to Evidence submitted by Plaintiff in support of her TRO Application)(Attorney Adena Michelle Hopenstand added to party Charlie Beck(pty:dft), Attorney Adena Michelle Hopenstand added to party Charlie Beck(pty:dft), Attorney Adena Michelle Hopenstand added to party City of Los Angeles(pty:dft), Attorney Adena Michelle Hopenstand added to party Los Angeles Police Department(pty:dft))(Hopenstand, Adena) (Entered: 11/18/2014) |
| 11/18/2014 | 16 | NOTICE of Appearance filed by attorney Barrett S Litt on behalf of Plaintiff Lamya Brewster (Attorney Barrett S Litt added to party Lamya Brewster(pty:pla))(Litt, Barrett) (Entered: 11/18/2014) |
| 11/18/2014 | 17 | Notice of Appearance or Withdrawal of Counsel: for attorney Donald Webster Cook counsel for Plaintiff Lamya Brewster. Cynthia Anderson-Barker is no longer attorney of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 11/18/2014) |
| 11/18/2014 | 18 | REPLY IN SUPPORT OF EX PARTE APPLICATION for Temporary Restraining Order as to To Compel Release of LAPD Hold on Vehicle - *Plaintiffs Application for Temporary Restraining Order; Memorandum of Points and Authorities* - Ex Parte Application 13 *Plaintiffs Reply to Defendants Opposition to Application for Temporary Restraining Order; Declaration of Donald W. Cook,* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 11/18/2014) |
| 11/19/2014 | 19 | NOTICE of Appearance filed by attorney Gabriel Seth Dermer on behalf of Defendants Charlie Beck, Charlie Beck, City of Los Angeles, Los Angeles Police Department (Attorney Gabriel Seth |

**Docket (Brewster)**      **-195-**      **Exhibit R**

| | | |
|---|---|---|
| | | Dermer added to party Charlie Beck(pty:dft), Attorney Gabriel Seth Dermer added to party Charlie Beck(pty:dft), Attorney Gabriel Seth Dermer added to party City of Los Angeles(pty:dft), Attorney Gabriel Seth Dermer added to party Los Angeles Police Department(pty:dft))(Dermer, Gabriel) (Entered: 11/19/2014) |
| 11/20/2014 | 20 | DECLARATION of MOSES MUSHARBASH IN SUPPORT OF EX PARTE APPLICATION for Temporary Restraining Order as to To Compel Release of LAPD Hold on Vehicle - *Plaintiffs Application for Temporary Restraining Order; Memorandum of Points and Authorities* - Ex Parte Application 13 filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 11/20/2014) |
| 11/20/2014 | 21 | STIPULATION Extending Time to Answer the complaint as to Los Angeles Police Department answer now due 12/26/2014; City of Los Angeles answer now due 12/26/2014; Charlie Beck answer now due 12/26/2014; Charlie Beck answer now due 12/26/2014, re Complaint (Attorney Civil Case Opening) 1 filed by Defendants Los Angeles Police Department; City of Los Angeles; Charlie Beck; Charlie Beck.(Dermer, Gabriel) (Entered: 11/20/2014) |
| 11/20/2014 | 22 | MINUTES (IN CHAMBERS): ORDER by Judge Jesus G. Bernal: denying 13 Ex Parte Application for TRO. See order for details. (mga) (Entered: 11/20/2014) |
| 11/21/2014 | 23 | NOTICE of Appearance filed by attorney Paul L Hoffman on behalf of Plaintiff Lamya Brewster (Attorney Paul L Hoffman added to party Lamya Brewster(pty:pla))(Hoffman, Paul) (Entered: 11/21/2014) |
| 11/21/2014 | 24 | NOTICE of Appearance filed by attorney Catherine Elizabeth Sweetser on behalf of Plaintiff Lamya Brewster (Attorney Catherine Elizabeth Sweetser added to party Lamya Brewster(pty:pla)) (Sweetser, Catherine) (Entered: 11/21/2014) |
| 11/24/2014 | 25 | STIPULATION for Issuance of ORDER SETTING BRIEFING SCHEDULE RE MOTIONS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION filed by Plaintiff Lamya Brewster. (Attachments: # 1 Proposed Order Setting Briefing Schedule)(Cook, Donald) (Entered: 11/24/2014) |
| 11/24/2014 | 26 | NOTICE OF MOTION AND MOTION to Certify Class filed by Plaintiff Lamya Brewster. Motion set for hearing on 1/12/2015 at 09:00 AM before Judge Jesus G. Bernal. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Litt, Barrett) (Entered: 11/24/2014) |
| 11/24/2014 | 27 | DECLARATION of Barrett S. Litt In Support of MOTION to Certify Class 26 filed by Plaintiff Lamya Brewster. (Litt, Barrett) (Entered: 11/24/2014) |
| 11/24/2014 | 28 | NOTICE OF MOTION AND MOTION for Preliminary Injunction re Enjoining Warrantless Seizure of Vehicles on 30 Day Holds *Notice of Motion for Preliminary Injunction; Memorandum of Points and Authorities*. Motion filed by Plaintiff Lamya Brewster. Motion set for hearing on 1/12/2015 at 09:00 AM before Judge Jesus G. Bernal. (Attachments: # 1 [Proposed] Preliminary Injunction) (Cook, Donald) (Entered: 11/24/2014) |
| 12/03/2014 | 29 | NOTICE of Related Case(s) filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. Related Case(s): CV 07-1854-SJO-VBK; CV 08-3178-SJO-VBK; CV 14-8449-R-VBK (Hopenstand, Adena) (Entered: 12/03/2014) |
| 12/05/2014 | 30 | MEMORANDUM of Points and Authorities in Opposition filed by Plaintiff Lamya Brewster. *Plaintiffs Response to Defendants Notice of Related Cases; Declaration of Donald W. Cook* Re: Notice of Related Case(s) 29 (Cook, Donald) (Entered: 12/05/2014) |
| 12/05/2014 | 31 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 14-03 (Related Case) filed. Transfer of case declined by Judge S. James Otero, for the reasons set forth on this order. Related Case No. 2:07-cv-01854-SJO(VBKx). (vp) (Entered: 12/05/2014) |

