1   **BARRETT S. LITT**, CSB 45527
    KAYE, MCLANE, BEDNARSKI & LITT
2   975 East Green Street
    Pasadena, CA 91106
3   (626) 844-7660 / (626) 844-7670 facsimile
    blitt@kmbllaw.com
4
    **DONALD W. COOK**, CSB 116666
5   ATTORNEY AT LAW
    3435 Wilshire Blvd., Suite 2910
6   Los Angeles, CA  90010
    (213) 252-9444 / (213) 252-0091 facsimile
7   manncook@earthlink.net

    **PAUL L. HOFFMAN**, SBN 071244
    **JOHN CLAY WASHINGTON**, SBN 315991
    SCHONBRUN SEPLOW HARRIS & HOFFMANN LLP
    11543 W. Olympic Blvd.
    Los Angeles, CA 90064
    (310) 396-0731 / (310) 399-7040 facsimile
    hoffpaul@aol.com
    jwashington@sshhlaw.com

8   Attorneys for Plaintiffs

9
10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12   LAMYA BREWSTER, and ELIAS          Case No. EDCV 14-2257 JGB
13   ARIZMENDI, and JULIAN VIGIL,       (SPx)
     individually and as class
14   representatives,                   **LOCAL RULE 37-2**
                                        **STIPULATION RE**
15                    Plaintiff,        **PLAINTIFFS' MOTION TO**
                                        **COMPEL NON-PARTY**
16   vs.                                **WITNESS CALIFORNIA**
                                        **DMV TO PRODUCE**
17   CITY OF LOS ANGELES, a municipal   **ELECTRONIC DATA;**
     corporation; LOS ANGELES POLICE    **DECLARATIONS OF**
18   DEPARTMENT, a public entity, CHIEF **DONALD W. COOK,**
     CHARLIE BECK, individually and in his **DWIGHT W. COOK AND**
19   official capacity, and Does 1 through 10, **JAMES WOODARD**

20                    Defendants.       [DISCOVERY MATTER]

21                                      Date: Tuesday, 7/16/19
                                        Time: 10:00 a.m.
22                                      Ctrm: 3 (Riverside - 3rd Floor)

23                                      DCO: 7/29/19
                                        Pretrial: 1/13/20
24                                      Trial: 2/11/20

25   TO THE HON. SHERI PYM, UNITED STATES MAGISTRATE JUDGE:

26           Pursuant to Local Rule 37-2.2, Plaintiffs and non-party California Department of

27   Motor Vehicles ("DMV") submit this L.R. 37-2 Stipulation. This Stipulation concerns

28

                                        -1-
                                                                    00132172.WPD

1  enforcement of a subpoena duces tecum (**Exhibit A**) that seeks DMV computer data of

2  names and addresses of the putative class members.

3  DATED: June 24, 2019

4
                                        **BARRETT S. LITT**
5                                       **PAUL L. HOFFMAN**
                                        **DONALD W. COOK**
6                                       Attorneys for Plaintiffs

7
8                    By_____
                                Donald W. Cook
9

10  DATED: June 25, 2019

11
                                        **XAVIER BECERRA**
12                                      Attorney General of California
                              Attorney for California Department of Motor Vehicles
13

14
15                    By_____
                                Brad Parr
16                              Deputy Attorney General

17
18
19
20
21
22
23
24
25
26
27
28

                                        -2-                              00132172.WPD

1

# TABLE OF CONTENTS

2

Page

3  PLAINTIFFS' INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . 4

4  DMV'S INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5  DISCOVERY IN DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       SUBPOENA DUCES TECUM SERVED ON DMV . . . . . . . . . . . . . . . . . . . . 9

6  ISSUE 1: Should Plaintiffs First Be Required To Obtain Names & Addresses
7      Through Alternative Means? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *Plaintiffs' Position:* Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
8      *DMV's Position:* Plaintiffs Should Use the Statutory Procedure Established by
      the California Legislature for Attorneys Seeking Vehicle Registration
9        Information.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10  ISSUE 2: Should Plaintiffs Be Required To Pay The Statutory Cost For Obtaining
    Names And Addresses From The DMV? . . . . . . . . . . . . . . . . . . . . . . 11
11      *Plaintiffs' Position:* No . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *DMV's Position:* Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12  ISSUE 3: Is The Subpoena Overbroad And Is It Burdensome For The DMV To
13      Produce The Data Outside The Statutory Procedure? . . . . . . . . . . . . . 14
    *Plaintiffs' Position:* No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
14      *DMV's Position:* Yes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15  ISSUE 4: Is The Data Privileged From Disclosure Even Though Subject To An
    Agreed-Upon Protective Order? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
16      *Plaintiffs' Position:* No. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *DMV's Position*: Not Applicable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17  DECLARATION OF DONALD W. COOK . . . . . . . . . . . . . . . . . . . . . . . . . 19

18  DECLARATION OF DWIGHT W. COOK . . . . . . . . . . . . . . . . . . . . . . . . . 23

19  DECLARATION OF JAMES WOODARD . . . . . . . . . . . . . . . . . . . . . . . . . 28

20

21

22

23

24

25

26

27

28

00132172.WPD

## PLAINTIFFS' INTRODUCTORY STATEMENT

Plaintiffs Lamya Brewster, Elias Arizmendi and Julian Vigil sue under 42 U.S.C. § 1983 and state law on behalf of themselves and the class of persons similarly situated. Defendants are the City of Los Angeles ("City"), its Police Department ("LAPD") and former LAPD Police Chief Charlie Beck.

Relying on state law (Cal. Veh. Code § 14602.6 (hereinafter "§14602.6")) and LAPD policy, defendants seized Plaintiffs' vehicles and imposed prolonged impound periods lasting up to 30 days or more. The prolonged impounds were *not* authorized by warrants. Nor were the prolonged impounds justified by an exception to the Fourth Amendment's warrant requirement. For further discussion of the Fourth Amendment legal issues, see the published decision in this case, *Brewster v. Charlie Beck*, 859 F.3d 1194 (9th Cir. 2017) (reversing trial court's order dismissing Ms. Brewster's claims); *see also* Plaintiff's Third Amended Class Action Complaint ("TAC") (doc. 139 filed 5/22/19) ¶¶ 18-25 (Brewster vehicle seizure and impound), ¶¶27-30 (Arizmendi vehicle seizure and impound), ¶¶31.1-31.3 (Vigil vehicle seizure and impound).

Critical to class certification is the identification of vehicle owners whose vehicles the LAPD impounded. To that end Plaintiffs subpoenaed computer data reflecting vehicle owners' names and addresses from non-party California Department of Motor Vehicles ("DMV"). The DMV maintains a database, called *V*ehicle / *V*essel *R*egistration *D*atabase ("VVRD"), that has class members' names and addresses (albeit as of the date their respective vehicles were impounded).

To comply with the subpoena, Plaintiffs' counsel expected the DMV would do what it did in *Gonzalez-Tzita v. City of Los Angeles*, 2:16-cv-194 FMO (Ex). There, in response to a near-identical subpoena (but involving a different class of vehicle owners) Magistrate Judge Eick ordered the DMV to produce owners' names and addresses by using vehicle identifiers Plaintiffs supplied. *Gonzalez-Tzita* 1/14/19 Order [doc. 115] (**Exhibit C**) and 2/22/19 Order [doc. 121] (**Exhibit E**). But rather than expend DMV time programmatically matching Plaintiffs' data with the desired DMV data, in *Gonzalez-Tzita* the DMV (belatedly) revealed a simpler and inexpensive (to the DMV)

process. The DMV took a few minutes to set up a "requestor account" for Plaintiffs' counsel. Then the DMV provided instructions to counsel and Plaintiffs' computer data consultant on how to use the requestor account. That way, Plaintiffs (more precisely their consultant) were responsible for constructing the requisite computer data file, a file that once properly formatted Plaintiffs' counsel uploaded to the DMV. Then pursuant to an *already-programmed and automated DMV process*, the DMV's computer system generated a computer file containing the data the *Gonzalez-Tzita* plaintiffs sought. Declaration of Donald W. Cook ("Cook decl.") ¶¶4-6; Declaration of Dwight W. Cook ("Dw. Cook decl.") ¶10(A)-(C). See *Gonzalez-Tzita* 2/22/19 Order ¶¶2-4 [describing how the production of the DMV data would occur pursuant to a DMV requestor account] (**Exhibit E** hereto).

Notwithstanding the *Gonzalez-Tzita* experience, in this case the DMV refuses to provide the data or otherwise comply with the subpoena. The DMV asserts various claims, but principally relies on burden. See **Exhibit B**, true copy of DMV's objections. (The DMV also asserts claims of privilege and confidentiality but the parties agree that if the data is ordered produced, it would be subject to a protective order whose terms would be similar to the one that issued in *Gonzalez-Tzita* [doc. 121].) That is, the DMV refuses to provide the data as it did in *Gonzalez-Tzita* unless Plaintiffs first pays about $150,000, an amount that the DMV wrongly asserts is the "cost" of compliance. In fact, producing the data as the DMV did in *Gonzalez-Tzita* requires less an hour of time by one DMV employee, a non-programmer who would need to spend but a few minutes setting up the requestor account.

