XAVIER BECERRA
Attorney General of California
GARY S. BALEKJIAN
Supervising Deputy Attorney General
BRAD PARR
Deputy Attorney General
State Bar No. 237503
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Telephone: (213) 269-6479
  Fax: (916) 731-2119
  E-mail: Brad.Parr@doj.ca.gov
*Attorneys for Non-Party California Department of Motor Vehicles*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMYA BREWSTER and ELIAS ARIZMENDI, individually and as class representatives,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal corporation; LOS ANGELES POLICE DEPARTMENT, a public entity; CHIEF CHARLIE BECK, individually and in his official capacity, and DOES 1 THROUGH 10,<br><br>                    Defendants. | EDCV14-2257 JGB (SPx)<br><br>**NON-PARTY CALIFORNIA DEPARTMENT OF MOTOR VEHICLES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Date: July 16, 2019<br>Time: 10:00 a.m.<br>Courtroom: 3 (Riverside – 3d Floor)<br>Judge: Hon. Sheri Pym |

## CALIFORNIA DMV'S SUPPLEMENTAL MEMORANDUM

The DMV wishes to highlight the following key points:

### I. THE DMV'S BURDEN IS UNDUE, GIVEN CALIFORNIA'S STATUTORY SCHEME FOR ATTORNEY ACCESS DMV VEHICLE RECORDS.

With no foundation whatsoever, Plaintiffs argue that the "actual cost to the DMV" is "less than an hour's time by someone with network administrator rights," and that there is "virtually no *actual* cost to the DMV" to provide the discovery sought by the Subpoena (*See* Joint Stip. at p. 11 (emphasis in original).) They contend – again without foundation – that the "actual" cost to the DMV is just the "setting up of the requester account" which should take "less than an hour's time," and nothing more. And – once again without any basis for their contention other than speculation – Plaintiffs contend that the $2/record fee mandated by statute and regulation "is not a reflection of actual cost."

The source for this claim? Plaintiffs' counsel's brother, Dwight Cook – who has zero actual knowledge of the California DMV's systems; his experience is with the State of Minnesota's Department of Transport. (Dw. Cook Decl., at ¶¶ 1-4.)

There is no foundation for Plaintiffs' assertions other than their own speculation, which should be disregarded whether considered to be percipient testimony or "expert" testimony. (See FRE 602, 701).[1] Mr. Dwight Cook's experience in Minnesota – a state with one-sixth the population of California – is irrelevant, and provides no foundation for testimony concerning the California DMV's systems and policies. Mr. Dwight Cook speculates on the reasons why the

---

[1] The DMV objects to Mr. Dwight Cook's Declaration as lacking foundation and based on speculation; Mr. Cook's experience with Minnesota is no basis to provide evidence on how the DMV's systems work. And any supposed familiarity Mr. Dwight Cook has with the DMV's systems is apparently based on his experience in one case (*Gonzalez-Tzita*) and unnamed, unspecified "printed DMV documentation." This is not a foundation for his opinions on how the DMV's systems work, or the work involved behind the scenes at the DMV. The Court should disregard his Declaration in its entirety for lack of foundation.

State of California charges a $2/record fee (Dw. Cook Decl. at ¶ 12.)[2] This is speculation only, and squarely refuted by not only the California Legislature's statement of intent in establishing fees for vehicle record retrieval by attorneys for use in litigation (see Joint Stip. at p. 6), but also by the very language of the Vehicle Code section 1810(a), which permits inspection "at a charge sufficient to pay the actual cost to the department of providing the inspection or sale of the information."

Moreover, Plaintiffs' speculation that the only work involved on the DMV's side is to set up the requester account is contradicted by the actual evidence. As the DMV explained in the Joint Stipulation, the $2/record fee supports the vehicle requester system established by statute, and contributes to:

- Facilitating the application process and renewal process for requester accounts;
- Assisting those issued with accounts in accessing the system;
- Maintaining the vehicle requester database and updating the data within the system to ensure accuracy and integrity;
- Investigating instances of misuse;
- Supporting approximately 65 DMV employees facilitating requester activities.

(Woodward Decl., ¶¶ 3-4.) In short, the $2/record fee supports the infrastructure that permits an attorney such as Mr. Cook to use the vehicle requester system. The Legislature expressly intended the system to be used by attorneys like him who need vehicle information "in order to represent his or her client in a criminal or civil action which directly involves the use of the motor vehicle or vessel that is pending, is to be filed, or is being investigated." (Vehicle Code § 1808.22(c).)

---

[2] Mr. Dwight Cook speculates that the per-record fee is to (a) generate revenue and (b) deter casual users. (Dw. Cook Decl., ¶ 12.) This may be true in Minnesota – which charges a $9/record fee – but Mr. Cook has no basis for asserting that this is the reason why California's DMV charges a fee (which is less than 1/4 of that charged by Minnesota). (See Minnesota Driver & Vehicle Services – Record Fees, available at https://dps.mn.gov/divisions/dvs/Pages/Record-Fees.aspx) (Last accessed June 28, 2019). And Mr. Cook's speculation on the reasons why Minnesota charges the fees that it does is similarly without foundation and is nothing more than a guess, and should accordingly disregarded.

