**BARRETT S. LITT**, SBN 45527
Email: blitt@kmbllaw.com
MCLANE, BEDNARSKI & LITT
975 East Green Street
Pasadena, California 91106
Ph: (626) 844-7660; Fax: (626) 844-7670

**DONALD W. COOK**, SBN 116666
Email: manncook@earthlink.net
ATTORNEY AT LAW
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 90010
Ph: (213) 252-9444; Fax: (213) 252-0091

**PAUL HOFFMAN**, SBN 71244
Email. hoffpaul@aol.com
**JOHN CLAY WASHINGTON**, SBN 315991
Email: jwashington@sshhlaw.com
SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES
11543West Olympic Boulevard
Los Angeles, California 90064
Ph: (310) 396-0731; Fax: (310) 399-7040

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAMYA BREWSTER, ELIAS ARIZMENDI and JULIAN VIGIL, individually and as class representative, et al.,

Plaintiffs,

vs.

CITY OF LOS ANGELES, et al.,

Defendants.

Case No. EDCV14-2257 JGB (SPx)
[Honorable Jesus G. Bernal]

**PLAINTIFFS' RENEWED NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION OF OPG CLASS; MEMORANDUM OF LAW; EXHIBIT AND DECLARATION**

Hearing Date:     January 3, 2022
Hearing Time:     9:00 A.M.
Courtroom:         1-Riverside

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 3, 2022, at 9:00 a.m., in Courtroom 1 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, CA, Plaintiffs will, and hereby do, move the Court to certify the OPG in this case as a class action pursuant to F.R.Civ.P. 23(b)(3). This is a renewed motion, per the Court's Order of September 24, 2021.

In this renewed motion, Plaintiffs move to certify OPG related classes for their 42 U.S.C. §1983 claims.[1] Specifically, Plaintiffs seek certification of the following OPG Classes:

**OPG 30 DAY CLASS**: Vehicle owners (during the class period of November 2, 2012, through July 1, 2017) whose vehicles were i) impounded under the authority of LAPD Special Order 7 for a 30 day impound; ii) not released from impound until the 30th day of the impound or later (determined based on whether the class member was charged for at least 30 days of storage); and iii) the owner retrieved their impounded car from an Official Police Garage ("OPG") (tow yard) and incurred, and paid, all fees and charges for an impound of 30 days (or more).[2]

**GENERAL OPG CLASS:** During the class period for seizures and impounds initiated from November 2, 2012, until July 1, 2017, vehicle owners whose vehicles were i) impounded under the authority of LAPD Special Order 7 for a 30 day impound; ii) released from impound after the first day of the impound [OR not released from impound until such time, if any, to be determined by the Court or Jury, that the impound became unlawful based

---

[1] Because the Court has dismissed Plaintiffs' California claims, and accordingly denied class certification of all of Plaintiffs' California claims for all three of Plaintiff's proposed classes (Lien, Legal Owner and OPG), renewed consideration of denial of class certification on that basis is not sought. Nonetheless, Plaintiffs wish to make clear that failure to seek renewal of a California or Bane Act OPG Class does not constitute a waiver of their position that the Court's Bane Act ruling was erroneous, and that class certification of all three of Plaintiffs' proposed class groupings for California law violations is appropriate.

[2] While the owner could have paid for more than 30 days, if the vehicle was retrieved later than the 30 days, the class definition is limited to 30 days of storage charges because, at that point, the vehicle was available to be retrieved.

on duration of the impound alone]; and iii) the owner retrieved their impounded car from an Official Police Garage ("OPG") (tow yard) and paid all accrued fees and charges.

The Class Representatives for each OPG Class is Julian Vigil.

The distinction between the two classes, and the reason for including each, is discussed in the body of the motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 27, 2021. The motion is based on the attached memorandum of points and authorities, all declarations and exhibits submitted in support, the record of this litigation, and any evidence or argument presented at the hearing on the motion.

DATED: October 21, 2021              Respectfully Submitted,

                                     MCLANE, BEDNARSKI & LITT
                                     LAW OFFICE OF DONALD W. COOK
                                     SCHONBRON, SEPLOW, et al.

                                     By:__/s/ Barrett S. Litt_____
                                         Barrett S. Litt
                                         Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.     OVERVIEW...........................................................................................1

II.    STATEMENT OF FACTS.....................................................................2

    A.   IMPOUND FACTS..........................................................................2
    B.   DATA FACTS TO IDENTIFY CLASS MEMBERS AND DAMAGES....................5

III.   OPG CLASS REPRESENTATIVE JULIAN VIGIL'S IMPOUNDS............ 6

IV.    CLASS DEFINITION AND ASCERTAINABILITY.................................7

    A.   CLASS DEFINITION.......................................................................7
    B.   DEFINITENESS AND ASCERTAINABILITY...........................................10
    C.   DETERMINING CLASS CRITERIA AND DAMAGES.................................11

V.     ASCERTAINED OPG CLASS DAMAGES.........................................12

VI.    THIS ACTION SATISFIES FRCP 23(A) AND (B)(3)...........................12

    A.   NUMEROSITY..............................................................................13
    B.   TYPICALITY...............................................................................13
    C.   ADEQUACY OF REPRESENTATION....................................................15
    D.   THERE ARE MULTIPLE COMMON QUESTIONS....................................16
    E.   COMMON QUESTIONS PREDOMINATE..............................................18
        1.  Certification Of The 30-Day OPG Class Is Essentially Compelled By The Indistinguishable Certification Of The LO And Lien Classes.........19
        2.  Certification Of The General OPG Class Is Appropriate...................20

VII.   THE OTHER REQUIREMENTS OF FRCP 23(B) ARE MET.................23

    A.   RULE 23(B)(3)'S REQUIREMENTS OF SUPERIORITY ARE MET.................23
    B.   EVEN IF CLASSWIDE DAMAGES WERE NOT DETERMINABLE, THAT WOULD NOT DEFEAT CERTIFICATION..............................................24

VIII.  CONCLUSION......................................................................................25

# TABLE OF AUTHORITIES
## Federal

658 F.2d 93 (3d Cir. 1980) ................................................................. 10

*Allaptatah Services v. Exxon*,
   157 F.Supp.2d 1291 (S.D. FLA 2001) ......................................... 12

*Amador v. Baca*,
   No. CV-10-1649 SVW, 2014 WL 10044904 (C.D. Cal. Dec. 18, 2014) ..................... 19

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................. 21, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................. 8

*Avendano-Ruiz v. City of Sebastopol*,
   2018 WL 3619614 (N.D. Cal. July 30, 2018) ................................. 19, 20

*Balagna v. United States*,
   138 Fed. Cl. 398 (2018) ........................................................ 18

*Bennis v. Michigan*,
   516 U.S. 442 (1996) ........................................................... 18

*Brewster v. Beck*,
   859 F.3d 1194 (9th Cir. 2017) ......................................... 3, 5, 18

*Bynum v. D.C.*,
   214 F.R.D. 27 (D.D.C. 2003) .................................................. 14

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
   917 F.2d 1171 (9th Cir. 1990) ............................................... 13

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ........................................................... 19

*Cedar Point Nursery v. Hassid*,
   ___ U.S. ___, 141 S.Ct. 2063 (2021) ....................................... 18

*Driver v. Marion Cty. Sheriff*,
   859 F.3d 489 (7th Cir. 2017) ................................................. 14