**Docket (Brewster)**                           -196-                           **Exhibit R**

| | | |
|---|---|---|
| 12/11/2014 | 32 | ORDER by Judge Jesus G. Bernal, re Stipulation for Issuance 25 ( Responses due by 1/12/2015, Replies due by 1/20/2015. Motions for Class Certification reset for hearing on 2/9/2015 at 09:00 AM before Judge Jesus G. Bernal.) (mrgo) (Entered: 12/11/2014) |
| 12/26/2014 | 33 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. Motion set for hearing on 2/9/2015 at 09:00 AM before Judge Jesus G. Bernal. (Attachments: # 1 Memorandum of Points and Authorities in support of Motion to Dismiss, # 2 Declaration of Adena M. Hopenstand in Support of Motion to Dismiss, # 3 Exhibit 1 to Declaration of Adena M. Hopenstand (Part 1 of 3), # 4 Exhibit 1 to Declaration of Adena M. Hopenstand (Part 2 of 3), # 5 Exhibit 1 to Declaration of Adena M. Hopenstand (Part 3 of 3), # 6 Proposed Order re Motion to Dismiss)(Hopenstand, Adena) (Entered: 12/26/2014) |
| 01/12/2015 | 34 | OPPOSITION re: MOTION to Certify Class 26 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Attachments: # 1 Declaration of Detective Travonne Dixon, # 2 Declaration of Adena M. Hopenstand, # 3 Exhibit 1 to Declaration of Adena M. Hopenstand, # 4 Exhibit 2 to Declaration of Adena M. Hopenstand, # 5 Exhibit 3 to Declaration of Adena M. Hopenstand, # 6 Exhibit 4 to Declaration of Adena M. Hopenstand, # 7 Exhibit 5 to Declaration of Adena M. Hopenstand, # 8 Declaration of Michael W. Humphrey, # 9 Declaration of Benjamin Jones (First) and Exhibits 1-4 thereto, # 10 Exhibit 5-6 to First Declaration of Benjamin Jones, # 11 Declaration of Benjamin Jones (Second) and Exhibit 1 thereto, # 12 Exhibit 2 of Second Declaration of Benjamin Jones, # 13 Exhibit 3 of Second Declaration of Benjamin Jones, # 14 Declaration of Gary Minzer, # 15 Request for Judicial Notice, # 16 Objections to Evidence submitted by Plaintiff, # 17 Proposed Order re Objections to Evidence submitted by Plaintiff) (Hopenstand, Adena) (Entered: 01/12/2015) |
| 01/12/2015 | 35 | OPPOSITION re: MOTION for Preliminary Injunction re Enjoining Warrantless Seizure of Vehicles on 30 Day Holds *Notice of Motion for Preliminary Injunction; Memorandum of Points and Authorities*. Motion 28 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Hopenstand, Adena) (Entered: 01/12/2015) |
| 01/15/2015 | 36 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 14-03 (Related Case) filed. Transfer of case declined by Judge Manuel L. Real, for the reasons set forth on this order. Related Case No. 2:14-cv-08449-R(VBKx) (vp) (Entered: 01/15/2015) |
| 01/20/2015 | 37 | REPLY In Support Of MOTION to Certify Class 26 filed by Plaintiff Lamya Brewster. (Attachments: # 1 Exhibit 7, # 2 Exhibit 8)(Litt, Barrett) (Entered: 01/20/2015) |
| 01/20/2015 | 38 | DECLARATION of DWIGHT W. COOK & DONALD W. COOK IN SUPPORT OF MOTION to Certify Class 26 *Reply Declarations of Dwight W. Cook and Donald W. Cook in Support of Reply To Opposition to Motion for Class Certification* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 01/20/2015) |
| 01/20/2015 | 39 | REPLY IN SUPPORT OF MOTION for Preliminary Injunction re Enjoining Warrantless Seizure of Vehicles on 30 Day Holds *Notice of Motion for Preliminary Injunction; Memorandum of Points and Authorities*. Motion 28 *Plaintiffs Reply to Defendants Opposition to Motion for Preliminary Injunction,* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 01/20/2015) |
| 01/20/2015 | 40 | MEMORANDUM in Opposition to MOTION to Dismiss Case 33 *Plaintiff's Opposition to Motion to Dismiss,* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 01/20/2015) |
| 01/26/2015 | 41 | REPLY IN SUPPORT OF MOTION to Dismiss Case 33 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Dermer, Gabriel) (Entered: 01/26/2015) |
| 01/27/2015 | 42 | EX PARTE APPLICATION to Strike DECLARATIONS FILED IN SUPPORT OF PLAINTIFFS REPLY TO OPPOSITION TO MOTION FOR CLASS CERTIFICATION re Declaration (Motion related), 38 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Attachments: # 1 Proposed Order)(Dermer, Gabriel) (Entered: 01/27/2015) |