00132172.WPD

# DMV'S INTRODUCTORY STATEMENT

There is no need for this Motion, and there was no need for a Subpoena: the State of California and its DMV have a comprehensive system for attorneys to request vehicle owner information in connection with a pending litigation: the commercial requester account system, codified as Vehicle Code sections 1810 *et seq*. This system is expressly intended for use by attorneys seeking vehicle records from the DMV – and is the system that should be used in this case.[1]

The only reason we are here is a dispute over who should pay for the costs of the discovery: the citizens of California, or Plaintiffs.[2] Plaintiffs blithely dismiss these costs (approximately $90,000, plus a $50,000 bond and a $250 application fee) as not reflecting an actual cost to the DMV; as the DMV explains, the costs to the DMV are real costs, prescribed by statute and regulation, and reflect the cost to the DMV and the citizens of California for the maintenance of its databases and the system by which members of the public – including attorneys – can obtain information about vehicles' registered owners. Indeed, in enacting this regime, the Legislature of California declared, "It is the intent of the Legislature by this act to establish fees for vehicle programs <u>at amounts necessary and sufficient to cover the actual cost of administering the program</u>." (Section 23 of Stats. 1982, c. 1273, p. 4705.) This is expressly reflected

---

[1] Plaintiffs' continued reference to the *Gonzalez-Tzita* litigation is an irrelevant distraction. That matter involved a different request for information, involved a dispute about different issues, and, ultimately, involved 1,570 records rather than approximately 45,000. And the suggestion that the DMV "belatedly" "revealed" the vehicle requester system is absurd: the statutory system has been in place for decades and is the means by which attorneys and other access vehicle registration information. It is false to imply that the DMV in any way concealed this public system from Plaintiffs.

[2] To be clear: the DMV will use the same commercial requester account system to provide the data in response to the Subpoena and any order of this Court as it would use if Plaintiffs had simply complied with the requester account program in the first place. The <u>only</u> dispute is the cost; the mechanism for production is the same in either case: Plaintiffs' counsel will be issued a requester code and will be able to upload a batch file containing all of the records they wish to query.

00132172.WPD

in Vehicle Code section 1810(a): the DMV may permit inspection of vehicle records "at a charge sufficient to pay the actual cost to the department of providing the inspection or sale of the information."

It is simply inappropriate that Plaintiffs should force the entire cost of their discovery on the State, when the State already has statutory procedures in place for precisely this situation.

It is entirely unremarkable that attorneys must turn to the DMV to obtain registered owner information for vehicles that are the subject of a litigation. To that end, the Legislature of California and the DMV established a comprehensive statutory regime for precisely this situation. (Cal. Veh. Code § 1808.22(c).) The process is straightforward: the attorney must provide a declaration stating that the information is to be used in a legal proceeding (and other details), pay a $50,000 bond, and a $250 application fee.

The attorney is then issued a requester code, which the attorney can use to query the database, which includes ability to batch process requests. These requests involve a $2/record fee, which is authorized by statute: California Vehicle Code section 1811 provides that the DMV may sell the records "at a charge sufficient to pay at least the entire actual cost to the department of the copies," and the fee for an electronic record request is set by California Code of Regulations title 13, section 350.44(b)(1). (*See also* Cal. Veh. Code section 1810(a).) That fee, for electronic requests, is $2/record.

Plaintiffs' complaint is that, because they are in federal court, the entire statutory system established by the people of California should be swept aside, even though these procedures would be applicable if this case were pending in the Superior Court of California. But Plaintiffs point to no federal law that provides any sort of conflict worthy of pre-emption (their cases relate to confidentiality and privilege, not preemption of entire statutory systems set out by state legislatures). And Plaintiffs have no evidence that the costs determined by the California Legislature are not the actual costs to the DMV (other than Dwight Cook's irrelevant experience with the Minnesota Department of Transport, which has zero relationship with the California DMV.)

The DMV is a third party and not involved in this litigation. Providing Plaintiffs with the information sought by the Subpoena will cost the DMV $90,000 (assuming 45,000 records are to be provided). This burden should not be imposed on the DMV (and through the DMV, the taxpayers of California). Plaintiffs should simply be required to follow the procedures which the State of California has deemed applicable to attorneys seeking vehicle owner information for using pending litigation. The Motion should be denied.

00132172.WPD

**DISCOVERY IN DISPUTE**

***SUBPOENA DUCES TECUM SERVED ON THE DMV***

The subpoena (**Exhibit A**) sought:

DMV electronically recorded data reflecting vehicle owners names & addresses, as matched to the vehicle license plate number with corresponding date, and vehicle identification number (VIN) and corresponding date, per attached TXT files (provided on DVD).

The subpoena was served with a DVD containing text files formatted per DMV instructions for matching to data using the DMV's automated batch process as was done in *Gonzalez-Tzita*. Cook decl. ¶4.

The DMV's response (by Deputy Attorney General Brad Parr's May 29, 2019 letter) is **Exhibit B**. At the June 10, 2019 L.R. 37-1 meeting between counsel for the Plaintiffs and DMV, the DMV offered to provide the data as was done in *Gonzalez-Tzita* (including the protective order) *if* Plaintiffs pays the DMV about $100,000 for what the DMV contends is the cost of compliance, plus post a $50,000 bond. Plaintiffs decline to do either. Plaintiffs contend the actual cost to the DMV for providing the data is minimal, less than a hour of DMV personnel time to set up the requestor account.

**ISSUE 1: Should Plaintiffs First Be Required To Obtain Names & Addresses Through Alternative Means?**

***Plaintiffs' Position:* No.**

In this and similar lawsuits, defendant City has stated it cannot identify vehicle owners who are potential class members. E.g., doc. 34-8 filed 1/12/15 in *Brewster* (Declaration of Michael W. Humphrey @ ¶7). The City has asserted the only way its computer systems can retrieve records pertaining to § 14602.6 vehicle seizures is by the LAPD report number the City's record keeping systems assigns to all crime and arrest incidents. Doc. 34-8 @ ¶4. But since the § 14602.6 vehicle seizures are but a tiny fraction of all incidents for which a report number is generated (§ 14602.6 vehicles seizures are less than 1% of all incidents) the City has stated it cannot identify the § 14602.6 seizures except by a manual search of all records, a search the City said would

00132172.WPD

take years and costs hundreds of thousands of dollars. Doc. 84 filed 4/25/18 @ 2:7-3:8.

The data is also not available from the VIIC data OPG-LA, *Official Police Association of Los Angeles*, the non-profit organization owned by the 18 OPGs, collects. Even when VIIC records reflect names and addresses (most records reflect none) these are *not* names or addresses of vehicle owners; rather, it is a name and/or address of the person who drove the vehicle off the OPG storage lot. Cook decl. ¶7(C).

A claim that Plaintiffs can search for current addresses and names by publicly-available search services, is absurd. There are about ***45,000*** putative class members. Furthermore, the identity information Plaintiffs have are license plate numbers and VINs (*Vehicle Identification Number*). Even if Plaintiffs had the time to do a one-by-one search covering 45,000 vehicles and putting aside the cost of each search (with name and address, the cost ranges $10 to $40 or more) the DMV is the only known source that has names and addresses by license plate number and/or VIN. Cook decl. ¶7(A) & (C).

**DMV's Position: Plaintiffs Should Use the Statutory Procedure Established by the California Legislature for Attorneys Seeking Vehicle Registration Information.**

The DMV's position here is simple: its vehicle registration database inquiry system is the means by which Plaintiffs would obtain the information they seek. The procedure would be exactly the same if the Court orders compliance with the Subpoena as if Plaintiffs had simply chosen to request the data directly in the first place: the DMV will use the vehicle requester database to process the request, exactly the same as it would if Plaintiffs had proceeded under the statutory regime in the first place. The only difference would be whether the State of California should bear the statutory costs, or Plaintiffs.

Thus, it is unclear what "publicly-available search services" Plaintiffs are referring to here. With respect to <u>this</u> Subpoena, the DMV has not suggested that Plaintiffs seek the information from elsewhere. The DMV simply requires that it be compensated, as a third party, for the costs it incurs in providing the information to Plaintiffs.

That said, the DMV's commercial requester database is (technically) a "publicly-

00132172.WPD

available search service," to the extent that it provides access to members of the public – <u>expressly</u> including attorneys who need vehicle registration information for use in litigation (as here) – who comply with the requirements for access to its database as determined by the Legislature of California.  And again, it is this system that the DMV would use to comply with the Subpoena: the only issue is whether Plaintiffs should be required to pay the statutory costs associated with their request, or whether the entire burden of Plaintiffs' requested discovery should fall upon California taxpayers.

**ISSUE NO. 2: Should Plaintiffs Be Required To Pay The Statutory Cost For Obtaining Names And Addresses From The DMV?**

*Plaintiffs' Position:* **No.**

The actual cost the DMV incurs in setting up a requestor account as was done in *Gonzalez-Tzita*, is less than an hour's time by someone with network administrator rights. Dw. Cook decl. ¶10(A)-(C). Here, that person is probably Ms. Wendy Lang, a non-programmer. Dw. Cook ¶9. Plaintiffs do not oppose paying for Ms. Lang's time actually spent which they expect would be no more than an hour.