And, indeed, <u>federal law</u> itself provides that states may charge a fee for access to driver records. (See 18 U.S.C. § 2721(e) [Driver's Privacy Protection Act] ["Nothing in this paragraph shall be construed to prohibit a State from charging an administrative fee for issuance of a motor vehicle record."]

The DMV presented evidence and an explanation of the costs from Mr. Woodward, the Chief of the Information Services Branch of the DMV's Communications Program Division, which oversees the vehicle requester system; Mr. Woodward has actual knowledge of the DMV's systems, the infrastructure supporting those systems, and the reasons for the charges. In contrast, Plaintiffs' speculation that the DMV's fees are not actual costs is exactly that: speculation, based on experience with a different (and much smaller) state and entirely different agency of that different state. Indeed, Mr. Dwight Cook does not describe Minnesota as having a comprehensive statutory scheme like California's, with express provisions for providing records to attorneys for use in litigation; Minnesota's system is irrelevant. And Plaintiffs completely disregard the California Legislature's intent in establishing the per-record charges for accessing the record requester system.

## II. THE *GONZALEZ-TZITA* MATTER IS IRRELEVANT.

Plaintiffs reliance on their experience in the *Gonzalez-Tzita* matter, 1:16-cv-194 FMO (Ex). First, the motion practice in that matter involved different issues (primarily the issues of driver confidentiality and inserting of foreign media into DMV systems, which are not at issue here) in a different court with different parties. But more importantly, the discovery at issue was an order of magnitude smaller: 1,570 records, not 45,000. The burden to the DMV in forfeiting the $2/record fee for 45,000 records is nearly <u>thirty times</u> that of forfeiting the $2/record fee for 1,570 ($90,000 as opposed to $3,140.) *Gonzalez-Tzita* simply has no relevance to the burden analysis here.

Plaintiffs also cite to *Gonzalez-Tzita* for the proposition that the actual work involved by DMV technicians is *de minimis*. (*See* Joint Stip. at pp. 4-5.)³ In fact, the evidence shows that the opposite is true; providing the information in that case took substantial work by DMV personnel (primarily Wendy Lang, who spent over 40 hours assisting Mr. Dwight Cook with formatting the requests and reviewing his data for error)s. Plaintiffs – without any foundation other than speculation – attack Ms. Lang's under-oath statement that she spent the time that she did on the requests, contending that she "is not credible." Plaintiffs make this argument <u>even though</u> Ms. Lang already responded to a similar baseless attack in *Gonzalez-Tzita*, where she described in significant detail the behind-the-scenes work involved in providing the data. (*See* <u>Exhibit 1</u> (Supplemental Lang Declaration from *Gonzalez-Tzita*) at ¶¶ 10-16.) Plaintiffs have no basis to challenge her statement that she spent over 40 hours working *Gonzalez-Tzita*, other than their lawyer's brother's speculation based his experience in Minnesota.

It is work like Ms. Lang's in that matter – as well as many others – that the $2/record fee supports. The fact that Mr. Cook does not fully understand how the vehicle requester system is set up, maintained, or staffed does not negate the fact that there is significant behind-the-scenes work that costs money and that is supported by the fees charged by the DMV.

Thus, if the *Gonzalez-Tzita* matter is relevant to anything, it is the fact significant work by the DMV is necessary not only on any specific case but also in maintaining the vehicle requester system for attorneys like Plaintiffs'. They have no basis whatsoever for contending that the burden to the DMV to provide this information for free is minimal; the DMV's evidence contradicts them.

---

³ The DMV does not agree that it suffered no burden in providing the 1,570 records in *Gonzalez-Tzita*; as the Order attached as <u>Exhibit C</u> reflects, the DMV waived the statutory fees and costs <u>by stipulation</u>. Nothing should be read into the DMV's litigation decisions and cost-avoidance strategy by its actions in that matter. And, as explained herein, it still took more than 40 hours of DMV personnel time to provide Mr. Cook with those 1,570 records.

5

## CONCLUSION

If a subpoena were sufficient for an attorney to obtain – at little or no cost – vehicle records for use in a pending or contemplated litigation, it would render Vehicle Code section 1808.22(c) meaningless. After all, why follow the procedures set up by the California Legislature for attorneys to access vehicle records for use in their lawsuit, and why pay the $2/record fee (as well as bond/application fees) intended by the Legislature to "pay the actual cost to the department of providing the inspection or sale of the information,"[4] when you can just issue a subpoena and compel the DMV to provide the information for free, passing along the costs to California taxpayers? That result makes no sense. And the fact that federal discovery procedures are available to Plaintiffs does not create a conflict with any federal law entitling Plaintiffs avoid California's statutory scheme for attorney access to vehicle records and imposing a $90,000+ cost on the people of California.