*Dukes*,

   564 U.S. ...................................................................................................... 16

*Evon v. Law Offices of Sidney Mickell*,

   688 F.3d 1015 (9th Cir.2012) ............................................................... 13, 14

*Finberg v. Sullivan*,

   634 F.2d 50 (3d Cir. 1980) ...................................................................... 10

*General Telephone Co. v. Falcon*,

   457 U.S. 147 ................................................................................................ 8

*Gonzalez-Tzita v. City of Los Angeles*,

   No. CV 16-0194 FMO (Ex), 2019 WL 7790440 (C.D. Cal. 2019) ...................... 21, 22

*Hanlon*,

   150 F.3d ............................................................................................ 16, 19

*Hanon v. Dataprods. Corp.*,

   976 F.2d 497 (9th Cir.1992) ................................................................. 13, 14

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,

   289 F.R.D. 526 (N.D. Cal. 2012) ............................................................... 14

*In re Nassau Cnty. Strip Search Cases*,

   461 F.3d 219 (2d Cir. 2006) ..................................................................... 16

*In re Rodriguez*,

   695 F.3d 360 (5th Cir. 2012) ................................................................... 11

*In re Toll Roads Litig.*,

   No. SACV 16-00262 AG (JCGx), 2018 WL 4945531 (C.D. Cal. Oct. 3, 2018) .......... 11

*In re Visa Check*,

   280 F.3d 124 (2d Cir. 2001) ..................................................................... 16

*Inflight Motion Pictures, Inc.*,

   582 F. 2d 507 (9th Cir. 1978) ................................................................... 15

*International Molders' & Allied Workers' Local 164 v. Nelson*,

   102 F.R.D. 457 ........................................................................................ 13

*Jimenez v. Allstate Ins. Co.*,

   765 F.3d 1161 (9th Cir. 2014) ............................................................. 16, 24

iii

*Jordan v. County of Los Angeles*,
  669 F.2d 1311 (9th Cir.) ......................................................................... 13
*Knick v. Township of Scott*,
  139 S.Ct. 2162 (2019) ............................................................................. 17
*Levya v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) .................................................................. 24
*Martin v. City of Fort Wayne*,
  2016 WL 5110465 (N.D. Ind. 2016) ...................................................... 22
*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .................................................................. 10
*Melgar v. CSK Auto, Inc.*,
  681 Fed. App'x 605 (9th Cir. 2017) ....................................................... 11
*Messner v. Northshore University Health System*,
  669 F.3d 802 (7th Cir. 2012) .................................................................. 10
*Miranda v. Bonner*,
  2012 WL 10972131 (C.D. Cal. Jan. 31, 2012) ...................................... 19
*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
  246 F.R.D. 621 (C.D. Cal. 2007) ........................................................... 19
*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ................................................................................ 17
*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................. 16
*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 ............................................................................................ 24
*Richardson v. Byrd*,
  709 F.2d 1016 (5th Cir. 1983) ................................................................ 10
*Sandoval v. Cty. of Sonoma*,
  72 F. Supp. 3d 997 (N.D. Cal. 2014) ..................................................... 22
*Sandoval v. Cty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) ...................................................... 3, 5, 19, 22

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................. 15, 19
*Tardiff v. Knox County*,
  365 F.3d 1 (1st Cir. 2004) ........................................................................ 23
*Thompson v. Jackson*,
  No. 1:16-CV-04217, 2018 WL 5993867 (N.D. Ga. Nov. 15, 2018) ........................... 15
*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..................................................................... 9
*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S.Ct. 1036 (2016) ......................................................................... 18, 19
*United States v. Dass*,
  849 F.2d 414 (9th Cir. 1988) ...................................................................... 21
*United States v. Duguay*,
  93 F.3d 346 (7th Cir. 1996) ........................................................................ 22
*United States v. Place*,
  462 U.S. 696, 103 S. Ct. 2637, (1983) .......................................................... 21
*United States v. State of Wash.*,
  233 F.2d 811 (9th Cir. 1956) ....................................................................... 5
*Vaquero v. Ashley Furniture Industries, Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ..................................................................... 24
*Vizcaino v. U.S. Dist. Ct.*,
  173 F.3d 713 (9th Cir. 1999) ....................................................................... 11
*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020) ....................................................................... 10
*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ..................................................................... 19
*Washington v. Marion Cty. Prosecutor*,
  264 F. Supp. 3d 957 (S.D. Ind. 2017) ............................................................ 15

v

*Windham v. American Brands, Inc.*,

    565 F.2d 59 (4th Cir.1977) ................................................................. 12, 24

## State Cases

*People v. Andrews*,

    6 Cal.App.3d 428 (1970) ....................................................................... 3

*Samples v. Brown*,

146 Cal. App. 4th 787 (2007) .................................................................... 17

## Statutes

42 U.S.C. §1983 ...................................................................................... 2

Cal. Veh. Code §14602.6(a)(1) .............................................................. 1, 2

Cal. Veh. Code §22651(p) .................................................................. 1, 2, 3

California Vehicle Code § 21100.4 ............................................................ 21

Penal Code § 31 ...................................................................................... 4

Veh. Code §12500(a) .............................................................................. 4

§14602.6 ....................................................................................... passim

§14602.6(b) ........................................................................................... 4

§14602.6(d)(1) ...................................................................................... 4

§14602.6(g)(1) ...................................................................................... 4

Veh. Code § 14602.6(d)(2) ...................................................................... 4

Veh. Code §22851(a) .............................................................................. 4

F.R.Civ.P. 23(b)(3) ......................................................................... passim

Fed. R. Civ. P. 23 ......................................................................... 9, 10, 17

Fed.R.Civ.P. 23(a)(1) ............................................................................ 13

**FRCP 23(A) AND (B)(3)** ............................................................... i, 12

**FRCP 23(B)** ............................................................................... i, 23

## Rules

L.R. 7 ................................................................................................ 3

Rule 23(a)........................................................................................................ 12, 16

Rule 23(a)(3)............................................................................................................. 13

Rule 23(a)(4)............................................................................................................. 15

Rule 23(c)(1)(C)..................................................................................................... 9, 10

Rule 23(d)................................................................................................................. 17

## Treatises

1 Newberg on Class Actions § 3:6 (5th ed.) ...................................................... 11

3 Newberg on Class Actions §7:27 (5th ed.) ..................................................... 10

Newberg §4:49, at 195-96........................................................................................ 18

Newberg § 4:50, at 196–97). Rule 23(b)(3)............................................................. 18

Newberg, §3:5.......................................................................................................... 13

Wright & Miller, Federal Practice and Procedure §1778, at 123–24 (3d ed. 2005) ......... 19

# I.    OVERVIEW

As the Court is fully aware, this is a renewed motion. As such, of necessity it involves repetition of facts, and reference to evidence, previously submitted.

Plaintiffs sue over the Los Angeles Police Department's ("LAPD") policy of warrantless vehicle impounds for 30 days or more (or lesser periods where vehicles were released earlier). The vehicle impounds were pursuant to LAPD Special Order No. 7 (hereafter "Impound Policy") (see Ex. H[3]), which opted to seize and impound vehicles for 30 days under the authority of Cal. Veh. Code §14602.6(a)(1)) (hereafter "§14602.6") rather than the alternatively available Cal. Veh. Code §22651(p). For vehicles seized under §22651(p), the vehicles were subject to immediate release upon "the registered owner or his or her agent" presenting a currently valid driver's license to operate the vehicle and proof of current vehicle registration", along with payment of towing and storage charges. In other words, LAPD elected to seize vehicles under §14602.6 and its mandatory 30 day impound rather than §22651(p), which had no mandatory impound period, even though either option was available. Donald W. Cook decl. to previous class certification motion ¶¶20(A), 27 (Dkt. 167 filed 7/29/19). As relevant to this Motion, Plaintiffs seek reimbursement for impound charges and the loss of the use of their vehicles during the impound period, plus interest for OPG class members.