**Docket (Brewster)**        **-197-**        **Exhibit R**

| 01/28/2015 | 43 | MEMORANDUM in Opposition to EX PARTE APPLICATION to Strike DECLARATIONS FILED IN SUPPORT OF PLAINTIFFS REPLY TO OPPOSITION TO MOTION FOR CLASS CERTIFICATION re Declaration (Motion related), 38 42 *Plaintiffs Opposition to Ex Parte Application to Strike Reply Declarations,* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 01/28/2015) |
|---|---|---|
| 01/28/2015 | 44 | OBJECTION to Evidence Submitted by Plaintiff in Support of Reply re: MOTION to Certify Class 26 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Attachments: # 1 Proposed Order re Defendants Objections to Evidence Submitted by Plaintiff in Support of Reply to Opposition to Motion for Class Certification)(Hopenstand, Adena) (Entered: 01/28/2015) |
| 02/03/2015 | 45 | RESPONSE IN SUPPORT of MOTION to Certify Class 26 *Plaintiffs Response to Defendants Evidentiary Objections Filed 1/12/15 (Doc. 34-16) and 1/28/15 (Doc. 44),* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 02/03/2015) |
| 02/04/2015 | 46 | EX PARTE APPLICATION for Leave to submit Supplemental Memorandum re Recent Order on Sandoval Class Action filed by Plaintiffs Lamya Brewster. (Attachments: # 1 Memorandum re Sandoval Order, # 2 Exhibit Court's Order on Sandoval, # 3 Proposed Order)(Litt, Barrett) (Entered: 02/04/2015) |
| 02/05/2015 | 47 | OPPOSITION re: EX PARTE APPLICATION for Leave to submit Supplemental Memorandum re Recent Order on Sandoval Class Action 46 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Dermer, Gabriel) (Entered: 02/05/2015) |
| 02/06/2015 | 48 | NOTICE OF MOTION AND MOTION for Leave to File First Amended Complaint *Notice of Motion for Leave to File First Amended Complaint; Memorandum of Points and Authorities; Declaration of Donald W. Cook,* filed by Plaintiff Lamya Brewster. Motion set for hearing on 3/16/2015 at 09:00 AM before Judge Jesus G. Bernal. (Attachments: # 1 Proposed First Amended Class Action Civil Rights Complaint for Injunctive Relief and Damages, # 2 Proposed Order Granting Leave to File First Amended Complaint)(Cook, Donald) (Entered: 02/06/2015) |
| 02/09/2015 | 53 | MINUTES OF Motion Hearing held before Judge Jesus G. Bernal RE: MOTION to Dismiss Case 33 , MOTION for Preliminary Injunction re Enjoining Warrantless Seizure of Vehicles on 30 Day Holds *Notice of Motion for Preliminary Injunction; Memorandum of Points and Authorities.* Motion 28 , MOTION to Certify Class 26 . The Court takes the matter under-submission. Court Reporter: Adele C Frazier. (mrgo) (Entered: 02/27/2015) |
| 02/17/2015 | 49 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: EX PARTE APPLICATION for Leave to submit Supplemental Memorandum re Recent Order on Sandoval Class Action 46 . The following error(s) was found: Other error(s) with document(s) are specified below: Document 46-3 appears to be a proposed order however there is no place for the judge to sign. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (iva) (Entered: 02/17/2015) |
| 02/17/2015 | 50 | SUPPLEMENTAL BRIEF filed by Plaintiff Lamya Brewster. *Plaintiffs Supplemental Briefing per Courts 2/9/15 Request,* (Cook, Donald) (Entered: 02/17/2015) |
| 02/17/2015 | 51 | SUPPLEMENT to MOTION to Dismiss Case 33 , MOTION for Preliminary Injunction re Enjoining Warrantless Seizure of Vehicles on 30 Day Holds *Notice of Motion for Preliminary Injunction; Memorandum of Points and Authorities.* Motion 28 , MOTION to Certify Class 26 *as requested by the Court on February 9, 2015 and* filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Hopenstand, Adena) (Entered: 02/17/2015) |