The DMV's demand that Plaintiffs pay $2.00 per record retrieval (which is about $90,000 for the 45,000 class members) and post a $50,000 bond, is meritless. There is virtually no ***actual*** cost to the DMV when its computer system, via an already programmed and existing automated process, runs the formatted text file that Plaintiffs provide, against the DMV's VVRD. Dw. Cook decl. ¶¶10-12.

*DMV's Position:* **Yes.**

Recognizing that attorneys will frequently seek information from the DMV on the name and address of a vehicle's registered owner for litigation purposes, the State of California has established a comprehensive statutory regime for <u>precisely</u> this situation. Although the DMV is <u>generally</u> prohibited from disclosing confidential resident information (Vehicle Code § 1808.21(a)), certain exceptions provide for  disclosure of addresses to financial institutions, insurance companies, vehicle manufacturers, auto dealers, and persons engaged in statistical research, <u>as well as attorneys</u>. (Veh. Code §§ 1808.22, 1808.23.) The attorney exception is set forth in section 1808.22(c) and permits

an attorney to access the DMV's databases where the attorney states, "under penalty of perjury, that the motor vehicle or vessel registered owner or driver residential address information is <u>necessary in order to represent his or her client in a criminal or civil action</u> which directly involves the use of the motor vehicle or vessel <u>that is pending, is to be filed, or is being investigated</u>." (Emphasis added). That is exactly the situation here.

Pursuant to DMV regulations, a nongovernmental requester (such as Plaintiffs' counsel) who wants to obtain DMV residence address information must submit a request to the DMV's Information Services Branch on a Commercial Requester Account Application. (Cal. Code Regs., tit. 13, § 350.16(a).) Nongovernmental applicants must provide certain basic information, including the applicant's purpose for requesting the information, and requesters of residence address information must provide the reasons why the information is requested. (Id., § 350.16(a)(10), (14).) A requester must agree to indemnify the DMV and its agents and hold them harmless from any claims brought due to the negligent, improper, or unauthorized use or dissemination by the requester or its agents of information supplied by the DMV. (Id., § 350.18(b)(5).) Attorney applicants must also include information regarding whether the confidential residence address information "is necessary to represent a client in a criminal or civil action pursuant to section 1808.22(c) of the Vehicle Code." (Id., § 350.16(a)(18).)

If the DMV approves an application seeking residence address information (which the DMV would do here, on an expedited basis) and the requester posts a $50,000 bond, the DMV enters into a Commercial Requester Account Agreement with the requester. (*Id.*, §§ 350.24(a), 350.02(d).) Pursuant to this agreement, the requester is given a commercial requester code, which is a unique configuration of numbers and letters assigned by the DMV that lets the DMV identify the requester, identify the end user of the information, and determine whether the information sought to be released is consistent with the purpose that the requester stated on the application. (*Id.*, § 350.02(p).) Nongovernmental requesters are billed monthly for information requests from the DMV. (*Id.*, § 350.46.) They are required to keep records showing the date of each request, the requester code use, the type of information requested, and the purpose of the request for

two years from the date of the request. (*Id.*, § 350.48(c).) The DMV conducts periodic electronic or manual audits of each requester's records. (*Id.*, § 350.50(b).)

The short summary of the foregoing is that the State of California has an entire statutory regime governing <u>exactly the situation here</u>: an attorney who seeks registered owner information of vehicles for use in litigation. The system requires a bond, an application fee, and a $2/record fee for each record requested. (This can be run by batch operation.)

Plaintiffs contend, without any supporting evidence other than their own supposition, that the fees charged by the DMV are not <u>actual</u> costs to the DMV. This is flat out <u>false</u>. As a matter of common sense (and in actual fact), facilitating the application process for those seeking commercial requester accounts (including attorneys) and the process for those seeking to renew their requester accounts, assisting those issued with requester codes with accessing the system, maintaining the system itself, addressing needs for updates to the data in the system to insure its integrity and accuracy, and investigating allegations of improper use of the data, as well as paying for the approximately 65 DMV employees who support information requester activities. (Declaration of James Woodward ("Woodward Decl.,"), ¶¶ 3-4.)

The DMV is permitted to recoup these costs from requesters, pursuant to Vehicle Code section 1811; this fee is set at $2/record by Title 13 of the California Code of Regulations, section § 350.44. This is <u>real</u> cost to the DMV, and is based on the cost to the DMV to maintain the commercial requester system. (Woodward Decl at ¶ 5.) Indeed, when the California Legislature added provisions for a "casual requester" seeking information regarding the requester's own information or that of the requester's family, the Legislature noted that the $2/record fee for such a record was "compatible with the commercial requester fee for information requested and released electronically <u>and is less than the **cost** when requested in person or by mail.</u>" (See 2009 Ca. Reg. Text 175358 (NS) (emphasis added).) This reflects that the Legislature considered the <u>actual</u> cost to the DMV when setting the per-record fees for requester accounts.

If this case were not in federal court, there would be no question that Plaintiffs

would be required to use the statutory procedures set forth by the State of California. Vehicle Code section 1808.22(c) applies not only to cases being investigated, but also to pending litigations; if a party could use discovery procedures to circumvent this statutory procedure, it would render the statute meaningless: there would be no point in establishing procedures for attorneys in pending litigation to request information via the requester database if they could just serve a subpoena on the DMV instead. That was not the intention of the Legislature of California when it established this comprehensive statutory regime. And Plaintiffs have pointed to no authority suggesting that there is a conflict between state law and federal law in this case: there is no federal driver's license and no federal system comparable to California's that would provide any conflict.

In short, there is a statutory and regulatory system in place for exactly this situation. Plaintiffs have cited to no authority that allows them to circumvent these procedures. Accordingly, Plaintiffs should be required to use the system established by the State of California that is to be used by attorneys seeking information on vehicles for use in litigation.

**ISSUE 3: Is The Subpoena Overbroad And Is It Burdensome For The DMV To Produce The Data Outside The Statutory Procedure?**

  *Plaintiffs' Position:* **No.**

See discussion under Issue 2, *supra*. *See also* Dw. Cook decl. ¶¶10-11.

  *DMV's Position:* **Yes.**

As set forth above, the State of California has a procedure in place for attorneys seeking vehicle registration information for use in litigation. Putting aside the bond and application fee requirements set by California law, the cost to the DMV to provide the records is as established by statute: $2/record. For the 45,000 records Plaintiffs seek, that is a cost to the DMV – and thus to the citizens of California – of $90,000.

It is not appropriate that California taxpayers bear this cost. Rather, Plaintiffs should be required to pay the statutory fee (in addition to posting a bond to protect against misuse of the information provided and paying the application fee); it is not appropriate for this cost to be shifted to the DMV and the people of California. (*See, e.g.*,

00132172.WPD

*Guy Chem. Co., Inc. v. Romaco AG*, (243 F.R.D. 310, 313-314 (N.D. Ind. 2008); *Legal Voice v. Stormans, Inc.*, 737 F.3d 1178, 1185-86 (9th Cir. 2013) ["[W]e have no trouble concluding that [the cost for a third party to comply with a subpoena of] $20,000 is 'significant' . . . Therefore, the district court was required to shift enough of the cost of compliance to render the remainder non-significant."]; *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) [third party costs of $9,000 to comply with subpoena may be sufficiently significant to warrant cost-shifting].)

**ISSUE 4: Is The Data Privileged From Disclosure Even Though Subject To An Agreed-Upon Protective Order?**

*Plaintiffs' Position:* No.

*First*: Insofar as the DMV relies on state law privileges to bar disclosure of vehicle owners' identity information (names, addresses, driver's license numbers), California state law privileges (including Cal. Veh. Code § 1808.21 *et seq.*) may *not* be invoked to bar discovery of information otherwise relevant to a plaintiff's federal claim. U.S. Const., Supremacy Clause; *Kerr v. United States Dist. Ct.*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976); *Breed v. United States District Court*, 542 F.2d 1114, 1115 (9th Cir. 1976); *Miller v. Pancucci*, 141 F.R.D. 292, 297-98 (C.D. Cal. 1992) *cf. Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942) (Rejecting ability of states to restrict the enforcement of federally-guaranteed rights).

*Second*: Apart from the supremacy of federal law over the state-created confidentiality provision of Cal. Veh. Code § 1808.21(a), subsection (d) of § 1808.22 permits the requested disclosure for this lawsuit.[3]

---

[3] Subdivision (d) of § 1808.22 states:

(d) Section 1808.21 does not apply to an attorney if the attorney states, under penalty of perjury, that the motor vehicle or vessel registered owner or driver residential address information is necessary in order to represent his or her client in a criminal or civil action that directly involves the use of the motor vehicle or vessel that is pending, is to be filed, or is being investigated. Information requested pursuant to this subdivision is subject

00132172.WPD

*Third*: Production is not barred by the federal Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA"). While the vehicle owners' names and addresses constitute DPPA-defined "personal information,"[4] DPPA does *not* preclude disclosure here since the data is necessary for the prosecution of this lawsuit. In relevant part § 2721 states:

> **(b) Permissible Uses.**-- Personal information referred to in subsection (a) [§ 2725(3) information] . . . may be disclosed as follows:
>
> > (1) For use by any government agency, including *any court* or law

_____

to all of the following:

> (1) The attorney shall state that the criminal or civil action that is pending, is to be filed, or is being investigated relates directly to the use of that motor vehicle or vessel.
>
> (2) The case number, if any, or the names of expected parties to the extent they are known to the attorney requesting the information, shall be listed on the request.
>
> (3) A residence address obtained from the department shall not be used for any purpose other than in furtherance of the case cited or action to be filed or that is being investigated.
>
> (4) If an action is not filed within a reasonable time, the residence address information shall be destroyed.
>
> (5) An attorney shall not request residential address information pursuant to this subdivision in order to sell the information to a person.
>
> (6) Within 10 days of receipt of a request, the department shall notify every individual whose residence address has been requested pursuant to this subdivision.