The Legislature of California mandated that the DMV charge an amount sufficient to cover the cost of providing vehicle records to attorneys like Plaintiffs' counsel, as well as the approximately 250 other attorneys who access the system annually. As the DMV's evidence shows, these fees cover real costs, and are not a profit center or deterrent. If the Motion is granted and the DMV is compelled to provide the records for free (or close to free), the $90,000 that the DMV will forego will instead be paid by the taxpayers of California. The Motion should be denied.

Dated: July 2, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
GARY S. BALEKJIAN
Supervising Deputy Attorney General

BRAD BARR
Deputy Attorney General
*Attorneys for Non-Party California Department of Motor Vehicles*

---

[4] *See* Vehicle Code § 1810(a).

# EXHIBIT 1

## SUPPLEMENTAL DECLARATION OF WENDY LANG

I, Wendy Lang, Declare:

1. I am a Staff Services Manager II at the California Department of Motor Vehicles. I have knowledge of the facts contained in this Declaration and if called to testify thereto, I could and would do so competently.

2. In the Declaration I prepared in connection with this Joint Stipulation, I described (in Paragraphs 24 through 27) the process that the DMV would be required to undertake in order to provide Plaintiffs with updated address information for the 1,570 records that the DMV previously provided to Plaintiffs.

3. In my Declaration, I noted that DMV personnel had attempted these searches and found it takes between 5-7 minutes per record to run such a search. I verified this myself, as follows:

4. On March 29, 2019, I selected ten class member names and addresses at random from the data set previously provided to Plaintiffs. These reflected the class members' addresses on the Towing Date.

5. I also sent these ten names/addresses to Deputy Attorney General Brad Parr, who I understand was going to attempt to located updated addresses for these same entries, using public records databases instead.

6. Using the process that I outlined in my Declaration, I first discovered that nine (9) of the registered owners were the same as provided to Plaintiffs in the first instance.

7. Using the process that I outlined in my Declaration, I then searched for updated owner/address information for the remaining entry.

8. The search for the remaining entry took me approximately six minutes, which is similar to the time it took my colleagues to run such searches using the process available to the DMV.

9. This was not the only time that I conducted such a test of how long it would take to search for updated addresses using the DMV's current systems. I ran

1

a similar test using 10 randomly-selected names and addresses on or about May 16, 2019. I found that six (6) of the addresses were current. I then located the updated owner/address information for the remaining four (4) records; the entire process took me approximately 30 minutes, the bulk of which time was spent searching for the four updated addresses.

10. I have reviewed Paragraphs 4(A) through 4(F) of Dwight Cook's Declaration, in which he claims that my statement that I spent over 40 hours assisting Plaintiffs in obtaining the 1,570 records the DMV provided is "not credible." With respect, Dwight Cook has no basis for his statement.

11. The original data file provided by Plaintiffs – which contained vehicles listed by VIN – had approximately 6,100 lines of data.

12. When the query was run using this data file, we found that there were 1,122 errors in the results. These errors are not grouped together, but rather interspersed throughout. I reviewed these errors to identify what caused them – whether it was bad data, or badly-formatted data.

13. After reviewing these 1,122 errors, we determined that Plaintiffs would likely obtain better results searching by license plate number, rather than VIN.

14. When running the search by plate, we encountered further problems. The search returned approximately 13,000 lines of data, with approximately 600 lines of errors reflecting multiple types of errors. We reviewed the results to identify the source, which included problems like improperly formatted license plate configurations.

15. Prior to both file submissions we worked with Plaintiff's counsel to ensure the formatting of the data and the data elements were correct to obtain a complete data set.

16. Dwight Cook simply does not appreciate the work that the DMV did behind the scenes to help him and his brother obtain their data. Dwight Cook's

1 | experience on his end of this process has no bearing on the work that we did at the
2 | DMV to help him, and does not appreciate the work we put into understanding the
3 | problems with his data and helping identify ways to run the searches.

4 |     17.    I have also reviewed Paragraphs 5(A) through 5(B) of Dwight Cook's
5 | Declaration, in which Dwight Cook "rejects" my "suggestion" that the process I
6 | described in Paragraphs 24 and 25 of my Declaration is the only way to provide the
7 | updated address information that Plaintiffs seek.

8 |     18.    Dwight Cook has no factual basis to challenge my statement, which I
9 | again affirm. I have consulted with DMV programmers and technical staff and
10 | confirm that the process that I described is the only way in which the searches can
11 | be run using the DMV's present systems.

13 |     I declare under penalty of perjury under the laws of the United States that the
14 | foregoing is true and correct and that this Declaration is executed this thirty-first
15 | day of May, 2019.

*/s/ Wendy Lang*

Wendy Lang

LA2018502811
53461048.docx

# CERTIFICATE OF SERVICE

Case Name:  Lamya Brewster v. City of Los Angeles          No.  EDCV14-2257 JGB (SPx)

I hereby certify that on **July 2, 2019**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NON-PARTY CALIFORNIA DEPARTMENT OF MOTOR VEHICLES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **July 2, 2019**, at Los Angeles, California.

_____          _____
Esperanza Noj-Chajon                                            *Esperanza Noj-Chajon*
Declarant                                                                      Signature

LA2018502809
53549392.docx