By definition, the proposed *OPG 30 Day* Class requires that the vehicle was impounded for the full 30 days (determined based on whether the class member was charged for at least 30 days of storage). The proposed *General OPG* Class encompasses those whose vehicles incurred any storage charges beyond one day, modifiable once the jury (or court if it is deemed a matter of law) determines whether, and if so at what number of impound days, based on duration of the impound alone, the impound constituted a constitutional violation.

---

[3] Exhibits A through Y (Dkt. 167-1 & 167-2) are exhibits to the Declarations of Donald W. Cook, Dwight W. Cook and Cynthia Anderson-Barker (Dkt. 167) filed in connection with the previous class certification motion.

1

Alternatively, if the Court prefers the alternative General OPG Class definition, it would encompass those whose rights were violated based on the duration of the impound alone, to be determined by the Court or the Jury, as appropriate.

## II.   STATEMENT OF FACTS

### A.   IMPOUND FACTS

The Impound Policy sets "the procedures for impounding vehicles" from unlicensed, suspended or revoked license, and DUI drivers. It "provides guidance" for enforcement of Cal. Veh. Code §§ 22651(p) 'unlicensed driver,' and 14602.6(a)(1) '30-Day Holds,' and directs officers how to apply the 'Community Caretaking Doctrine.' (See Ex. H.) At issue here are vehicles seized solely under the Impound Policy for a §14602.6 thirty-day impound.

Section 14602.6(a)(1) authorizes a peace officer to "cause the removal and seizure of" a vehicle if one was driving "while his or her driving privilege was suspended or revoked" or "without ever having been issued a driver's license." Such vehicle "*shall* be impounded for 30 days." *Id.* (emphasis supplied). When a vehicle was seized pursuant to §14602.6, LAPD considered the 30 day impound mandatory, stating that "impound[s] under this Section *shall* be … for 30 days" unless authorized by an LAPD detective for earlier release "in accordance with Section 14602.6." LAPD Manual 4/222.05 (Ex. E at pp.1, 2) (emphasis supplied). (See also Ex. I) (Dkt. 167-2) (LAPD website re "How can I get my car out of impound?") (accessed 11/16/14)).

This lawsuit challenges LAPD's policy decision, reflected in the Impound Policy, to seize a vehicle under §14602.6 in order to impose a 30 day impound (though sometimes a 30 day impound ends up being less than 30 days) rather than seizing the vehicle under § 22651(p), which would have made the vehicle immediately available for release to its owner. More specifically, the lawsuit challenges the (now discontinued) policy and practice of refusing to release an impounded vehicle even though no facts justified that refusal during the first 30 days of storage. Under the Impound Policy's use of §14602.6, a vehicle's owner is denied possession of her vehicle even though the owner (a) is validly licensed, or has a

licensed driver available to drive the vehicle, (b) is willing and able to reclaim possession, (c) will pay accrued administrative fees and storage charges; and (d) the vehicle is not posing a danger to public safety. Such warrantless impounds violate at least the Fourth Amendment. *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) ("*Brewster*"); *People v. Andrews*, 6 Cal.App.3d 428, 437 (1970). (Plaintiffs also contend that they constitute an unlawful taking.)

*Brewster*, an appeal from the Court's grant of a motion to dismiss, held that the "30-day impound of Brewster's vehicle constituted a seizure that required compliance with the Fourth Amendment [referring to the Fourth Amendment's warrant requirement]." *Id.* at 1197. The post-seizure impounds at issue are those imposed pursuant to the Impound Policy's invocation of §14602.6. Defendants' sole justification was deterrence, and/or §14602.1(a)(1))'s mandate. (See Dkt. 167, pp. 10-12 (¶¶24-25) & Ex. K thereto) (Assistant Chief [now Chief] Michel Moore, testifying as the City's designated agent). Chief Moore testified, and the City has since formally admitted, that 1) the impounds were "warrantless seizures," (Dkt. 167, ¶23; 2) a 30 day impound was done because the statute [§14602.6] requires it, *id*. at ¶24; and because 3) the 30 day impound deters future unlawful driving, *id*. at ¶25. *See also* defense counsel's admission at oral argument in the *Brewster* appeal that "we don't have a Fourth Amendment… justification" for the warrantless impounds. (1/12/17 Oral Argument, 19:32-21:20 (#15-55479).

Neither community caretaking nor administrative penalty/deterrence can justify the 30 day impounds, *Brewster*, 859 F.3d at 1196-98; *accord Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) (citing *Brewster*, Ninth Circuit rejects "deterrence or administrative penalty rationale"; since defendants had no other justification, court holds the "continued warrantless seizure of a vehicle once the community caretaking function is discharged" violated the Fourth Amendment). Nor can Defendants claim that they were required by state law to impose 30 day impounds because they could have invoked, but did not, §22651(p) instead.

3

The only statutory exceptions to a §14602.6 thirty day impound are 1) a storage hearing finding of "mitigating circumstances," §14602.6(b), which are infrequent (see Dwight W. Cook decl. ¶17 [Dkt. 167]); or 2) a release in limited defined circumstances (stolen car, bailment, certain types of suspension, unauthorized seizure, *driver's* [not owner's] license reinstated), §14602.6(d)(1). These limited exceptions are irrelevant to the common issues and predominance analysis.

At an LAPD officer's direction, an "Official Police Garage" ("OPG"), which contracts with the City, tows and stores the vehicle. In limited circumstances, the LAPD will authorize an early release to the vehicle's *legal* owner (the lien holder, *i.e.,* the finance company, also referred to as "LO"). However, the legal owner may not release the vehicle to its *registered* owner (also referred to as "RO") (or her agent) until expiration of the full 30 day impound. §14602.6(g)(1).

To regain possession of an impounded vehicle, whether released before or at the end of the 30 day impound period, all accrued towing, storage and other fees must be paid in full, and a licensed driver must be available to drive the vehicle. To retrieve the vehicle from an OPG, the class member must have paid all accrued charges because otherwise the OPG would have sold the vehicle at a lien sale. *See* Veh. Code §22851(a) (OPG authorized to sell vehicle at lien sale to satisfy unpaid charges). Similarly, the class member must have produced a licensed driver, either the Registered Owner class member or an authorized driver, because otherwise the OPG was not permitted to release the vehicle to that person; doing so would be aiding and abetting the commission of a crime. *See* Veh. Code §12500(a) ("A person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code"); Penal Code § 31 (those who aid and abet commission of either a felony or misdemeanor are principals in the crime and punishable as a principal); Veh. Code § 14602.6(d)(2)("No vehicle shall be released pursuant to this subdivision without presentation of the registered owner's or agent's currently valid driver's license to operate the vehicle and proof of current vehicle registration, or upon order of a

court"); *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) ("The exigency that justified the seizure vanished once the vehicle arrived in impound and Brewster showed up with proof of ownership and a valid driver's license"); *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) ("Once Ruiz was able to provide a licensed driver who could take possession of the truck, the City's community caretaking function was discharged"). The proposed OPG Classes, by definition, require that the class member has retrieved the vehicle from the applicable OPG.