**Docket (Brewster)**      **-198-**      **Exhibit R**

| | | |
|---|---|---|
| 02/23/2015 | 52 | STATEMENT of Non-Opposition To MOTION for Leave to File First Amended Complaint *Notice of Motion for Leave to File First Amended Complaint; Memorandum of Points and Authorities; Declaration of Donald W. Cook,* 48 filed by Defendants Charlie Beck, City of Los Angeles, Los Angeles Police Department. (Attachments: # 1 Declaration of Gabriel S. Dermer)(Dermer, Gabriel) (Entered: 02/23/2015) |
| 02/27/2015 | 54 | MINUTES (IN CHAMBERS) ORDER (1) GRANTING Defendants Motion to Dismiss (Doc. No. 33); (2) DENYING Plaintiffs Motion for Class Certification (Doc. No. 26): and (3) DENYING Plaintiffs Motion for Preliminary Injunction by Judge Jesus G. Bernal re: 33 Motion to Dismiss Case ; 26 Motion to Certify Class Action; 28 Motion for Preliminary Injunction. ( MD JS-6. Case Terminated )(See document for specifics) (mrgo) (Entered: 02/27/2015) |
| 03/19/2015 | 55 | JUDGMENT by Judge Jesus G. Bernal related to: Order on Motion to Dismiss Case, Order on Motion to Certify Class Action, Order on Motion for Preliminary Injunction 54 . IT IS ORDERED AND ADJUDGED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE. (iva) (Entered: 03/19/2015) |
| 03/27/2015 | 56 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Lamya Brewster. Appeal of Order on Motion to Dismiss Case,, Order on Motion to Certify Class Action,, Order on Motion for Preliminary Injunction, 54 , Judgment, 55 (Appeal fee of $505 receipt number 0973-15450443 paid.) (Cook, Donald) (Entered: 03/27/2015) |
| 03/27/2015 | 58 | NOTIFICATION by Circuit Court of Appellate Docket Number 15-55479, 9th Circuit regarding Notice of Appeal to 9th Circuit Court of Appeals, 56 as to Plaintiff Lamya Brewster. (mat) (Entered: 03/31/2015) |
| 03/30/2015 | 57 | TRANSCRIPT ORDER as to Plaintiff Lamya Brewster Court Reporter. Court will contact Carol Tokeshi, paralegal at manncook@earthlink.net with any questions regarding this order. Transcript portion requested: Other: 2/9/2015. Transcript preparation will not begin until payment has been satisfied with the court reporter/recorder. (Cook, Donald) (Entered: 03/30/2015) |
| 04/14/2015 | 59 | TRANSCRIPT for proceedings held on 2-9-2015; 9:00AM. Court Reporter: Adele C. Frazier, adelefraziercsr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 5/5/2015. Redacted Transcript Deadline set for 5/15/2015. Release of Transcript Restriction set for 7/13/2015. (afr) (Entered: 04/14/2015) |
| 04/14/2015 | 60 | NOTICE OF FILING TRANSCRIPT filed for proceedings 2-9-2015; 9:00AM re Transcript 59 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (afr) TEXT ONLY ENTRY. (Entered: 04/14/2015) |
| 03/03/2017 | 61 | NOTICE of Change of address by Catherine Elizabeth Sweetser attorney for Plaintiff Lamya Brewster. Changing attorneys address to 11543 W. Olympic Blvd., Los Angeles, CA 90064. Filed by Plaintiff Lamya Brewster. (Sweetser, Catherine) (Entered: 03/03/2017) |
| 03/03/2017 | 62 | NOTICE of Change of address by Paul L Hoffman attorney for Plaintiff Lamya Brewster. Changing attorneys address to 11543 W. Olympic Blvd., Los Angeles, CA 90064. Filed by Plaintiff Lamya Brewster. (Hoffman, Paul) (Entered: 03/03/2017) |
| 06/21/2017 | 63 | OPINION from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 56 filed by Lamya Brewster. CCA # 15-55479. REVERSED.(mat) (Entered: 06/22/2017) |
| 06/30/2017 | 64 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 56 filed by Lamya Brewster. CCA # 15-55479. Appellant's unopposed motion to extend the time for filing a petition for rehearing en banc is GRANTED. The petition shall be filed no later than July 15,2017. (car) (Entered: 06/30/2017) |