[4] Subparagraph (3) of 18 U.S.C. § 2725 defines "personal information" to mean information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information  but does not include information on vehicular accidents, driving violations, and driver's status."

-16-

00132172.WPD

enforcement agency, in carrying out its functions . . .

. . .

(4) For use in connection with any *civil*, criminal, administrative, or arbitral proceeding in any *Federal*, State, or local *court* or agency or before any self-regulatory body . . . and the execution or enforcement of judgments and *orders*, or *pursuant to an order of a Federal*, State, or local *court*.

. . .

(7) For use in providing notice to the owners of towed or impounded vehicles.

(Emphasis added).

Disclosure of names and addresses is expressly allowed under subparagraphs (1), (4) and (7) of § 2721(b). The information is needed to give notice to class members all of whom were owners of vehicles towed and impounded.

Though vehicle owners' identity data must be disclosed, Plaintiffs recognize the disclosure should be subject to a protective order. The protective order's terms would bar any public dissemination of the identity data (or "personal information" as defined by 18 U.S.C. § 2725(3)) including any public court filing, as well as barring disclosure to the three Plaintiffs (who have no need for the information), the press or any person not involved in insuring that the information is used as directed by the Court. The protective order's terms can also include a provision for destruction of the "personal information" data once it is no longer needed.

### ***DMV's Position:* Not Applicable.**

The DMV does not contend that the registered owner information for the 45,000 records sought is per se privileged or precluded from disclosure under any circumstance. By Plaintiffs' own admission, Vehicle Code section 1808.22 expressly permits disclosure of the information, subject to the statutory requirements set forth by the State of California for accessing that information.  The DMV similarly agrees that a protective order should be entered to address confidentiality concerns, in addition to the procedures set out by California statutes.

That is not the issue. The issue is simply whether Plaintiffs should be required to follow the statutory system set out by the State of California for requesting this information, and pay the statutory fees to compensate the people of California for the costs of Plaintiffs' private litigation. Plaintiffs point to no federal regulatory system or law that is in conflict with California law, and cite no authority for the proposition that California's entire statutory regime should be disregarded simply because Plaintiffs happen to be in federal court rather than a California Superior Court, other than an empty reference to the "Supremacy Clause." Plaintiffs do not explain how the "Supremacy Clause" of the United States Constitution acts to sweep aside a state's statutory procedures in the absence of any conflicting federal law. And, indeed, federal courts in California do not discount the applicability of the above-referenced California statutes regulating access to the DMV's information systems. (*See, e.g.*, *Vohra v. City of Placentia*, 2012 WL 12957107 at ** 4-5 (C.D. Cal. April 9, 2012) (discussing applicability of California Vehicle Code sections 1808(e) and 1808.21).

The Legislature of California has established the commercial requester system to provide vehicle records to attorneys in precisely the circumstances here, and declared its intent that fees be charged "at amounts necessary and sufficient to cover the actual costs of administering the programs." (Section 23 of Stats. 1982, c. 1273, p. 4704). Plaintiffs should be compelled to pay those fees, rather than shifting their litigation costs to the people of California.

00132172.WPD

### DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1. I am an attorney and a member of the bar of this Court. I am one of the attorneys representing Plaintiffs. I have also represented plaintiffs in numerous other cases involving the LAPD's seizures and impounds of vehicles, *e.g., Castillo et al. v. City of Maywood et al.*, L.A.S.C. No. BC469942 (now closed) and *Gonzalez-Tzita et al. v. City of Los Angeles, et al.*, 2:16-cv-194 FMO (Ex) (pending). From those cases, this case and others I have had occasion to depose various individuals regarding the practices for LAPD-directed vehicle seizures, including record-keeping processes, and information systems used to track vehicle seizures. I have also myself reviewed all LAPD-related vehicle impound data my office obtained from any source, along with hundreds of paper records reflecting LAPD vehicle impounds. My factual representations in this declaration are based on those depositions, records and computer data.

2. The representations I make about VIIC data are also based on my review of VIIC data, its database structure and field definitions, and deposition testimony of OPG-LA's executive director Eric Rose and LAPD's OPG coordinator Det. Ben Jones. I deposed Mr. Rose on 2/10/14 (*Castillo*) and 9/6/18 (*Brewster*); I deposed Det. Jones on 3/7/14 and 12/4/14 (*Castillo*).

3. Pursuant to subpoenas issued in this case and others (some of which required court orders to enforce), and also pursuant to the website for *O*fficial *P*olice *G*arage *A*ssociation of *L*os *A*ngeles ("OPG-LA"), I obtained all (or virtually all) VIIC data for every vehicle seizure from about June 2010, up through about September 8, 2018 (over 1,000,000 vehicle seizures). The VIIC data is computer text data on every vehicle an *O*fficial *P*olice *G*arage (or "OPG") towed and stored at the direction of the LAPD. Using VIIC data, one can identify by vehicle's license plate number and VIN ("*V*ehicle *I*nformation *N*umber) every vehicle the LAPD impounded pursuant to Cal. Veh. Code § 14602.6.

*Plaintiffs' 5/16/19 DMV Subpoena (**Exhibit A**)*

4. The subpoena included a DVD disc that had, in two separate files (in plain text

format), the license plate numbers and VINs along with the date of impound for each of the approximately 45,000 vehicles the LAPD impounded that comprise the class. My hope was that the DMV would do what it did in *Gonzalez-Tzita*: rather than construct an ad hoc program for retrieving the data Plaintiffs sought, the DMV instead would set up a requestor account for my use to upload the text files (which Plaintiffs' computer consultant would format to DMV standards) to the DMV's FTP website; in return, the DMV, via an automated programmed process, would provide text files with names and addresses that match to the license plate numbers and VINs. That process takes only a few hours.

5. In *Gonzalez-Tzita*, the DMV proposed the above process *after* Magistrate Judge Eick issued his 1/14/19 Order (doc. 115 -- see **Exhibit C**). Judge Eick's 1/14/19 order specifically directed that the data be provided by a process described by my office's computer consultant, a process that would require the DMV to construct an hoc program to retrieve the data. See page 1 of 1/14/19 Order; *see also* ¶14(C)-(D) of Dwight W. Cook's declaration  (**Exhibit D** @ pp. * hereto) cited by Judge Eick. Even though writing the program required but modest effort (a few hours of a programmer's time which the DMV *never* disputed) the DMV proposed instead it create requestor account for my use. The DMV further stated it would waive all statutory charges ordinarily associated with the account. (These are the charges the DMV demands that the *Brewster* Plaintiffs pay, see ¶8 *infra*.)

6. I accepted the DMV's proposal. The parties then agreed upon a proposed order for Judge Eick to sign the DMV to comply with the 1/14/19 Order via the DMV's requestor account proposal. See 2/22/19 Order (doc. 121 in *Gonzalez-Tzita*, **Exhibit E** hereto). It was clear to me that from the timing and context of the DMV's requestor account proposal in *Gonzalez-Tzita*, the DMV knew that setting up the requestor account required *less* effort and *less* time than the modest effort required for the method Plaintiffs' consultant had described (see **Exhibit D** at pp. * hereto) and which Judge Eick had initially ordered.

///

00132172.WPD

*Unavailability of Subpoenaed Data from Other Sources*

7. The DMV's claim that Plaintiffs can obtain class members' names and addresses from other sources is untrue:

A. Plaintiffs do not have the names and addresses of the 45,000 class members. The only information my office has that "identifies" class members, are the license plate numbers and/or VINs (courtesy of VIIC data) for the vehicles the LAPD impounded (along with the impound dates). Other than the DMV, for the 45,000 class members I know of no source that can provide a vehicle owner's name and address based upon a license plate number or VIN.

B. Regarding VIIC data, as the Court may recall the data does *not* record names and addresses of vehicle owners (at most, the VIIC data *sometimes* reflect [in about 18% of VIIC records] a name and/or address of the person who drove the vehicle out of the storage lot who may or may not be the owner). 1/15/19 Order (doc. 136) @ 4-6 & n.1 ("VIIC does not even track such information [vehicle owner's name and address]"; "[P]rintouts of VIIC show there are no fields for owner information . . .").