As the Court noted in its previous class certification order, "Absent evidence to the contrary, Plaintiffs are entitled to a presumption that Defendants and relevant parties abided by the law in carrying out the Impound Policy. *See United States v. State of Wash.*, 233 F.2d 811, 816 (9th Cir. 1956) ('Absent evidence to the contrary, the applicable presumption is that the ordinary course of business was followed and that the law was obeyed[.]')." Dkt. 220, pp. 12-13. Thus, Plaintiffs have established a presumption that all charges were paid, and a licensed driver was available, before the vehicle was released to the owner.

## B. DATA FACTS TO IDENTIFY CLASS MEMBERS AND DAMAGES.

Through key databases, Plaintiffs can identify class members and particularized damages for all OPG class members. The VIIC database (data collected by authorized towing companies and maintained by OPG-LA [Official Police Garage – Los Angeles]) contains most of the necessary information, including: dates of impound and release; charges (broken down by type); vehicle identifiers (*V*ehicle *I*dentification *N*umber or VIN [a 17 digit alpha-numeric manufacturer code uniquely identifying a vehicle by manufacturer, body type, vehicle series, model, model year, and serial number, which can be used to trace a vehicle's ownership history through Department of Motor Vehicle ("DMV") records], license plate number, make, model, year, body type); statutory authority for the impound; whether the vehicle was retrieved by the registered owner ("RO") or legal owner ("LO"), or sold at a lien sale. Since VIIC data itemizes each charge (tow charge, storage charge, lien fees, City's administrative release fee, City's parking tax, DOT fee), charges for which a class member

5

is *not* entitled to compensation (*i.e.*, the towing fee, the first day impound storage fee and parking tax for that day [imposed when the vehicle arrives at the tow yard] and the City's administrative fee) can be precisely determined. While VIIC data does not identify vehicle owners, Plaintiffs can obtain vehicle owners' names and addresses from the DMV databases by using the VIIC-supplied VINs and license plate numbers, and verify if the registered owner was a California licensed driver. See Dwight W. Cook (Plaintiffs' database expert) decl., ¶¶9, 12-13, 18-21 (Dkt. 167).

Because VIIC data describes the vehicles by make, model, year, and body type for each impounded vehicle, Plaintiffs can calculate the daily rental value for that vehicle during the time it was impounded. Plaintiffs' experts on the car rental industry grouped the vehicles by codes corresponding to vehicle models and features (called "SIPP" codes). SIPP codes are used in the rental car industry to determine car rental values/charges, and provide the basis of an expert opinion about the cost to rent a replacement vehicle. See Michael Meyer and Chris Mitrision decls. (Dkts. 165 & 166). Because the Court has already determined for the LO and Lien Classes that commonality and predominance for damages were established based on "satisfactory class-wide proof of damages" regarding "the fair rental value and fees assessed to the impounded class vehicles multiplied by the number and length of impounds," Dkt. 220, pp. 18-19, we rely on the Court's prior determination, equally applicable here, and the prior proof presented. See Dkts. 165, 166.

## III.   OPG CLASS REPRESENTATIVE JULIAN VIGIL'S IMPOUNDS

Julian Vigil was, and remains, the registered owner of 2014 Mercedes C25, license plate #7XVK166. On May 30, 2017, in the vicinity of 12555 Ventura Blvd., Van Nuys, LAPD officers stopped him because he was allegedly using his mobile phone while driving his Mercedes. Because Mr. Vigil's California driver's license was suspended, the officers impounded the Mercedes under the Impound Policy and §14602.6. He offered to pay all fees and to have his friend Renae Baca, a licensed driver, drive the car from OPG Archer's Towing. LAPD refused until expiration of the 30-day impound. Accordingly, he reclaimed

his car on June 29, 2017 after paying $1,633.90 in fees. His friend drove the vehicle from the OPG storage yard. (Donald W. Cook decl. ¶¶34-35 & Exhibits thereto.)

## IV.   CLASS DEFINITION AND ASCERTAINABILITY

### A.   CLASS DEFINITION

Plaintiffs propose two OPG Classes. The first proposed OPG Class is defined as follows:

> **OPG 30 DAY CLASS**: Vehicle owners (during the class period of November 2, 2012, through July 1, 2017) whose vehicles were i) impounded under the authority of LAPD Special Order 7 for a 30 day impound; ii) not released from impound until the 30th day of the impound or later (determined based on whether the class member was charged for at least 30 days of storage); and iii) the owner retrieved their impounded car from an Official Police Garage ("OPG") (tow yard) and incurred, and paid, all fees and charges for an impound of 30 days (or more).[4]

The foregoing class definition is specifically tailored to conform the OPG class definition to the 30 day impounds that the Court's prior class certification order found acceptable for the LO and Lien Classes. Neither this Class nor the Class(es) proposed below include the absence of a warrant because defendants admit all impounds were accomplished without warrants. (Donald W. Cook decl. ¶23 & Exhibit P thereto, Dkts. 167 & 167-2.)

In addition to the foregoing proposed class definition, Plaintiffs contend that it is appropriate to certify a class broadly defined to conform to potential liability, to be modified after a liability determination regarding what length of impound constitutes a constitutional violation based on duration alone. To that end, Plaintiffs also propose a slightly modified version of the class definition that the Court previously rejected. We recognize the Court

---

[4] While the owner could have paid for more than 30 days, Plaintiffs limit their damages demand to 30 days of fees even if the owner paid more than that because the vehicle was available for pickup on the 30th day of the storage.

1  may again reject this proposed class definition unless the Court has concluded that a class

2  definition of indeterminate length is appropriate at this pre-liability determination stage of

3  the litigation (to be revisited post-liability determination, as described above). That second

4  proposed class definition is:

5        **GENERAL OPG CLASS:** During the class period for seizures and

6        impounds initiated from November 2, 2012, until July 1, 2017, vehicle owners

7        whose vehicles were i) impounded under the authority of LAPD Special Order

8        7 for a 30 day impound; ii) released from impound after the first day of the

9        impound [OR not released from impound until such time, if any, to be

10       determined by the Court or Jury, that the impound became unlawful based on

11       duration of the impound alone]; and iii) the owner retrieved their impounded

12       car from an Official Police Garage ("OPG") (tow yard) and paid all accrued

13       fees and charges.

14     For the above proposed class definition, Plaintiffs have provided alternative language

15 in subsection ii in brackets, and consider either formulation (or some other modification

16 acceptable to the court) sufficient. The distinction between the two formulations is that the

17 first (not bracketed) proposes a class definition that involves releases after the first day of

18 the impound because Plaintiffs contend that anything longer is unconstitutional in light of

19 the fact that the impound was without a warrant, and if Plaintiffs are wrong, the class

20 definition can be narrowed when that is determined, per well-established authority.[5] The

21 second formulation (in brackets) by its terms defines the class to conform to a yet to be made

22

23

24      [5] *See* Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *General Telephone Co. v. Falcon*, 457 U.S. 147, 160 and n.16

25 (1982) (holding, under predecessor to Rule 23(c)(1)(C), "after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Amgen*

26 *Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013) (noting "that certifications are not frozen once made. Rule 23 empowers district courts to 'alte[r] or amen[d]' class-

27 certification orders based on circumstances developing as the case unfolds").

28
                                       8

liability determination that is dependent on whether (and if so when) the vehicle impounds became unlawful based on duration alone.

The Class Representative for each of the foregoing OPG Classes is Julian Vigil. Mr. Vigil submitted a Declaration for the original class certification motion. See Dkt. 195-7&8.