**Docket (Brewster)**       **-199-**       **Exhibit R**

| 08/23/2017 | 65 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 56 filed by Lamya Brewster. CCA # 15-55479. The petition for rehearing en banc is DENIED. (car) (Entered: 08/24/2017) |
|---|---|---|
| 08/31/2017 | 66 | MANDATE of Ninth Circuit Court of Appeals filed re: Notice of Appeal 56 CCA # 15-55479. The judgment of the 9th Circuit Court, entered June 21, 2017, takes effect this date.This constitutes the formal mandate of the 9th CCA issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.Costs are taxed against the appellees in the amount of $439.20. [See USCA Opinion 63 REVERSED](mat) (Entered: 09/01/2017) |
| 10/05/2017 | 67 | SCHEDULING NOTICE by Judge Jesus G. Bernal. A Status Conference is set for 10/23/2017 at 11:00 AM before Judge Jesus G. Bernal. Counsel shall file a joint status report along with a proposed trial schedule no later than October 16, 2017. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mga) TEXT ONLY ENTRY (Entered: 10/05/2017) |
| 10/16/2017 | 68 | STATUS REPORT *(Joint)* filed by Plaintiff Lamya Brewster. (Cook, Donald) (Entered: 10/16/2017) |
| 10/23/2017 | 69 | CIVIL TRIAL SCHEDULING ORDER by Judge Jesus G. Bernal. Amended Pleadings due by 1/5/2018. Discovery cut-off 6/11/2018. Motions due by 8/20/2018. Last date to conduct settlement conference is 7/9/2018 (Magistrate Judge). Final Pretrial Conference set for 10/1/2018 11:00 AM before Judge Jesus G. Bernal. Jury Trial set for 10/16/2018 09:00 AM before Judge Jesus G. Bernal. (See Order for details) (ima) (Entered: 10/23/2017) |
| 10/23/2017 | 70 | ORDER/REFERRAL to ADR Procedure No 1 by Judge Jesus G. Bernal. Case ordered to Magistrate Judge Sheri Pym for Settlement Conference. ADR Proceeding to be held no later than 7/9/2018. (mt) (Entered: 10/23/2017) |
| 10/23/2017 | 71 | MINUTES OF SCHEDULING CONFERENCE held before Judge Jesus G. Bernal. A Scheduling Conference was held. A trial schedule was set. See separate trial scheduling order for more details. Amended Pleadings due by 1/5/2018. All Discovery cut-off 6/11/2018. Last date to conduct settlement conference is 7/9/2018. Final Pretrial Conference set for 10/1/2018 at 11:00 AM. Jury Trial set for 10/17/2018 at 9:00 AM. (Case reopened. MD JS-5.) ADR Settlement Choice: Magistrate Judge. Counsel for Defendant was not present. See separate Order to Show Cause for Failure to Appear. Court Reporter: Adele Frazier. (es) (Entered: 10/24/2017) |
| 10/23/2017 | 72 | MINUTES OF Order to Show Cause Why Sanctions Should Not Be Imposed Against Defense Counsel for Failure to Appear at the October 23, 2017 Status Conference Hearing held before Judge Jesus G. Bernal: On October 23, 2017, the Court held a Status Conference and counsel for Defendants, Gabriel S. Dermer, failed to appear. Accordingly, the Court ORDERS Mr. Dermer to show cause why he should not be sanctioned in the amount of $500 for his failure to appear. Mr. Dermer shall respond in writing to this order by Monday, October 30, 2017. Failure to respond, or an inadequate response, may result in the imposition of sanctions. IT IS SO ORDERED. Court Reporter: Adele C Frazier. (ad) (Entered: 10/24/2017) |