C. Moreover, even assuming my office had names of vehicle owners who are the class members (we do not) searching for current addresses by one-at-a-time inquiry for each of the 45,000 class members using publicly-available search services (Westlaw; Lexis/Nexis; PeopleFinder.com) is impossible because of cost and time constraints. I have had occasion to perform such searches (tracking down a witness or putative defendant). To get a match that after reviewing all returns (you always get multiple hits) you are satisfied is the person you are looking for, takes about 10 minutes' minimum for each name. In other words, it would take more than three years for one person working full time (40 hours a week) to run the 45,000 names. And then there is the cost of doing so. Depending on the service, the cost is anywhere from $9.95 per name (PeopleFinder's most inexpensive service) to over $40 and higher per name (e.g., Lexis/Nexis). For 45,000 names, that is nearly $500,000 at the low end (45,000 x $9.95 = $447,750)

to almost $2,000,000 or more at the high end (45,000 x $40 = $1,800,000).

*June 10, 2019 L.R. 37-1 Meeting*

8. On June 10, 2019, I held a L.R. 37-1 meeting with Deputy Attorney General Brad Parr. Mr. Parr insisted that before the DMV could provide the names and addresses Plaintiffs sought, at a minimum Plaintiffs would have to pay  the "actual cost" to the DMV which, Mr. Parr asserted, would be "$100,250 plus the bond requirement [of $50,000]." I responded by stating I estimated the time actually spent by a DMV technician (a non-programmer) for setting up the requestor account as was done in *Gonzalez-Tzita* was probably no more than about 30 minutes; that the technician's time for verifying the structure of the text files I uploaded to the DMV's FTP site was five minutes or less. Mr. Parr did not dispute my estimates. Instead, he angrily insisted that the DMV time actually spent was irrelevant, that what mattered was the statutory rates the DMV ordinarily charges for access ($2 per record, etc.), rates that he insisted be followed.

9. I also informed Mr. Parr that Plaintiffs agreed the production of the DMV data of names and addresses would subject to a protective order. I proposed the protective order be in the form as issued in *Gonzalez-Tzita* (see **Exhibit E**). Mr. Parr stated he was inclined to accept, as the form of protective order, the one issued in *Gonzalez-Tzita*. However, Mr. Parr stated he needed to again review that order before he could commit.

I declare under penalty of perjury that the foregoing is true and correct.  Executed June 13, 2019, at Los Angeles, California.

_____
Donald W. Cook

-22-

00132172.WPD

## DECLARATION OF DWIGHT W. COOK

I, DWIGHT W. COOK, declare:

1.  Up until June 2017 when I retired, I was an Applications Programmer Analyst for the State of Minnesota. I was employed as a Programmer Analyst beginning May 1987. As a Programmer Analyst I provided systems analysis, database design, software design, testing and installation, customer service (including dataset "data and image" retrieval) for various entities. In the mid- to late 1990s, I designed and piloted the first Electronic Document Management System (EDMS) for the State of Minnesota. The system manages millions of records (or images), with a user base of approximately 5,000 (not including members of the public who have limited access to some of the information). I also designed the first metadata application and database for tracking the optically stored documents for the Minnesota Department of Transportation. That system was used to manage over 500,000 images, with a user base of approximately 200. The system has since been expanded to cover millions more records and a far larger user base numbering in the thousands.

2.  I have programmed and managed computer data systems on IBM mainframe and mini-computers, as well as networked PC workstations. I have been a network administrator. I regularly worked with Oracle, MySQL, and MS Access databases. That is, I regularly worked with these databases and I wrote code in MS Access to manipulate the data for collection, storage  and reporting purposes. Using MS Access, I regularly accessed, imported and/or copied data from Oracle data warehouses as large as several terabytes (one terabyte is 1,000 gigabytes).

3.   Over the years I have also worked and consulted with managers and programmers for large datasets managed by the departments of transportation for other states, and the United States Department of Transportation, discussing common problems and possible solutions.

4.  I hold a programmer certificate (two-year degree) from Alexandria Technical College in Alexandria, Minnesota. I have completed numerous post degree courses and classes to enhance my expertise in the area of computer program development, data

00132172.WPD

analysis, design, storage, management, and retrieval.

5. I have been retained by Plaintiffs' counsel to analyze the electronically-created and stored data for vehicles that I am informed were seized at the direction of LAPD personnel for impound under Cal. Veh. Code § 14602.6.

6. I am familiar with the VIIC database system used by Official Police Garage of Los Angeles (OPG-LA) to track and identify vehicles seized at the direction of the LAPD. I am familiar with the system based on (a) the January 3, 2014 declarations of David Ospina and Eric Rose (submitted, I am informed, in a case called *Castillo v. City of Maywood*, LA.S.C. No. BC 469942); (b) February 10, 2014 deposition testimony by Mr. Rose in the same case; (c) the public search function of vehicle seizures accessible at the OPG-LA website (opgla.com); and (d) my April 15, 2014 telephone conversation with Mr. Ospina regarding the data systems. Mr. Ospina is a programmer and developer of information systems used by OPG-LA and the individual Official Police Garages, or OPGs. Per Mr. Rose's testimony, OPG-LA employs Mr. Ospina as an independent contractor to manage OPG-LA's information systems. I updated my knowledge of the VIIC database by reviewing the September 6, 2018 deposition of Eric Rose, and accompanying documents.

7. I have reviewed and analyzed subsets of VIIC data, provided to me by attorney Donald W. Cook. The files have been in the format of Excel spreadsheet, ASCII delimited files (a more generic data file format), and CSV files. I also reviewed the VIIC data dictionary produced by Mr. Rose at his September 8, 2018 deposition.

8. Because of my work in the *Gonzalez-Tzita* matter, I have become more familiar with the California DMV ("DMV") data systems. I have reviewed DMV data of names and addresses of vehicle owners that I am informed the court in *Gonzalez-Tzita* ordered produced. I have reviewed printed DMV documentation I obtained from DMV representatives in connection with DMV data. By email and telephone I have communicated with DMV personnel Wendy Lang and Marie Hernandez. (These contacts were arranged and authorized by counsel for the DMV and the *Gonzalez-Tzita* plaintiffs). I have also reviewed Ms. Lang's May 9, 2019 declaration filed in *Gonzalez-Tzita*.

9. DMV representative Wendy Lang told me she is not a programmer. From my communications and reviewing her declaration it appears she is a network administrator. She was apparently the person who created the requestor account for plaintiffs' counsel's use in *Gonzalez-Tzita*.

10. Setting up a requestor account for Plaintiffs' use in *Brewster* to obtain names and addresses for the 45,000 vehicle owners, should require *less* time that what Ms. Lang spent in *Gonzalez-Tzita*. I say that because:

A. Setting up a requestor account -- that is, enabling an outside entity to access a network for limited copying of selected data under an assigned user name and password -- is generally a duty assigned to a network administrator. It is not a complicated process. The data system is designed to enable non-programmers like Ms. Lang who has administrative rights, to quickly create (upon appropriate authorization) a requestor account. By "quickly" I mean 30 minutes or less. Using existing programmed processes, the administrator creates a username and password. That is what someone did, presumably Ms. Lang, in setting up the requestor account for use by counsel for plaintiffs in *Gonzalez-Tzita*.

B. The other step in the process of using the DMV's requestor account, is instructing the outsider vendor on how to structure the data file for uploading to the DMV's FTP site, and verifying the format of files uploaded to the DMV's site. While Ms. Lang spent time doing that in *Gonzalez-Tzita* (she provided me and plaintiffs' counsel with written documentation; spoke with both of us about the proper file format; checked the uploaded files' formatting) that time was probably not more than a few hours. (Per Ms. Lang's 5/9/19 declaration she claims she spent more than 40 hours; for reasons stated below I do not believe it was anywhere that high).

C. Once the requestor account is set up and a properly formatted text file is uploaded to the DMV's FTP site, the process provides names and addresses to the vendor with no further involvement by DMV personnel. That is because by design, the DMV uses an already programmed automated batch process to match

VINs and license plate numbers in the uploaded text files, with VINs and license plate numbers in the DMV' vehicle registration database. This process then generates *automatically* an output text file of names and addresses recorded in the DMV database as the vehicle's owner(s) (as determined by matching license plate numbers and/or VINs).

D.  The only time needed from Ms. Lang or other DMV personnel is (a) time to set up the requestor account (no more than 30 minutes), (b) time for checking the formatting of text files Plaintiffs' counsel uploads to the FTP site (a few minutes), and (c) *possibly* time needed to address problems that arise. In *Gonzalez-Tzita*, most of Ms. Lang's time was probably spent in educating plaintiffs' counsel and me on how to use the requestor account and the formatting of the text files. That should not be necessary in this case as we both now know how the process works, and I know how to format the text files for uploading to the DMV's FTP site.

E.  Ms. Lang's claim she spent more than 40 hours in setting up the requestor account in *Gonzalez-Tzita* (I am including the time she spent educating me and plaintiffs' counsel on how to use the account) is not credible to me. She did not format any text files for uploading; I did. She did not upload the files to the FTP site; plaintiff's counsel did. While she did perform some spot checks of output files and verified I had properly formatted the files plaintiffs' counsel uploaded, those tasks are measured in minutes. The most time-intensive task anyone spent making the DMV data available in *Gonzalez-Tzita*, was the time I spent formatting the text files per DMV requirements -- that took slightly more than eight hours. And while I spent time learning the DMV requirements, I now know the process.