In proposing the General OPG Class, Plaintiffs contend that it is appropriate to define the class broadly to include those whose rights were potentially violated, or who were potentially injured, by the challenged course of conduct, and to then refine the class definition after certain merits determinations are made (which both alternative General class definitions do by proposing a class of persons whose vehicles were impounded pursuant to LAPD policy, and to then determine which class members' rights were violated based on duration alone). *See, e.g., Tyson Foods, Inc., supra* (even when a class definition encompasses non-injured individuals, Rule 23(b)(3) certification is appropriate so long as there is ultimately a mechanism to cull uninjured class members); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-1138 (9th Cir. 2016) (the existence of a class wide policy or practice established predominance even though it encompassed "some individuals who have suffered no harm" where class members were "exposed to" the policy; where an aspect of the class definition was arguably drawn too broadly, that is "not fatal to certification," but "merely reflects the existence of contrasting litigation positions on the proper scope of liability, and a merits issue that the district court will later resolve"); Fed. R. Civ. P. 23, advisory committee note of 2003 (Rule 23(c)(1)(C) specifically contemplates modifications to the class in the wake of a liability determination). See generally Motion for Reconsideration, Section III, Dkt. 221.

We are fully cognizant of the Court's prior ruling rejecting the general OPG Class and do not wish to test the Court's patience. But, since the ruling on the motion for reconsideration granting Plaintiffs the right to file a renewed class certification did not limit that motion to a 30 day OPG class, and since Plaintiffs believe that such a class should be certified, Plaintiffs' counsel concluded that it was their obligation as class counsel to request

this class definition in the event that the Court is open to some form of general OPG Class not limited to a 30 day impound.

Plaintiffs request that, if the Court finds that any of the foregoing proposed class definitions should not be certified as presently defined, but that class could be certified with certain modifications, the Court redefine that class so as to be certifiable and to satisfy predominance. *See* 3 *Newberg on Class Actions* §7:27 (5th ed.) ("several circuits have held that a court *should* alter the class definition in lieu of rejecting class certification, if possible") (original emphasis); *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 633–34 (9th Cir. 2020) (rejecting defense objection to district court's narrowing the proposed class definition, which "contention directly conflicts with Ninth Circuit precedent, *obligating* district courts to tailor class definitions in a way that avoids predominance issues") (emphasis supplied); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (directing the district court to narrow a proposed class definition in a manner the Court found acceptable).[6]

## B.   DEFINITENESS AND ASCERTAINABILITY

Since the Court did not consider this an issue in the prior class certification motion, we primarily rely on that briefing, Dkt. 163-31:34 (Memorandum, pp. 19-22). We do want to clarify, however, that neither of the OPG General Class formulations constitutes a fail-

---

[6] *See also Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); *Messner v. Northshore University Health System*, 669 F.3d 802, 825 (7th Cir. 2012) (holding that class definition problems "can and often *should* be solved by refining the class definition rather than by flatly denying class certification on that basis") (emphasis added in *Newberg*); *Finberg v. Sullivan*, 634 F.2d 50, 64 (3d Cir. 1980), adhered to, 658 F.2d 93 (3d Cir. 1980) ( "district court should not deny certification on account of [class definition] problems without considering the possibility of redefining the classes"); Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment").

safe class because neither presupposes that Plaintiffs will prevail on the merits. *See* 1 *Newberg on Class Actions* § 3:6 (5th ed.) ((23(b)(3) fail-safe class definition assumes merits of individual's claim); *Melgar v. CSK Auto, Inc.*, 681 Fed. App'x 605, 607 (9th Cir. 2017) (defining fail-safe class as one "limiting membership to plaintiffs described by their theory of liability in the class definition such that the definition *presupposes* success on the merits") (emphasis added). The unbracketed sub-section ii gives a durational definition (one day), which clearly does not presuppose liability; the bracketed sub-section ii formulation restricts the class to those whose impounds constituted constitutional violations based on duration of the impound alone, but does not presuppose that any particular duration will necessarily constitute a constitutional violation. Where, as here, the class definition "require[s] class members to prove more facts to establish liability than are referenced in the class definition," i.e., whether any impound, based on duration alone, constitutes a constitutional violation, and if so at what point, it is not a fail-safe class. *Melgar*, 681 F. App'x. at 607.[7]

## C.   DETERMINING CLASS CRITERIA AND DAMAGES

As the Court determined regarding the LO and Lien Classes, the criteria for qualifying as a class member for each class, and all the information to determine classwide economic damages, come from VIIC/DMV data and data compiled by Plaintiffs' rental car experts (collectively the "DATA") and can be determined on a classwide basis.

---

[7] Even if this were a fail-safe class, the Ninth Circuit "appears to disapprove of the premise that a class can[not] be fail-safe." *Melgar*, 681 F. App'x. at 607. (citing *Vizcaino v. U.S. Dist. Ct.*, 173 F.3d 713, 721–22, 723 (9th Cir. 1999)), *as amended*, 184 F.3d 1070 (9th Cir. 1999) (rejecting claim that class definition defining plaintiffs as common law employees assumed their contested legal status and was therefore "circular")). (It is obvious from the context that *Melgar*'s use of "can" was intended to be "cannot," which is why *Newberg* § 3:6 inserted "[not]" to clarify the opinion's intent. *See also In re Toll Roads Litig.*, No. SACV 16-00262 AG (JCGx), 2018 WL 4945531, at *7 (C.D. Cal. Oct. 3, 2018) (similarly modifying *Melgar*'s language). The Fifth Circuit has expressly rejected the proposition that a fail-safe class is impermissible. *In re Rodriguez* 695 F.3d 360, 369–70 (5th Cir. 2012).

11

The constitutionality of the Impound Policy as applied to the class members can be facially determined since no warrants were required or employed (see footnote 6, *supra*). The VIIC data indicate the impound length and charges. Thus, classwide liability can be determined based on a factual or legal determination of whether there is a point in time based on duration of the impound alone that the impound becomes unlawful, and if so when.

## V.   ASCERTAINED OPG CLASS DAMAGES

Plaintiffs' experts can readily calculate the ascertainable classwide economic damages, however the Class is defined, and can calculate damages for each class member whose rights are found to have been violated. Once DMV data is obtained (which can be obtained within approximately three weeks after DMV is paid approximately $40,000 for the data), there can be a calculation limited to damages for those found entitled to compensation, which is merely a mathematical undertaking, a method long recognized as satisfying predominance for classwide damages. *See, e.g., Newberg*, § 12.5 ("Formulae for calculating class aggregate damages may also be based on records, typically the defendant's records"); *Allaptatah Services v. Exxon*, 157 F.Supp.2d 1291, 1313 (S.D. FLA 2001)("[w]hen monetary relief is sought, and data from each class member is required to assess individual recovery entitlement, it is appropriate for the class representatives to develop and prove common guidelines or formulae that will apply for each individual proof of claims"); *Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir.1977) (damages capable of formula calculations present no manageability problem).

## VI.   THIS ACTION SATISFIES FRCP 23(A) AND (B)(3).

All class actions must meet the four prerequisites of Rule 23(a), each of which are discussed in the following sections: Since Plaintiffs seek damages class certification, it is most efficient to address Rule 23(b)(3)'s requirement that common issues predominate at the same time as the Rule 23(a) commonality requirement, and to do so after discussion of the other Rule 23(a) requirements.

12

### A.    NUMEROSITY

The class must be so numerous that joinder of all class members is "impracticable." (Fed.R.Civ.P. 23(a)(1).). The 30-Day OPG Class has 9916 class members based on the most recent calculation. See Renewed Class Certification Declaration of Barrett S. Litt, ¶ 2 ("Renewed Litt Dec."). The General OPG Class by definition has more since it is not limited to paid impound charges of 30 days or more. This far exceeds the numerosity requirement. *See, e.g., International Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983 ("where the number of class members exceeds forty…, "the numerosity requirement will generally be found to be met"); *Newberg,* §3:5 ("as few as 40 class members" raises presumption of impracticability of joinder).