| 10/24/2017 | 73 | STIPULATION for Leave to File First Amended Complaint filed by Plaintiff Lamya Brewster. (Attachments: # 1 Proposed Order Granting Leave to File First Amended Complaint)(Cook, Donald) (Entered: 10/24/2017) |
| 10/25/2017 | 74 | ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT by Judge Jesus G. Bernal Re Stipulation 73 : IT IS HEREBY ORDERED that Plaintiff Lamya Brewster shall have leave to file a first amended complaint. The amended complaint shall be filed no later than November 27, 2017. Defendants response shall be due 28 days after filing of the First Amended Complaint, or 28 days after final disposition of a petition seeking Supreme Court review, whichever date is later. (ad) (Entered: 10/25/2017) |

| 10/26/2017 | 75 | FIRST AMENDED COMPLAINT against - All Defendants amending Complaint (Attorney Civil Case Opening) 1 , filed by Plaintiff Lamya Brewster(Cook, Donald) (Entered: 10/26/2017) |
| 10/26/2017 | 76 | DECLARATION of Gabriel S. Dermer re Show Cause Hearing,, 72 filed by Defendant City of Los Angeles. (Dermer, Gabriel) (Entered: 10/26/2017) |
| 10/31/2017 | 77 | MINUTE ORDER DISCHARGING the Order to Show Cause (Dkt. No. 72 ) (IN CHAMBERS) by Judge Jesus G. Bernal. The Court finds Mr. Dormer's response sufficient and DISCHARGES the OSC. While sympathetic to Mr. Dormer's life circumstances, the Court cautions that any future failure to adhere to this Court's scheduling orders may result in sanctions. (iva) (Entered: 11/01/2017) |
| 12/27/2017 | 78 | NOTICE of Change of address by Barrett S Litt attorney for Plaintiff Lamya Brewster. Changing attorneys address to 975 East Green Street, Pasadena, CA 91106. Filed by Plaintiff Lamya Brewster. (Litt, Barrett) (Entered: 12/27/2017) |
| 03/22/2018 | 79 | Joint STIPULATION for Extension of Time to File Extend dates in Scheduling Order filed by Plaintiff Lamya Brewster. (Attachments: # 1 Proposed Order)(Litt, Barrett) (Entered: 03/22/2018) |
| 03/26/2018 | 80 | ORDER EXTENDING SCHEDULING DATES by Judge Jesus G. Bernal Re Stipulation 79 : (see document image for specifics). IT IS SO ORDERED. (ad) (Entered: 03/27/2018) |
| 03/27/2018 | 81 | ANSWER to Amended Complaint/Petition 75 JURY DEMAND. filed by Defendants Charlie Beck, Charlie Beck, City of Los Angeles, Los Angeles Police Department.(Dermer, Gabriel) (Entered: 03/27/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/04/2018 15:17:29 | | | |
| **PACER Login:** | smgarberlaw:2682804:0 | **Client Code:** | Brewster v OPG |
| **Description:** | Docket Report | **Search Criteria:** | 5:14-cv-02257-JGB-SP End date: 4/4/2018 |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |



SUBP-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Robert Mann, CSB #48293<br>Donald W. Cook, CSB #116666<br>3435 Wilshire Blvd., Suite 2910<br>Los Angeles, CA 90010 | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.: 213-252-9444   FAX NO. *(Optional):* 213-252-0091
E-MAIL ADDRESS *(Optional):* manncook@earthlink.net
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 S. Commonwealth Ave.
MAILING ADDRESS: 600 S. Commonwealth Ave.
CITY AND ZIP CODE: Los Angeles, CA 90005
BRANCH NAME: Central Civil West

PLAINTIFF/PETITIONER: Ricardo Castillo, et al.

DEFENDANT/RESPONDENT: City of Maywood, et al.

| DEPOSITION SUBPOENA<br>FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS | CASE NUMBER:<br>BC 469942 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
   Eric Rose

1. YOU ARE ORDERED TO APPEAR IN PERSON TO TESTIFY AS A WITNESS in this action at the following date, time, and place:

   Date: 9/30/2013     Time: 10:00 a.m.     Address: 3435 Wilshire Blvd., Suite 2910, L.A., CA 90010

   a. ☐ As a deponent who is not a natural person, you are ordered to designate one or more persons to testify on your behalf as to the matters described in item 4. (Code Civ. Proc., § 2025.230.)
   b. ☑ You are ordered to produce the documents and things described in item 3.
   c. ☑ This deposition will be recorded stenographically ☐ through the instant visual display of testimony and by ☐ audiotape ☑ videotape.
   d. ☐ This videotape deposition is intended for possible use at trial under Code of Civil Procedure section 2025.620(d).

2. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

3. The documents and things to be produced and any testing or sampling being sought are described as follows:
   See Attachment to Subpoena
      ☐ Continued on Attachment 3.

4. If the witness is a representative of a business or other entity, the matters upon which the witness is to be examined are described as follows:



      ☐ Continued on Attachment 4.

5. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, AND CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

6. At the deposition, you will be asked questions under oath. Questions and answers are recorded stenographically at the deposition; later they are transcribed for possible use at trial. You may read the written record and change any incorrect answers before you sign the deposition. You are entitled to receive witness fees and mileage actually traveled both ways. The money must be paid, at the option of the party giving notice of the deposition, either with service of this subpoena or at the time of the deposition. Unless the court orders or you agree otherwise, if you are being deposed as an individual, the deposition must take place within 75 miles of your residence or within 150 miles of your residence if the deposition will be taken within the county of the court where the action is pending. The location of the deposition for all deponents is governed by Code of Civil Procedure section 2025.250.

| DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF $500 AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY. |
|---|

Date issued: September 10, 2013

▶ *(signature)*

Donald W. Cook                                         Attorney for Plaintiffs
_____                    _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PERSON ISSUING SUBPOENA)
                                                              (TITLE)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-020 [Rev. January 1, 2009] | *(Proof of service on reverse)*<br>DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE<br>AND PRODUCTION OF DOCUMENTS AND THINGS | Page 1 of 2<br>Code of Civil Procedure §§ 2020.510,<br>2020.220, 2025.230, 2025.250, 2025.620;<br>Government Code, § 68097.1<br>www.courtinfo.ca.gov |
|---|---|---|

**Depo. Subpoena, 9/10/13**                                       **Exhibit S**

SUBP-020

| PLAINTIFF/PETITIONER: Ricardo Castillo, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: City of Maywood, et al. | BC 469942 |

### PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS

1. I served this *Deposition Subpoena for Personal Appearance and Production of Documents and Things* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*: Eric Rose

   b. Address where served:

   253 Sycamore Grove St., Simi Valley, CA 93065

   c. Date of delivery: September 11, 2013

   d. Time of delivery: 8:15 am

   e. Witness fees and mileage both ways *(check one)*:
      (1) ☐ were paid. Amount: . . . . . . . . . . . $ _____
      (2) ☐ were not paid.
      (3) ☐ were tendered to the witness's public entity employer as required by Government Code section 68097.2. The amount tendered was *(specify)*: . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . . . . . . . . $ 70