11.  I am informed that the DMV claims its actual cost for providing the names and addresses for the 45,000 class members in this case, would be about $100,000. The claim is untrue. A DMV requestor account uses existing programming that eliminates the need for any person to spend time obtaining names and addresses. That is why electronic

data systems exist -- the systems use programming which once written and functioning properly, *eliminates* the need for individuals to spend time retrieving the desired data in more laborious ways (searching by hand; searching for records one-at-a-time, etc.). The actual cost to the DMV of using a requestor account to retrieve data via a programmed batch operation, is essentially nil. Running the batch operation will consume some server resources; but since the batch operation runs late in the day / early morning next day, there should be no disruption.

12.  That the DMV charges $2 per record retrieval is not a reflection of actual cost. Such fees are common with datasets like the DMV's (Minnesota has them too). The fee is not to reimburse for actual cost of retrieving the record (because, as stated above that cost is virtually nil); its to (a) generate revenue from entities you know will pay (in my 30+ years of government service, most government agencies claim they are underfunded) and (b) discourage commercial vendors for using their requestor accounts to obtain data except when truly necessary for a lawful purpose.

I declare under penalty of perjury of the State of California that the foregoing is true and correct except as to those matters about which I have been informed. As to the matters stated on information and belief, I believe they are true. Executed June 13, 2019, at Garfield, Minnesota.

_____
Dwight W. Cook

-27-

# DECLARATION OF JAMES WOODWARD

I, James Woodward, declare:

1.    I am Chief of the Information Services Branch of the California Department of Motor Vehicles' Communications Program Division. I have knowledge of the facts set forth in this Declaration and if called to testify thereto, I could and would do so competently. I submit this Declaration in connection with the DMV's Opposition to Plaintiff's Motion to Compel.

2.    The DMV's Communications Program Division oversees the DMV's requester account system, which is the system that attorneys and other specified individuals and entities use to query vehicle registration information.

3.    The DMV's requester account system involves many different components and activities, and DMV personnel are tasked with, among other things, facilitating the application process for those seeking commercial requester accounts (including attorneys) and the process for those seeking to renew their requester accounts, assisting those issued with requester codes with accessing the system, maintaining the system itself, addressing needs for updates to the data in the system to insure its integrity and accuracy, and investigating allegations of improper use of the data.

4.    Approximately 65 DMV employees support these information requester activities.

///
///
///

1

1      5.    The DMV charges a $2/record fee for electronic production of vehicle

2  records. This $2/record fee recovers the costs of the foregoing – from maintaining

3  the system to assisting individuals (including attorneys) with requests to processing

4  data to employing the staff needed to maintain the system – spread across all

5  requesters seeking electronic records.

6

7      I declare under penalty of perjury under the laws of the United States that the

8  foregoing is true and correct and that this Declaration is executed this twenty-first

9  day of June, 2019, at Sacramento, California.

10

11

12                      James Woodward

13

14

15

16

17  LA2018502809
53517318.docx

18

19

20

21

22

23

24

25

26

27

28

2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

| | | |
|---|---|---|
| Lamya Brewster, et al. | ) | |
| *Plaintiff* | ) | Civil Action No. 5:14-cv-2257 JGB (SPx) |
| v. | ) | |
| Charlie Beck, et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Custodian of Records, California Department of Motor Vehicles
(Production of Records Only - No Appearance Necessary)

*(Name of person to whom this subpoena is directed)*

✓ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: DMV electronically recorded data reflecting vehicle owners names & addresses, as matched to the vehicle license plate number with corresponding date, and vehicle identification number (VIN) and corresponding date, per attached TXT files (provided on DVD).

| Place: Law Office of Donald W. Cook<br>3435 Wilshire Blvd., Ste. 2910<br>Los Angeles, CA 90010 | Date and Time:<br><br>05/31/2019 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/16/2019

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Lamya Brewster & Elias Arizmendi                                                        , who issues or requests this subpoena, are:

Donald W. Cook, Attorney at Law, 3435 Wilshire Blvd., #2910, Los Angeles, CA 90010 (213) 252-9444

email: manncook@earthlink.net

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**DMV Subpoena**                           **EXHIBIT A**

*XAVIER BECERRA*
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013

Public: (213) 269-6000
Telephone: (213) 269-6479
Facsimile: (916) 731-2119
E-Mail: Brad.Parr@doj.ca.gov

May 29, 2019

<u>**Via E-mail and U.S. Mail**</u>

Donald W. Cook
Attorney At Law
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90013
doncook@earthlink.net
mancook@earthlink.net

RE:    *Lamya Brewster v. City of Los Angeles*
       <u>Central District of California Case No. EDCV14-2257 JGB (SPx)</u>

Dear Mr. Cook:

    I am the Deputy Attorney General assigned to handle this matter on behalf of the California Department of Motor Vehicles. Please direct all future correspondence regarding this matter to my attention.

    We are in receipt of your Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, executed on May 16, 2019, but does not appear to have been personally served until May 20, 2019 at DMV headquarters in Sacramento. The Subpoena seeks vehicle owner name and address information as of the towing date, matched either to the Vehicle Identification Number (VIN) or license plate number.

    Please allow this letter to serve as the DMV's objections to the Subpoena, pursuant to Federal Rule of Civil Procedure 45 subdivision (d)(1)(B).

    The DMV objects to the Subpoena on the following grounds:

    1.    <u>**Undue Burden/Equally-Available**</u>: The DMV already has procedures and facilities in place for you to obtain the information sought in the Subpoena. (Vehicle Code section 1810.2; Title 13 California Code of Regulations 350.16, 350.18, 350.20, and 350.24.) You are able to obtain a vehicle requester account upon payment of a filing fee and the filing of a bond and can obtain the records you seek for a $2/record fee.

    We have been through this all before, in the *Gonzalez-Tzita* matter. There, the DMV accommodated you by providing an alternative method than that prescribed by statute, waiving the bond, application fee, and per record fee. This involved substantial back-and-forth (over 40 emails) and the expenditure of significant amount of time (over 40 hours of DMV time paid for

**Parr 5/29/19 letter**

**EXHIBIT B**

May 29, 2019
Page 2

by California citizens) assisting you with formatting your requests and validating/verifying the data.[1]  That was for 1,570 records.  Although we do not know the number of records sought by your current subpoena (see Paragraph 3, below), we presume that it reflects our prior understanding that this request would encompass over 30,000 records.  (Please advise if this is not the case).  Given that it took over 40 hours of DMV time to assist you with 1,570 records, it appears it would take twenty times that long – some 800 hours – to assist you with these records.

It is inappropriate and all out of proportion to demand that the DMV shoulder the burden – in time and in money – of providing you with names and addresses of class members to your litigation, when the tools are available for you, and where the California Legislature has already provided a statutory means by which this information can be readily obtained without recourse to compulsory process.

Moreover, our experience in the *Gonzalez-Tzita* matter suggests that this is only the beginning of the burden to the DMV contemplated by your clients.  After all, the data sought in the Subpoena will reflect the owner address information on the towing date, not their current address.  We note that you have declined to conduct any research of your own to validate the data that the DMV provided you in the *Gonzalez-Tzita* matter but instead now seek a federal order compelling the DMV to manually verify these addresses and provide updated addresses.  Thus, the burden to the DMV in complying with the Subpoena is significantly greater than it would first appear (because this Subpoena is inevitably only the first step).

Accordingly, the DMV objects to the Subpoena in its entirety on the grounds that the information is equally available to Plaintiffs and the burden to the DMV in responding is out of proportion with Plaintiffs' litigation needs.

## 2.    **Privacy/Data Confidentiality**

The Subpoena demands the names and address information of registered vehicle owners.  The DMV cannot provide this information, under both federal and state law.  The *Driver Privacy Protection Act* (18 U.S.C. sections 2721-2725) prohibits the DMV from knowingly disclosing personal information such as that sought by the Subpoena.  Violators may be subject to civil penalties and fines.  (18 U.S.C. sections 2723 and 2723.)

---

[1] We note that, in the *Gonzalez-Tzita* matter, you falsely accuse DMV personnel (Wendy Lang) of making incorrect statements regarding the time the DMV spent processing your requests.  As with your baseless accusation made in that matter against Mr. Fu regarding the "data dictionary," your accusation is baseless here, and made in bad faith.  Ms. Lang spent significant time behind the scenes validating your data and correcting for any errors generated by poor or poorly-formatted data provided by you.  The fact you may not have understood or troubled yourself with learning about the work done by the DMV to assist you with your litigation is not a basis to accuse the DMV of falsehoods or inaccuracies.

**Parr 5/29/19 letter**                                                       **EXHIBIT B**

May 29, 2019
Page 3

Moreover, California Vehicle Code section 1808.21 prohibits disclosure of any residence address from the DMV records, and no attorney affidavit satisfying the requirements of Vehicle Code section 1808.22 subdivision (d) has been provided.

Accordingly, the DMV objects to this Subpoena in its entirety on the grounds that it violates privacy laws applicable to the DMV and its personnel.