### B.    TYPICALITY

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met if class representatives and members of the class "share a common issue of law or fact" and "are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations and internal quotation marks omitted). "As long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory, varying factual differences between the claims or defenses of the class and the class representative will not render the named representative's claim atypical." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321 (9th Cir.), *vac. on oth. grds.,* 459 U.S. 810 (1982).

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir.2012) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "Typicality refers to the nature of the

13

claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quoting *Hanon*, 976 F.2d at 508). *See also, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 535 (N.D. Cal. 2012) (typicality for those who "were subject to the same policy as the proposed class").

Mr. Vigil's claims are typical of the proposed classes. For the 30-Day OPG Class, Mr. Vigil's and each class member's vehicle was impounded and held for 30 days or more; for the General OPG Class, each class member's vehicle was impounded, and impound charges imposed, for at least one day (or for any period found to be unlawful). Mr. Vigil and each class member either drove the vehicle away themselves or had a licensed driver do so (required by law and by the class definition), paid the accrued impound fees and charges, and were deprived of the use of his car during the impound period.

Mr. Vigil possesses the "same interest and suffer[ed] the same injury" as class members of either proposed OPG Class. He was "injured by the same course of conduct" and "subject to the same policy" as all class members. He suffered "the same or similar injury" as all class members, differing only (as it relates to the General OPG Class) in that some such class members' vehicles were held for a lesser time than Mr. Vigil's 30 days.

This temporal difference is of no moment for typicality (or commonality/predominance). Thus, in the analogous context of claimed over-detentions after becoming entitled to release from incarceration, courts have found that differences in the length of incarceration between the class representative and class members do not defeat typicality or commonality/predominance. *See, e.g., Driver v. Marion Cty. Sheriff*, 859 F.3d 489, 491-92 (7th Cir. 2017) (reversing denial of certification of class of over-detained inmates, and recognizing that, "at some point the State has no legitimate interest in detaining persons for an extended period of time, and if the regular practice exceeds that time period deemed constitutionally-permissible, the State is not immune from systemic challenges such as a class action"); *Bynum v. D.C.*, 214 F.R.D. 27, 34–35 (D.D.C. 2003) (class members asserted the same legal theory and were subjected to the same course of conduct; "[f]or

14

purposes of the typicality inquiry, the fact that some class members may have been overdetained for one day, and others for weeks or even months is not determinative. Plaintiffs need only show that the named plaintiffs' claims are typical, not that the individual facts underlying their claims are identical to those of those of all other class members"); *Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *8 (N.D. Ga. Nov. 15, 2018) (named plaintiffs were detained for three days or more while most class members were released within 48 hours of entitlement to release; the "factual difference in the length of the detention cannot render Plaintiffs atypical of the class…. Plaintiffs' claims typify those of the class as a whole."). *See also Washington v. Marion Cty. Prosecutor*, 264 F. Supp. 3d 957, 961 (S.D. Ind. 2017) (certifying class challenging statute under which vehicles were seized and held "for potentially lengthy periods of time without any ability to contest the deprivation" despite varying lengths of the vehicles' detention among class members based on claim that the ongoing seizures violated due process).

### C.   ADEQUACY OF REPRESENTATION

Rule 23(a)(4)'s requirement that the class representative be able to protect the interests of all members of the class is met when 1) there is no conflict of interest between the legal interests of the named Plaintiff and those of the proposed class, and 2) counsel for Plaintiff is competent to represent the class. *Lenvill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, the interests of all members of the class are aligned with Mr. Vigil's; there are no conflicts of interests; and Defendants' policy and actions have subjected each class member to the same course of conduct. Mr. Vigil understands his responsibilities as a class representative. See Declaration of Julian Vigil (Dkt. 195, pp. 4-5). The Court's determination that "proposed class counsel …fully satisfy the adequacy requirement" for the LO and Lien Classes, Dkt. 220-13, applies here.

1

### D.   THERE ARE MULTIPLE COMMON QUESTIONS

Rule 23(a) requires common questions; Rule 23(b)(3) requires for a damages class that the common questions "predominate" over individual issues. Commonality under Rule 23(a) does not require that "[a]ll questions of fact and law . . . be common." *Hanlon*, 150 F.3d at 1019. It is sufficient that there are "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies." *Id*. Where, as here, "examination of all the class members' claims for relief will produce a common answer" to a central common question, Rule 23(a) commonality is met. *Dukes*, 564 U.S. at 352. To the extent necessary to determine commonality, but only to that extent, courts examine the underlying legal merits. *Id*. at 351-52; *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014).

Commonality is satisfied where "all members of the class are subject identically to [the] same policies and practices, and the constitutionality of any given policy and practice … can be answered in a single stroke." *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014). Where "plaintiffs are 'allegedly aggrieved by a single policy of defendants,' … the case presents 'precisely the type of situation for which the class action device is suited' since many nearly identical litigations can be adjudicated in unison." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) (blanket strip search policy) (quoting *In re Visa Check,* 280 F.3d 124, 146 (2d Cir. 2001). This case is the paradigmatic class action.

Plaintiffs have presented substantial common evidence that all class members' vehicle impounds were warrantless seizures; all class members' vehicles were impounded for a 30 day impound under the authority of the Impound Policy (or for an unlawful period to be determined for the General OPG Class); VIIC data establishes the date each class member's vehicle was seized and the date the OPG released the vehicle; in  conjunction with VIIC

16

data, DMV data will identify class members' by name, address and licensure[8]; for each class member's vehicle, VIIC data identifies the vehicle (VIN; license plate number, the vehicle make, model, year and type); the enumerated charges for the vehicle while held by the OPG; how the vehicle was released (released to registered owner or legal owner, or sold at lien sale); and, for vehicles released to members of either proposed OPG class, the class member was either a licensed driver or had a licensed driver available to drive the vehicle because an OPG will *not* permit an unlicensed driver to drive the vehicle off the storage lot.

Since all impounds at issue were pursuant to the Impound Policy, the central and common questions of fact and law establishing both commonality and predominance include (but are not limited to) the questions below. These questions do not assume that either party's position is correct. The point is that, whether the answer favors plaintiffs or defendants, they are common questions, *i.e.,* the same answer applies to all class members (or, depending on the legal or factual determinations regarding the legality of impounds lasting less than 30 days, for identified class members based on those determinations):

Did 30 day impounds violate the Fourth Amendment, or constitute an unlawful taking?[9]

---

[8] To the extent that such data has not been obtained by the discovery cutoff date, it is independently discoverable under the authority of Rule 23. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355 (1978) ("Rule 23(d) also authorizes a district court in appropriate circumstances to require a defendant's cooperation in identifying the class members to whom notice must be sent").

[9] A takings claim requires a showing that there was a taking of private property for a public purpose without compensation, *Knick v. Township of Scott*, 139 S.Ct. 2162 (2019). In this and other cases the City has consistently contended that the legislative policy underlying §14602.6, the enforcement of which is the objective of SO7, is "to deter unlicensed driving by impounding the vehicle driven by an unlicensed person." (quoting *Samples v. Brown*, 146 Cal. App. 4th 787, 806 (2007), and that that "statute was enacted based on significant public policy concerns, and deals with those concerns via an administrative penalty." Defendants' Opposition to motion for preliminary injunction, Dkt. 35, pp. 15, 21. LAPD's SO7, the LAPD's policy on the discretionary enforcement of §14602.6, is the basis of Plaintiffs' *Monell* claim. Thus, defendants have effectively conceded that the public purpose element aspect of the takings claim has been met.