2. I received this subpoena for service on *(date)*: September 10, 2013

3. Person serving:
   a. ☐ Not a registered California process server
   b. ☐ California sheriff or marshal
   c. ☒ Registered California process server
   d. ☐ Employee or independent contractor of a registered California process server
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b)
   f. ☐ Registered professional photocopier
   g. ☐ Exempt from registration under Business and Professions Code section 22451
   h. Name, address, telephone number, and, if applicable, county of registration and number:

   John Owens          #2013140891
   4253 Holly Knoll Dr.   LA County
   LA, CA 90027

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
                    (SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
                    (SIGNATURE)

### PROOF OF SERVICE
### DEPOSITION SUBPOENA FOR PERSONAL APPEARANCE
### AND PRODUCTION OF DOCUMENTS AND THINGS

**Depo. Subpoena, 9/10/13**

**Exhibit S**

## ATTACHMENT TO SUPBOENA

1. All records (as defined by Cal. Evid. Code § 250) held by the Official Police Garage Association of Los Angeles on any vehicle seized and impounded at the direction of the Los Angeles Police Department where (a) the seizure of the vehicle occurred at any time from January 1, 2008 to the present, and (b) the authority for the seizure / impound was Cal. Veh. Code § 14602.6. This includes, but is not limited to, any and all copies of CHP 180 forms for each vehicle impounded under § 14602.6.

2. All records (as defined by Cal. Evid. Code § 250, including electronically-stored data), held by the Official Police Garage Association of Los Angeles reflecting, since January 1, 2008, every vehicle seizure requested by the Los Angeles Police Department where (a) the vehicle was seized and impounded pursuant to Cal. Veh. Code § 14602.6 tow; (b) the date of tow, (c) identity of registered owner; (d) vehicle description; (e) LAPD DR or file number; (f) whether vehicle was stored, impounded or recovered; (g) any other citation or police report number associated with the seizure; (h) vehicle disposition (reclaimed by R/O; sold at lien sale, etc.).

3. Any and all computer data on any vehicle stored by any City of Los Angeles Official Police Garage at the direction of the Los Angeles Police Department where (a) the seizure of the vehicle occurred at any time from January 1, 2008 to the present. This includes, but is not limited to, any and all seizures of vehicles under Cal. Veh. Code § 14602.6, or Cal. Veh. Code § 22651.

**Depo. Subpoena, 9/10/13**

**Exhibit S**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES-GENERAL

**Case No.** CV 16-194-FMO(Ex)                                    **Date:**  February 8, 2018

**Title:**  LEONARDO GONZALEZ-TZITA, ET AL. V. CITY OF LOS ANGELES, ET AL.

---

**DOCKET ENTRY**

---

**PRESENT:**

**HON.   CHARLES F. EICK**, JUDGE

STACEY PIERSON                                    N/A
**DEPUTY CLERK**                              **COURT REPORTER**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**     **ATTORNEYS PRESENT FOR DEFENDANTS:**

None                                                      None

**PROCEEDINGS:     (IN CHAMBERS)**

The Court has read and considered all papers filed in support of and in opposition to "Plaintiffs' Motion to Compel Compliance with Subpoena Duces Tecum," filed January 24, 2018 ("Motion"). The Court has taken the Motion under submission without oral argument.

The Motion is denied because Plaintiffs have failed to prove that the documents sought from non-party OPG-LA constitute a more accurate source of the desired information than the documents available from Defendant City of Los Angeles.  See "Local Rule 37-2 Stipulation, etc.,"  filed January 24, 2018, at pp. 13, 35-37, 61;  Transcript of Proceedings on August 4, 2017, at pp. 5-8; see also Fed. R. Civ. P. 26(b).

This denial is without prejudice to the District Judge's authority to require production of the documents sought in the context of a proceeding under Rule 23 of the Federal Rules of Civil Procedure. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978).

cc:     Judge Olguin
        All Counsel of Record
        Counsel for OPG-LA

---

**MINUTES FORM 11**                                                    Initials of Deputy Clerk     SP
**CIVIL-GEN**          **Minute Order, 2/8/18**          **-205-**          **Exhibit T**