### 3.    DMV Data Protocols

The Subpoena demands that the DMV insert a DVD accompanying the Subpoena into its systems to retrieve the data you seek. Current DMV policy regarding mobile devices (policy IS 2013-02) prohibits the DMV from inserting the DVD into any networked system for any reason. The policy states, in part, that the "unauthorized use of mobile devices to store, back up, and otherwise access any DMV data is strictly forbidden"; to be authorized, a device must meet the specifications regarding Mobile Devices/Media Standards detailed by DMV policy, and must be owned and encrypted by the DMV. The mobile devices policy is authorized by, among other things, Section 5310.5 of the State Administrative Manual, which was adopted pursuant to Government Code section 11549.3.

Indeed, the DMV cannot even ascertain the number of records sought by the Subpoena because it cannot insert the DVD into its systems.

Accordingly, the DMV objects to the Subpoena on the grounds that it is prohibited by statute and policy from inserting the DVD into its systems.

### 4.    Improper Location for Production

The Subpoena demands production of the records at your offices in Los Angeles. This is improper. Under Federal Rule of Civil Procedure 45 subdivision (c), the place of compliance with a subpoena is "at a place within 100 miles of where the person resides, is employed, or regularly transacts in person." Under Vehicle Code section 24.5, the DMV is located at its headquarters in Sacramento, which is significantly more than 100 miles from your office. Accordingly, the Subpoena is improper and objectionable.

### 5.    Improper Service/Lack of Notice

The Subpoena contains no proof of service and there is no indication that other parties were provided notice pursuant to Federal Rule of Civil Procedure sections 45 subdivision (b)(4) and subdivision (a)(4), respectively, further rendering it objectionable.

May 29, 2019
Page 4

We are available to discuss the foregoing at a mutually-convenient time.

Very truly yours,

BRAD PARR
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

BWP:

LA2018502809
53453608.docx

**Parr 5/29/19 letter**                   **EXHIBIT B**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES-GENERAL

**Case No.** CV 16-194-FMO(Ex)                                    **Date:** January 14, 2019

**Title:** LEONARDO GONZALEZ-TZITA, ET AL. V. CITY OF LOS ANGELES, ET AL.

---

**DOCKET ENTRY**

---

**PRESENT:**

### HON.  **CHARLES F. EICK**, JUDGE

STACEY PIERSON                                          N/A
**DEPUTY CLERK**                                    **COURT REPORTER**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**

None                                                    None

**PROCEEDINGS:**    **(IN CHAMBERS)**                        (Page 1 of 2)

     The Court has read and considered all papers filed in support of and in opposition to "Plaintiffs' Motion to Compel Compliance with Subpoena Duces Tecum" ("the Motion"), filed December 12, 2018. The Court heard oral argument on January 11, 2019.

     On or before February 4, 2019, the California Department of Motor Vehicles ("DMV") shall produce to counsel for Plaintiffs the subject name and address information in usable electronic form. Plaintiffs shall cooperate with the DMV in accomplishing the ordered production safely, quickly and inexpensively. See, e.g. Paragraph 14(C)-(D) of the Declaration of Dwight W. Cook, filed December 12, 2018. The Court finds that the burden and expense of this production should not be "undue" within the meaning of Rule 45(d)(1) of the Federal Rules of Civil Procedure. The information produced shall be subject to a protective order limiting use of the information to use for purposes of this litigation only and limiting access to the information to Plaintiff's attorneys, experts and the class administrator(s). The protective order also shall provide for the destruction of the information at the conclusion of the litigation. However, the protective order need not satisfy all of the state law requirements set forth in section 1808.22(d) of the California Vehicle Code.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES-GENERAL**

**Case No.** CV 16-194-FMO(Ex)                                    **Date:** January 14, 2019

**Title:** LEONARDO GONZALEZ-TZITA, ET AL. V. CITY OF LOS ANGELES, ET AL.

**DOCKET ENTRY**

**PRESENT:**

                    HON.   **CHARLES F. EICK**, JUDGE

             STACEY PIERSON                                                N/A
             **DEPUTY CLERK**                                      **COURT REPORTER**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**

                 None                                                    None

**PROCEEDINGS:     (IN CHAMBERS)**                              (Page 2 of 2)

          The ordered production will moot the remainder of the Motion, and so the remainder of the
Motion is denied without prejudice.

          Any person seeking review of this Order shall cause the preparation and filing of a transcript of
the January 11, 2019 hearing.

          cc:     Judge Olguin
                  All Counsel of Record
                  Counsel for DMV

*D*atabase *M*anagement *S*ystem) for text data, designed and operating under contemporary programming and RDBMS standards. A key essential feature of a modern RDBMS is the program's ability to quickly and easily search for, locate and retrieve text data in a desired format, whether pursuant to a programmed function or an *ad hoc* query. It is one of the chief reasons that drove the transition from old style hierarchical IBM-based database systems to modern object-oriented relational database management systems (such as Oracle).

6. I know that VVRD has the name and addresses of vehicles' registered owners as of a particular date. I saw it in the print-out for the Toyota Sienna license plate no. 5YBV341, while the POST Learning Domain (**Exhibit C** @ page 3-7) also states that it does.

7. Designing and running a query, mostly likely in SQL (*S*tructured *Q*uery *L*anguage and pronounced "sequel"), an international standard for database manipulation, to retrieve the registered owner data as of the specific date for each of the approximately 1,500 records in the two files identified above (¶4(A)) should not take more than an hour, *if that*. And that would include exporting the desired data into ODBC compliant format (such as a ASCII, CSV or other generic file format readable by such programs as Microsoft Access [a relational database] or Microsoft Excel [a spreadsheet program]). The programmer would likely use the existing programmed search function as to a specific vehicle for retrieving owner identity data as of a specified date (**Exhibit C** - POST Learning Domain 36 @ page 3-7, fifth listed bullet point). The programmer would slightly modify the query to use, as the search criteria, the date and vehicle identifier (VIN or license number) as set forth in the above named files (¶4(A)). That is, the search function would be programmed to run about 1,500 times for 1,500 different vehicles, using either the VIN or license number and accompanying date. Furthermore, for reasons of security and avoiding disruptions to ongoing daily operations I would expect the query would run against data in the VVRD data warehouse and *not* the production or transaction database.

DONALD W. COOK.
Attorney at Law
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444

-37-

Dwight Cook 12/4/18 decl.                    -37-                    EXHIBIT D

8. The time needed for a competent programmer to construct the query and then executing the query, is measured in *minutes*, not hours. Even if the entire query had to be constructed from scratch, the time needed is still nominal, well less than an hour. In fact, so easy is it to retrieve the data that even if VVRD was an old style hierarchical IBM-based database system that requires a COBOLII programmer to write the software to retrieve the desired data, you are still talking about no more than a day's work.

9. Ms. Egan's claims (see **Exhibit B**) that the cost for generating the requested data is "typically $10,000 - $15,000," and that it would take "3 week[s] to several months to complete," are unfathomable to me. As I stated above, the programming effort *and* the time needed to generate an export of the desired data, is ***no more than an hour.*** Although I do not know what the California DMV charges per hour for its programmers' time, whatever the amount is it is far, far less than $10,000. Again the only difference between Plaintiffs' requested search and retrieval query versus one for a single vehicle (**Exhibit C** @ page 3-7) is the query for Plaintiffs' sought-after data is run about 1,500 times instead of once (which requires only a few additional *seconds*) while the results are exported to a computer file instead of printed to paper (with the former being far quicker and cheaper than the latter).

### *Using CHP 180 forms for owners' names and addresses*

10. I understand this case has about 1,500 class members each of whom must receive written notice by mail at his or her DMV recorded name and address as a vehicle's registered owner. I further understand that the DMV claims Plaintiffs can use the names and addresses as recorded on paper CHP 180 forms (a sample of which is **Exhibit N**) as an adequate substitute for the VVRD electronically recorded text data of owners' names and addresses. The DMV's claim is untrue; the CHP 180 forms are *not* an adequate substitute:

A. The original source for vehicle owners' names and addresses is the DMV's VVRD. The CHP 180 form with its handwritten name and address is

DONALD W. COOK,
Attorney at Law
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444

a second hand source that was NOT electronically generated (replicated or copied) from VVRD. Rather, by either reading a vehicle's paper registration or by viewing a computer screen showing the owner's name and address, a person hand wrote the owner's name and address onto the CHP 180 form. Because of the large number of CHP 180 forms (1,500 forms for 1,500 class members) inevitably there will be transcription errors -- people make mistakes. I would also expect that as recorded on the forms, sometimes the information will not be readable since the forms are filled out in handwriting.

B. To generate a mailing list for the 1,500 class members, the names and addresses must be in a structured electronic text form from which I can construct a computer database mailing list. But names and addresses recorded on CHP 180 forms, whether printed onto paper or scanned into TIFF or PDF image files, are NOT electronically created text data. So someone has to sit a computer terminal, reach each of the approximately 1,500 CHP 180 forms, and input the data by typing the names and address into a database.

C. The process described above is very time-consuming and labor intensive. The process also induces additional data entry errors – there always are when human operators have to manually input data into a database. That is why programmers design database programs to minimize as much as possible the need for terminal operators to manually input data – once entered, if the same data is needed elsewhere the program itself replicates (copies) the data rather than have a human operator do it.