17

1    Did impounds of less than 30 days violate the Fourth Amendment, or constitute an

2    unlawful taking, and, if so, based on duration alone, at what point in time?[10]

3    There are common questions regarding damages as well, which the Court resolved

4    favorably for the LO and Lien Classes in Dkt. 220-19, which analysis applies equally here.

5    ## E.    COMMON QUESTIONS PREDOMINATE

6    A "common question [under Rule 23(a)(1)] is one where 'the same evidence will

7    suffice for each member to make a prima facie showing [or] the issue is susceptible to

8    generalized, classwide proof.' " *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045

9    (2016). *Id.* (quoting *Newberg* § 4:50, at 196–97). Rule 23(b)(3)'s "predominance inquiry

10   'asks whether the common, aggregation-enabling, issues in the case are more prevalent or

11   important than the non-common, aggregation-defeating, individual issues.' " *Id.* (quoting

12   *Newberg* §4:49, at 195-96). So long as " 'one or more of the central issues in the action are

13

14   _____

15   Unless the Defendants can establish that the impound was lawful, the impound violated the

16   takings clause. *E.g.*, *Bennis v. Michigan*, 516 U.S. 442 (1996) (no taking where the state could

16   lawfully seize and forfeit vehicle, and the government was not required to compensate the owner

17   for property lawfully acquired under the exercise of governmental authority other than the power

17   of eminent domain). While in this respect the takings claim intersects with Plaintiffs' Fourth

18   Amendment claim, the compensation standards of the takings clause provide independent authority

19   for compensation based on the lost use of the property. See, e.g., *Balagna v. United States*, 138 Fed.

19   Cl. 398 (2018) (in the case of a temporary taking, just compensation is the value of the use of the

20   property during the temporary taking, measured in terms of the fair rental value of the property for

21   the period of the taking.). Additionally, regardless of the answer to whether an impound lasting less

22   than 30 days violated the Fourth Amendment, it is established law that a temporary unlawful taking

22   is a compensable claim, which provides a different analytical prism for determining the existence

23   of a constitutional violation. *Cedar Point Nursery v. Hassid*, ___ U.S. ___, 141 S.Ct. 2063, 2074

23   (2021) ("a physical appropriation is a taking whether it is permanent or temporary").

24   [10] Plaintiffs submit that under *Brewster*, 859 F.3d at 1196 ("seizure conducted without a

25   warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically

25   established and well delineated exceptions"), any warrantless impound violated the Fourth

26   Amendment because the seizures under SO7 and §14602.6 did not meet any exception to the Fourth

27   Amendment. Plaintiffs also submit that under the authority cited in the previous footnote, any

27   temporary deprivation of the use of a class member's vehicle became a taking for which

28   compensation is due.

18

1  common to the class and can be said to predominate, the action may be considered proper

2  under Rule 23(b)(3)'" even if there are important individualized issues like "damages or

3  some affirmative defense.' " *Id.* (quoting Wright & Miller, *Federal Practice and Procedure*

4  §1778, at 123–24 (3d ed. 2005)).

5      Minor factual differences do not defeat commonality where it is unlikely "that

6  differences in the factual background of each claim will affect the outcome." *Califano v.*

7  *Yamasaki*, 442 U.S. 682, 701 (1979); *See also, e.g., Walters v. Reno*, 145 F.3d 1032, 1046

8  (9th Cir. 1998) (differences among class members' experiences in support of their due

9  process claim did not defeat commonality); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

10  (9th Cir. 1998) ("shared legal issues with divergent factual predicates is sufficient, as is a

11  common core of salient fact coupled with disparate legal remedies within the class"); *accord*,

12  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

13      Courts routinely certify damages classes where there was a common practice, which

14  self-evidently varies more than a single policy (which is what exists here). *Compare, e.g.,*

15  *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 629-

16  30 (C.D. Cal. 2007) (damages class of protestors ordered to disperse); *Amador v. Baca*, No.

17  CV-10-1649 SVW, 2014 WL 10044904 (C.D. Cal. Dec. 18, 2014) (certifying strip search

18  class based on practices not established as formal policy).

### 1.    Certification Of The 30-Day OPG Class Is Essentially Compelled By The Indistinguishable Certification Of The LO And Lien Classes.

In the previous class certification motion and attendant order, Plaintiffs addressed

prior decisions regarding vehicle impounds, including one, in *Sandoval v. Cty. of Sonoma*,

912 F.3d 509 (9th Cir. 2018), affirming the district court's denial of class certification there.

In the class certification order here, for the LO and Lien Classes, the Court distinguished the

authority denying class certification on which Defendants relied [*Sandoval, supra*; *Miranda*

*v. Bonner*, 2012 WL 10972131 (C.D. Cal. Jan. 31, 2012); *Avendano-Ruiz v. City of*

19

*Sebastopol*, 2018 WL 3619614 (N.D. Cal. July 30, 2018)] as "inapposite." Dkt. 220-17, 18. Given that analysis, it is unnecessary for Plaintiffs to further brief these cases since the Court's analysis equally applies here.

Specifically, the Court pointed out in Dkt. 220, as it relates to the LO and Lien Classes, that 1) unlike some of the above cases, Plaintiffs here were challenging only the impound and not the initial seizure; 2) the "careful tailoring" of the class definitions "omitted vehicle owners who attempted to recover their vehicle without the availability of a licensed driver"; and 3) all LO and Lien Class vehicles were "impounded for at least thirty days, eliminating any possibility that potential class member claims will require the Court to weigh the duration of each vehicle impound in an individualized reasonableness inquiry." *Id.*, pgs. 17-18, These precise same limitations apply to the 30-Day OPG Class proposed in this motion. Certification of the 30-Day OPG Class cannot reasonably be distinguished from certification of the LO and Lien Classes. Accordingly, given the Court's analysis certifying the LO and Lien Classes because they "consist exclusively of vehicles impounded without a warrant for 30 days or more and despite the availability of a licensed driver" (Dkt. 220, p. 16), the proposed 30-Day OPG Class should similarly be certified.

Plaintiffs fully recognize that the Court reasoned that a 30 day impound requirement eliminated the possibility of the need for individualized reasonableness inquiries of a duration less than 30 days. For the reasons contained in the following section, Plaintiffs submit that an a General OPG Class certification is appropriate. Plaintiffs intentionally present this as a separate class in order to ensure that, regardless of the Court's conclusion on this second class, it does not implicate the propriety of certifying a 30-Day OPG Class.