11. For the above reasons, in the industry *no one* wants data recorded on paper when the same data is available in its original form as electronically recorded structured text data (as VVRD data is). The reason is simple. The electronic data is more accurate, can be copied electronically without operator input errors, and is instantly useable, i.e., you don't need to spend days, weeks or months creating a database of names and addresses.

DONALD W. COOK,
Attorney at Law
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444

-39-

**Dwight Cook 12/4/18 decl.**          **-39-**          **EXHIBIT D**

12. Here, there is no barrier to producing the VVRD recorded names and addresses electronically. Because VVRD is a RDBMS designed under contemporary standards, in a manner of minutes one can export from VVRD an exact copy of the desired names and addresses in a standardized electronic format (meaning ODBC compliant), or just as OPG-LA did with the VIIC data.

**_Programming time required (Gerald Zielinski decl. – Ex. F)_**

13. Mr. Zielinski states it requires about 20 hours of programming time to provide the VVRD owner identity data Plaintiffs seek. (Zielinski decl. ¶4.). I do not find his estimate credible:

    A. Initially, I note Mr. Zielinski has offered no details or explanation on how he came up with his 20 hours estimate.

    B. Assuming VVRD is an old style hierarchical database written in COBOL (or COBOLII) (highly unlikely) I know, based on my experience as a COBOLII programmer working with datasets with millions of records, I could write the specialized program in no more than a day.

    C. Most likely, VVRD is a RDBMS designed and operating under contemporary standards for such systems. In such systems, query and retrieval functions like the one needed to retrieve data Plaintiffs seek, take but a few minutes. I find it significant Mr. Zielinski has not disputed what I say in ¶¶5-8 above.

**_Program and security issues (Pia Rebollar decl. – Ex. G)_**

14. Ms. Rebollar's claim that it is not possible for the DMV to use the Excel data files provided on the thumb drive because of the risk of virus or malware on the thumb drive, is false:

    A. VVRD is a large data set (about 36 million records) with probably **_thousands_** of authorized users. I say that because the DMV has nearly 9,000 employees (see STATE OF CALIFORNIA DEPARTMENT OF MOTOR VEHICLE STATISTIC FOR PUBLICATION, JANUARY THROUGH DECEMBER 2017).

DONALD W. COOK,
Attorney at Law
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444

-40-

**Dwight Cook 12/4/18 decl.**      **-40-**      **EXHIBIT D**

Additionally, I assume VVRD data is made available to law enforcement agencies throughout California, and to certain private organizations. Given the nature of VVRD and the data it collects, most of its authorized users would only have access for viewing and, possibly, copying data.

B. The above means there are probably hundreds if not thousands of workstations used for accessing VVRD. As with any organization like the DMV that manages a dataset like VVRD, the DMV knows from time-to-time there will be VVRD users (maybe even on a daily basis) who will, in violation of policy and acting either through neglect or in a few instances with malicious intent, connect to a VVRD workstation an unauthorized device (such as an external storage drive connected via a USB port). Because this kind of user conduct is inevitable (you cannot stand over the shoulder of every user as he or she accesses the network) the VVRD network has in place firewalls to prevent unauthorized devices from connecting to its network, or transferring data from a non-secure source. E.g., last sentence of ¶3 of the Richard Fu declaration (Ex. H) (Mr. Fu states that VVRD modulates user access "by secure file transfer and batch transfer systems that scan the incoming data and requests for data for viruses, malware, or other malicious code."). If it didn't, VVRD would have been severely compromised almost from day one of its operation. So simply connecting Plaintiffs' thumb drive to a workstation that has access to VVRD, will *not* result in malicious code or viruses being copied or transferred into VVRD or the DMV's network – the VVRD network's firewalls would prevent the thumb drive from even connecting to the network, let alone transferring the drive's contents to the DMV network.

C. To use the Excel data files on Plaintiffs' thumb drive to construct a search and retrieval query for the data Plaintiffs request, I would expect the DMV programmer would connect the thumb drive to an isolated environment – the programmer's laptop that is *not* connected to any network. In that isolated

environment, the programmer would run the Excel data files through virus and malware scanning software to insure there is no imbedded malicious code, that the data is exactly what Plaintiffs say it is. This is a commonly used protocol programmers employ to insure data acquired from an outside source, is "clean" and safe. This requires but a few minutes of effort. And it is something programmers of large datasets like VVRD do from time to time in course of their duties. (I did it many times.)

D. If the DMV wants an extra level of security, I can provide the two Excel data files as CSV (*C*omma *S*eparated *V*alues) files. That is a generic data format (file extension .CSV) consisting of text data only; the file format does not support macros or other coding. Additionally, I will burn the CSV files to a CD ROM, a read-only disk. Because the disk is read-only, *if* the disk had malware, the malware could not replicate or copy itself onto the CD because the disk is not "writeable." (Malware sometimes copies itself and related files on its storage medium before transmitting copies to other connected devices.) The DMV programmer would still read the disk in the isolated environment (her laptop not connected to any network) to insure the CSV files contain only clean data, before using the data to construct the search and retrieval query for Plaintiffs' requested data.

***Data Dictionary (Richard Fu decl. – Ex. H)***

15. Within the industry, a data dictionary is not considered confidential. Rather, it is a listing of the data fields and their associated tables. The dictionary tells the reader what type of data is collected and the type of field used to store that data (logical; numeric; alphanumeric; narrative; date; field length and so on). Mr. Fu's description of VVRD's data dictionary (Fu decl. @ ¶4, second sentence) is correct. For an example of a data dictionary, see **Exhibit M**, the data dictionary for the OPG-LA-maintained VIIC database.

16. But Mr. Fu's further statements that release of the VVRD data dictionary

DONALD W. COOK.
Attorney at Law
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444

-42-

Dwight Cook 12/4/18 decl.                    **-42-**                              **EXHIBIT D**



1 DONALD W. COOK
   Attorney At Law
2 State Bar No. 116666
   3435 Wilshire Blvd. Suite 2910
3 Los Angeles, CA 90010
   Telephone: (213) 252-9444
4 Fax: (213) 252-0991
   E-mail: manncook@earthlink.net
5 *Attorneys for Plaintiffs*

6 XAVIER BECERRA
   Attorney General of California
7 GARY S. BALEKJIAN
   Supervising Deputy Attorney General
8 BRAD PARR
   Deputy Attorney General
9 State Bar No. 237503
   300 South Spring Street, Suite 1702
10 Los Angeles, CA 90013
    Telephone: (213) 269-6479
11 Fax: (213) 897-1071
    E-mail: Brad.Parr@doj.ca.gov
12 *Attorneys for Third-Party*
   *Department of Motor Vehicles*

13

14                    UNITED STATES DISTRICT COURT

15                    CENTRAL DISTRICT OF CALIFORNIA

16

17

18

19 | **LEONARDO GONZALEZ-TZITA**, an | Case No. 2:16-CV-194 FMO (Ex)
20 | individual; **ESTEBAN DIEGO ESTEBAN**, |
   | an individual; **SIDONIO LOMELI**, an | **ORDER CLARIFYING TERMS OF**
21 | individual and all as class | **DISCLOSURE PURSUANT TO**
   | representatives, | **COURT'S JANUARY 14, 2019**
   | | **ORDER (Doc. 115)**
22 | Plaintiffs, |

23 | v. |

24 |

25 | **CITY OF LOS ANGELES, ET AL,** |

26 | Defendants. |

27

28

                                    1

ORDER CLARIFYING TERMS OF DISCLOSURE ETC.  (2:16-CV-194 FMO (Ex))

1        The Court, having reviewed the foregoing Joint Stipulation Regarding

2  Interpretation of the Court's January 14, 2019 Order (doc. 115), and good cause

3  appearing, issues this further order as follows:

4      1.    The Parties shall continue to work together to provide Records "safely,

5           quickly and inexpensively," as required by the Court's 1/14/19 Order;

6      2.    Plaintiffs' counsel shall set up a commercial requester account as described

7           in Vehicle Code section 1810.2, and comply with the procedures and

8           information disclosures required in setting up such an account, including

9           but not limited to the information described in California Code of

10          Regulations title 13 sections 350.16 and 350.18;

11     3.    The DMV shall not require Plaintiffs or Plaintiffs' counsel to post at

12          $50,000 bond, nor pay a $200 application fee to obtain a commercial

13          requester account and requester code;

14     4.    The DMV shall not require Plaintiffs or Plaintiffs' counsel to pay the

15          $2.00/record fee ordinarily required for release of records using a

16          commercial requester account; and

17     5.    To the extent that the Protective Order entered by the Court on or about

18          August 26, 2016 does not so provide, the information disclosed by the

19          DMV pursuant to this procedure shall be kept confidential and its use

20          limited to the Parties' attorneys and their legal staff. The information shall

21          be used for the purposes of this litigation only, and shall be destroyed at the

22          conclusion of this litigation. Individual confidentiality agreements for each

23          record provided that would otherwise be required by Vehicle Code section

24          1808.22(d) shall not be required in this instance.

25  IT IS SO ORDERED.

26  Dated: _2/22/19_

27

                                HON. CHARLES F. EICK
                                UNITED STATES MAGISTRATE JUDGE

28  A2018502811
      63139693.docx

2

ORDER CLARIFYING TERMS OF DISCLOSURE ETC.  (2:16-CV-194 FMO (Ex))