### 2.    *Certification Of The General OPG Class Is Appropriate.*

Plaintiffs have also proposed a General OPG Class that encompasses the 30-day Class but also includes those whose vehicles were returned before incurring 30 days of storage charges. The ultimate size and scope of that class would be based on yet to be made merits

1    determinations regarding whether, and if so, when, impounds became unlawful based on the
2    duration of the impound alone.[11]

3        Well-reasoned decisions in similar cases have certified damages classes without a
4    fixed time period. In addition to cases discussed in Section VI(B), *supra*, other cases support
5    the General OPG certification. In *Gonzalez-Tzita v. City of Los Angeles*, No. CV 16-0194
6    FMO (Ex), 2019 WL 7790440, at *4-8 (C.D. Cal. 2019), Judge Olguin certified a class of
7    up to 30 day warrantless impounds of "bandit taxi" vehicles when Los Angeles impounded
8    unauthorized vehicles acting as taxis in violation of its Municipal Code, pursuant to
9    California Vehicle Code § 21100.4. The class definition there did not place any temporal
10   limits on how long the vehicles were held. [12] Specifically, the Court certified the class
11   contained in "¶ 2 of the Corrected Revised Settlement Agreement ("Settlement Agreement")
12   (Dkt. 130-1, Ex. A in *Gonzalez-Tzita.* 2019 WL 7790440 at *12). The class definition
13   contained in that Settlement Agreement defines the class as "Any registered vehicle owners
14   whose vehicles were seized and impounded by the City at any time from January 11, 2014,
15   through February 15, 2017, under the authority of Cal. Veh. Code §21100.4." See Exhibit A
16   to Renewed Litt Dec. There is no temporal requirement under that class definition for an
17   impound of any particular length. The Court found that, like here, there existed "a significant
18   common question as to whether the City's impound policy or 'bandit taxi' program were
19   constitutional and compliant with state law," and that the answer to that question "could

---

21   [11] For decisions establishing that a Fourth Amendment violation may be premised on
22   duration of the seizure alone, see , *e.g., United States v. Place*, 462 U.S. 696, 709–10, 103 S. Ct.
23   2637, 2645–46, (1983) (warrantless seizure of luggage at airport of 90 minutes unlawful; "90-
     minute detention of respondent's luggage [wa]s sufficient to render the seizure unreasonable"
24   without consideration of other factors); *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988)
     (discussing outer limit of duration of warrantless seizure of mailed packages).
25       [12] While this issue arose in the context of preliminary approval of a settlement, and was
26   unopposed, the *Gonzalez-Tzita* Court was obligated to (and did) make an independent determination
     of whether the requirements of Rule 23 were met. *See Amchem Prod., Inc. v. Windsor*, 521 U.S.
27   591, 620 (1997) (holding that before certifying a settlement class, a court has an "undiluted, even
     heightened" obligation to insure the prerequisites outlined in Rule 23(a) and (b) are satisfied).

28                                              21

1   establish defendants' liability on a class-wide basis," thus establishing predominance. *Id.* at

2   \*7. *See also Martin v. City of Fort Wayne*, 2016 WL 5110465, \*7 (N.D. Ind. 2016) (granting

3   plaintiffs' motion to amend the complaint to allege class claims where the central question

4   was the constitutionality of a practice of automatically towing vehicles whenever a driver

5   was arrested without consideration to whether another person on the scene could remove it;

6   case, as alleged, presented common questions for which there were common answers).

7      Certification without a pre-fixed impound length is also implicitly justified by

8   *Brewster*, as well as *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996). In *Brewster,* the

9   Court had occasion only to say that the 30 day impound for Ms. Brewster violated the Fourth

10  Amendment; it did not address whether impounds of lesser duration would violate the Fourth

11  Amendment, leaving that question for future litigation. *Duguay*, although not a class action,

12  explained that a "policy of impounding the car without regard to whether the defendant can

13  provide for its removal is patently unreasonable if the ostensible purpose for impoundment

14  is for the 'caretaking' of the streets." This standard is not temporally tied to the length of the

15  impound but rather whether there exists a legal justification to hold the vehicle despite the

16  presence of "a passenger, a girlfriend, or a family member," i.e., an authorized driver, to

17  drive the car away, which Plaintiffs contend did not exist here. *See also* over-detention and

18  other cases discussed at § VI(B), pp. 14-15.

19     The cases explaining that lengthy impounds cannot be justified by the community

20  caretaking doctrine have established that holding a vehicle for any period beyond that

21  justified by the doctrine are unconstitutional. *See Sandoval v. Cty. of Sonoma*, 72 F. Supp.

22  3d 997, 1008 (N.D. Cal. 2014), *aff'd,* 912 F.3d 509 (9th Cir. 2018), and *aff'd,* 912 F.3d 509

23  (9th Cir. 2018) (community caretaking "exception cannot justify the *ongoing* seizure of the

24  vehicle after it has been removed, much less for an arbitrary period of thirty days") (original

25  emphasis); *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) ("Whatever force

26  those [deterrence] rationales may have in the forfeiture context, where a court approves the

27  deprivation, ... they do not permit the *continued warrantless seizure* of a vehicle once the

28

community caretaking function is discharged.") (emphasis supplied). This analysis strongly suggests that the 30-day period in *Brewster* was not intended to be a determination of, much less the last word on, whether, and if so at what point, an impound becomes unconstitutional based on duration alone, but rather a fact-bound determination based on the *Brewster* allegation of a 30-day impound.

*Brewster* (and *Sandoval*) rejected Defendants' justifications for holding the car for 30 days, such as community caretaking, deterrence (or punishment). Given that the class definition eliminates the variables that have defeated analogous class certifications such as *Sandoval* by requiring that all fees and charges be paid, and that the owner produce an authorized licensed driver, there exists a common and predominant question of whether, and at what point in time, based on duration of the impound alone, the impounds at issue became unlawful. The fact that *Brewster* only answered the question that a 30 day impound violated the Fourth Amendment does not answer whether there exists a lesser constitutional cutoff, a question *Brewster* did not purport to answer and a question, whatever the answer may be, and whether favorable to Plaintiffs or Defendants, that is common to the class. The *Sandoval* plaintiffs did not present the legal analysis supported by *Tyson Foods, Torres* and others regarding the permissible scope of certification where the ultimate class definition is dependent on yet unresolved liability issues. This conclusion is only strengthened by the temporary takings doctrine's application here. *See* Fn. 9.

## VII.   THE OTHER REQUIREMENTS OF FRCP 23(B) ARE MET.

### A.   RULE 23(B)(3)'S REQUIREMENTS OF SUPERIORITY ARE MET.

Rule 23(b)(3) also requires that the class action be the "superior" form of adjudication. Where the value of the claim of each class member is relatively small, and the interest of any class member in bringing her own lawsuit is low, certification is favored. *E.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997); *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004). Here, class members have no large claims or stake in controlling the litigation (the average claim is in the range of a couple of thousand dollars before interest), there are

not similar cases pending, this court is an appropriate forum, and the case is very manageable, particularly since Plaintiffs have devised a formula approach to determining damages. See Dkt. 220-19 ("Plaintiffs have submitted satisfactory class-wide proof of damages in the form of expert calculations"); *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977) (1978) (no manageability problem where formula calculations can determine damages). As explained, the class data make the case highly manageable (including identifying class members and damages). Once the class is certified, any obstacle to obtaining their identifying information will be removed, and Plaintiffs will be able to fully analyze the class and provide class notice when ordered.

### B. EVEN IF CLASSWIDE DAMAGES WERE NOT DETERMINABLE, THAT WOULD NOT DEFEAT CERTIFICATION.

In any event, so long as Plaintiffs can "show that their damages stemmed from the defendant's actions that created the legal liability," the "presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)). *See also, e.g., Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014; *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1154-55 (9th Cir. 2016).

///
///
///
///
///
///
///
///
///

24

## VIII. CONCLUSION

Accordingly, Plaintiffs request that the Court certify the OPG classes proposed above.

DATED: October 21, 2020

Respectfully Submitted,
MCLANE, BEDNARSKI & LITT
LAW OFFICE OF DONALD W. COOK
SCHOENBRON, DESIMONE, et al.

By:__/s/ Barrett S. Litt_____
        Barrett S. Litt

By:__/s/ Donald W. Cook_____
        Donald W. Cook
Attorneys for Plaintiff